WHITE O'CONNOR CURRY LLP

ATTORNEYS AT LAW

IOIOO SANTA MONICA BOULEVARD
TWENTY-THIRD FLOOR
LOS ANGELES, CALIFORNIA 90067-4008
TELEPHONE (3IO) 712-6IOO
FACSIMILE (3IO) 712-6I99

February 27, 2008

ANDREW M. WHITE
310.712.6110
awhite@whiteo.com

***Via Hand Delivery***
The Honorable Shirley Wohl Kram
United States District Court Judge
Southern District of New York
United States Courthouse
40 Centre Street, Room 2101
New York, New York 10007

Re:    ***Price v. Stossel, et al., Case No. 07 CV 11364 (SWK)***

Dear Judge Kram:

As counsel for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc. (collectively, "ABC") in the above-referenced action, we write pursuant to the Court's Order dated February 20, 2008. In that Order, the Court set a pre-motion conference for March 5, 2008, and ordered ABC to submit this summary of the following issues: (a) the grounds for its motion to transfer venue back to the Central District of California; (b) why Plaintiff Frederick K.C. Price ("Dr. Price") does not need discovery to oppose that motion; and (c) any other issues ABC intends to raise at the pre-motion conference.

## I.
## ABC's Motion To Transfer

### A.    Factual And Procedural Background

#### 1.    Dr. Price And His Crenshaw Christian Center Church Of Los Angeles

A life-long California resident, Dr. Price is a well-known televangelist who preaches a message of "economic prosperity" through a "God-centered life." CA Compl.[1] ¶ 18. For 35 years, he has been the leader of the Crenshaw Christian Center Church of Los Angeles County ("Crenshaw-Los Angeles Church"), where he claims to

---

[1] As detailed herein, Dr. Price initially filed his defamation lawsuit in California State court for Los Angeles County, and then later re-filed the same defamation claim in this Court. Because Dr. Price has carefully omitted certain jurisdictional allegations from the complaint he filed in this Court, ABC refers, where necessary, both to his California complaint ("CA Complaint") and his New York complaint ("NY Complaint").

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 2

have a local congregation of over 22,000. Id. at 19. Dr. Price is the principal preacher
at his Los Angeles church, which includes an arena-sized sanctuary called the
"FaithDome." Id.

## 2.    ABC Broadcasts The News Report

On March 23, 2007, ABC broadcast on its news programs "Good Morning
America" and "20/20" a report about the fiscal transparency of certain religious
organizations (the "News Report"). The News Report included a nine-second clip of Dr.
Price delivering a sermon from his Crenshaw-Los Angeles Church, as well as an image
of Dr. Price's multi-million dollar estate in Palos Verdes, an exclusive residential area in
Los Angeles County. Following that nine-second clip, which portrays Dr. Price as being
quite open (even boastful) about his material wealth, the News Report turns to several
other ministers who appear, in contrast, to be much less open about their wealth. The
News Report then concludes with a fairly lengthy interview of Rusty Leonard, who
founded Ministry Watch, an organization dedicated to investigating and reporting on the
financial transparency of religious organizations.

## 3.    Dr. Price Files His Action In The Los Angeles Superior Court

Dr. Price complained that the News Report defamed him, and demanded that
ABC broadcast a retraction pursuant to California's special retraction statute. CA
Compl. ¶ 29. In conformity with California law, ABC did broadcast retractions on both
"20/20" and "Good Morning America," stating that the video clip of Dr. Price talking
about material wealth had been accidentally taken out of context. ABC explained that it
had learned that Dr. Price was not referring to his own material wealth during that nine-
second clip; rather, he was preaching a sermon about a hypothetical man who had
many luxurious possessions but lived an unhappy, spiritually empty life.

Notwithstanding ABC's retractions, Dr. Price filed a complaint in Los Angeles
Superior Court on July 24, 2007. The CA Complaint alleges claims for defamation and
intentional infliction of emotional distress, and seeks general, special, and punitive
damages. See generally id. In support of his choice of California as the forum for his
claims, Dr. Price alleges that ABC's retractions were insufficient under California's
retraction statute, thereby attempting to avoid the limitations which California law
imposes on the damages recoverable in a defamation lawsuit. Id. ¶ 29.

