

**GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.**

ROGER A. BROWNING
ANTHONY MICHAEL GLASSMAN
SUZANNE J. GOULET
AMY OSRAN JACOBS
RICHELLE L. KEMLER
ALEXANDER RUFUS-ISAACS
JANE D. SALTSMAN

LENA MUÑIZ *PARALEGAL*

ANTHONY MICHAEL GLASSMAN
*amg@gbsjlaw.com*

In Reply Refer To:
*C458-1*
February 29, 2008

The Honorable Shirley Wohl Kram
United States District Court Judge
Southern District of New York
40 Centre Street, Room 2101
New York, New York 10007

     Re:   **Price v. Stossel, et al., Case No. 07 CV 11364 (SWK)**

Dear Judge Kram:

At the Court's request, counsel for Plaintiff, Frederick K.C. Price, submits this letter in response to the Court's Order of February 20, 2008, directing Plaintiff to respond to the following: (a) the grounds upon which Price opposes the anticipated motion to transfer venue, (b) the reasons why Price is entitled to discovery in order to oppose that motion, (c) the specific scope of the discovery sought, and (d) the substance of any other issue Price intends to raise at the conference.

**Factual Background**

On March 23, 2007, the ABC Defendants broadcast a story on its evening program, "20/20" (the "Program"), filed concurrently with the Court as a DVD marked Exhibit "A", concerning religious leaders who financially exploit their supporters by misappropriating donations to support an extravagant lifestyle. One of the religious leaders featured in the Program was Plaintiff, Dr. Frederick K.C. Price ("Dr. Price"). The Program included less than a minute of film from a videotaped sermon ("Sermon") that Dr. Price preached 10 years ago in which he was discussing, hypothetically, in the first person singular, how people can have great wealth (the "Clip"), but still feel spiritually unfulfilled. But this passage, which would have placed the footage in the Clip in its proper context, was omitted.

The Clip was edited into the Program in such a way as to cause reasonable viewers to believe (a) that Dr. Price was boasting that the great wealth to which he

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 2

was referring in his hypothetical example, was his, and (b) that he was able to enjoy this extravagant lifestyle because he was looting or otherwise misappropriating the Church's coffers.

The Program was produced by defendant Glen Ruppel and presented by defendant John Stossel, who introduced the Clip by stating that Dr. Price was "boasting" about having his own 25 room mansion, yacht, jet, helicopter and 7 luxury automobiles.

The Clip also appeared in whole, or in part, in several "teasers" (the "Teasers") for the Program that were broadcast on ABC's popular morning show, "Good Morning America" ("GMA"), and other programs, also filed concurrently with the Court as a DVD marked Exhibit "A". The Teasers were intended to cause reasonable viewers to believe that the Program was an expose of a group of corrupt religious leaders, including Dr. Price.

As a result of ABC's broadcast, after 50 years devoted to carrying the message of God and being of service to his fellows, Dr. Price was portrayed on national and international television, and the internet, as a hypocrite and thief who had by his own admission, misappropriated money from his parishioners to support an ostentatious and inappropriate lifestyle. This portrayal damaged or destroyed the trust and affection that many of his supporters felt for Dr. Price, who was devastated, embarrassed and greatly humiliated.

## Plaintiff's Reasons for Re-Filing in New York

Dr. Price opposes the Defendants' Motion to Change Venue pursuant to 28 U.S.C.S. §1404.   Dr. Price chose to re-file this action in New York for two reasons: (1) because he wants to avoid any delay in bringing the case to trial, and (2) because, based on information and belief, subject to confirmation through discovery, virtually all of the non-party ABC witnesses related to the issue of liability are located in New York.

