Andrew M. White, *admitted pro hac vice*
David E. Fink, *admitted pro hac vice*
Allison S. Rohrer, *admitted pro hac vice*
Tami Kameda, *admitted pro hac vice*
Attorneys for defendants John Stossel, Glenn Ruppel,
American Broadcasting Companies, Inc., and ABC, Inc.
White O'Connor Curry LLP
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, California 90067
Tel: 310-712-6100
Fax: 310-712-6199

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>             Plaintiff,<br><br>     v.<br><br>JOHN STOSSEL, an individual, GLENN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware corporation, OLE ANTHONY, an individual, TRINITY FOUNDATION, INC., an entity, form unknown,<br>             Defendants. | Civil Action No. 07-CV-11364 (SWK) (THK)<br><br>The Honorable Shirley Wohl Kram<br><br>MEMORANDUM OF LAW OF DEFENDANTS JOHN STOSSEL, GLENN RUPPEL, AMERICAN BROADCASTING COMPANIES, INC. AND ABC, INC. TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)<br><br>**ORAL ARGUMENT REQUESTED** |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ...........................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................................3

    A.      Dr. Price And His Crenshaw Christian Center Church Of Los Angeles County...........................................................................................................3

    B.      ABC Broadcasts The News Report.........................................................................3

    C.      Dr. Price Files His Action In The Los Angeles Superior Court ...............................5

    D.      Defendants Remove Dr. Price's Action To The Central District Of California .......................................................................................................8

    E.      Defendants Initiate The Procedures To File Their Anti-SLAPP Motion ...............8

    F.      Dr. Prices Re-Files His Action – *Not* In California – But In *New York* ................11

    G.      At Dr. Price's Request, The Los Angeles State Court Stays His CA Action ........12

III.    THIS ACTION SHOULD BE TRANSFERRED BACK TO THE CENTRAL DISTRICT...........................................................................................................12

    A.      Governing Legal Standards....................................................................................12

    B.      The Convenience Of The Parties And Witnesses And The Interests Of Justice Favor Transfer To The Central District Of California................................13

        1.      The Parties' Convenience Supports Transfer To The Central District..............................................................................................................14

        2.      The Central District Is Convenient For Material Non-Party Witnesses ........................................................................................................15

            (a)      The Central District Is Convenient For ABC's Non-Party Witnesses ........................................................................................15

            (b)      The Central District Is Convenient For Dr. Price's Likely Witnesses ........................................................................................19

        3.      The Central District Can Compel Significantly More Material Non-Party Witnesses To Testify...................................................................20

        4.      The Key Evidence Is Within The Central District.......................................22

        5.      The Locus Of Operative Facts Is Largely Within The Central

District...................................................................................................................24

6.  The Parties' Financial Interests Support Transfer Back to California ............................................................................................25

7.  The Central District Is More Familiar With The Governing Law of California ............................................................................................25

    (a)  California Substantive Law Governs This Dispute .......................26

    (b)  The Central District Is More Familiar With California Substantive Law.............................................................................27

    (c)  Federal Courts Sitting In Diversity Have Held That The Motion To Strike And Fee Provisions Of The Anti-SLAPP Statute Are Substantive Law Under The *Erie* Doctrine.................28

8.  Dr. Price's Choice Of Forum Should Be Accorded *No* Weight ...............30

    (a)  Dr. Price's Action Bears Little Connection To The Southern District ..........................................................................30

    (b)  Dr. Price's Forum Shopping Destroys Any Deference Accorded To His "Choice" Of Forum ...........................................31

9.  Trial Efficiency And The Interest Of Justice Compel Transfer Of This Action.................................................................................................33

IV.  CONCLUSION........................................................................................................34



# TABLE OF AUTHORITIES

**Page**

## CASES

Aarons v. Worldtel Servs., Inc.,
    No. 95 Civ. 8415 (AGS), 1996 WL 185714 (S.D.N.Y. Apr. 17, 1996) .......................... 14

Angelov v. Wilshire Bancorp,
    No. 06 Civ. 4223 (CM), 2007 WL 2375131 (S.D.N.Y. Aug. 14, 2007) ......................... 27

As You Sow v. Conbraco Indus.,
    135 Cal. App. 4th 431 (2005) ....................................................................................... 28

Averill v. Super. Ct.,
    42 Cal. App. 4th 1170 (1996) ...................................................................................... 28

Barge v. Daily Journal Corp.,
    No. 95 Civ. 8135 (MBM), 1996 WL 434561 (S.D.N.Y. Aug. 2, 1996)..................... 13, 14

Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,
    757 F.2d 523 (2d Cir. 1985)......................................................................................... 14

Blackrock, Inc. v. Schroders PLC,
    No. 07 Civ. 3183 (PKL), 2007 WL 1573933 (S.D.N.Y. May 30, 2007)................... 32, 33

Bombardier Capital Inc. v. Solomon,
    2000 WL 1721138 (S.D.N.Y. 2000).............................................................................. 33

Bouley v. Long Beach Memorial Medical Ctr.,
    127 Cal. App. 4th 601 (2005) ...................................................................................... 28

Coughlin v. The Long Island R.R. Co.,
    No. 91 Civ. 7535 (CSH), 1992 WL 276568 (S.D.N.Y. Sept. 29, 1992) ......................... 22

Digital Lab Solutions, LLC v. Stickler,
    No. 06 Civ. 6482 (LLS), 2006 WL 700821 (S.D.N.Y. Mar. 7, 2007).............................. 14

Erie R.R. v. Tompkins,
    304 U.S. 64 (1938).................................................................................................. 26, 28

Essex Crane Rental Corp. v. Vic Kirsch Constr. Co.,
    486 F. Supp. 529 (S.D.N.Y. 1980) ........................................................ 12, 26, 27, 29, 30

Fuji Photo Film Co. v. Lexar Media, Inc.,
    425 F. Supp. 2d 370 (S.D.N.Y. 2006)..................................................................... 22, 30

Gasperini v. Ctr. for Humanities, Inc.,
    518 U.S. 415 (1996).............................................................................................. 26, 29

Gilbert v. Sykes,
    147 Cal. App. 4th 13 (2007) .......................................................................................... 9



Hanna v. Plumer,
  380 U.S. 460 (1965).................................................................................... 27, 32

Harrison v. Samuel,
  No. 05 Civ. 8914 (SAS), 2006 WL 1716867 (S.D.N.Y. June 20, 2006)............. 13, 14, 30

In re Cuyahoga Equipment Corp.,
  980 F.2d 110 (2d Cir. 1992)............................................................................ 12

Jarrow Formulas, Inc. v. LaMarche,
  31 Cal. 4th 728 (2003) .................................................................................. 28

Macias v. Hartwell,
  55 Cal. App. 4th 669 (1997) ........................................................................... 9

Molloy v. Bemis Bro. Bag Co.,
  130 F. Supp. 265 (S.D.N.Y. 1955) .................................................................. 26

Morris v. Chemical Bank,
  No. 85 Civ. 9838 (SWK), 1987 WL 16973 (S.D.N.Y. Sept. 10, 1987) ............... 12, 15, 20

Moyer v. Amador Valley Junior Union High Sch. Dist.,
  225 Cal. App. 3d 720 (1990) .......................................................................... 9

New.Net, Inc. v. Lavasoft,
  356 F. Supp. 2d 1090 (C.D. Cal. 2004) ........................................................... 27, 28

Official Comm't of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP,
  322 F.3d 147 (2d Cir. 2003)............................................................................ 14

Onyeneho v. Allstate Ins. Co.,
  466 F. Supp. 2d 1 (D. Col. 2006).................................................................... 30, 31

Peter v. Platinum Publ'ns,
  No. 93 Civ. 6709 (AGS), 1994 WL 440740 (S.D.N.Y. 1994) ............................ 25, 26, 27

Pierce v. Coughlin,
  806 F. Supp. 426 (S.D.N.Y. 1992) .................................................................. 30, 31

Rayco Mfg.  Co. v. Chicopee Mfg. Corp.,
  148 F. Supp. 588 (S.D.N.Y. 1957) .................................................................. 31

Soukup v. Law Offices of Herbert Hafif,
  39 Cal. 4th 260 (2006) .................................................................................. 28

Thomas v. L.A. Times Comms., LLC,
  189 F. Supp. 2d 1005 (C.D. Cal. 2002) ........................................................... 28

TM Claims Serv. v. KLM Royal Dutch Airlines,
  143 F. Supp. 2d 402 (2001) ........................................................... 15, 20, 21, 33

Torres v. Steamship Rosario,
  125 F. Supp. 496 (S.D.N.Y. 1954) ............................................................... 14, 31



U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.,
   190 F.3d 963 (9th Cir. 1999) .................................................................................. 28, 29, 32

Vess v. Ciba-Geigy Corp. USA,
   317 F.3d 1097 (9th Cir. 2003) ........................................................................................ 27


## STATUTES

28 U.S.C. § 1404(a) ................................................................................................. passim

California Code of Civil Procedure, § 425.16 ........................................................ passim

Civ. Code § 48a ................................................................................................................ 11

Fed. R. Civ. Proc. 41(a) ................................................................................................. 10

Fed. R. Civ. Proc. 45(c) ................................................................................................. 20

Local Rule 7-3 ............................................................................................................ 9, 10



# I.
## INTRODUCTION

Plaintiff Dr. Frederick K.C. Price ("Dr. Price") is a life-long California resident and the founder of Crenshaw Christian Center in Los Angeles, which he claims to be one of the largest churches in the United States. Over six months ago, Dr. Price filed this defamation action in California state court seeking redress under California law ("CA Complaint"). Dr. Price contends that he was defamed by a news report broadcast by ABC News regarding the fiscal transparency of religious organizations. On that basis, Dr. Price sued American Broadcasting Companies, Inc., ABC, Inc., as well as award-winning news correspondent John Stossel and producer Glenn Ruppel (collectively, "ABC"), along with Ole Anthony and Trinity Foundation, Inc. (ABC, Mr. Anthony and Trinity Foundation are collectively referenced hereinafter as "Defendants.")