Dr. Price's CA Complaint makes clear that, if his reputation suffered any harm, all
(or almost all) of that harm occurred in California. For example, Dr. Price makes the
following allegations: (a) he has been preaching in Los Angeles for over 50 years, and
has become a prominent religious leader in the Los Angeles community; (b) the
Crenshaw-Los Angeles Church claims "one of the largest church sanctuaries in the
United States," has grown significantly since Dr. Price founded it 35 years ago, and
currently claims a membership of "over 22,000"; (c) he is the "principal preacher" at the
Crenshaw-Los Angeles Church services, which attract "over 3,500" people; (d) the

221864.1.doc

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 3

News Report "could be viewed by residents of the County of Los Angeles"; (e) members of his Crenshaw-Los Angeles Church "called to say that they were shocked and disturbed" by the News Report; (f) the News Report caused viewers to believe that he was "looting the coffers" of the Crenshaw-Los Angeles Church. CA Compl. ¶¶ 1, 3, 7, 8, 17-20. Shortly after the News Report was broadcast, Dr. Price posted on his website a rebuttal video, which appears to be based entirely on interviews with congregants of his Crenshaw-Los Angeles Church.

Dr. Price's allegations also underscore that resolution of his claims will turn on evidence located in Los Angeles. Dr. Price alleges that the News Report accuses him of "diverting funds donated to the [Crenshaw-Los Angeles Church] for his own personal use." CA Compl. ¶¶ 22-23. Dr. Price asserts that the Crenshaw-Los Angeles Church pays him a salary "set and approved by" its Board of Directors. Id. According to Dr. Price, that Board of Directors "controls the [Los Angeles-Crenshaw Church's] finances," and those finances are "audited annually by a firm of certified public accountants[.]" Id. Dr. Price further contends his church's finances are "open to review" by the congregation of his Crenshaw-Los Angeles Church. Id. Thus, Dr. Price's own financial records, the financial records of his Crenshaw-Los Angeles Church, and the access to those records by his Los Angeles congregation are integral to his assertion that the News Report defamed him. Most, if not all, of that evidence is located in Los Angeles.

## 4.    Defendants Remove The Action To The Central District Of California

On September 17, 2007, Defendants removed Dr. Price's action, based on diversity jurisdiction, to the United States District Court for the Central District of California (the "Central District"), where it was assigned to Judge R. Gary Klausner. Dr. Price did not oppose the removal. On September 21, 2007, ABC answered the CA Complaint.

## 5.    Defendants Initiate The Procedures To File Their Anti-SLAPP Motion

At the outset of the case, ABC informed Dr. Price of its intention to file a special motion to strike the complaint pursuant to a unique provision of California substantive law: i.e., the "anti-SLAPP" statute codified in Section 425.16(b) of the California Code of Civil Procedure (the "anti-SLAPP statute"). The crux of ABC's anti-SLAPP motion is that Dr. Price cannot present evidence sufficient to establish a reasonable probability of prevailing on the merits, for a variety of reasons, including the following: (a) all of the factual statements in the News Report about Dr. Price were true; indeed, Dr. Price is extremely wealthy and he often boasts about his material possessions; (b) many of the statements about which Dr. Price complains were not of and concerning him; (3) many of the challenged statements were not provably false assertions of fact; and (d) pursuant to the California retraction statute, Dr. Price can only recover (if anything) special damages, which he failed to plead and cannot prove.

221864.1.doc

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 4

Pursuant to the procedures required by Local Rule 7-3 of the Central District, ABC's counsel "met and conferred" with Dr. Price's counsel at length about the merits of the anti-SLAPP motion it was preparing to file. During that "meet and confer" process, the parties also began to discuss possibly mediating the dispute. With ABC's deadline to file its anti-SLAPP motion approaching, the parties stipulated to stay the proceedings before Judge Klausner, specifically to avoid potentially unnecessary costs in connection with ABC's anti-SLAPP motion. Judge Klausner, however, denied that stipulation.

In light of Judge Klausner's denial of that stipulation, the parties agreed to allow Dr. Price to dismiss his action, without prejudice, "*in order to allow the parties to pursue mediation without simultaneously filing and opposing an anti-SLAPP motion*." Judge Klausner approved this second stipulation and ordered the action dismissed, without prejudice, on October 15, 2007. The parties then participated in mediation in Los Angeles on November 15, 2007 but were unable to reach a resolution.