Dr. Price is currently 75 years of age. Under California Code of Civil Procedure §425.16(i), even if Dr. Price defeats the California anti-SLAPP motion, the case will be automatically stayed while Defendants take an appeal to the Court of Appeal:

> "(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1"

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 3

Furthermore, the most critical witnesses are the ABC Defendant's employees, who are presumably located in New York, i.e., John Stossel (reporter), Glenn Ruppel (producer), Ruth Iwano (editor), Robin Roberts (on-air personality), Diane Sawyer (on-air personality), and other ABC employees who wrote the scripts for the "20/20" program and the "Good Morning America" promotional teasers at issue in this case, the production assistants who ordered and/or reviewed the material received from the Trinity Foundation Defendants, and any other employees involved in the creation and broadcast of the defamatory material. The aforementioned witnesses' live testimony at trial is critical to Plaintiff's case.

## Why Would the ABC Defendant's Want to Litigate in Los Angeles?

Contrary to ABC's defense counsel's representations, there was no such agreement or understanding between counsel that Plaintiff would re-file in the Central District of California. Indeed, the issue was never discussed. Additionally, Plaintiff's counsel did not "persuade" the California State Court to stay the proceedings. During a chamber's conference, the state court judge gave both counsel the options of dismissing or staying the state court action. Plaintiff's counsel requested a stay, based on her understanding that defense counsel would be making a motion to transfer the case back to the Central District of California, and the state court judge could not confirm the consequences of its dismissal of the action if this Court transferred the matter back to California. The ABC Defendant's counsel did not object to the stay.

Given the fact that all of the ABC party and non-party witnesses who conceived of, and participated in, the broadcast, presumably reside and work in New York, one has to wonder why it is that the ABC Defendants seek to litigate this case in Los Angeles, which has no connection whatsoever to the origination and broadcast of the Program.

## The Action Should Proceed In New York—Court's Inquiry (a)

"Pursuant to 28 U.S.C. § 1404(a), a district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. Furthermore, the movant must support its motion with a detailed factual affidavit. (Internal citations omitted)." Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 4

"In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." <u>Excelsior</u>, 291 F. Supp. 2d at 185.  Here, Plaintiff agrees that the action "might have been brought" in California, so the Court's focus will be on the second prong.  The second prong involves the consideration of the following factors:

(1) the convenience of the witnesses;

(2) the location of relevant documents and the relative ease of access to sources of proof;

(3) the convenience of the parties;

(4) the locus of the operative facts;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the relative means of the parties;

(7) a forum's familiarity with the governing law;

(8) weight accorded the plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice based on the totality of the circumstances. <u>Excelsior</u>, 291 F. Supp. 2d at 185.

Each of the nine factors favor a trial of this matter in New York. Plaintiff analyzes each of these factors in detail below.

<u>(1) Convenience of the Witnesses</u>

"The convenience of the witnesses is probably the single most important factor in the transfer analysis. Because of the importance of this factor, the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (internal quotations and citation omitted). <u>Excelsior</u>, 291 F. Supp. 2d at 185.

February 29, 2008
Page 5

Based on Plaintiff's information and belief, subject to confirmation through discovery on the issue, the key witnesses in this matter are located in New York. "Good Morning America" and "20/20" are news programs based in New York, whose key employees, i.e., producers, writers, editors, on-air personalities, video librarians, production assistants, etc., are New York residents, who are vital witnesses in this matter.

The California witnesses set forth by the ABC Defendants are not as crucial as the aforementioned New York witnesses. As stated in Royal & Sunalliance, "[w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature and quality of each witness, not merely the number of witnesses in each district." 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001). The witnesses cited above by the Plaintiff go directly to the liability of the ABC Defendants.

With regard to the witnesses cited by the Defendants, i.e., members of Dr. Price's family, they will be attending the trial, and therefore available for live testimony in New York. The accountants' testimony is irrelevant, as the issue in this case is not whether Dr. Price is a successful individual, but rather whether he misappropriated church funds to support his lifestyle. Even assuming arguendo that the accountant's testimony was permitted, an accountant's testimony can certainly be presented to a jury via videotaped testimony. And the convenience of an expert witness "is given little or no weight." Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 2001 U.S. Dist. LEXIS 2913 *4 (S.D.N.Y. 2001).