Defendants removed Dr. Price's action to the Central District of California ("Central District"), without objection from Dr. Price, and the parties then proceeded to litigate the action in the Central District. Apparently realizing that his claims were (and are) fatally defective under California law, and seeking to preclude ABC from eliciting live trial testimony from key witnesses who are beyond the subpoena power of this Court, Dr. Price persuaded Defendants to stipulate to a dismissal of his California action. In particular, Dr. Price opined that a temporary dismissal would allow the parties sufficient time to participate in good faith in mediation before additional costs were incurred by the parties in connection with ABC's upcoming case dispositive motion to strike pursuant to Section 425.16 of the California Code of Civil Procedure ("Anti-SLAPP"). Based upon this notion, ABC stipulated to the dismissal with the understanding that if mediation failed, Dr. Price would re-file his CA Complaint in the Central District and ABC would proceed with its Anti-SLAPP motion. Contrary to the understanding of the parties and in violation of the spirit of the stipulation of dismissal, Dr. Price did not re-file in

the Central District, but instead re-filed in this Court ("NY Complaint"). ABC never would have agreed to dismiss the action but for the understanding that it would be re-filed in the Central District.

In any event, the facts of this case make clear that the Court should exercise its discretion, pursuant to 28 U.S.C. § 1404(a), to transfer Dr. Price's defamation action back to the Central District. The convenience of witnesses and the interests of justice mandate transfer of this action because, *inter alia*, (1) Dr. Price is a California resident and has spent over 50 years building his reputation in California, preaching his message of economic prosperity through Christian devotion; (2) the overwhelming majority of material witnesses and other evidence is in Los Angeles; (3) if Dr. Price's reputation suffered any harm, that harm would be centered in Los Angeles; (4) California law governs resolution of Dr. Price's claims; (5) Dr. Price originally chose California as the forum for his action and legal proceedings were already underway in California before he re-filed his action in this Court; and (6) Dr. Price re-filed in this Court in an effort to circumvent certain aspects of California substantive law, including (a) California's special Anti-SLAPP statute (which mandates early dismissal of his claim), and (b) California's retraction statute (which severely limits his potential recovery, assuming he could avoid early dismissal).

The unusual procedural history of the filing of Dr. Price's CA and NY Complaints and the factual background of his claims establish that the Central District of California is the appropriate venue. Indeed, this action would still be pending in the Central District had Dr. Price not mislead Defendants into stipulating to a dismissal purely so that the parties could conduct a mediation before submitting briefing on ABC's Anti-SLAPP motion. ABC thus respectfully requests that this Court transfer this action back to where it began, and where it belongs – Los Angeles, California.



## II.
## FACTUAL AND PROCEDURAL BACKGROUND

**A.    Dr. Price And His Crenshaw Christian Center Church Of Los Angeles County**

Dr. Price is a preacher and televangelist, who openly promotes "economic prosperity"

through a "God-centered life."  Declaration of David E. Fink ("Fink Decl.") ¶ 12 Ex. 9 ¶ 18

("CA Compl.") [1].  For 35 years, he has been the leader of the Crenshaw Christian Center Church

of Los Angeles County ("Crenshaw-Los Angeles Church"), where he claims to have a local

congregation of over 22,000.  Id. at ¶ 19.  Dr. Price is the principal preacher at the services of his

Crenshaw-Los Angeles Church – called the "FaithDome" – which he claims to be one of the

largest geodesic domes in the world.  Id.; see also Fink Decl. ¶ 29 Ex. 9 (webpage from

http://www.crenshawchristiancenter.net ("Crenshaw Christian Center – Our History")).

**B.    ABC Broadcasts The News Report**

On March 23, 2007, ABC's news programs "Good Morning America" ("GMA") and

"20/20" included a report about the fiscal transparency of certain religious organizations.[2]  Fink

Decl. ¶ 4 Ex. 1 (CD-ROM: News Report Broadcast on "GMA" and "20/20").  Within the News

/ / /

---

[1] Dr. Price initially filed his defamation and emotional distress lawsuit in the Superior Court for
the County of Los Angeles, California.  He then later re-filed the same claims in this Court.
Because Dr. Price has carefully omitted certain jurisdictional allegations from the complaint he
filed in this Court, ABC cites, where necessary, both his California complaint and his New York
complaint, copies of which are attached as Exhibits to the Fink Decl., filed concurrently
herewith.  See Fink Decl. ¶ 12 Ex. 9 (hereinafter "CA Compl."); id. ¶ 22 Ex. 14 (hereinafter "NY
Compl.").

[2] Collectively, the broadcasts of the story on the "Good Morning America" and "20/20"
programs are referred to herein as the "News Report."  The brief references to Dr. Price were
included in both programs.  ABC submits CD-ROM versions of only those portions of the
programs containing the News Report.  See Fink Decl. ¶ 4 Ex. 1 (News Report Broadcast on
GMA" and "20/20").  ABC further submits the transcripts of the News Report from both of the
programs.  See Fink Decl. ¶¶ 5-6 Exs. 2-3 (Tr. of "GMA" and "20/20").

Report was a nine-second video clip of Dr. Price preaching at his Crenshaw-Los Angeles Church. Id. ABC's inclusion of the nine-second clip is the sole focus of Dr. Price's claims.

The News Report began with reporter John Stossel posing the following question to the viewers: "They preach the gospel of giving to God. But how much of what you give do they keep for themselves? Is it time for someone to say enough?" Mr. Stossel further opines, "Maybe they will do great things with your money." The News Report then shows video clips of various ministers preaching, not including Dr. Price. Id.

The News Report then included a brief, five-second statement from one of Dr. Price's followers, stating that she believes that her "money is being put to excellent use, without one question." Mr. Stossel then states,

> "And yet her pastor, Fred Price, boasts that: [cutting to video of Dr. Price] 'I live in a 25-room mansion. I have my own $6 million yacht. I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles.'"[3]

Id. Immediately after that nine-second clip of Dr. Price, in which he was preaching at his Crenshaw-Los Angeles Church, Mr. Stossel openly acknowledges Dr. Price's candor, as follows: "At least he tells people about it, but many preachers don't advertise how well they live[.]" Aside from the clips depicting a member of Dr. Price's congregation and showing Dr. Price preaching, there was no other reference to him in the News Report.

Following the clip of Dr. Price, which presents Dr. Price as being quite open with his followers about his material wealth, the News Report turns to several other ministers who appear, in contrast, to be less open about their wealth. Id. The News Report then concludes with

---

[3] During the brief video clip of Dr. Price, while Dr. Price stated, "I live in a 25-room mansion," the News Report included overhead footage of Dr. Price's multi-million dollar estate in Palos Verdes Estates, an exclusive residential community in southwestern Los Angeles County, on bluffs overlooking the Pacific Ocean.



a fairly lengthy interview of Rusty Leonard, the founder of Ministry Watch, an organization

which investigates and reports on the financial transparency of American religious and charitable

organizations. During that almost five-minute interview, Mr. Leonard identifies several

ministries – *not* including Dr. Price and his Crenshaw-Los Angeles Church – that have little or

no financial transparency, and Mr. Leonard expresses his opinion that a lack of transparency

probably means that "something is wrong." Id.

**C.    Dr. Price Files His Action In The Los Angeles Superior Court**

Dr. Price complained that the News Report defamed him and pursuant to California's

special retraction statute, he demanded that ABC broadcast a retraction. CA Compl. ¶ 29. In

response to Dr. Price's California retraction demand, out of an abundance of caution, ABC

broadcast an almost one-minute retraction on both "Good Morning America" and "20/20" – in

conformity with California law. Fink Decl. ¶¶ 1, 7-9 Exs.1, 4-6 (CD-ROM: Retraction on

"20/20"; Tr. of Retractions on "GMA" & "20/20"; Retraction Published On ABCNEWS.COM).

The retraction was *more than twice* the length of time that Dr. Price was discussed in the original

broadcast.

The retraction stated that the footage of Dr. Price talking about prosperity had been

accidentally taken out of context. Specifically, in two separate broadcasts on May 11, 2007,

ABC explained that it had learned that Dr. Price was not referring to his own material wealth

during the video clip of him included in the News Report, and that he was actually preaching

about a hypothetical man who had many luxurious possessions but lived an unhappy, spiritually

empty life.[4] Id.

---

[4] ABC negotiated the content of this retraction with a series of Dr. Price's representatives, including three (3) different lawyers and one of Dr. Price's daughters, all of whom are California residents. Fink Decl. ¶ 3.