### 6.    Dr. Price Re-Files His Action – Not In California – But In New York

Despite the parties' obvious understanding that Dr. Price would re-file his action in the Central District if the mediation failed, Dr. Price instead filed a slightly modified version of his CA Complaint in this Court on December 18, 2007. Dr. Price's NY Complaint alleges the exact same claims as the CA Complaint, but makes some superficial changes in an attempt to make his action appear less connected to California, and more connected to New York. Dr. Price excised some of the allegations about the prominence of the Crenshaw–Los Angeles Church, as well as statutorily-required allegations concerning his retraction demand pursuant to California law. In addition, his NY Complaint now alleges the existence of his Manhattan satellite church, which claims just 1,500 members and originated less than 8 years ago. NY Compl. ¶¶ 1, 19-21.

### 7.    Dr. Price Persuades The California State Court To Order A "Stay" In His California Action

Even while his NY Complaint has been pending before this Court, Dr. Price has requested that the Los Angeles Superior Court "stay" proceedings on his first-filed CA Complaint, in the event that the California state court might still retain any jurisdiction. As Dr. Price requested, the California state court entered a stay on January 16, 2008, thereby leaving the CA Complaint still "pending" in the Los Angeles Superior Court.

### B.    This Action Should Be Transferred Back To California

On a motion to transfer pursuant to 28 U.S.C. § 1404(a), the court considers, first, whether the action might have been brought in the proposed forum and, second, whether the convenience of the parties and witnesses and the interest of justice support transfer of the case. Harrison v. Samuel, 2006 WL 1716867, at *2-4 (S.D.N.Y. 2006); Barge v. Daily Journal Corp., 1996 WL 434561, at *3 (S.D.N.Y. 1996).

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 5

### 1.    Dr. Price Could Have Re-Filed His Action In The Central District

In light of this action's genesis in California state court, the subsequent removal to the Central District, and the parties' stipulation to allow mediation, it is beyond any legitimate dispute that Dr. Price could have (and should have) re-filed this action in the Central District, rather than this Court. The first inquiry on a §1404(a) transfer motion is therefore satisfied.

### 2.    The Interests Of Justice And Convenience Compel Transfer Back To California

In order to determine whether convenience and the interest of justice favor transfer, the Court considers the following nine (9) factors: (a) the convenience of witnesses, (b) the location of relevant documents and the relative ease of access to sources of proof, (d) the convenience of the parties, (d) the locus of operative facts, (e) the availability of process to compel the attendance of unwilling witnesses, (f) the relative means of the parties, (g) the forum's familiarity with the governing law, (h) the weight accorded the plaintiff's choice of forum, and (i) trial efficiency and the interest of justice, based on the totality of the circumstances. Barge, 1996 WL 434561, at *3. Applying these factors, Courts within the Southern District of New York have routinely transferred cases to the Central District of California. See, e.g., id.; Harrison, 2006 WL 1716867, at *4.

#### (a)    The Parties' Convenience Supports The Central District

Dr. Price's residence in California – coupled with his decision to file this action in California originally, and his recent request that the California state court "stay" proceedings on his CA Complaint – clearly establish that it is convenient for him to litigate in the Central District. In addition, ABC already began litigating this action in that forum, and ABC has transferred all of its relevant documents to Los Angeles. Furthermore, Defendants' party witnesses are all amenable to travel to Los Angeles for trial. Thus, the parties' convenience strongly favors transfer back to California.

#### (b)    The Central District Is Convenient For Non-Party Witnesses

In order to establish that the News Report was true and caused no harm to Dr. Price, ABC must elicit testimony from numerous non-party witnesses. ABC will seek testimony on the subjects of Dr. Price's material wealth, his salary, his lack of any economic damage, and the financial records and transparency of his church from a long list of non-party witnesses who are all California residents. For example, among those non-party witnesses in Southern California are (a) officers, directors and employees of Dr. Price's Crenshaw-Los Angeles Church, including Stephanie Price Buchanan, Cheryl

221864.1.doc

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 6

Price Crabbe, Angela Price Evans, and Fred Price, Jr. (Dr. Price's four children);[2]
Michael Evans (Angela's husband), Danon Buchanan (Stephanie's husband), Angel
Price (Fred Jr.'s wife), and Betty Price (Dr. Price's wife); (b) Dr. Price's personal
accountant; (c) the accountants who audit the books and records of the Crenshaw-Los
Angeles Church; and (d) members of the Crenshaw-Los Angeles Church congregation.
On the subject of Dr. Price's financial records and the transparency of his church, ABC
will seek testimony from Rusty Leonard and Rodney Pitzer of Ministry Watch, located in
North Carolina, and Dr. Steven Winzenburg, Professor of Communication at Grand
View College in Iowa. The overwhelming majority of key non-party witnesses are
unquestionably located within the Central District.