(2) Location of Evidence

"Courts look at the location of evidence in a 1404(a) motion when 'documents are particularly bulky or difficult to transport, or proof that is it somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the moving party's proposed forum.' Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247, 1251 (S.D.N.Y. 1995), cited in Excelsior, 291 F.Supp.2d at 186.

The ABC defendants make the pointless representation that "ABC already collected its documents regarding the News Report in Los Angeles." Presumably, ABC simply made copies of all original documents that it deemed necessary to its defense and sent them to the California attorneys, who are now representing ABC in New York. Surely the original records remain where they were created, in New York, at ABC's News Headquarters.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 6

There are no bulky or difficult documents of Plaintiff's to transport from California to New York. Even if ABC sought Dr. Price's documents from California, it would be Dr. Price's inconvenience and expense in relation to this factor, not ABC's or Trinity's.

<u>(3) Convenience of the Parties</u>

Convenience of the parties also weighs in favor of New York, as the ABC defendants all reside here.

<u>(4) The Locus of the Operative Facts</u>

Based on information and belief, both the ABC programs at issue in this case, "20/20" and "Good Morning America," are prepared and broadcast out of the ABC studios in New York. Again, subject to confirmation via the discovery requested below, the writers, producers, editors, reporters, production assistants and other employees who prepared the Program and the Teasers work in the ABC studios in New York.

<u>(5) The Ability to Compel Attendance of Witnesses</u>

A court will consider the ability to compel the witnesses' attendance. <u>TM Claims Serv. v. KLM Royal Dutch Airlines,</u> 143 F.Supp.2d 402, 406-407 (S.D.N.Y. 2001). However, most California witnesses are likely to be Plaintiff's witnesses, with regard to the damage to his reputation. So again, this would be a potential problem for Plaintiff rather than the Defendants.

In fact, if the case is transferred back to the Central District of California, it is Plaintiff who will be prejudiced. The Central District of California will be unable to compel the attendance of key witnesses located in New York. Critical to Dr. Price's case are the ABC employees who produced, edited, wrote, and reported the Program and the Teasers, including Glenn Ruppel, Ruth Iwano, John Stossel, Diane Sawyer and Robin Roberts. This testimony is crucial, and will be far more compelling live, to meet the elements necessary to establish Plaintiff's burden of proof; unlike the ABC defendant's request for a California accountant's testimony, which can easily be provided through the use of a videotaped deposition issued from the Central District of California. (See <u>Toney v. Family Dollar Stores, Inc.</u>, 273 F.Supp.2d 757, 764 (S.D.W.V. 2003) stating [Fed.R.Civ.P. 45(a)(2), "allow[s] subpoenas for depositions to issue 'from the court for the district designated by the notice of deposition as the district in which the deposition is to be taken.'"]).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 7

Furthermore, ABC merely speculates and concludes that the California witnesses are unwilling to travel to New York. They have no definitive statements from witnesses saying they will refuse to testify in New York.  See <u>Excelsior</u>, 291 F.Supp.2d at 187 ("[Defendant] fails to provide any affidavits of potential witnesses stating that such witnesses would not appear if the action remained in New York…Therefore, this factor does not weigh in favor of transfer.")  In fact, most of the California witnesses outlined by the ABC Defendants are members of Dr. Price's family, who will be attending the trial in New York.

<u>(6) The Relative Means of the Parties</u>

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." <u>KPMG Consulting, Inc. v. LSQ II, LLC</u>, No. 01 Civ. 11422, 2002 U.S. Dist. LEXIS 12783, at *13 (E.D.N.Y. July 12, 2002) (internal quotations and citation omitted), cited in <u>Excelsior</u>, 291 F.Supp.2d at 186.  Here, it goes without saying that the ABC Defendants are the parties with greater means. Indeed, there can be no doubt that ABC will save money if the case is tried in New York. Regardless, this factor favors Plaintiff's choice of forum, as Plaintiff is the party who would possibly be subject to a greater cost for trying the case in New York, not Defendants.