On July 24, 2007, notwithstanding ABC's retractions, Dr. Price filed a complaint in Los

Angeles Superior Court, naming himself as the only plaintiff and naming as defendants ABC,

Ole Anthony and Trinity Foundation, Inc. The CA Complaint alleges claims for defamation and

intentional infliction of emotional distress, seeking general, special, and punitive damages. See

generally CA Compl. In support of his choice of California as the forum for his action, Dr. Price

specifically alleges that California law applies to his claims, citing California's retraction statute,

Section 48a of the California Civil Code. Id. ¶ 29. By alleging that ABC's retractions were

insufficient under California law, Dr. Price was clearly seeking to avoid the limitations that the

California retraction statute imposes on the recovery of damages. Id.

Further supporting Dr. Price's choice of a California forum, the following

allegations make clear that if his reputation suffered any harm at all, that harm occurred in

*California:*[5]

- Dr. Price stresses that he has lived his entire life in Southern California, where he has been preaching for over 50 years.

- Dr. Price boasts that his Crenshaw-Los Angeles Church is "one of the largest church sanctuaries in the United States," has grown significantly in the 35 years since he founded that church, and currently claims a membership of "over 22,000."

- Dr. Price describes himself as the "principal preacher" at the Los Angeles church services, which attract "over 3,500" people.

- Dr. Price notes that the News Report "could be viewed by residents of the County of Los Angeles, State of California."

- Dr. Price alleges that "the first sign that something was wrong came . . . when various CHURCH [*i.e.,* Crenshaw-Los Angeles

---

[5] By contrast, as discussed below, Dr. Price's original complaint does not allege any damages in New York. See generally CA Compl.



> Church[6]] members called to say that they were shocked and
> disturbed to see Dr. Price on television... ."

- • Dr. Price claims that the News Report caused viewers to believe
  that he was "looting the CHURCH's coffers [*i.e.,* the coffers of the
  Crenshaw-Los Angeles Church]."

- • Dr. Price asserts that the News Report "damaged or destroyed the
  trust and affection that many of his supporters felt for [him]."

CA Compl. ¶¶ 1, 3, 7, 8, 17-20. Shortly after the News Report was broadcast, Dr. Price created

and posted on his church's website a seven-minute rebuttal video, which includes interviews

with parishioners of his Crenshaw-Los Angeles Church ("Rebuttal Video"). Fink Decl. ¶ 10 Ex.

7 (CD-ROM: Rebuttal Video); see also id. ¶ 11 Ex. 8 (webpage from

http://crenshawchristiancenter.net displaying Rebuttal Video). The parishioners describe their

reaction to the News Report and their opinions as to Dr. Price's reputation. See id. ¶ 10 Ex. 7.

Dr. Price's own allegations underscore that his claim *relies upon* "evidence" that is

located in Southern California. Specifically, Dr. Price alleges that the News Report wrongly

accuses him of "divert[ing] funds donated to the [Crenshaw-Los Angeles] CHURCH for his own

personal use" – even though the News Report contains no such accusation against Dr. Price. CA

Compl. ¶¶ 22-23; NY Compl. ¶¶ 25-26. Dr. Price then purports to rebut this straw-man

"accusation" by stressing the propriety of any monies he receives from his Crenshaw-Los

Angeles Church. For instance, Dr. Price asserts that the Crenshaw-Los Angeles Church pays

him a salary which is "set and approved by" the Board of Directors of his church. Id. Dr. Price

---

[6] Dr. Price's CA Complaint defined the term "CHURCH" to be his Crenshaw-Los Angeles
Church, standing alone. CA Compl. ¶ 1. In what can only be viewed as a belated attempt to link
his defamation claim to New York, Dr. Price's NY Complaint now mentions, for the first time,
his decidedly smaller and newer satellite church in Manhattan, and proceeds to define the term
"CHURCH" to include both his mega-church in Los Angeles and his Manhattan satellite. NY
Compl. ¶ 1.



222894.7.doc

alleges that the Board of Directors "controls the [Crenshaw-Los Angeles] CHURCH's finances," and that those finances are "audited annually by a firm of certified public accountants[.]" Id. Dr. Price further contends the finances are "open to review" by the congregation of the Crenshaw-Los Angeles Church. Id. By any reading of these allegations, Dr. Price's own financial records, the financial records of his Crenshaw-Los Angeles Church, the accessibility of those records to his Crenshaw-Los Angeles Church congregation, and the independence of his church's auditors and its Board of Directors are integral to his assertion that the News Report defamed him.

**D.    Defendants Remove Dr. Price's Action To The Central District Of California**

On September 17, 2007, Defendants successfully removed the CA Complaint on the grounds of diversity jurisdiction to the United States District Court for the Central District of California (the "Central District"), where the case was assigned to United States District Court Judge R. Gary Klausner. Fink Decl. ¶ 14. Dr. Price did not oppose removal, and on September 21, 2007, ABC answered the CA Complaint. Fink Decl. ¶ 14 Ex. 10 (Answer). Immediately thereafter, on September 26, 2007, Judge Klausner set a scheduling conference for November 26, 2007, pursuant to Rule 26 of the Federal Rules of Civil Procedure and the Local Rules of the Central District.

**E.    Defendants Initiate The Procedures To File Their Anti-SLAPP Motion**

At the outset of this case, ABC informed Dr. Price of its intention to file an Anti-SLAPP motion.[7] Fink Decl. ¶ 17. The crux of ABC's Anti-SLAPP motion was (and is) that Dr. Price

---

[7] Under the Anti-SLAPP statute, the defendant has the initial burden to show that it was sued based on an "act" made in connection with a public issue or an issue of public interest, in furtherance of the defendant's right to free speech under the United States or California Constitutions. Cal. Civ. Proc. Code § 425.16(b)(1). An "act" includes any statement "made in a . . . public forum" or "any other conduct in furtherance of the exercise of . . . the constitutional right of free speech" in connection with a public issue or an issue of public interest. § 425.16(b)(1), (e)(3) & (4). ABC will easily satisfy its burden to show that the News Report was (footnote continued)

cannot present evidence sufficient to carry his burden under the Anti-SLAPP Statute to establish

a reasonable probability of prevailing on the merits of his claims, based on each of the following

separate and independent grounds:

> (1) the statements in the News Report about Dr. Price were *true*; indeed, Dr. Price is an immensely wealthy man who regularly boasts about his ultra-luxurious lifestyle;
>
> (2) many of the statements at issue were not *of and concerning Dr. Price*;
>
> (3) many of the alleged statements were not provably false assertions of *fact*, but were hyperbole, subjective comment and opinion, or questions and inquiries – none of which can support a claim for defamation; and
>
> (4) pursuant to the California retraction statute, Dr. Price can recover (if anything) only *special damages*, which he failed to plead and cannot prove.

Id.

Local Rule 7-3 of the Central District requires a party, before filing any motion, to

contact opposing counsel and discuss thoroughly the substance of the planned motion.

Satisfying its obligation under Local Rule 7-3, ABC's counsel "met and conferred" with Dr.

Price's counsel at length about the Anti-SLAPP motion ABC was preparing to file. Id. ¶ 18 Ex.

11 (Letter from Mr. Fink to Mr. Glassman). During the course of those communications, the

parties also began to discuss the possibility of mediating the dispute. Id. ¶ 19. Recognizing that

the deadline for ABC to file its Anti-SLAPP motion was looming, the parties stipulated to stay

---

an "act" under the Anti-SLAPP statute. The burden then shifts to Dr. Price to establish, "by competent and admissible evidence," a reasonable probability that he will prevail on his claims at trial. See Macias v. Hartwell, 55 Cal. App. 4th 669 (1997). Since Dr. Price is a public figure, the First Amendment requires him to proffer admissible evidence for each of the elements of his claims. See Gilbert v. Sykes, 147 Cal. App. 4th 13 (2007). In particular, Dr. Price bears the burden in proving that the News Report was false. See Moyer v. Amador Valley Junior Union High Sch. Dist., 225 Cal. App. 3d 720 (1990).

the proceedings before Judge Klausner, in the interest of judicial economy and to avoid unnecessary costs in connection with ABC's Anti-SLAPP motion. Id. ¶ 19 & Ex. 12 (Stipulation). Judge Klausner, however, denied that stipulation. Id. ¶ 19.

The parties agreed on October 15, 2007, to a second stipulation to allow Dr. Price to dismiss his action temporarily, without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.[8] The parties agreed that Dr. Price could dismiss his action for the following express purpose:

> in order to allow the parties to pursue mediation without
> simultaneously filing and opposing an anti-SLAPP motion.

Id. ¶ 20 Ex. 13 (Stipulation of Dismissal). Indeed, Dr. Price convinced ABC to dismiss the case on the ostensible bases that the parties could attempt to mediate the dispute without incurring the costs of filing and opposing ABC's Anti-SLAPP motion. Id. ¶ 20. After all, ABC had already met and conferred with Plaintiff under Local Rule 7-3, and was in the midst of preparing the Anti-SLAPP motion for filing. Id. ¶¶ 18-19. In turn, ABC agreed to the dismissal solely on the understanding that if mediation failed, Dr. Price would re-file his action in the Central District, and ABC would proceed with the filing of its Anti-SLAPP motion. Id. ¶ 20. But for this understanding, ABC would not have permitted Dr. Price to dismiss his action in the Central District and instead would have proceeded to file the Anti-SLAPP motion. Id.

/ / /

/ / /

---

[8] Rule 41(a) precludes voluntary dismissal of a complaint absent the agreement of all parties or order of the Court where, as in this case, the defendants have already answered the complaint. Fed. R. Civ. Proc. 41(a)(1), (2). Since Defendants had already answered the CA Complaint, Dr. Price could not take his case off the Central District's docket without Defendants' agreement, or the entry of an order by Judge Klausner.