### (c)    The Central District Can Compel More Witnesses To Testify

In addition to convenience, the Court must consider whether it can compel non-
party witnesses to attend trial to give live testimony. <u>TM Claims Serv. V. KLM Royal
Dutch Airlines</u>, 143 F. Supp. 2d 402, 406-07 (S.D.N.Y. 2001). In this case, Dr. Price's
Board of Directors, his accountants, his relatives, and his Los Angeles congregants are
all non-parties who *cannot be compelled to provide live testimony at a trial in this Court*.
<u>See</u> Fed. R. Civ. Proc. 45(c)(3)(A)(ii). However, almost all (if not all) of these witnesses
reside within the subpoena power of the Central District. Therefore, this factor strongly
favors transfer back to California.

### (d)    The Evidence Is Within The Central District

After this action commenced in Los Angeles, ABC already collected its
documents regarding the News Report in Los Angeles. In order to establish further,
conclusive evidence to show that the News Report was true and caused Dr. Price no
harm, ABC will need to conduct an audit of Dr. Price's assets, all of which appear to be
located within Los Angeles County – namely, (a) Dr. Price's Palos Verdes estate (and
other real property held in his name, in the name of his trusts and family, or in the name
of his Crenshaw-Los Angeles Church); (b) the private Gulfstream jet he uses to fly
around the world; (c) his luxury automobiles; (d) Dr. Price's salary derived from
donations to his Crenshaw-Los Angeles Church; and (e) other indicia of Dr. Price's
material wealth. Additionally, if ABC needs to rebut Dr. Price's assertion that ABC
falsely accused Dr. Price of "diverting funds donated to [his Crenshaw-Los Angeles
Church] for his own personal use," ABC will need to review the financial records of Dr.
Price's church. Much of the key evidence for ABC's defense is in California.

---

[2] Dr. Price has apparently put his entire extended family on the payroll of the
Crenshaw-Los Angeles Church. As his website states, "All of the Price children and
their sons and daughter-in-law ... *work for the Ministry at Crenshaw Christian Center in
Los Angeles*." (Emphasis added.) According to that website, Dr. Price's wife Betty also
plays "a vital role ... *in the operation of the church*." (Emphasis added.)

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 7

The same holds true for Dr. Price. Any evidence supporting his (erroneous) assertion that the News Report falsely characterized him, his prosperity, and the money he receives from his Crenshaw-Los Angeles Church would logically be in California.

## (e)    The Locus Of Operative Facts Is Within The Central District

The News Report was included in nationally broadcast news programs, not local broadcasts in New York. The allegedly misused video included in the News Report was a clip of Dr. Price delivering a sermon in Los Angeles, to his Crenshaw-Los Angeles Church congregation. Even the image of Dr. Price's multi-million dollar estate in Los Angeles County was taken from a news helicopter operated by ABC's local, Los Angeles affiliate. Most significantly, Dr. Price complains that this News Report harmed his standing among his congregation and community, which are located in Los Angeles. In fact, when Dr. Price sought to broadcast his own, professionally produced "rebuttal" video, he produced the video in Los Angeles, from his Crenshaw-Los Angeles Church, and featured members of his Los Angeles congregation.

## (f)    The Parties' Financial Capabilities Supports Transfer

Litigating this dispute in the locale where Dr. Price resides – and where almost all of the key witnesses and evidence are located – would be far more economical for the parties than litigating in the Southern District of New York.

## (g)    The Central District Is More Familiar With The Governing Law

Transfer of this action is also supported by the Central District's greater familiarity with California law, which governs this dispute according to New York's choice-of-law rules. See, e.g., Peter v. Platinum Publ'ns, 1994 WL 440740 (S.D.N.Y. 1994).

### (i)    California Substantive Law Governs This Dispute

The first inquiry in New York's choice of law analysis is whether there is an actual conflict of law. Condit v. Dunne, 317 F. Supp. 2d 344, 352 (S.D.N.Y. 2004). The Southern District recently ruled that the defamation laws of California and New York conflict because, inter alia, "New York law grants absolute protection of opinions, whereas California law extends no greater protection to opinions than does the United States Constitution." Id. at 352.