<u>(7) The Forum's Familiarity with Governing Law</u>

Defendants have made an extensive argument with regard to this Court's unfamiliarity with California law being a significant factor favoring the transfer of venue.  Yet, one aspect of the California substantive defamation law argued by the ABC Defendants, i.e., the California retraction statute, requires only a factual analysis by the jury. <u>Twin Coast Newspapers v. Superior Court</u>, 208 Cal. App. 3d 656, 660 (1989). And New York federal courts have routinely applied California substantive defamation law in cases pending in the Southern District. See <u>Condit v. Dunne</u>, 317 F.Supp.2d 344, 353 (S.D.N.Y. 2003). Thus, a California court is no better prepared than this Court to let a jury make a factual determination, or to apply California substantive defamation law.

In addition, "[t]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." <u>Astor Holdings, Inc. v. Roski</u>, No. 01 Civ. 1905, 2002 U.S. Dist. LEXIS 758, at *13 (S.D.N.Y. Jan. 15, 2002), cited in <u>Excelsior</u>, 291 F.Supp.2d at 187.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 8

(8) Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." Excelsior, 291 F.Supp.2d at 187.

As argued above, virtually every factor favors this Court. One is hard pressed to imagine a circumstance in which a defendant sued in its hometown would seek a venue transfer 3,000 miles from its home. Assuming that discovery discloses that the currently unknown writers, editors and others at ABC have relevant testimony that bears on the creation of the Program and ABC's intentional creation of a sensationalized broadcast designed to imply criminal conduct by Plaintiff, it is difficult to imagine that ABC would volunteer their live testimony in Los Angeles. The only way to insure the live testimony of these critical liability witnesses is to conduct the trial in New York.

(9) Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances.

The Central District of California and the Southern District of New York are both among the busiest districts in the federal system. Therefore, trial efficiency, in terms of a less busy forum, would not be a factor weighing in favor of a transfer to California.

An efficiency factor weighing in favor of New York, however, as mentioned above, is that the California procedural law applicable in the Central District of California Court, will result in an automatic lengthy appeal when Dr. Price overcomes the ABC Defendants' anti-SLAPP motion pursuant to Cal. Code of Civ. Pro. § 425.16. But since this California procedural law will not be applicable in the Southern District of New York,[1] a trial on the merits will be more expeditious in this Court.

---

[1] "Ordinarily a federal court sitting in diversity applies the law of the state in which it sits to any issues of procedure not covered by federal law." Davis v. Costa-Gavras, 580 F.Supp. 1082 (S.D.N.Y. 1984) citing Hanna v. Plumer 380 U.S. 460, 470 (1965). California's anti-SLAPP statute has repeatedly been found by California courts to be a procedural law. See Jarrow Formulas, Inc. v. LaMarche 31 Cal. 4th 728, 737 (2003) [section 425.16 "is a procedural device for screening out meritless claims])"; Soukup v. Law Offices of Herbert Hafif, 39 Cal.4th 260 (2006); Bouley v.

February 29, 2008
Page 9

   With regard to the "interests of justice" New York has stated in relation to
"choice of law" issues that it has an interest in regulating the New York based media.
Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y. 2003).  Therefore, when a
plaintiff is willing to litigate a matter against a media defendant in the media's own
backyard, it would follow that a New York court, given its interest in regulating its
media citizens, would find that the interests of justice favor trying the case in the New
York court that the Plaintiff chose.

## Plaintiff Is Entitled to Discovery In a Request for Change of Venue; Court's Inquiry (b)

   The Supreme Court has stated that a party is entitled to discovery in relation to
a request for change of venue. "[W]here issues arise as to jurisdiction or venue,
discovery is available to ascertain the facts bearing on such issues." Oppenheimer
Fund v. Sanders, 437 U.S. 340, 351 (1978).