Pursuant to this second stipulation, the action was dismissed, without prejudice, on October 15, 2007. Fink Decl. ¶ 20 Ex. 13. Following that dismissal, the parties participated in mediation in Los Angeles in November, 2007, but were unable to reach a resolution. Id. ¶ 21.

**F.    Dr. Prices Re-Files His Action – *Not* In California – But In *New York***

Despite the parties' obvious understanding and expectation that Dr. Price would re-file his action in the Central District if the mediation failed, Dr. Price instead filed a slightly modified version of his CA Complaint in this Court on December 18, 2007. Dr. Price's NY Complaint alleges the exact same claims as the CA Complaint, but makes some superficial changes in an attempt to make his action appear less connected to California, and more connected to New York. In particular, Dr. Price deleted statutorily-required allegations concerning his retraction demand under California's retraction statute,[9] and he took out several allegations about the prominence of his Crenshaw – Los Angeles Church. In an obvious attempt to make his claim appear to be more connected with this forum, Dr. Price also added new allegations about his smaller, satellite ministry in New York. Specifically, Dr. Price's NY Complaint now mentions the existence of his significantly smaller and newer church in Manhattan, which claims just 1,500 members and originated less than 8 years ago. NY Compl. ¶¶ 1, 19-21.[10]

/ / /

/ / /

---

[9] Compare CA Compl. ¶ 29 (alleging that ABC's retraction "failed to comply with the requirements of Civ. Code § 48a(2), which provides that a retraction must be 'published or broadcast in substantially as conspicuous a manner in said newspaper or on said broadcasting station as were the statements claimed to be libelous"); with NY Compl. ¶ 32 (alleging that ABC's retraction was "inadequate and failed in any way to mitigate the damage done to Plaintiff because the retraction was not as conspicuous as the Offending Statements").

[10] In contrast, Dr. Price's CA Complaint does not contain a single reference to his New York church, and instead touts the prominence of his Crenshaw-Los Angeles Church. See generally CA Compl.



**G.    At Dr. Price's Request, The Los Angeles State Court Stays His CA Action**

Even while the NY Complaint has been pending before this Court, Dr. Price has taken

affirmative steps to maintain his Los Angeles Superior Court case – his original choice of forum

– as an additional option.  On January 16, 2008, a month after re-filing his claims in this Court,

Dr. Price requested that the Los Angeles Superior Court stay, and not dismiss, his CA

Complaint.  Fink Decl. ¶ 23.  Pursuant to Dr. Price's request, and over ABC's objection that the

state court retained no continuing jurisdiction following removal, Judge Mark Mooney of the Los

Angeles Superior Court entered a stay of proceedings on January 16, 2008, thereby assuring that

Dr. Price's CA Complaint remains "pending" in California state court – through at least July 22,

2008.  Id.

**III.**
**THIS ACTION SHOULD BE TRANSFERRED BACK TO THE CENTRAL DISTRICT**

**A.    Governing Legal Standards**

Pursuant to 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

where it might have been brought."  "[M]otions for transfer lie within the broad discretion of the

district court and are determined upon notions of convenience and fairness on a case-by-case

basis."[11]  In re Cuyahoga Equipment Corp., 980 F.2d 110, 117 (2d Cir. 1992) (affirming order

denying motion to transfer where moving party showed no inconvenience to the parties or

---

[11] The transfer provision set forth in 28 U.S.C. § 1404(a) is similar to the common law doctrine
of forum non conveniens.  Section 1404(a) serves to transfer suits from one district to another
within the United States, while the doctrine of forum non conveniens serves to dismiss a case
that should be litigated within the court system of a foreign country.  Morris v. Chemical Bank,
No. 85 Civ. 9838 (SWK), 1987 WL 16973, at *2 (S.D.N.Y. Sept. 10, 1987)  While § 1404(a) is
considered a codification of the doctrine of forum non conveniens, a court may grant a motion to
transfer under § 1404(a) "more freely" than dismissals under the doctrine of forum non
conveniens.  Essex Crane Rental Corp. v. Vic Kirsch Constr. Co., 486 F. Supp. 529, 536-37
(S.D.N.Y. 1980).



interests of justice that mandated severing two claims and sending one claim to another district);

Harrison v. Samuel, No. 05 Civ. 8914 (SAS), 2006 WL 1716867, at *2 (S.D.N.Y. June 20, 2006)

(the analysis is "'essentially an equitable task' left to the Court's discretion").

      The inquiry on a § 1404(a) motion to transfer is twofold.  First, the Court must consider

whether the action "might have been brought" in the proposed forum.  28 U.S.C. § 1404(a);

Harrison, 2006 WL 1716867, at *2-4.  Since Dr. Price has acknowledged that he could have re-

filed his claims in the Central District, rather than this Court, that first prong under § 1404(a) is

not in dispute.[12]  The second prong the Court must consider – the controlling question here – is

whether the "convenience of the parties and witnesses" and the "interests of justice" support

transfer to the proposed venue.  Barge v. Daily Journal Corp., No. 95 Civ. 8135 (MBM), 1996

WL 434561, at *3 (S.D.N.Y. Aug. 2, 1996).

**B.**     **The Convenience Of The Parties And Witnesses And The Interests Of Justice Favor
Transfer To The Central District Of California**

      In order to determine whether convenience and the interests of justice favor transfer, the

Court must consider and weigh the following nine (9) factors:

> (1) the convenience of witnesses, (2) the location of relevant
> documents and the relative ease of access to sources of proof, (3)
> the convenience of the parties, (4) the locus of operative facts, (5)
> the availability of process to compel the attendance of unwilling
> witnesses, (6) the relative means of the parties, (7) the forum's
> familiarity with the governing law, (8) the weight accorded the
> plaintiff's choice of forum, and (9) trial efficiency and the interest
> of justice, based on the totality of the circumstances.

Barge, 1996 WL 434561, at *3.  Applying these factors, Courts within the Southern District of

New York have routinely transferred cases to the Central District of California when, as in the

---

[12] In his Pre-Conference Statement to the Court, dated February 29, 2008, Dr. Price stated,
"Plaintiff *agrees* that the action 'might have been brought' in California, so the Court's focus
will be on the second prong [of 28 U.S.C. § 1404(a)]."  Fink Decl. ¶ 24 Ex. 15 (Price Pre-
Conference Statement Dated 02/29/08, at p. 4) (emphasis added).



instant action, convenience and the interests of justice warrant transfer. See, e.g., id. (granting motion to transfer to Central District of California); Harrison, 2006 WL 1716867, at *4 (same); Aarons v. Worldtel Servs., Inc., No. 95 Civ. 8415 (AGS), 1996 WL 185714, at *4-5 (S.D.N.Y. Apr. 17, 1996) (same); Digital Lab Solutions, LLC v. Stickler, No. 06 Civ. 6482 (LLS), 2006 WL 700821, at *6 (S.D.N.Y. Mar. 7, 2007) (slip copy) (same).

### 1.    The Parties' Convenience Supports Transfer To The Central District

If a plaintiff (like Dr. Price) resides in the proposed forum, the proposed forum clearly meets the test of convenience. See Torres v. Steamship Rosario, 125 F. Supp. 496 (S.D.N.Y. 1954) (granting motion to transfer where, inter alia, plaintiff is resident of proposed forum). Dr. Price admits that he has spent his entire life as a resident of Los Angeles and Southern California.[13] NY Compl. ¶¶ 9, 19. Not only does Dr. Price's California residence establish that it is convenient for him to litigate in the Central District, but he reaffirmed that convenience when (a) he filed his action in Los Angeles in the first instance and (b) as recently as January 2008, he requested that the California state court "stay" proceedings on his CA Complaint. Moreover, most (if not all) of Dr. Price's witnesses and evidence are located within the Central District. See infra Part III.B.2-4. Dr. Price cannot credibly dispute that it would be more convenient for him to litigate this action in the Central District – 3,000 miles closer to his home.

As for Defendants' convenience, in the eight (8) months since Dr. Price originally filed this action in Los Angeles, ABC and the other Defendants already began litigating this action in

---

[13] Allegations in a complaint constitute judicial admissions. See Official Comm't of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (allegations in a complaint are "judicial admissions" by which the plaintiff is "bound throughout the course of the proceedings") (quoting Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985)); see also id. at 167 (plaintiff may not contradict its own pleadings with affidavits).



California. In their defense against Dr. Price's claims, ABC has collected its relevant documents in Los Angeles.[14] Fink Decl. ¶ 13. Indeed, the *original* tapes of the News Report were transferred to Los Angeles in September 2007, and copies of all pertinent documents were made and transferred to Los Angeles beginning in July 2007. Id.

Moreover, all of Defendants' key party witnesses are amenable to travel to Los Angeles for trial: namely, (1) Glenn Ruppel (ABC, New York); (2) John Stossel (ABC, New York); and (3) Ole Anthony (Defendant, Texas).[15] Having already begun their defense in the Central District, it is now much more convenient for ABC (and the other defendants) to continue and complete litigation of Dr. Price's claims in California. Thus, the parties' convenience strongly favors transfer back to the Central District.