Another conflict of law arises because California extends broader protection to defamation defendants under California's anti-SLAPP statute, which provides for the early evaluation and dismissal of any action that attacks the exercise of free speech. Cal. Civ. Proc. Code § 425.16(a), (b). In contrast, New York's "SLAPP" statute only applies to an action by a plaintiff who is a public "applicant or permittee," and then only where the defendant has reported on such application or permit. See N.Y. [Civil Rights] Law § 70-a (2007). Yet a third conflict is created by California's retraction statute, which

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 8

limits a defamation plaintiff such as Dr. Price to a recovery of special damages – unless plaintiff demands a retraction, in which event plaintiff is still limited to special damages if defendant issues a retraction, as ABC did in this case. Cal. Civ. Code § 48a, 1, 2. No similar retraction statute exists under New York law.

The next inquiry in the conflict of law analysis is determining which state's law governs this action. In tort cases, New York law applies the "substantive tort law of the state that has the most significant relationship with the occurrence and with the parties." Machleder v. Diaz, 801 F.2d 46, 52 (2d Cir. 1986). The most important factors to be considered in tort actions are "almost exclusively, the parties' domiciles and the locus of the tort." AroChem Intern., Inc. v. Buirkle, 968 F.2d 266, 270 (2d Cir. 1992).

Here, Dr. Price is a resident of California, he suffered the greatest reputational harm (if any) in California, and the allegedly defamatory statements about which he complains refer to activities that took place largely in California. Thus, California has the most significant relationship to Dr. Price's claims and California law will govern.

(ii)    *The Central District Is More Familiar With California Law*

The Central District is more familiar with California law since it is at home with the state law that governs this dispute. E.g., Peter v. Platinum Publ'ns, Inc., 1994 WL 440740, at *6 (S.D.N.Y. 1994). Furthermore, the Central District is more familiar with California's anti-SLAPP statute in particular, as courts within the Central District routinely apply the statute to dispose of meritless claims. E.g., Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003). Indeed, the Ninth Circuit specifically held that a federal court sitting in diversity jurisdiction and applying California law must apply the anti-SLAPP statute's provisions relating to (1) a motion to strike, and (2) an award of fees and costs to the defendant. U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972 (9th Cir. 1999). In contrast, ABC has not identified any reported decisions within the Southern District of New York applying these provisions of California's anti-SLAPP statute.

(h)    **Dr. Price's Choice Of Forum Should Be Accorded No Weight**

Any deference accorded a plaintiff's choice of forum is "weak" where, as in this case, the plaintiff does not reside in his chosen forum. Harrison, 2006 WL 1716867, at *4. This rule carries even more weight where the plaintiff actually resides in the proposed forum and the operative facts bear little connection to the chosen forum. See, e.g., id., 2006 WL 17816867, at *4. Here, Dr. Price has been a Southern California resident for his entire life, and the facts of this action relate overwhelmingly to California.

Further fatal to Dr. Price's "amended choice" of forum, evidence of forum shopping severely undercuts any deference accorded the plaintiff's choice of forum. See, e.g., Rayco Mfg. Co. v. Chicopee Mfg. Corp., 148 F. Supp. 588, 593-94 (S.D.N.Y. 1957); Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992). The procedural

221864.1.doc

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 9

history of this action makes clear that Dr. Price chose to re-file in this Court, rather than in the Central District, in a misguided attempt to evade California's anti-SLAPP and retraction statutes. Dr. Price apparently also chose this forum to prevent ABC from presenting live trial testimony from material, non-party witnesses who reside in the Central District.

       (i)     **Trial Efficiency And The Interest Of Justice Support Transfer**

Since this action originated within the Central District and the parties have not commenced discovery in this Court, transfer back to the Central District certainly would be efficient and not impede the progress of this action. More fundamentally, the totality of circumstances detailed above compel transfer of this action. Accordingly, ABC will respectfully urge this Court to transfer Dr. Price's claims back to California.