   Wood v. Zapata Corp. 482 F.2d 350, 357 (3d. Cir. 1973), cited by the ABC
Defendants for authority to deny discovery, was decided prior to the Supreme Court's
decision cited above. The other cases cited by the ABC Defendants, where a court
denied discovery in relation to a motion to transfer venue, are all fact-specific cases,
with facts completely inapposite to the case before this Court.[2]

## Discovery Requested by Plaintiff; Court's Inquiry (c)

   With respect to the nine factors mentioned above, Plaintiff will ask the Court's
permission to seek the production from ABC of any motions previously filed on
ABC's behalf pursuant to 28 USC § 1404, in which ABC sought to have any actions

---

Long Beach Memorial Medical Center, 127 Cal.App.4th 601 (2005); Averill v. Superior Court, 42
Cal.App.4th 1170 (1996);  As You Sow v. Conbraco Industries, 135 Cal. App. 4th 431 (2005).

[2] i.e., Saleh v. Titan Corp., 361 F.Supp.2d 1152 (S.D. Cal. 2005) (plaintiffs were Iraqi citizens in a
case regarding torture of Iraqi prisoners), Lighting World, Inc. v. Birchwood Lighting, Inc. 2001
WL 1242277 *2-5 (S.D.N.Y. 2001) (patent infringement case, which as a matter of law shall be
tried where infringing product produced), Topolyncky v. Ukranian Sav. & Loan Ass'n, 1991 WL
117397, at *1, 3 (W.D.N.Y. 1991) (related action brought by plaintiffs and adjudicated in the
transferee forum), Foster v. Litton Industries, Inc., 431 F.Supp. 86, (D.C.N.Y. 1977), (plaintiff, one
defendant, and all but one witness were California residents, and the other defendant had its
principal place of business in California), and Goodman v. Fleischmann, 364 F.Supp. 1172 (D.C.
Pa. 1973), (parties had stipulated to facts enabling court to determine motion to transfer).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 10

filed against them in foreign jurisdictions, i.e., in states other than New York, transferred back to New York in the "interest of justice." Plaintiff will also seek the production of all ABC records reflecting the names and state of residency for all ABC producers, editors, writers, on-air personalities, video librarians, and production assistants, who worked on the subject broadcast.

Specifically, in relation to Defendant's Motion to Transfer Venue, Plaintiff seeks to depose: Glenn Ruppel and the other Person Most Knowledgeable at ABC with regard to (a) the people at ABC who wrote and edited the script for the "20/20" program and all the promotional teasers, (b) the names of the ABC employees who solicited Plaintiff's sermon from Ole Anthony and Trinity Foundation, (c) the names of the witness who received the clip, (d) the location where the "20/20" program and the teasers promoting it were written, produced and broadcast, as well as, (e) the state of residence for John Stossel, Glenn Ruppel, Ruth Iwano, Robin Roberts and Diane Sawyer, and (f) documents or witnesses regarding whether any ABC documents are located anywhere other than New York, and whether any ABC witnesses are located anywhere other than New York.

Plaintiff seeks to establish, through the above discovery, the number and location of the material witnesses, whose testimony will be critical to Plaintiff at trial.

Court's Inquiry (d)

Plaintiff does not object to ABC's request for an extension to file their anti-SLAPP motion pursuant to Cal. Code of Civ. Pro. § 425.16. However, as discussed above, Plaintiff will object to the applicability of a California procedural law in a New York federal court.

Sincerely,

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

By: _____
ANTHONY MICHAEL GLASSMAN

cc:   Andrew M. White, Esq. (via facsimile (310) 712-6110)
      William E. Pallares, Esq. (via facsimile (213) 250-7900)

# EXHIBIT A

# EXHIBIT A CONTAINS A PHYSICAL EXHIBIT