### 2.    The Central District Is Convenient For Material Non-Party Witnesses

#### (a)    The Central District Is Convenient For ABC's Non-Party Witnesses

In order to establish that the News Report was true and caused no harm to Dr. Price, ABC must elicit testimony from numerous *non-party witnesses*. Testimony from non-party witnesses will be essential for ABC to prove the truth about Dr. Price's vast and extravagant wealth, and also for ABC to establish that the News Report had no negative effect whatsoever on Dr. Price's reputation or on his ability to accumulate still more wealth in the time following the News Report. The chart set forth below identifies many of these non-party witnesses, the geographic location of their residence, and the areas of their anticipated testimony.[16]

---

[14] Furthermore, both ABC and the other Defendants hired Los Angeles trial attorneys who have already devoted considerable resources to investigating the underlying facts and the governing California law and to defending the lawsuit in California. Fink Decl. ¶ 13.

[15] A court can compel party witnesses to testify at trial. See, e.g., TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 406-07 (2001); Morris, 1987 WL 16973, at *5.

[16] Without formal discovery, ABC cannot yet identify some of Dr. Price's Los Angeles (footnote continued)



| Witness | Location | Areas of Testimony |
|---|---|---|
| 1. Betty Price (Dr. Price's wife; on church payroll) | Los Angeles[17] | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 2. Angela Evans (Dr. Price's daughter; on church payroll) | Los Angeles[18] | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 3. A. Michael Evans, Jr. (Angela's Husband; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 4. Cheryl Price (Dr. Price's daughter; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |

witnesses. With respect to identified witnesses, including Dr. Price's relatives, employees of his Crenshaw-Los Angeles Church, members of the Board of Directors of the Crenshaw-Los Angeles Church, and parishioners of his Crenshaw-Los Angeles Church, ABC understands, on information and belief, that they all reside in Los Angeles County. See infra nn 16-22.

[17] See Fink Decl. ¶ 27 Ex. 17 (webpage from http://www.crenshawchristiancenter.net – ("Crenshaw Christian Center – Dr. Betty Price")) (describing how Betty Price has lived in Los Angeles since 1943 and that she "plays a vital role in [Dr. Price's] ministry, as well as in the operation of the church.").

[18] In addition to Dr. Price's wife, Dr. Price has apparently put his entire extended family on the payroll of his church – as either employees, officers, or directors of the church. See Fink Decl. ¶ 27 Ex. 17 (webpage from http://www.crenshawchristiancenter.net ("Crenshaw Christian Center – Dr. Betty Price")) (stating "Drs. Fred and Betty Price have four children – Angela Marie Evans, Cheryl Ann Price, Stephanie Pauline Buchanan, and Frederick Kenneth Price, Jr. *All of the Price children and their sons and daughter-in-law* (A. Michael Evans Jr., Danon Buchanan and Angel Chavon Price) *work for the Ministry at Crenshaw Christian Center in Los Angeles*.") (emphasis added); see also id. ¶ 28 Ex. 18 (webpage from webpage from http://www.crenshawchristiancenter.net) (regarding role of Angela Evans)); id. ¶ 30 Ex. 20 (Grant McLaren, Matching Mission and Machine, Professional Pilot Magazine, Nov. 2005, at 91, 92) (stating Crenshaw-Los Angeles Church's "VP of Marketing [is] Michael Evans Jr." and its "Pres [is] Angela Evans" and stating Michael Evans also serves as the director of flight operations).

| Witness | Location | Areas of Testimony |
|---------|----------|--------------------|
| 5. Stephanie Buchanan (Dr. Price's daughter; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 6. Danon Buchanan (Stephanie's Husband; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 7. Frederick Price, Jr. (Dr. Price's son; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 8. Angel Price (Frederick's Wife; on church payroll) | Los Angeles | Dr. Price's wealth and his boasting about material possessions; lack of any harm to Dr. Price from the News Report; fiscal transparency of Crenshaw-Los Angeles Church |
| 9-13. Non-Price-Family Members of the Board of Directors of Crenshaw-Los Angeles Church | Los Angeles[19] | Financial records and fiscal transparency of Crenshaw-Los Angeles Church; Dr. Price's church salary and non-salary perks; lack of any economic or reputation harm from News Report |
| 14. Dr. Price's Personal Accountant | Los Angeles[20] | Dr. Price's wealth, church salary, other income, and financial perks; Dr. Price's strategies for transferring his wealth to other family members; lack of any economic harm from News Report |

---

[19] The Crenshaw-Los Angeles Church has been registered as a California corporation since 1973. See Fink Decl. ¶ 31 Ex. 21 (Secretary of State business record re: Crenshaw Christian Center of Los Angeles County). Dr. Price alleges that "[t]he Board [of Directors] controls the [Crenshaw-Los Angeles] CHURCH's finances." CA Compl. ¶ 22; NY Compl. ¶ 25. Presumably, at least some of the members of the Board of Directors of a California corporation with direct control over the Crenshaw-Los Angeles Church's finances, reside in Los Angeles, California.

[20] As a life-long resident of Los Angeles and Southern California (NY Compl. ¶¶ 9, 19), presumably Dr. Price's personal accountant is proximately located to his residence.



| Witness | Location | Areas of Testimony |
|---------|----------|--------------------|
| 15-16.  Accountants for Dr. Price's Crenshaw-Los Angeles Church | Los Angeles[21] | Dr. Price's wealth, church salary, and non-salary perks; financial records and fiscal transparency of his church; lack of economic harm from News Report |
| 17.  Gail Dulay (Crenshaw-Los Angeles Church Parishioner) | Los Angeles[22] | Dr. Price's wealth, income, and perks; financial records and fiscal transparency of his church; lack of any economic or reputational harm |
| 18.  Bernadine Buchanan (Crenshaw-Los Angeles Church Parishioner) | Los Angeles | Dr. Price's wealth, income, and perks; financial records and fiscal transparency of his church; lack of any economic or reputational harm |
| 19.  Ronn Whitaker (Crenshaw-Los Angeles Church Parishioner) | Los Angeles | Dr. Price's wealth, income, and perks; financial records and fiscal transparency of his church; lack of any economic or reputational harm |
| 20.  Loretta Cooper (Crenshaw-Los Angeles Church Parishioner) | Los Angeles | Dr. Price's wealth, income, and perks; financial records and fiscal transparency of his church; lack of any economic or reputational harm |
| 21-26.  Other members of the congregation of Dr. Price's Crenshaw-Los Angeles Church | Los Angeles | Dr. Price's wealth, income, and perks; financial records and fiscal transparency of his church; lack of any economic or reputational harm |
| 27.  Rick Handlin (Chief Pilot of private Gulfstream jet available for Dr. Price; on church payroll) | near Long Beach, CA[23] | Dr. Price's non-salary perks (e.g., free travel) |
| 28.  Rusty Leonard (Ministry Watch) | North Carolina | Financial records and transparency of Dr. Price's church |

---

[21] Dr. Price asserts that the Crenshaw-Los Angeles Church's finances are "audited annually by a firm of certified public accountants."  CA Compl. ¶ 22; NY Compl. ¶ 25.  Presumably such public accountants are located within close proximity of the Crenshaw-Los Angeles Church.

[22] Dr. Price's Rebuttal Video includes interviews with Gail Dulay, Bernadine Buchanan, Ronn Whitaker, and Loretta Cooper, all of whom are identified as parishioners of the Crenshaw-Los Angeles Church.  See Fink Decl. ¶ 10  Ex. 7 (CD-ROM: Rebuttal Video).  In the Rebuttal Video, the parishioners describe their reaction to the News Report and their opinions as to Dr. Price's reputation.  See id.

[23] See Fink Decl. ¶ 30 Ex. 20 (Grant McLaren, *Matching Mission and Machine*, Professional Pilot Magazine, Nov. 2005, at 94) (stating "Handlin . . . live[s] 2 hours from LGB [(Long Beach Airport)]).



| **Witness** | **Location** | **Areas of Testimony** |
| --- | --- | --- |
| 29.  Rodney Pitzer (Ministry Watch) | North Carolina | Financial records and transparency of Dr. Price's church |
| 30.  Steven Winzenburg (Professor) | Iowa | Financial records and transparency of Dr. Price's church |

In sum, at this juncture in the proceedings, ABC potentially could call 30 non-party, fact witnesses with respect to the issues of liability and damages.  Of those 30 non-party, fact witnesses, *27 (or, 90%) reside within the Central District of California* and *all 30 (or 100%) reside outside of the State of New York.*  Clearly, it is more convenient for those non-party witnesses if this action were transferred back to the Central District.

### (b)   The Central District Is Convenient For Dr. Price's Likely Witnesses

Dr. Price's non-party witnesses likely will include the following individuals: (1) his daughter, Angela Evans; (2) his wife, Betty Price; and (3) members of his Crenshaw-Los Angeles Church .[24]  In addition to the ABC News people whom Dr. Price named as individual Defendants – *i.e.*, Glenn Ruppel and John Stossel – Dr. Price has asserted in his Pre-Conference Statement to the Court that he intends to call other ABC News personnel who are not individually named as defendants (namely, Diane Sawyer, Ruth Iwano, and Robin Roberts).  Fink Decl. ¶ 24 Ex. 15 (Price Pre-Conference Statement Dated 02/29/08, at p. 3).  As party employees whom ABC has promised to bring to California for trial (if relevant), id. ¶ 26, these additional 3 witnesses are in an entirely different category from truly independent third parties, like the Los Angeles accountants with intimate knowledge of Dr. Price's income, wealth, wealth-

---

[24] Given Dr. Price's long-standing presence in the Los Angeles community as the "principal preacher of the Crenshaw-Los Angeles Church, as well as the claims he made during the CA Action, it is anticipated that Dr. Price will call mostly upon his Los Angeles congregation to corroborate his claimed damage to his reputation.

transfer strategies, and the fiscal transparency of his church. Nevertheless, even treating such ABC employees as "non-parties" (solely for the sake of argument), it appears that the majority of Dr. Price's non-party witnesses reside within the Central District of California.