II.
**Dr. Price Does Not Need Discovery To Oppose ABC's Transfer Motion**

Federal courts have long recognized that "there is no procedural rule or decisional authority requiring a district court to permit discovery in connection with a transfer motion…." Wood v. Zapata Corp., 482 F.2d 350, 357 (3d. Cir. 1973); Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1169 (S.D. Cal. 2005). Thus, courts have denied requests for discovery where the allegations of the complaint, together with declarations submitted in connection with the motion to transfer, supply the requisite information to determine whether transfer is appropriate.

In Saleh v. Titan Corp., for instance, the court refused plaintiff's request for discovery to oppose transfer, explaining that if plaintiffs filed their complaint in accordance with Rule 11 of the Federal Rule of Civil Procedures, "plaintiffs should have information in their possession regarding witnesses who can substantiate the allegations against defendants." 361 F. Supp. 2d at 1170. The Saleh court stressed that *no* cases suggest that "a plaintiff faced with a motion for transfer may embark on a fishing expedition in an attempt to find witnesses in support of its case …." Id. at 1170-71, 1171 n.3. Thus, in performing the transfer analysis, the court simply considered plaintiffs' allegations and the parties' declarations. Id. at 1155-68.

Similarly, Judge Jones of this Court, in Lighting World, Inc. v. Birchwood Lighting, Inc., denied plaintiff's request for discovery, and considered plaintiff's allegations in the complaint and the declarations submitted by the parties, in deciding to transfer to the Central District. 2001 WL 1242277, *2-5 (S.D.N.Y. 2001); see also Topolyncky v. Ukrainian Sav. & Loan Ass'n, 1991 WL 117397, at *1, 3 (W.D.N.Y. 1991) (holding no need for discovery because the evidence as it existed compelled the conclusion that transfer was appropriate). Moreover, in Foster v. Litton Industries, Inc., 431 F. Supp. 86, 87-88 (D.C.N.Y. 1977), the court rejected a delay to complete discovery prior to ruling on a motion to transfer, relying on the following rationale by the District Court of Pennsylvania in Goodman v. Fleischmann:

221864.1.doc

WHITE O'CONNOR CURRY LLP

The Honorable Shirley Wohl Kram
February 27, 2008
Page 10

> [T]he decision to transfer is preliminary to discovery on the merits, and ...
> motions to transfer should be acted upon at the threshold of the litigation.
> *It is also clear that no discovery with respect to the question of transfer is
> necessary, particularly in light of the stipulated facts.*

364 F. Supp. 1172, 1176 (D.C. Pa. 1973) (emphasis added).

Under these authorities, Dr. Price cannot justify a delay to conduct discovery in order to oppose ABC's motion to transfer. Indeed, in order to rule upon ABC's motion, this Court need only consider the following facts: (a) Dr. Price originally filed this action in Los Angeles, (b) the allegations in his CA and NY Complaints confirm that Dr. Price's claims are governed by California law and California evidence, (c) the Central District dismissed the CA Complaint solely to allow the parties to mediate before having to brief ABC's anti-SLAPP motion, and (d) as Dr. Price requested, his first-filed CA Complaint is still "pending" in Los Angeles.

### III.
### Scheduling Of Anti-SLAPP Motion

At the pre-hearing conference, ABC would also like to discuss the timing of its anti-SLAPP motion. While the anti-SLAPP statute requires ABC's motion to be filed no later than March 16, 2008 (*i.e.,* 60 days after service of the complaint), the Court may exercise its discretion to allow ABC to file its anti-SLAPP motion later than that 60-day deadline. § 425.16(f); see also Metabolife Intern., Inc. v. Wornick, 264 F.3d 832, 846 (9th Cir. 2001). Since the issue of venue is antecedent to the merits-based analysis of an anti-SLAPP motion, ABC will respectfully request that the Court extend the deadline for Defendants to file their anti-SLAPP motions until either (a) 20 days after the action is docketed in the Central District (if transfer is granted), or (b) 20 days after entry of an order denying the motion to transfer (if transfer is denied) .

In closing, we look forward to discussing the foregoing issues with Your Honor and the other counsel at the pre-hearing conference on March 5, 2008, at 10:30 AM.

Respectfully Submitted,

Andrew M. White
**of WHITE O'CONNOR CURRY LLP**

cc: (1) Anthony M. Glassman, Esq. and Matthew Lore Levine, Esq.
        (attorneys for Plaintiff Frederick K.C. Price)

    (2) William E. Pallares, Esq.
        (attorney for Defendants Ole Anthony and Trinity Foundation, Inc.)

221864.1.doc