Thus, accounting for overlap between the trial witness lists of all parties, the overwhelming majority of non-party witnesses (*i.e.*, persons who are neither parties nor employees of parties) reside within the Central District . Since the overwhelming majority of key non-party witnesses are located within the Central District, the convenience of non-party witnesses favors transfer to California.

### 3. The Central District Can Compel Significantly More Material Non-Party Witnesses To Testify

In addition to the convenience of parties and non-party witnesses, the Court must consider whether non-party witnesses can be compelled to attend trial to give live testimony. Both sides agree that *live testimony before the trial jury* will be extremely important in this case. As Dr. Price has argued, testimony from key non-party witnesses "will be far more compelling live, to establish the elements necessary[.]" Fink Decl. ¶ 24 Ex. 15 (Price Pre-Conference Statement Dated 02/29/08, at p. 6). On a motion to transfer, the ability to compel witness testimony generally is relevant only with respect to non-party witnesses, since a federal court can compel party witnesses to testify due to their status as parties. TM Claims Serv., 143 F. Supp. 2d at 406-07; Morris, 1987 WL 16973, at *5. A court, however, cannot compel a *non-party* witness to testify at trial more than 100 miles beyond the place, or outside the state, where the witness resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(c)(3)(A)(ii) (a witness may be commanded to appear at trial anywhere within the state where the witness resides, is employed or regularly conducts business – so long as the witness is reasonably compensated).

/ / /



Where, as here, most of the material non-party witnesses reside in the proposed forum (Los Angeles) and are well beyond the subpoena power of the chosen forum (New York), this factor weighs heavily in favor of transfer. <u>TM Claims Serv.</u>, 143 F. Supp. 2d at 406-07 (granting motion to transfer where proposed forum was in better position to compel testimony). Indeed, "it is important to ensure the live presence of material non-party witnesses whenever possible." <u>Morris</u>, 1987 WL 16973, at *5. In this case, by filing suit in New York and by suing only as an individual plaintiff (not on behalf of his Crenshaw-Los Angeles Church), Dr. Price is seeking to preclude ABC from presenting live trial testimony from virtually all of his material witnesses (other than himself).

For example, the most witnesses on whom ABC will rely to confirm the details of Dr. Price's immense wealth, his multi-million dollar income, and his enjoyment of lavish "corporate perks" (such as the private Gulfstream jet reserved for his exclusive use), will likely be the accountants who prepare the financial statements and tax returns for Dr. Price, for his family members on the Crenshaw-Los Angeles Church payroll, and for that church itself. Those financial witnesses are all in California and cannot be compelled to testify live at a trial in this Court.

In addition, ABC expects that many Los Angeles witnesses (both inside and outside the Crenshaw-Los Angeles Church) will confirm that Dr. Price's reputation has not suffered any harm whatsoever as a result of the News Report. Since Dr. Price's reputation was built and is centered in Los Angeles, virtually every fact witness with knowledge regarding his claim of reputational harm will be found in the Central District. In addition, Dr. Price has alleged that his church's Board of Directors sets and approves his salary, and that the Board controls the church's finances, which he contends are freely open for review by his congregation. CA Compl. ¶ 22; NY Compl. ¶ 25.



222894.7.doc

21

None of the foregoing non-party witnesses can be compelled to testify at a trial in this

Court, and therefore ABC cannot legally compel live trial testimony from any of those witnesses

if this action is permitted to remain in this Court. The same holds true for Dr. Price's relatives,

such as his wife Betty Price, all four (4) of his children, his children's spouses, and certain of his

grandchildren – all of whom are on the payroll as employees, officers and/or members of the

Board of Directors of the Crenshaw-Los Angeles Church.[25] With respect to ABC's remaining

non-party witnesses (*i.e.*, Rusty Leonard, Rodney Pitzer, and Steve Winzenburg), neither this

Court nor the Central District can compel them to present live testimony at trial.

In sum, accounting for overlap between the witnesses each party will likely call to testify

at trial, the Central District can compel substantially more material non-party witnesses to testify

live, before the jury, than can this Court. By naming himself as the only plaintiff and by re-filing

his claims in New York, Dr. Price has essentially sought to strip ABC of its ability to defend

itself with live testimony before the trial jury. Accordingly, this factor weighs strongly in favor

of transfer of this action.

### 4.    The Key Evidence Is Within The Central District

In response to the lawsuit that Dr. Price initiated, ABC already collected its documents

and, as mentioned above, transferred the *original* tapes of the News Report and copies of the

---

[25] Dr. Price has expansively promised that all of his family members will, if requested, appear to testify at trial without necessity of a subpoena. Fink Decl. ¶ 24 Ex. 15 (Price Pre-Conference Statement Dated 02/29/08, at p. 5) ("members of Dr. Price's family … will be attending the trial, and therefore available for live testimony in New York.") However, Dr. Price lacks any legal authority to compel any of his relatives to travel across the country to testify in New York. In contrast, ABC's employees – *i.e.*, employees of a named Defendant – can be required to travel to Los Angeles to testify. E.g., Coughlin v. The Long Island R.R. Co., No. 91 Civ. 7535 (CSH), 1992 WL 276568, at * 3 (S.D.N.Y. Sept. 29, 1992); Fuji Photo Film Co. v. Lexar Media, Inc., 425 F. Supp. 2d 370, 375 (S.D.N.Y. 2006). Thus, ABC can assure the Court (and Dr. Price) that ABC will make its employees available to testify at a trial in California, if their trial testimony is truly necessary. Fink Decl. ¶ 26.



relevant documents to Los Angeles, beginning in July 2007. Moreover, in order to collect conclusive evidence to prove that the News Report was factually accurate and caused Dr. Price no harm, ABC will need to investigate Dr. Price's assets and financial records. Specifically, ABC will need to conduct an audit of Dr. Price's assets and the assets of his family members, and all of those assets appear to be located within Los Angeles County – namely, (a) Dr. Price's palatial residence in Palos Verdes Estates; (b) other real estate held in Dr. Price's name; in the name of one of his trusts; in the names of his wife, children and/or other heirs; (c) other real estate devoted to Dr. Price's use but held in the name of Crenshaw-Los Angeles Church); (d) the private Gulfstream jet used exclusively to fly Dr. Price around the world; (e) the luxury automobiles owned by Dr. Price, his wife, their children and the other Price family members who are on the church payroll; (f) Dr. Price's income that is derived from donations to his Crenshaw-Los Angeles Church; (g) Dr. Price's income from other sources; and (h) any other indicia of Dr. Price's immense material wealth.[26]  In order to disprove Dr. Price's (erroneous) allegation that ABC wrongly accused him of "divert[ing] funds donated to [his Crenshaw-Los Angeles Church] for his own personal use," ABC will need to review the financial records of Dr. Price's church, as well as Dr. Price's own financial records. Most, if not all, of this key evidence for ABC's defense will be found in California.

/ / /

---

[26] ABC understands, on information and belief, that such evidence is located within, or within close proximity of Los Angeles County. See Fink Decl. ¶ 30 Ex. 20 (Grant McLaren, *Matching Mission and Machine*, Professional Pilot Magazine, Nov. 2005, at 91) (stating the private Gulfstream jet used by Dr. Price is "based at LGB (Long Beach, CA)"); id. ¶¶34-37 Exs. 24-27 (real property tax assessor records for real property owned by Dr. Price or his family located in Los Angeles County). Additionally, Dr. Price is the CEO of another California corporation, the Fellowship of Inner City Word of Faith Ministries ("FICWFM"). See id. ¶¶ 32-33 Exs. 22-23 (Secretary of State business record re: FICWFM; Executive Affiliation Records for FICWFM).



With respect to Dr. Price's evidence in support of his claims, most (if not all) of his evidence will be found in California. In particular, any evidence in support of Dr. Price's (erroneous) allegation that the News Report falsely characterized him, his prosperity, and the money he receives from his Crenshaw-Los Angeles Church, would logically be in California. Moreover, Dr. Price's documentary evidence (such as the original Rebuttal Video, along with drafts and outtakes from the production of that rebuttal video) should be in California already since he originally commenced his action in Los Angeles.

Thus, the location of all this key evidence – including a Gulfstream jet, a fleet of automobiles, and real estate, that either cannot be moved at all or could only be moved cross-country at great expense – compels transfer of this case back to California.

### 5. <u>The Locus Of Operative Facts Is Largely Within The Central District</u>

As an initial matter, while the News Report was produced in New York (*e.g.*, footage was received and compiled in New York), the footage was featured on nationally broadcast programs, *not* local television in New York. The allegedly misused footage that forms the basis of this lawsuit has nothing to do with New York. The footage features long-time *Los Angeles* resident Dr. Price delivering a sermon in *Los Angeles*, to his *Crenshaw-Los Angeles Church congregation*. The footage also shows an image of Dr. Price's multi-million dollar estate, which is located in *Los Angeles County* and was taken from a news helicopter operated by ABC's local affiliated station in *Los Angeles, KABC-TV*. Thus, the allegedly offending footage was taken elsewhere, *not* in New York and features individuals, events, and property relating to *Los Angeles*, *not* New York. In light of these facts, Dr. Price would be hard-pressed to claim that ABC's compilation of footage in New York makes New York the locus of operative facts.

More fundamentally, Dr. Price's causes of action for defamation and intentional infliction of emotional distress are premised upon allegedly false statements that harmed Dr. Price. In



particular, he complains that the News Report harmed his standing among the members of his

congregation and community, who are located in *Los Angeles*. In fact, when Dr. Price sought to

broadcast his own, professionally produced Rebuttal Video, he produced the video in *Los*

*Angeles*, from the *Crenshaw-Los Angeles Church*, and featured "interviews" with members of

his *Los Angeles congregation*. Against this backdrop, whether the News Report contained false

statements and harmed Dr. Price cannot be resolved in New York; to the contrary, the parties

must conduct a thorough factual investigation in Los Angeles in order to determine the merit (or

lack thereof) of Dr. Price's claims.

Since the locus of operative facts is largely in Los Angeles County, this factor supports

transfer back to the Central District.

### 6.    The Parties' Financial Interests Support Transfer Back to California

As detailed above, almost all of the parties' key witnesses and evidence are located in

California. More importantly, Dr. Price, a California resident, made the decision to hail ABC

and the other Defendants into Court in California and all parties have now invested substantial

resources to conduct a factual investigation of this matter in California, and to prepare their

defense pursuant to the applicable California law. In addition, while Dr. Price is hardly a man

of modest means, litigating this dispute in Los Angeles County where he resides would still be

more economical for him than litigating in the Southern District of New York. Accordingly,

continuing the litigation of this action in California, rather than New York, makes the most

economic sense for all parties.

### 7.    The Central District Is More Familiar With The Governing Law of California

It is well established that the proposed forum's familiarity with the governing law favors

transfer under § 1404(a). See, e.g., Peter v. Platinum Publ'ns, No. 93 Civ. 6709 (AGS), 1994

WL 440740 (S.D.N.Y. 1994) (granting motion to transfer to Central District of California



because the court is more familiar with governing law). As this Court explained long ago, "[t]here is an appropriateness . . . in having the trial of a diversity case in a forum that is at home with the state law that must govern the case[.]" Molloy v. Bemis Bro. Bag Co., 130 F. Supp. 265, 267 (S.D.N.Y. 1955). This conclusion holds true even where the "issues are relatively simple and the state law [is] clear." Essex Crane Rental Corp., 486 F. Supp. at 540. As explained below, California substantive law will govern this dispute, and the Central District of California is more familiar with California law.

### (a) California Substantive Law Governs This Dispute

In his Pre-Conference Statement, dated February 29, 2008, and at the pre-motion conference on March 5, 2008, Dr. Price candidly agreed with ABC that California substantive law will govern the resolution of his claims, regardless of whether those claims are ultimately resolved in California or in this Court. Any possible doubt about whether California substantive law controls was removed by Dr. Price's able counsel, Mr. Glassman, in the following argument at the pre-motion conference:

> [Y]our Honor, upon review of the authorities, will conclude that it is New York's procedural law that will apply to this diversity proceeding, but, however, *it will be California substantive defamation law that will apply.*

Fink Decl. ¶ 25 Ex. 16 at 5: 19-23 (Tr. of March 5, 2008 Pre-Motion Conference); see also id. 5:24-6:9 (referring to the application of California's retraction statute). Under Erie R.R. v. Tompkins, 304 U.S. 64 (1938) and its progeny, of course, *Federal* procedural law will apply to this diversity action, but there is, and can be, no dispute that California substantive law will govern.[27]

---

[27] In Gasperini v. Ctr. for Humanities, Inc., the Supreme Court explained that "federal courts sitting in diversity apply state substantive law and federal procedural law." 518 U.S. 415, 416 (footnote continued)

**(b)    The Central District Is More Familiar With California Substantive Law**

As a general matter, the Central District of California is more familiar with California substantive law, since it is at home with the state law that governs this dispute. See, e.g., Peter, 1994 WL 440740, at *6 ("Given the centrality of [plaintiff's] state law claims to this action, considerations of governing law further bolster defendants' argument for transfer to the California forum."); Angelov v. Wilshire Bancorp, No. 06 Civ. 4223 (CM), 2007 WL 2375131, at *5 (S.D.N.Y. Aug. 14, 2007) (slip copy) ("The Central District of California is more familiar with California law than is this court[.]"); see also Essex Crane Rental Corp., 486 F. Supp. at 540 ("[I]t is clear that at least plaintiff's negligence claim is governed by principles of Indiana substantive law, a subject with which the judges of the Northern District of Indiana no doubt are more conversant that this Court."). This conclusion appears especially strong in this case, because the United States District Judge assigned to preside over Dr. Price's claims in the Central District – the Honorable R. Gary Klausner – served as a California state court judge for over twenty-two (22) years before his appointment to the Federal bench in 2002. Fink Decl. ¶ 15.

The Central District is more familiar with California's Anti-SLAPP statute, as courts within the Central District routinely apply that statute to dispose of meritless claims. See, e.g., Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1110 (9th Cir. 2003) (affirming district court's grant of certain defendants' California Anti-SLAPP motions); New.Net, Inc. v. Lavasoft, 356 F.

---

(1996). The Court acknowledged that the "[c]lassification of a law as "substantive" or "procedural" for Erie purposes is sometimes a challenging endeavor." Id. The Court further explained that the federal court's analysis of whether a law is procedural or substantive must be "guided by 'the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws.'" Id. (quoting Hanna v. Plumer, 380 U.S. 460, 468 (1965)).



Supp. 2d 1090 (C.D. Cal. 2004) (striking plaintiff's state law claims pursuant to California's

Anti-SLAPP statute); Thomas v. L.A. Times Comms., LLC, 189 F. Supp. 2d 1005 (C.D. Cal.

2002) (granting defendant's motion to strike pursuant to California Anti-SLAPP statute).[28]

> **(c)**     **Federal Courts Sitting In Diversity Have Held That The Motion To Strike And Fee Provisions Of The Anti-SLAPP Statute Are Substantive Law Under The *Erie* Doctrine**[29]

Courts within the Central District routinely apply the Anti-SLAPP statute on the ground

that the protection the statute provides for a defendant's exercise of free speech is an important

feature of California's *substantive* law.  Indeed, the Ninth Circuit has specifically held that, in

keeping with the goals of Erie R.R. v. Tompkins, when a United States District Court is sitting in

diversity jurisdiction and applying California's substantive law (just as the district court must do

here), the court must enforce the Anti-SLAPP statute's provisions.  U.S. ex rel. Newsham v.

Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972 (9th Cir. 1999).  In particular, the court

must enforce the provisions relating to: (1) a motion to strike, under Code of Civil Procedure §

425.16(b), and (2) the award of fees and costs to a prevailing defendant, under § 425.16(c).  Id.

/ / /

---

[28] In contrast, as of the filing of this motion, ABC could not locate any reported decisions within the Southern District of New York or the Second Circuit Court of Appeals that applied California's Anti-SLAPP statute's provisions regarding a motion to strike and an award of fees and costs.

[29] We note that in Dr. Price's Pre-Conference Statement to this Court, he cited decisions of California state courts for the proposition that the Anti-SLAPP statute "has repeatedly been found by California courts to be a procedural law." Fink Decl. ¶ 24 Ex. 15 (Price Pre-Conference Statement Dated 02/29/08, at p. 8 n. 1 (citing Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728 (2003); Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260 (2006); Bouley v. Long Beach Memorial Medical Ctr., 127 Cal. App. 4th 601 (2005), Averill v. Super. Ct., 42 Cal. App. 4th 1170 (1996), As You Sow v. Conbraco Indus., 135 Cal. App. 4th 431 (2005)).  These state court decisions, however, are not conducting an analysis under the Erie doctrine and thus they are completely inapposite to the issues presented here.  Indeed, not one of the decisions considers whether a federal court sitting in diversity jurisdiction can properly apply the Anti-SLAPP statute.

The Ninth Circuit has recognized that certain other features of California's Anti-SLAPP statute are procedural, serving purposes similar to the Federal Rules of Civil Procedure – "namely the expeditious weeding out of meritless claims before trial." Id. at 973. The Ninth Circuit has emphasized, however, that an Anti-SLAPP motion to strike is a *substantive* right, "crafted to serve an interest not directly addressed by the Federal Rules: *the protection of 'the constitutional rights of freedom of speech and petition for redress of grievances.'*" Id. (quoting Cal. Civ. Proc. Code § 425.16(a)) (emphasis added); see also Rutter Group, Federal Civil Procedure Before Trial, at 1:63.6 (2004) (describing the Anti-SLAPP statute as establishing a rule of "substance" and not "procedure").

In U.S. ex rel. Newsham, the Ninth Circuit held that the district court erred in failing to apply the Anti-SLAPP statute's motion to strike and fees and costs provisions. In so holding, the Ninth Circuit explained that these provisions and Rules 8, 12, and 56 of the Federal Rules of Procedure, "'can exist side by side . . . without conflict.'" Id. at 972. The Ninth Circuit reasoned that "California has articulated the important, substantive state interests furthered by the Anti-SLAPP statute," the application of which would not undermine any federal interests. U.S. ex rel. Newsham, 190 F.3d at 973 (citing Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415 (1996) (holding a state law although plainly procedural, had an objective that was manifestly substantive)). Accordingly, in diversity actions where California substantive law applies (just as in this case), in addition to the litigant using "Rules 12 and 56 . . . to test the opponent's claims before trial, California's 'special motion to strike' adds an additional, unique weapon to the pretrial arsenal, a weapon whose sting is enhanced by an entitlement to fees and costs." Id.

The foregoing authorities establish that the Central District of California is familiar (and likely, more familiar than courts located in New York) with California defamation law and California's special Anti-SLAPP statute which govern resolution of this case. Accordingly, the



applicability of California law favors transfer of this action back to Judge Klausner in the Central District.

### 8.    Dr. Price's Choice Of Forum Should Be Accorded *No* Weight

A plaintiff's choice of forum is no longer given decisive weight. Essex, 486 F. Supp. at 537 ("[I]t is generally agreed that plaintiff's initial choice is no longer entitled to the significance which once attached under forum non conveniens analysis."). In this case, the Court should accord *no* weight to Dr. Price's attempt to change his original choice of forum because, as demonstrated below, (a) he is not a resident of the Southern District of New York, which bears far less of a relationship to his action than the Central District of California; and (b) Dr. Price's new choice of forum constitutes impermissible forum shopping (and judge shopping).

### (a)    Dr. Price's Action Bears Little Connection To The Southern District

The deference accorded a plaintiff's choice of forum is "*weak*" where, as in this case, the plaintiff does *not* reside in the chosen forum. Harrison, 2006 WL 1716867, at *4 (granting motion to transfer to Central District of California where plaintiff did not reside in the chosen forum, the Southern District of New York) (emphasis added); see also Pierce v. Coughlin, 806 F. Supp. 426, 429 (S.D.N.Y. 1992) ("Plaintiff's choice of forum is ordinarily entitled to some deference, but it 'is given less weight where, as here, plaintiff is not a resident of the forum and the cause of action is minimally connected with the forum.'"); Fuji, 415 F. Supp. 2d at 376 ("[B]ecause only one of the two plaintiffs resides in this district, and the locus of operative facts law elsewhere, plaintiffs' choice of forum is 'entitled to little deference.'").

These principles are particularly compelling where the operative facts bear little connection to the chosen forum and the plaintiff actually resides in the proposed forum. See, e.g, Harrison, 2006 WL 17816867, at *4 (operative facts bear little connection to chosen forum, and majority of events took place in proposed forum); Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d



222894.7.doc

1, at *6 (D. Col. 2006) ("The deference owed to plaintiffs' choice of forum is further diminished where 'transfer is sought to the forum where plaintiffs reside.'").

As explained above, Dr. Price has been and remains a California resident, and the facts and evidence giving rise to this action are predominantly within the Central District. Accordingly, Dr. Price's new choice of the Southern District of New York should not be entitled to any deference.

### (b)    Dr. Price's Forum Shopping Destroys Any Deference Accorded To His "Choice" Of Forum

Further fatal to Dr. Price's "choice" of forum, evidence of forum shopping severely undercuts any deference accorded the plaintiff's choice of forum. Rayco Mfg. Co. v. Chicopee Mfg. Corp., 148 F. Supp. 588, 593-94 (S.D.N.Y. 1957); Pierce, 806 F. Supp. at 429; see also Onyeneho, 466 F. Supp. 2d at *5 ("To the extent that plaintiffs are engaging in forum shopping, it weighs in favor of transfer to the more appropriate forum."). Indeed, § 1404(a) "was *designed to remedy the evils of forum shopping*." Torres v. Steamship Roasario, 125 F. Supp. 496, 497 (S.D.N.Y. 1954) (granting motion to transfer) (emphasis added).

In Rayco, this Court concluded that the plaintiff sued in the Southern District of New York because of its perception that the Second Circuit was "uncharitable to patents" and plaintiff desired to have a patent declared invalid. 148 F. Supp. at 592-94. The Court granted the defendant's motion to transfer because, *inter alia*, the Court granted no deference to the plaintiff's choice of forum due to the plaintiff's "readily apparent 'forum shopping.'" Id. at 594. Similarly, the Court in Pierce held that the plaintiff's forum shopping, based on his perception that the Southern District of New York was more likely to award relief than the Northern District of New York, diminished any deference accorded his choice of forum. 806 F. Supp. at 429. Accordingly, for this and other reasons, the Court granted the motion to transfer the action to the Northern District. Id.



Particularly pertinent to the unique facts of this case, the Ninth Circuit underscored the direct connection between the application of the Anti-SLAPP statute in diversity actions and the judicial policy against forum shopping, as follows:

> *Plainly, if the Anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum.* Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the "twin aims" of the Erie doctrine – 'discouragement of forum-shopping and avoidance of inequitable administration of the law.'

U.S. ex rel. Newsham, 190 F.3d at 973 (emphasis added) (citing Hanna, 380 U.S. at 468 ).

Against the weight of these authorities, Dr. Price's attempt to change his original choice of forum merits no deference whatsoever. Indeed, the procedural history of this action and Dr. Price's own arguments to this Court underscore that he chose to re-file in this Court, rather than the Central District, in a misguided attempt to evade California law – particularly California's Anti-SLAPP and retraction statutes. While the action was pending in the Central District and during the parties' unsuccessful mediation, Dr. Price was given a preview of the merits of ABC's Anti-SLAPP motion. In a futile effort to avoid that outcome-dispositive motion, Dr. Price went forum shopping in hopes that his meritless SLAPP suit might survive longer if he re-filed his claims outside California.[30] The law, however, is clear: even if this action remains in this Court,

---

[30] Indeed, Dr. Price's forum shopping could not have been more transparent when his counsel admitted to this Court that he shopped for this forum on the erroneous basis that this Court would not apply the Anti-SLAPP statute. Fink Decl. ¶ 25 Ex. 16 at 6:19-25 (Tr. of March 5, 2008 Pre-Motion Conference) (stating that Dr. Price sought to avoid a stay of his action, which he believes would result from the denial (and subsequent appeal of the denial) of Defendants' Anti-SLAPP motion in the Central District of California).

The Southern District has faced and squarely rejected such blatant forum shopping. See, e.g., Blackrock, Inc. v. Schroders PLC, No. 07 Civ. 3183 (PKL), 2007 WL 1573933, at *6 (S.D.N.Y. (footnote continued)



California law governs this action and Dr. Price cannot escape the application of California's

Anti-SLAPP and retraction statutes. Dr. Price's forum shopping compels transfer back to the

Central District, where this action belongs.

### 9. Trial Efficiency And The Interest Of Justice Compel Transfer Of This Action

"'The interests of justice are based on the totality of the circumstances.'" TM Claims

Serv., 143 F. Supp. 2d at 407 (citing Bombardier Capital Inc. v. Solomon, 2000 WL 1721138, at

*6 (S.D.N.Y. 2000)). In TM Claims Service, the Court held the totality of circumstances

supports transfer where – as in this case – the material events occurred in the proposed forum

and most of the witnesses that can prove or disprove the plaintiff's claims resided in the

proposed forum. Id.

Since this action originated within the Central District of California, and the parties have

not commenced discovery in this Court, transfer back to the Central District certainly would be

efficient and not impede the progress of this action. More fundamentally, the totality of

circumstances of this particular case compel transfer because, *inter alia*, (a) Dr. Price is a

*California resident*, (b) most of the witnesses and evidence, including Dr. Price's immense

collection of material wealth, are located in *California*; (c) if Dr. Price suffered any harm at all

from ABC's News Report, that harm was centered in *California*; (d) the law of *California*

governs this dispute; and (e) not insignificantly, Dr. Price originally chose *California* as the

forum for his action. In fact, this action would still be in California had Dr. Price not claimed it

---

May 30, 2007) (slip copy). On a motion to dismiss under the doctrine of forum non conveniens, the Court accorded the plaintiff's choice of forum "limited deference" where it appeared the plaintiff brought suit in the Southern District of New York based on procedural considerations. Specifically, the Court noted that the plaintiff believed the rules of procedure in the Southern District were more favorable than those in the proposed forum, Germany. Id. at *6. On this and other grounds, the court granted the defendant's motion to dismiss. Id. at *6-12.



should be dismissed on the pretext that a dismissal would enable the parties to participate in a mediation and avoid the added costs of pursuing the Anti-SLAPP motion. Had ABC known Dr. Price's true motive, ABC never would have agreed to the proposed stipulation of dismissal. Fink Decl. ¶ 20.

If this action were to proceed in New York, Defendants would be unfairly prejudiced in their ability to defend this action. Indeed, by choosing this forum, Dr. Price will effectively prevent ABC from eliciting live trial testimony from material witnesses who will disprove Dr. Price's allegations – *i.e.*, Dr. Price's accountants; the accountants, officers, employees, and Directors of his Crenshaw-Los Angeles Church; members of his congregation in Los Angeles; and the pilot and crew who ferry him around the world on his private jet. Since these witnesses and the overwhelming majority of witnesses for *both* parties reside within the Central District, transfer of this action will benefit both parties and save Defendants from undue prejudice.

Accordingly, trial efficiency and the interests of justice warrant transfer of this action back to the Central District of California.

## IV.
## CONCLUSION

For all the foregoing reasons, ABC respectfully requests that this Court transfer this action to the Central District of California, pursuant to 28 U.S.C. § 1404(a).

DATED: March 25, 2008

Respectfully Submitted,

WHITE O'CONNOR CURRY LLP

By _____
David E. Fink, *admitted pro hac vice*

Attorneys for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc.



222894.7.doc                           34