Andrew M. White, *admitted pro hac vice*
David E. Fink, *admitted pro hac vice*
Allison S. Rohrer, *admitted pro hac vice*
Tami Kameda, *admitted pro hac vice*
Attorneys for defendants John Stossel, Glenn Ruppel,
American Broadcasting Companies, Inc., and ABC, Inc.
White O'Connor Curry LLP
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, California 90067
Tel: 310-712-6100
Fax: 310-712-6199

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN STOSSEL, an individual, GLENN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware corporation, OLE ANTHONY, an individual, TRINITY FOUNDATION, INC., an entity, form unknown,<br>Defendants. | Civil Action No. 07-CV-11364 (SWK) (THK)<br><br>The Honorable Shirley Wohl Kram<br><br>DECLARATION OF DAVID E. FINK IN SUPPORT OF THE MOTION OF DEFENDANTS JOHN STOSSEL, GLENN RUPPEL, AMERICAN BROADCASTING COMPANIES, INC. AND ABC, INC. TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)<br><br>**ORAL ARGUMENT REQUESTED** |

## DECLARATION OF DAVID E. FINK

I, David E. Fink, declare as follows:

1.      I am an attorney duly admitted to practice before this Court.  I am a partner of

White O'Connor Curry LLP, attorneys of record for John Stossel, Glenn Ruppel, American

Broadcasting Companies, Inc., and ABC, Inc. (collectively, "ABC").  I have personal knowledge

of the facts set forth herein, except as to those stated on information and belief and, as to those, I



am informed and believe them to be true. If called as a witness, I could and would competently testify to the matters stated herein.

2.      On or about March 23, 2007, ABC's news programs "Good Morning America" ("GMA") and "20/20" included a report about the fiscal transparency of certain religious organizations ("News Report").

3.      On or about May 11, 2007, in two separate broadcasts, ABC issued a retraction on "20/20" and GMA (the "Retraction"). ABC also published the Retraction on its website. ABC negotiated the content of this retraction with a series of representatives for Plaintiff Dr. Frederick K. C. Price's ("Dr Price"), including three (3) different lawyers and one of Dr. Price's daughters, all of whom are California residents.

4.      Attached hereto as Exhibit 1 is a CD-ROM containing a true and correct copy of the News Report broadcast on "GMA" and "20/20" as well as the Retraction broadcast on "20/20."[1]

5.      Attached hereto as Exhibit 2 is a true and correct copy of the transcript of the News Report broadcast on "GMA."

6.      Attached hereto as Exhibit 3 is a true and correct copy of the transcript of the News Report broadcast on "20/20."

7.      Attached hereto as Exhibit 4 is a true and correct copy of the transcript of the Retraction broadcast on "GMA."

8.      Attached hereto as Exhibit 5 is a true and correct copy of the transcript of the Retraction broadcast on "20/20."

---

[1] At the direction of the Court, the CD-ROM exhibits have been submitted directly to the chambers of Honorable Shirley Wohl Kram.

9.     Attached hereto as Exhibit 6 is a true and correct copy of the Retraction published on the ABCNEWS.com website.

10.     In response to the News Report Dr. Price created and posted on the Crenshaw Christian website a rebuttal video, which includes interviews with parishioners of his Crenshaw Christian Center Church of Los Angeles County ("Crenshaw-Los Angeles Church") (the "Rebuttal Video"). Attached hereto as Exhibit 7 is a CD-ROM containing a true and correct copy of the Rebuttal Video from the Crenshaw Christian Center website.

11.     Attached hereto as Exhibit 8 is a true and correct copy of the webpage regarding the Rebuttal Video, which webpages were printed under my supervision on or about March 24, 2008, from the Crenshaw Christian website, available at:
http://www.crenshawchristiancenter.net/ecomm/index.php?option=com_content&task=view&id=85&Itemid=119.

12.     On or about July 24, 2007, Dr. Price filed a lawsuit against ABC along with Ole Anthony and Trinity Foundation, Inc. in Los Angeles Superior Court. (ABC, Mr. Anthony and Trinity Foundation are collectively referenced hereinafter as "Defendants.") Attached hereto as Exhibit 9 is a true and correct copy of Dr. Price's original complaint, Case No. BC374700 (the "CA Complaint").

13.     In response to the CA Complaint, ABC and the other Defendants hired Los Angeles trial attorneys. In their defense against Dr. Price's claims, ABC collected its relevant documents in Los Angeles. The original tapes of the News Report were transferred to Los Angeles in September 2007, and copies of all pertinent documents were made and transferred to Los Angeles beginning in July 2007. To date, Defendants' Los Angeles trial attorneys have already devoted considerable resources to investigating the underlying facts and the governing California law and to defending the lawsuit in California.



14.     On or about September 17, 2007, Defendants successfully removed the CA

Complaint on the grounds of diversity jurisdiction to the United States District Court for the

Central District of California.  Dr. Price did not oppose removal.  Upon removal, the case was

originally assigned to United States District Court Judge A. Howard Matz.  On or about or about

September 21, 2007, ABC answered the CA Complaint.  Attached hereto as Exhibit 10 is a true

and correct copy of ABC's Answer to the CA Complaint, filed in the Central District of

California.

15.     On or about September 24, 2007, the case was re-assigned to United States

District Court Judge R. Gary Klausner.  The Honorable R. Gary Klausner served as a California

state court judge for over twenty-two (22) years before his appointment to the Federal bench in

2002.

16.     On or about September 26, 2007, Judge Klausner set a scheduling conference for

November 26, 2007, pursuant to Rule 26 of the Federal Rules of Civil Procedure and the Local

Rules of the Central District of California.

17.     From the outset of this case, ABC informed Dr. Price of its intention to file a

special motion to strike the CA Complaint pursuant to Section 425.16(b) of the California Code

of Civil Procedure (the "Anti-SLAPP Statute").  The crux of ABC's Anti-SLAPP motion was

(and is) that Dr. Price cannot present evidence sufficient to carry his burden under the Anti-

SLAPP Statute to establish a reasonable probability of prevailing on the merits of his claims.

Specifically, Dr. Price cannot carry his burden because: (1) the statements in the News Report

about Dr. Price were true; indeed, Dr. Price is an immensely wealthy man who regularly boasts

about his ultra-luxurious lifestyle; (2) many of the statements at issue were not of and concerning

Dr. Price; (3) many of the alleged statements were not provably false assertions of fact, but were

hyperbole, subjective comment and opinion, or questions and inquiries – none of which can



223140.4.doc

4

support a claim for defamation; and (4) pursuant to the California retraction statute, Dr. Price can recover (if anything) only special damages, which he failed to plead and cannot prove.

18.    Local Rule 7-3 of the Central District of California requires a party, before filing any motion, to contact opposing counsel and discuss thoroughly the substance of the planned motion. To satisfy its obligation under Local Rule 7-3, counsel for ABC "met and conferred" with counsel for Dr. Price, Anthony Glassman, at length about the Anti-SLAPP motion ABC was preparing to file. Attached hereto as Exhibit 11 is a true and correct copy of a letter dated October 3, 2007 from myself to Mr. Glassman in this regard.

19.    During the course of communications between Dr. Price and ABC regarding ABC's anticipated Anti-SLAPP motion, the parties also began to discuss the possibility of mediating the dispute. Recognizing that the deadline for ABC to file its Anti-SLAPP motion was looming, the parties stipulated to stay the proceedings before Judge Klausner, in the interest of judicial economy and to avoid unnecessary costs in connection with ABC's Anti-SLAPP motion. Attached hereto as Exhibit 12 is a true and correct copy of the Stipulation filed on or about September 28, 2007. Judge Klausner denied the stipulation requesting a stay of the proceedings.

20.    On October 15, 2007, the parties agreed to a second stipulation to allow Dr. Price to dismiss his action temporarily, without prejudice, pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. The parties agreed that Dr. Price could dismiss his action for the following express purpose: "in order to allow the parties to pursue mediation without simultaneously filing and opposing an Anti-SLAPP motion." ABC agreed to the dismissal solely on the understanding that if mediation failed, Dr. Price would re-file his action in the Central District, and ABC would proceed with the filing of its Anti-SLAPP motion. But for this understanding, ABC would not have permitted Dr. Price to dismiss his action in the Central District and instead would have

proceeded to file the Anti-SLAPP motion. Attached hereto as Exhibit 13 is a true and correct copy of the Stipulation and signed order.

21.     Following the dismissal of Dr. Price's action without prejudice, the parties participated in mediation in Los Angeles in November, 2007, but were unable to reach a resolution.

22.     On or about December 17, 2007, Dr. Price re-filed his action in the Southern District of New York. Attached hereto as Exhibit 14 is a true and correct copy of Dr. Price's Complaint filed in this action, in the Southern District of New York, Case No. 07-CV-11364 ("NY Complaint").

23.     On January 16, 2008, a month after re-filing his claims in this Court, Dr. Price requested that the Los Angeles Superior Court stay, and not dismiss, his CA Complaint. Pursuant to Dr. Price's request, and over ABC's objection that the state court retained no continuing jurisdiction following removal, Judge Mark Mooney of the Los Angeles Superior Court entered a stay of proceedings on January 16, 2008, through at least July 22, 2008.

24.     ABC submitted a letter to this Court requesting permission to file a motion to transfer this action back to the Central District of California pursuant to 28 U.S.C. § 1404(a). Pursuant to this Court's Order February 20, 2008, both parties submitted Pre-Conference Statements on ABC's anticipated motion to transfer. Attached hereto as Exhibit 15 is a true and correct copy of Dr. Price's Pre-Conference Statement filed on or about February 29, 2008.

25.     Attached hereto as Exhibit 16 is a true and correct copy of an excerpt of the reporter's transcript of the Pre-Motion Conference held on March 5, 2008 concerning ABC's anticipated motion to transfer.

26.     All of Defendants' key party witnesses are amenable to travel to Los Angeles for trial: namely, Glenn Ruppel, John Stossel, and Ole Anthony. Additionally, to the extent that

their testimony is relevant, the following ABC News personnel who are not individually named as defendants but who Dr. Price has asserted he intends to call as witnesses, will be amendable to travel to Los Angeles for trial: Diane Sawyer, Ruth Iwano, and Robin Roberts.[2]

27.    Attached hereto as Exhibit 17 are true and correct copies of webpages regarding Dr. Betty Price, which webpages were printed under my supervision on or about March 20, 2008, from the Crenshaw Christian website, available at:

http://www.crenshawchristiancenter.net/ecomm/index.php?option=com_content&task=view&id=16&Itemid=25.

28.    Attached hereto as Exhibit 18 are true and correct copies of webpages regarding Angela Evans, which webpages were printed under my supervision on or about March 20, 2008, from the Crenshaw Christian website, available at:

http://www.crenshawchristiancenter.net/ecomm/index.php?option=com_content&task=view&id=17&Itemid=26.

29.    Attached hereto as Exhibit 19 are true and correct copies of webpages regarding the history of the Crenshaw Christian Center, which webpages were printed under my supervision on or about March 20, 2008, from the Crenshaw Christian website, available at:

http://www.crenshawchristiancenter.net/ecomm/index.php?option=com_content&task=view&id=19&Itemid=28.

/ / /

/ / /

---

[2] Indeed, to the extent that Dr. Price intends to call any other ABC employees, ABC can assure the Court (and Dr. Price) that ABC will make its employees available to testify at a trial in California, if their trial testimony is truly necessary.

30.     Attached hereto as Exhibit 20 is a true and correct copy of a magazine article by Grant McLaren, entitled <u>Matching Mission and Machine,</u> published in the November 2005 edition of Professional Pilot Magazine.

31.     Attached hereto as Exhibit 21 is a true and copy of the California Secretary of State business record webpage regarding Crenshaw Christian Center of Los Angeles County, which webpage were printed under my supervision on or about March 21, 2008, available at the California State Business Portal, at: http://kepler.sos.ca.gov/list.html.

32.     Attached hereto as Exhibit 22 is a true and copy of the California Secretary of State business record webpage regarding the Fellowship of Inner City Word of Faith Ministries, which webpage were printed under my supervision on or about March 21, 2008, available at the California State Business Portal, at: http://kepler.sos.ca.gov/list.html.

33.     Attached hereto as Exhibit 23 are a true and correct copies of Executive Affiliation Records regarding the Fellowship of Inner City Word of Faith Ministries available on Westlaw.

34.     Attached hereto as Exhibit 24 is a true and correct copy of real property tax assessor records for 1436 Via Arco, Palos Verdes Estates, CA 90274, located in Los Angeles County, owned by Price, Frederick & Betty, available on Westlaw.

35.     Attached hereto as Exhibit 25 is a true and correct copy of the real property tax assessor record for 8313 Hannum Ave, Culver City, CA 90230, located in Los Angeles County, owned by Price, Frederick & Betty, available on Westlaw.

36.     Attached hereto as Exhibit 26 is a true and correct copy of the real property tax assessor record for 5304 Senford Ave., Los Angeles, CA 90056, owned by Crabbe, Allen sold by Price, Frederick K.C., available on Westlaw.

/ / /



37.    Attached hereto as Exhibit 27 is a true and correct copy of the real property tax assessor records for 5240 Senford Ave., Los Angeles, CA 90056, located in Los Angeles County, owned by Evans, Angela M. & A. Michael Jr., sold by Price, Frederick K.C., available on Westlaw.

38.    I declare under penalty of perjury that the foregoing is true and correct.

Executed March 25, 2008, at Los Angeles, California.

_____

David E. Fink



## INDEX OF EXHIBITS TO DECLARATION OF DAVID E. FINK

Exhibit 1    Report broadcast on Good Morning America ("GMA") and "20/20" as well as the Retraction broadcast on "20/20" on a CD-ROM.

Exhibit 2    Transcript of the News Report broadcast on "GMA."

Exhibit 3    Transcript of the News Report broadcast on "20/20."

Exhibit 4    Transcript of the Retraction broadcast on "GMA."

Exhibit 5    Transcript of the Retraction broadcast on "20/20."

Exhibit 6    Retraction published on the ABCNEWS.com website.

Exhibit 7    Rebuttal Video from the Crenshaw Christian Center website.

Exhibit 8    Webpage from Crenshaw Christian website regarding the Rebuttal Video.

Exhibit 9    Plaintiff Dr. Frederick K. C. Price's ("Dr. Price") original Complaint filed in Los Angeles Superior Court, Case No. BC374700 ("CA Complaint").

Exhibit 10   Answer of defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc., and ABC, Inc. (collectively, "ABC") to Dr. Price's CA Complaint, filed in the Central District of California.

Exhibit 11   Letter from David E. Fink to Mr. Glassman dated October 3, 2007, constituting ABC's meet and confer for its anticipated anti-SLAPP motion.

Exhibit 12   Stipulation filed on September 28, 2007.

Exhibit 13   Stipulation and signed order filed on October 15, 2007.

Exhibit 14   Dr. Price's  Complaint filed the Southern District of New York, Case No. 07-CV-11364 ("NY Complaint").

Exhibit 15   Dr. Price's Pre-Conference Statement filed on February 29, 2008.

Exhibit 16   Excerpt of Reporter's transcript of the Pre-Motion Conference on ABC's motion to transfer held on March 5, 2008.

Exhibit 17   Webpage from Crenshaw Christian website regarding Dr. Betty Price.

Exhibit 18   Webpage from Crenshaw Christian website regarding Angela Evans.

Exhibit 19   Webpage from Crenshaw Christian website regarding the history of the Crenshaw Christian Center.



| Exhibit 20 | Magazine article, Grant McLaren, <u>Matching Mission and Machine</u>, published in the November 2005 edition of Professional Pilot Magazine. |
| --- | --- |
| Exhibit 21 | California Secretary of State business record webpage regarding Crenshaw Christian Center of Los Angeles County. |
| Exhibit 22 | California Secretary of State business record webpage regarding the Fellowship of Inner City Word of Faith Ministries. |
| Exhibit 23 | Executive Affiliation Records regarding the Fellowship of Inner City Word of Faith Ministries. |
| Exhibit 24 | Real property tax assessor records for 1436 Via Arco, Palos Verdes Estates, CA 90274, located in Los Angeles County, owned by Price, Frederick & Betty. |
| Exhibit 25 | Real property tax assessor record for 8313 Hannum Ave, Culver City, CA 90230, located in Los Angeles County, owned by Price, Frederick & Betty. |
| Exhibit 26 | Real property tax assessor record for 5304 Senford Ave., Los Angeles, CA 90056, owned by Crabbe, Allen sold by Price, Frederick K.C. |
| Exhibit 27 | Real property tax assessor records for 5240 Senford Ave., Los Angeles, CA 90056, located in Los Angeles County, owned by Evans, Angela M. & A. Michael Jr., sold by Price, Frederick K.C. |



# EXHIBIT 1

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



**[CD-ROM submitted directly to Chambers of Honorable Shirley Wohl Kram]**

# EXHIBIT 2

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Document ID: GMA07032301
  Library: NEWS-NY
Asset Type: Transcript
  Air Date: 2007/03/23
Story Name: GOOD MORNING AMERICA
Start Time: 07:00:02
  Anchor: DIANE SAWYER/ROBIN ROBERTS,  NEW YORK, NY USA
  Contents:
07:00:02

Prepared by The Transcription Company, www.transcripts.net, (818) 848-6500
    Which takes sole responsibility for accuracy of transcription

```
SEGMENT [ALL] 2007/03/23 ************************************************
Restrictions: SEGMENT # 11 - PASTORS WITH MANSIONS AND ROLLS ROYCES STOSSEL SAYS
'ENOUGH!"  - IS ON LEGAL HOLD.  MUST NOT RE-AIR WITHOUT PERMISSION FROM LEGAL
DEPARTMENT.

CONTACT THERESA KARLE or TONY BRACKETT.
```

07:00:02          DIANE SAWYER, ABC NEWS
This morning, the new challenge. John and Elizabeth Edwards, the latest
on her fight against breast cancer and the 30-year marriage of two people
armed with smiles and determination.
    GRAPHICS: JOHN STOSSEL: "ENOUGH!"
07:00:14          DIANE SAWYER
And $6 million yachts, private jets, Rolls Royces?  Sound like the good
life.  What about the godly life?  John Stossel takes us inside the lives
of some preachers and says 'enough."
    GRAPHICS: HIT MEN VS. MAN'S BEST FRIEND
07:00:26          DIANE SAWYER
And crime-fighting dogs.  So successful, hit men are taking out contracts
on their lives.  This is a true story.  And we get the first interviews.
Good morning, welcome to Friday.  I'm Diane Sawyer.
07:00:44          ROBIN ROBERTS, ABC NEWS
And I'm Robin Roberts.  And thank you for starting your Friday morning
with us, Friday, March 23rd.  And this is a morning where so many people,
their thoughts and prayers are with the...
07:00:51          DIANE SAWYER
Oh, yes.
07:00:52          ROBIN ROBERTS
...Edwards family.  And they were so brave how they walked out in that
press conference yesterday.  And they said they were moving forward.  And
we saw last night here New York that John Edwards was here already
campaigning, but very somber, as you would imagine.
07:01:03          DIANE SAWYER
Yes.  Out on the campaign trail last night.  And we have so many

------------------------- Segment Number: 11 -------------------------
   Story Name: PASTORS WITH MANSIONS AND ROLLS ROYCES STOSSEL
SAYS 'ENOUGH!"
   Start Time: 00:00:00
       Anchor: DIANE SAWYER/ROBIN ROBERTS, NEW YORK, NY USA
   Correspondent: ROBIN ROBERTS/JOHN STOSSEL, NEW YORK, NY USA
       Contents:
THIS SEGMENT IS ON LEGAL HOLD - DO NOT RE-AIR WITHOUT CHECKING
WITH LEGAL DEPT. FIRST!!!


SCHULLER, ROD PARSLEY
07:41:54
Prepared by The Transcription Company, www.transcripts.net, (818) 848-6500
       Which takes sole responsibility for accuracy of transcription
07:41:54          ROBIN ROBERTS
(OC) The Bible discusses how difficult it is for the wealthy to reach
Heaven. But that hasn't kept some preachers from attaining vast fortunes.
Now, one man has said 'Enough." John Stossel, anchor of '20/20," this is
something you'll be talking about tonight and today.
   GRAPHICS: ENOUGH!
07:42:08          JOHN STOSSEL, ABC NEWS
(OC) We will. He said enough because he wasn't sure where the money was
going and he had the expertise. He was running $3 billion for a big
investment fund. He quit that job and said I'm gonna investigate these
ministries because I think some of them are squandering our money.
07:42:26          ROD PARSLEY, TELEVANGELIST
Go to the phone right now so that we can preach the gospel in the nation
of Nepal.
   GRAPHICS: PASTORS WITH MANSIONS & ROLLS ROYCES
   GRAPHICS: STOSSEL SAYS "ENOUGH!"
07:42:30          JAN CROUCH, TELEVANGELIST
We're building a hospital in Haiti.
07:42:33          PAUL CROUCH, TELEVANGELIST
Get to the phone. Make that pledge.
07:42:35          JOHN STOSSEL
(VO) Maybe they will do great things with your money.
07:42:37          ROD PARSLEY
Nepal is hanging in the balance. I'm not here...
07:42:40          JOHN STOSSEL
(VO) The givers are confident that they will.
07:42:42          FOLLOWER, FEMALE
When I give to this church, I know that my money is being put to good,
excellent use without one question.
07:42:47          JOHN STOSSEL
(VO) And yet her pastor, Fred Price, boasts that...

CLIP FROM TBN BROADCAST
07:42:51              FRED PRICE, PASTOR
I live in a 25-room mansion. I have my own $6-million yacht. I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles.
07:43:00              JOHN STOSSEL
(VO) At least he tells people about it. But many preachers don't advertise how well they live, like the minister who lives here.
07:43:08              COMMENTATOR, MALE
Brother Kenneth Copeland.
07:43:09              JOHN STOSSEL
(VO) Copeland and other ministries say they comply with all IRS rules. But that's not good enough, says Rusty Leonard. His website, Ministry Watch, criticizes Christian groups including some of the most successful, Robert Schuller, Creflo Dollar, Rod Parsley for having little or no financial transparency. He says donors are being hosed.
07:43:32              JOHN STOSSEL
(OC) Maybe it's all being well spent.
07:43:33              RUSTY LEONARD, MINISTRY WATCH
It could be.
07:43:33              JOHN STOSSEL
(OC) How do you know they're being hosed?
07:43:34              RUSTY LEONARD
Well, you're being hosed if you don't know, right?
07:43:37              JOHN STOSSEL
(VO) The vast majority, he says, do a good job and spend the money well. But he's critical of ministries like the one run by Paul Crouch and his wife Jan.
07:43:48              JAN CROUCH
This isn't about money.
07:43:52              JOHN STOSSEL
(VO) So she says. But Ministry Watch revealed that Jan and Paul's ministry sits on a $340 million cord, and owns houses in this exclusive community hidden behind these very regal gates. They control this mansion worth about $4 million and this even bigger one worth about $6 million.
07:44:11              RUSTY LEONARD
They do some good works. But they could spend a whole lot more money if they - if they sold the house and the car and the jet plane.
07:44:17              JAN CROUCH
The money that comes in...
07:44:18              JOHN STOSSEL
(VO) The Crouch's spokesman told us they have a long track record of financial integrity, including independent audit. And they claim Ministry Watch condemns them because they don't like their theology. Leonard admits he has theological differences, but says they don't affect his financial assessments.

# EXHIBIT 3

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Document ID: NMG07032301
  Library: NEWS-NY
 Asset Type: Transcript
  Air Date: 2007/03/23
 Story Name: 20/20
 Start Time: 22:00:02
   Anchor: JOHN STOSSEL,  NEW YORK, NY USA
  Contents:
22:00:02
Prepared by The Transcription Company, www.transcripts.net, (818) 848-6500
     Which takes sole responsibility for accuracy of transcription


Restrictions: LEGAL HOLD!!  Per Theresa Karle This MINISTRY WATCH  Segment is
Currently on Legal Hold- DO NOT REAIR.  Segment starts at 22:20:08!!


Footage: NBA Footage of Stephon Marbury
TELEVISION ONLY
- No Internet, No VoD, No Home Video, No Excerpting, No Teasers , No Promos...Etc.


Rights Info: Producer Steve Schnee asked that anyone repurposing the original
material for the Kids in Restaurants piece check with him first

Anyone planning to re-air or repurpose material from the "Enough: Eating Out"
segment that ran on 3/23/07 should first contact producer Steve Schnee. They should
also be sure to use the REVISED version in the segment's showboxes. Do NOT use the
original version as it exists on air histories or internationals. All tapes will be
marked. Thank you.


22:00:02            ANNOUNCER
Tonight on '20/20," March 23rd, 2007.  A John Stossel special.  Have you
had enough of kids running amok in restaurants?  This owner threw a whole
family out.
22:00:19       JULIE WALSH, LOCAL RESIDENT
I was so shocked, I said, 'What?"
22:00:23            ANNOUNCER
Are you fed up with people who'd rather follow the rules than rescue a
wounded pet?
22:00:28       JOHN STOSSEL, ABC NEWS
(OC)  Why did you tell your officers, 'Shoot the dog?"
22:00:31            ANNOUNCER
And black couples becoming moms and dads but not mister and misses.  She
said enough.  Now they're saying 'I do."
22:00:40    MARRY YOUR BABY DADDY DAY PARTICIPANT, FEMALE
I love it when he calls me his wife.  I love that.
22:00:44       ANNOUNCER
Plus...

But God only knows how all that money is spent.
22:16:34                JOHN STOSSEL
(OC)  So you call up and say, 'I'd like to know where your money is
going."  And they say, 'Go to hell"?
22:16:41                ANNOUNCER
Next.
     COMMERCIAL BREAK

MINISTRY WATCH THIS SEGMENT IS ON LEGAL HOLD- DO NOT RE-AIR

22:20:58                ANNOUNCER
'Enough" continues on '20/20" with John Stossel.
22:21:04                JOHN STOSSEL
(OC)  They preach the gospel of giving to God.  But how much of what you
give do they keep for themselves?  Is it time for someone to say enough?
22:21:13                TELEVANGELIST
Go to the phone right now so that we can preach the gospel in the nation
of Nepal.
22:21:17                JAN CROUCH
We're building a hospital in Haiti.
22:21:20                TELEVANGELIST
Get to the phone.  Make that pledge.
22:21:22                JOHN STOSSEL
(VO)  Maybe they will do great things with your money.
22:21:24                TELEVANGELIST
Nepal is hanging in the balance.  I'm not here...
22:21:27                JOHN STOSSEL
(VO)  The givers are confident that they will.
22:21:29                CHURCH CONTRIBUTOR, FEMALE
And what I give to this church, I know that my money is being put to
excellent use without one question.
22:21:34                JOHN STOSSEL
(VO)  And yet her pastor, Fred Price, boasts that...
22:21:38                FRED PRICE, PASTOR
I live in a 25-room mansion.  I have my own $6 million yacht.  I have my
own private jet, and I have my own helicopter, and I have seven luxury
automobiles.
22:21:47                JOHN STOSSEL
(VO)  At least he tells people about it, but many preachers don't
advertise how well they live, like the minister who lives here.
22:21:54                ANNOUNCER
Brother Kenneth Copeland.
22:21:57                JOHN STOSSEL
(VO)  He asked his audience to help him spread the gospel by giving him
$20 million so he could buy a new jet.
22:22:03                KENNETH COPELAND, PASTOR

It will never, ever be used for anything other than what is becoming to you, Lord Jesus.

22:22:14                ANNOUNCER

This is 'News 8 Now."

22:22:16                JOHN STOSSEL

(VO) But the ABC affiliate in Dallas checked it out.

22:22:20                REPORTER, MALE

According to flight records obtained by News 8, the Copeland jet, on its way to an evangelical seminar in Australia last October, made a two-day layover in Maui.

22:22:31                JOHN STOSSEL

(VO) And another in the Fiji Islands, another in Honolulu for three days of what they called eating and rest, and finally, a trip to a hunting ranch.

22:22:42                REPORTER

Here's Copeland and his son, John proudly posing with a pair of axis deer.

22:22:47                JOHN STOSSEL

(VO) Copeland's another ministries point out that they comply with all IRS regulations. But that's not good enough, says this man.

22:22:54        RUSTY LEONARD, STEWARDSHIP PARTNERS

In the name of our Lord and Savior, Jesus Christ, amen.

22:22:57                JOHN STOSSEL

(VO) Rusty Leonard is a deeply religious man, who invests and lectures about investing in companies that he believes have Christian friendly values.

22:23:05                RUSTY LEONARD

We love God. We also like capitalism.

22:23:08        TEMPLETON INVESTMENT EMPLOYEE, MALE

It increased 10%

22:23:09        TEMPLETON INVESTMENT EMPLOYEE

Sell at 25.

22:23:10        TEMPLETON INVESTMENT EMPLOYEE

Pressure on the commodities.

22:23:11                JOHN STOSSEL

(VO) He knows a lot about money because for a decade, he was a hotshot money manager for Templeton Investments.

22:23:18                JOHN STOSSEL

(OC) You had a high-paying job?

22:23:19                RUSTY LEONARD

That's right.

22:23:20                JOHN STOSSEL

(OC) You gave it up.

22:23:20                RUSTY LEONARD

I did. But you know, when you feel called to do something, you do it.

22:23:24                JOHN STOSSEL

(VO) Leonard walked away from a seven-figure salary because he thought it was un-Christian that he, and he, and she, and so many others ask donors for money but don't reveal exactly how they spend it. He says donors are being hosed.

22:23:39        JOHN STOSSEL

(OC) Maybe it's all being well spent.

22:23:40        RUSTY LEONARD

It could be.

22:23:40        JOHN STOSSEL

(OC) How do you know they're being hosed?

22:23:41        RUSTY LEONARD

Well, you're being hosed if you don't know, right?

22:23:43        JOHN STOSSEL

(OC) Some donors you call dumb?

22:23:46        RUSTY LEONARD

We're all, I guess we're all dumb, right? But yes, all the satisfaction we get is in the act of giving, not of making sure that actual good work gets done.

22:23:52        JOHN STOSSEL

(VO) So he started up the research group Ministry Watch.

22:23:55        MINISTRY WATCH EMPLOYEE, FEMALE

We sent you a letter a couple of weeks ago requesting your organization's latest 990.

22:24:01        JOHN STOSSEL

(VO) They ask Christian ministries and charities to reveal their finances.

22:24:05        JOHN STOSSEL

(OC) So you call up and say, 'Hi. I'd like to know where your money's going." And they say, 'Go to hell"?

22:24:12        RUSTY LEONARD

Essentially. Especially the bad guys, right? Nobody had ever held them to account from an independent perspective, right? So they were totally freaked out by it.

22:24:19        JOHN STOSSEL

(OC) Some of these people have threatened to sue you.

22:24:21        RUSTY LEONARD

Bring it on. And you know, frankly, they like to threaten up, but they don't actually like to do it, because if they did it, they would raise the awareness of the whole problem to a higher level.

22:24:30        JOHN STOSSEL

(VO) While most charities legally must report their finances, ministries are exempt. Today, Ministry Watch criticizes 28 Christian groups including some of the most successful televangelists. Benny Hinn, Creflo Dollar, Rod Parsley, all for being secretive for having little or no financial transparency.

22:24:49        RUSTY LEONARD

Nobody should donate to any of those ministries. There's no point in donating to a ministry that wants to take your money but not tell you a thing about how they're gonna spend that money. It doesn't mean that they're doing anything wrong, but there's a very high probability that something is wrong here.

22:25:01                    JOHN STOSSEL

(OC)  Their attitude is 'trust us."

22:25:03                    RUSTY LEONARD

Well, I'm human. You're human. If I had no constraints on me, I'd probably do all kinds of stupid things.

22:25:10                    JOHN STOSSEL

(OC)  Donor alerts, these are the bad guys.

22:25:12                    RUSTY LEONARD

They are the bad guys.

22:25:13                    JOHN STOSSEL

(OC)  And Shining Light...

22:25:15                    RUSTY LEONARD

...are the good guys. And, you know, frankly, there's a lot more good guys than there are bad guys.

22:25:18                    JOHN STOSSEL

(VO)  The vast majority, he says, do a good job and spend your money well. But he's critical of some ministries, whose financial information he has been able to review, like the one run by Paul Crouch and his wife, Jan.

22:25:34                    JAN CROUCH

This isn't about money.

22:25:37                    JOHN STOSSEL

(VO)  So she says, but Ministry Watch revealed Jan and Paul's ministry sits in a $340-million horde and owns houses in this exclusive community hidden behind these very regal gates. They control this mansion worth about $4 million and this even bigger one worth about $6 million. The Crouches also travel the world in this jet, said to be worth $7 million.

22:26:02                    RUSTY LEONARD

We would expect that most Christian ministries, the leadership, should have some degree of sacrifice. You know, you wanna see that. Jesus lived a life of sacrifice.

22:26:11                    TELEVANGELIST

These critics want us to be humble and poor like Jesus, they say he was. But if God's people are poor as Job's turkey, who's gonna pay for it? Who's gonna pay to send the gospel to the ends of the Earth?

22:26:29                    JAN CROUCH

It's the devil. It's Satan. If he has said, 'Don't give," hey, you're listening to the wrong side.

22:26:35                    RUSTY LEONARD

They do some good works, but they could spend a whole lot more money if they sold the house and the car and the jet plane.

22:26:41          JAN CROUCH

The money that comes in...

22:26:42          JOHN STOSSEL

(VO) The Crouches' spokesman told us they have a long track record of
financial integrity including independent audit and they claim Ministry
Watch condemns them because they don't like their theology. Leonard
admits he has theological differences, but says they don't affect his
financial assessments, and battles with groups like those did strain his
will.

22:27:02          RUSTY LEONARD

I really didn't want do it anymore, but then the Lord called us and He
said, no, I put you in this spot for this very reason.

22:27:09          JOHN STOSSEL

(VO) Ministry watch now gets 4,000 hits a day, and its influence seems
to be growing. After Leonard criticized Joyce Meyer's ministry, she
opened up their financial records and sold her family's group of
million-dollar homes. She got better after you started doing this.

22:27:24          RUSTY LEONARD

That's right. She responded. I think they would claim at the ministry
they didn't quite respond to us. That they were doing this on their own.
She moved in the right direction. Lord, we just thank you for this day.

22:27:33          JOHN STOSSEL

(VO) And Rusty Leonard, after spending $2 million of his own money on
ministry watch is poorer than he used to be. But that's okay, he says.

22:27:42          RUSTY LEONARD

I've gone seven years without earning a salary now, so it's a whole
different scenario. But I am more joyful and happy than I was before.

22:27:49          RUSTY LEONARD

In Jesus' name. Amen.

22:27:52          ANNOUNCER

When "20/20" returns, all these black men making babies, but not brides.
Until this woman said enough.

22:28:01          MARYANN REID, MARRY YOUR BABY DADDY DAY

We want to turn baby mommas into wives.

22:28:05          ANNOUNCER

Watch her do it. Next.

        COMMERCIAL BREAK

22:30:13          ANNOUNCER

"Enough!" continues on "20/20" with John Stossel.

22:30:22          JOHN STOSSEL

(VO) America's home to many monuments and great buildings that honor
some of our leaders - Lincoln, Washington, Jefferson. But lately, it seem
likes we're lowering the bar. Mississippi Senator Trent Lott has a lot
named after him. The middle school, the airport, the Trent Lott Center at
Jackson State, the Trent Lott Leadership Institute.

22:30:44          SENATOR ROBERT BYRD, DEMOCRAT

# EXHIBIT 4

to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Document ID: GMA07051101

Library: NEWS-NY

Asset Type: Transcript

Air Date: 2007/05/11

Story Name: GOOD MORNING AMERICA

Start Time: 07:00:02

Anchor: DIANE SAWYER/ROBIN ROBERTS, NEW YORK, NY USA

Contents:

07:00:02

Prepared by The Transcription Company, www.transcripts.net, (818) 848-6500
Which takes sole responsibility for accuracy of transcription

07:00:02          DIANE SAWYER, ABC NEWS

Breaking news overnight. The race to escape famous Catalina Island in California, as a wildfire rages through. Sky thick with ash, folks rushing in to help. And we are live at the scene.

GRAPHICS: RACING FAMILY FEUD

07:00:15          DIANE SAWYER

Can it be? The super star of racing, Dale Earnhardt Junior, squaring off against his stepmother? A real life soap opera, turning a NASCAR dynasty upside down.

GRAPHICS: MOTHER'S DAY BREAKFAST IN BED

07:00:27          DIANE SAWYER

And our Mother's Day tradition. Emeril Lagasse right now somewhere in America, ready to ring the bell and give one mom the surprise of her life. 'Breakfast in Bed," is he heading toward your door? Everybody getting out of the bathroom...

07:00:46          ROBIN ROBERTS, ABC NEWS

I know, really.

07:00:47          DIANE SAWYER

...to get ready for Emeril. Good morning, America. I'm Diane sawyer.

07:00:49          ROBIN ROBERTS

And I'm Robin Roberts. Thank you for starting your day with us on this Friday, May 11th. And we have more on that breaking story out of California.

GRAPHICS: BREAKING NEWS

GRAPHICS: CALIFORNIA ISLAND ON FIRE

GRAPHICS: 4,000 FLEE TO BOATS

07:00:55          ROBIN ROBERTS

Smoke is making it hard even to breathe. Look at these pictures. The sky is thick with ash. We will have much more, a live report straight ahead.

07:01:05          DIANE SAWYER

That's right. 4,000 people racing for the boats right now. And we'll take you there. Also, big news from Wal-Mart this morning. The Rock of Gibraltar stumbling? Record low earnings? Why? What has changed? And what does it mean for Wal-Mart shoppers and the national economy?

(OC) 'Steel Magnolias," oh, one of my all time favorites.  Good job, Joel.  Good job.

08:39:27                    JOEL SIEGEL

(OC) Thank you.

08:39:28                    DIANE SAWYER

(OC) Coming up next, Jack Hanna is here...

08:39:30                    ROBIN ROBERTS

(OC) Mm-hmm.

08:39:30                    DIANE SAWYER

(OC) ...with some really cuddly creatures.  And an amazing story of pet love.

08:39:35                    ROBIN ROBERTS

(OC) What is that?

08:39:36                    DIANE SAWYER

(OC) That has to be...

08:39:37                    ANNOUNCER

'Joel's Review" is brought to you by...

COMMERCIAL BREAK

08:42:06      Now, I'm John Stossel, and I want to correct a mistake we made.  Several weeks ago, in a story about financial openness of Christian ministries, we aired this clip of televangelist Frederic Price.

CLIP PLAYING


08:42:17              Televangelist Frederic Price

I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles.

END CLIP

(OC)              JOHN STOSSEL

08:42:26      We thought Dr. Price, founder of Crenshaw Christian Center, was talking about himself, but we later learned he was preaching a sermon about a hypothetical person who had many material possessions, but lived a spiritually unfulfilled life.   We had used the quote out of context and for that we apologized to Dr. Price and the Crenshaw Christian Center.  And we apologize to you, if we misled you.

08:42:57      Also, the Center sent us a statement saying Dr Price is paid  "a salary commensurate with his duties" and that the church "openly shares its financial information with it's congregation"

08:43:02      PROMO / COMMERCIAL BREAK

# EXHIBIT 5

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Document ID: NMG07051101
    Library: NEWS-NY
Asset Type: Transcript
    Air Date: 2007/05/11
Story Name: 20/20
Start Time: 21:00:02
    Anchor: JOHN STOSSEL/ELIZABETH VARGAS,  NEW YORK, NY USA
    Contents:
21:00:02
Prepared by The Transcription Company, www.transcripts.net, (818) 848-6500
    Which takes sole responsibility for accuracy of transcription

Restrictions: Show: 20/20 -
Segment: Faith: Atheism
Airdate: 05/11/07 (Friday)
Footage: Dawkins 'Root of all Evil' clips
TELEVISION & INTERNET STREAMING ONLY
No VoD, No Home Video, No Promos No Excerpting , Etc. . .
MANDATORY ON SCREEN CREDIT: The Root of all Evil', an IWC production, distributed by
RDF Rights'


21:00:02            ANNOUNCER
Tonight, a special two-hour edition of '20/20." The Power of Faith in
God.
21:00:10        ROSEMARY, HARVARD PROFESSOR
I heard an inner voice saying 'Come to me."
21:00:15            ANNOUNCER
In a simple touch. Faith in science.
21:00:19       DOCTOR ANDREW NEWBERG, NEUROSCIENTIST
When our Buddhist meditators were focusing on this visual sacred object,
things happened in their brain.
21:00:24            ANNOUNCER
And in yourself.
21:00:26        LINDSAY LIOZ, ASPIRING ACTRESS
I got what I wished for.
21:00:27            ANNOUNCER
Join us on the road to faith. Diane Sawyer goes inside the silent world
of the cloister, women giving up everything for God.
21:00:37      MOUNT SAINT MARY'S ABBEY NUN, FEMALE
He's the greatest lover the world has ever known, and he's mine.
21:00:40            ANNOUNCER
Then to the bedside of a sick girl where icons weep oil. Is it a
miracle? And John Stossel with a teenager who paid the price for having
no faith.
21:00:52        NICOLE SMALKOWSKI, ATHEIST

child and help this person and overturn the tables of the moneychangers. Surely, Jesus would want you out in the world doing the same thing.

22:19:15          DIANE SAWYER

(VO)  The women insisted that God needs both, those who do and work in the outside world, and those who stay in to stand vigil as vessels of prayer.  So in the end, which choice would our young women make?

22:19:30          INTERVIEWEES, GROUP

Bye.

22:19:32          DIANE SAWYER

(VO)  Rosemary, the Harvard professor who wept at the thought of leaving her earthly father, opted to continue her life as a teacher.  Frances from Wales, who said celibacy was a tough one, told us she is still wrestling with her choice.  She entered a new romance with a man, but then gave it up because of her relationship with Jesus.

22:19:53          FRANCES

I want it to be the primary relationship in my life, and, yeah.

22:20:08          DIANE SAWYER

(VO)  And Christine, who used to work in Washington, said instead of the cloister, she's going out to see the world.  But remember Katherine, the bubbly graduate student who loved the clothes, the black and white habits of the nuns?  We learned that she is now the youngest of 16 sisters living in a monastery near St. Mary's.

22:20:35          NUN

Praise be Jesus Christ.

22:20:38          DIANE SAWYER

(VO)  We were not permitted inside, even had to attach her microphone through the metal grille, a symbol of her growing separation from the world.

22:20:47          KATHERINE WHETHAM

It's always a leap of faith.  It really is.  You never know for sure. There's not a sign saying, 'You're home."  But it was just a really strong sense of peace.

22:21:12          DIANE SAWYER

(OC)  So on this Friday night, know somewhere in America, the church bells toll, the silent nuns rise to stand sentry, as they have for hundreds of years, full of faith that their prayers will pour over the souls of the rest of us floating on this tiny planet in this infinite space.

22:21:35          ELIZABETH VARGAS

(OC)  We'll be right back.

22:21:38          ANNOUNCER

'20/20" on ABC, brought to you by...

          COMMERCIAL BREAK

22:24:48          JOHN STOSSEL

(OC)  Now, I wanna correct a mistake we made.  Several weeks ago on a story about the financial openness of Christian ministries, we aired this

clip of televangelist Frederick Price.

CLIP FROM CRENSHAW CHRISTIAN CENTER WORSHIP SERVICE
22:24:57          FREDERICK PRICE, FOUNDER
I live in a 25-room mansion. I have my own $6 million-yacht. I have my
own private jet, and I have my own helicopter, and I have seven luxury
automobiles.
22:25:07          JOHN STOSSEL
(OC) We thought Dr. Price, founder of Crenshaw Christian Center, was
talking about himself, but we later learned he was preaching a sermon
about a hypothetical person who had many material possessions but lived a
spiritually unfulfilled life. We'd used his quote out of context, and for
that, we apologize to Dr. Price and the Crenshaw Christian Center. And we
apologize to you if we misled you. Also, the Center sent us a statement
saying Dr. Price is paid, quote, 'a salary commensurate with his duties"
and that the church, quote, 'openly shares its financial information with
its congregation."
22:25:41          ANNOUNCER
'20/20" continues after this from our ABC stations.
COMMERCIAL BREAK
22:27:41          ANNOUNCER
'Seeing and Believing: The Power of Faith" continues.
22:27:45          JOHN STOSSEL
(OC) Did you ever want to believe in something so much that you didn't
question it even when it didn't make sense? It happened to the woman
you'll meet now. She put her faith in a preacher who seemed to be the
answer to her prayers. But was her faith misplaced? Jim Avila
investigates.
22:28:00          FAITH HEALER, FEMALE
Honey, you got a million-dollar miracle.
GRAPHICS: BLIND FAITH
22:28:03          BELIEVER, FEMALE
A million-dollar miracle.
22:28:05          JIM AVILA, ABC NEWS
(VO) Through the haze of insomniac TV, this could seem like just another
get-rich-quick infomercial.
22:28:12          BELIEVER
Lo and behold, I got $17,000.
22:28:14          JIM AVILA
(VO) But then, the fun starts.
22:28:16          REVEREND PETER POPOFF, FAITH HEALER
Jesus, I thank you. (Makes noise).
22:28:18          JIM AVILA
(VO) The telltale raucous miracles that mean this could only be a TV
faith healer.
22:28:25          REVEREND PETER POPOFF
Oh, she's drinking the spirit.

# EXHIBIT 6

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Internet

# abcNEWS
start here

Good Morning America | World News | 20/20 | Primetime | Nightline | This Week | ABC News Now | i-CAUGHT

Register | Sign In

Search [____] Go

Home | News Summary | World | U.S. | Blotter | Politics | Money | Health | Entertainment | ESPN Sports | SciTech | The Law | Travel | More

## BREAKING NEWS: DOW FALLS MORE THAN 300 POINTS AMID CONCERNS OVER THE FALLING VALUE OF THE DOLLAR

We want to correct a mistake we made. Several weeks ago, in a story about the financial openness of Christian ministries, we aired a clip of televangelist Frederick Price, in which he stated, " I have a 25 room mansion, a yacht, a jet, a helicopter and a fleet of luxury automobiles."

We thought Dr. Price, founder of the Crenshaw Christian Center, was talking about himself, but we later learned that he was preaching a sermon about a hypothetical person who had many material possessions but lived a spiritually unfulfilled life. We had used his quote out of context, and for that we apologize to Dr. Price and the Crenshaw Christian Center, and we apologize to you if we misled you.

Also, the Center sent us a statement saying that Dr. Price is paid "a salary commensurate with his duties" and that the church "openly share[s] [its] financial information with [its] congregation."

Advertisement

Feedback | Wireless | E-mails & News Alerts | Message Boards | RSS Headlines | Podcasts | ABC News Store

Contact Us | ABC.com | Site Map | Advertising Info | Terms of Use | Privacy Policy/Your California Privacy Rights

External links are provided for reference purposes. ABC News is not responsible for the content of external internet sites.    Copyright © 2007 ABCNews Internet Ventures

# EXHIBIT 7

to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



**[CD-ROM submitted directly to Chambers of Honorable Shirley Wohl Kram]**

# EXHIBIT 8

to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Case 1:07-cv-11364-SWK    Document 39-2    Filed 08/04/2008    Page 26 of 41

# Ever Increasing Faith

| Dr. Price | EIF | Media | CCC | Education | Donations | FAQ | Contact Us | Youth | FICWFM |

**MAIN MENU**

Home
Easter 2008
Fellowship Forum
Dr. Price Schedule
Live Broadcast
Cyber Store
Israel 2008

**CyberStore**

Dr. Frederick K.C. Price (875)
Dr. Betty R. Price (76)
Frederick K. Price, Jr. (129)
New Release (4)
EIFM-24hr.NETWORK (14)
EIFM-TV Program (20)

**List All Products**

Product Search
[ Search ]
Advanced Search

Download Area
Show Cart
Your Cart is currently empty.

**Login Form**

User Name
[ User Name ]
Password
[           ]
Log In
Register now!
Lost password

**EIFM Podcast**

VeriSign Secured

## The Truth About 20/20's Story





Download "THE TRUTH: About 20/20's coverage of
Dr. Frederick K.C. Price & Crenshaw Christian Center" – a short video.

Quicktime/IPOD Video - 25MB
Windows Media Video - 14MB
(Right Click to "Save As")

Download the Complaint filed by Dr. Price against ABC News
PDF File 45KB

Los Angeles Times News Article - July 25, 2007

Download any media viewers here to view movie.

 **Windows** Media

Download Adobe PDF Reader to view complaint.

Get ADOBE READER

© 2005 Crenshaw Christian Center. All Rights Reserved.

# EXHIBIT 9
to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

ORIGINAL

1  ANTHONY MICHAEL GLASSMAN (SBN 037934)
   ALEXANDER RUFUS-ISAACS (SBN 135747)
2  GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
   360 North Bedford Drive, Suite 204
3  Beverly Hills, California 90210-5157
   Telephone: (310) 278-5100
4  Facsimile: (310) 271-6041

5

6  Attorneys for Plaintiff DR. FREDERICK K. C.
   PRICE

**FILED**
LOS ANGELES SUPERIOR COURT

JUL 2 4 2007

JOHN A. CLARKE, CLERK

BY RUGENA LOPEZ, DEPUTY

Case assigned to
Judge

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9          FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

BC374700

10  Dr. FREDERICK K. C. PRICE, an individual,      Case No.

11              Plaintiff,                          **COMPLAINT FOR DEFAMATION;
                                                    INTENTIONAL INFLICTION OF
12         v.                                       EMOTIONAL DISTRESS; DEMAND FOR
                                                    JURY TRIAL**
13  JOHN STOSSEL, an individual, GLEN
    RUPPEL, an individual, AMERICAN
14  BROADCASTING COMPANIES, INC., a
    Delaware corporation, ABC INC., a Delaware
15  corporation, THE WALT DISNEY
    COMPANY, a Delaware corporation, OLE
16  ANTHONY, an individual, TRINITY
    FOUNDATION, INC., an entity, form
17  unknown, and DOES 1-100, inclusive,

18              Defendants.

19

20         Plaintiff DR. FREDERICK K. C. PRICE ("Plaintiff" or "Dr. PRICE "), files this Complaint

21  against the above-named defendants, and complains and alleges as follows:

22                                    **INTRODUCTION**

23         1.      Dr. PRICE founded the CRENSHAW CHRISTIAN CENTER CHURCH OF LOS

24  ANGELES COUNTY, also known as "Crenshaw Christian Center/Ever Increasing Faith," (the

25  "CHURCH") in South Los Angeles in 1973. Over the last 34 years, it has grown to the point where

26  over 3,500 people attend the main Sunday services, which are televised in 15 of the 20 largest markets

27  throughout the United States, and across the world on stations that reach more than 15 million

28  households. Dr. PRICE remains the minister and preaches at these services.

166997.4

COMPLAINT FOR DEFAMATION AND INFLICTION OF EMOTIONAL DISTRESS

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

1   2. On March 23, 2007, defendant AMERICAN BROADCASTING COMPANIES, INC.

2 ("ABCI"), broadcast a story on its evening program, "20/20" (the "Program"), concerning religious

3 leaders who financially exploit their supporters by using donations to support an extravagant lifestyle.

4 One of the religious leaders who was featured in the Program was Dr. PRICE. The Program included

5 less than a minute of film from a videotaped sermon ("Sermon") that Dr. PRICE preached 10 years ago

6 in which he was discussing hypothetically, in the first person singular, how people can have great

7 wealth (the "Clip"). In the Sermon, he then went on to give examples of how such people can feel

8 spiritually unfulfilled despite their great wealth, but this passage, which would have placed the footage

9 in the Clip in its proper context, was omitted. The Sermon was broadcast in or about 1997 on the

10 Lifetime Television channel, which is owned by DISNEY. Therefore the broadcaster Defendants could

11 have discovered the context in which the Clip appeared at any time if they had bothered to look in their

12 own archives.

13   3. In one of the most outrageous instances of "out of context" editing in the history of

14 television, the Clip was edited into the Program in such a way as to cause reasonable viewers to believe

15 (a) that Dr. PRICE was admitting that the great wealth to which he was referring in his hypothetical

16 example, was his, and (b) that he was able to enjoy this extravagant lifestyle because he was looting the

17 CHURCH's coffers.

18   4. The Program was produced by defendant GLEN RUPPEL and presented by defendant

19 JOHN STOSSEL, who introduced the Clip by stating that Dr. PRICE was "boasting" about having his

20 own 25 room mansion, yacht, jet, helicopter and 7 luxury automobiles.

21   5. The Clip also appeared in whole or in part in a number of "teasers" (the "Teasers") for

22 the Program that were broadcast on ABC's popular morning show, "Good Morning America"

23 ("GMA"), and other programs. The Teasers were intended to cause reasonable viewers to believe that

24 the Program was an expose of a group of corrupt religious leaders, including Dr. PRICE.

25   6. Plaintiff is informed and believes and on that basis alleges that the Clip was provided to

26 the other defendants by defendants OLE ANTHONY, the TRINITY FOUNDATION and/or DOES 1-5.

27 ANTHONY and TRINITY are vehemently hostile to evangelical leaders in general, and to Dr. PRICE

28 in particular, and are therefore a biased and unreliable source. The other Defendants were aware of this

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

2

1 and therefore should have closely examined and investigated any film or other materials that

2 ANTHONY and/or TRINITY provided to them, such as the Clip, and should have refused to broadcast

3 the Clip without reviewing the whole film from which the Clip was taken, in order to determine the

4 context in which Dr. PRICE made the statements that appear in the Clip. But their desire to create a

5 sensationalist program to boost ratings overcame any interest in determining the truth. In broadcasting

6 the Clip as alleged, Defendants breached fundamental journalistic guidelines and acted in reckless

7 disregard for the truth or falsity of that which was broadcast.

8      7.    After 50 years devoted to carrying the message of God and being of service to his

9 fellows, Dr. PRICE's reputation was severely harmed. He was portrayed on national and international

10 television and the Internet as a hypocrite and thief who had by his own admission, taken money from

11 his supporters to support an ostentatious and extravagant lifestyle. This portrayal damaged or destroyed

12 the trust and affection that many of his supporters felt for Dr. PRICE, who was devastated, embarrassed

13 and greatly humiliated, and has suffered severe emotional distress.

14 <center>**PARTIES, JURISDICTION AND VENUE**</center>

15      8.    Dr. PRICE is, and at all times herein mentioned was, an individual residing in the

16 County of Los Angeles, State of California.

17      9.    Plaintiff is informed and believes, and on that basis alleges, that defendant AMERICAN

18 BROADCASTING COMPANIES, INC. ("ABCI"), is, and at all times herein mentioned was, a

19 corporation organized under the laws of the State of Delaware, with its principal place of business in

20 the State of New York.

21      10.    Plaintiff is informed and believes, and on that basis alleges, that defendant ABC Inc., is,

22 and at all times herein mentioned was, a corporation organized under the laws of the State of Delaware

23 with its principal place of business in the State of New York. ABC Inc., owns and/or controls ABCI.

24      11.    Plaintiff is informed and believes, and on that basis alleges, that defendant THE WALT

25 DISNEY COMPANY ("DISNEY"), is, and at all times herein mentioned was, a corporation organized

26 under the laws of the State of Delaware with its principal place of business in the County of Los

27 Angeles, State of California, which owns and/or controls ABC, Inc. It acquired the Lifetime television

28 channel in or about 1996, and owned and controlled it when the Program was broadcast in March 2007.

<div style="text-align:left; writing-mode: vertical">GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.<br>360 NORTH BEDFORD DRIVE, SUITE 204<br>BEVERLY HILLS, CA 90210-5157</div>

12.     Plaintiff is informed and believes, and on that basis alleges, that defendants JOHN

STOSSEL and GLEN RUPPEL are, and at all times herein mentioned were, individuals residing in the

State of New York.

13.     Plaintiff is informed and believes, and on that basis alleges, that defendant the TRINITY

FOUNDATION, INC., ("TRINITY") is an entity of unknown form, with its principal place of business

in the City of Dallas, State of Texas, and that defendant OLE ANTHONY is, and at all times herein

mentioned was, an individual residing in the State of Texas, who was an officer, agent, director or

employee of TRINITY.

14.     The true names and capacities, whether individual, corporate, associate or otherwise, of

those defendants sued herein as DOES 1 through 50, inclusive are presently unknown to Plaintiff, who

therefore sues said defendants by fictitious names. Whenever in this Complaint reference is made to

"Defendants", such allegation shall be deemed to mean the acts of all of the defendants mentioned in

this paragraph and those above, acting individually, jointly and/or severally.

15.     Plaintiff is informed and believes, and on that basis alleges, that at all relevant times,

each Defendant was an agent and/or employee of every other Defendant.  In doing the things alleged in

the causes of action stated herein, every Defendant was acting within the course and scope of this

agency or employment, and was acting with the consent, permission and authorization of each of the

remaining Defendants.  All actions of each Defendant as alleged herein were ratified and approved by

every other Defendant or his/its officers or managing agents.

16.     Plaintiff is informed and believes, and on that basis alleges, that each of the Defendants

is, and at all times mentioned herein was, a mere shell, instrumentality, and conduit through which the

other Defendants carried on their business in the corporate name, exercising complete control and

dominion over said business to the extent that any individuality or separateness of Defendants does not,

and at all times mentioned did not, exist.

17.     ABCI, ABC Inc., and DISNEY (collectively, the "Corporate Defendants") control the

ABC television network, and other related media. They caused the Teasers and the Program to be

broadcast on television across the nation, including in the County of Los Angeles, State of California,

and internationally, and in other media, including the internet, that could be viewed by residents of the

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

County of Los Angeles, State of California.

## BACKGROUND

18.    Dr. PRICE, who was born in 1932 in Santa Monica, California, was educated in the Los Angeles public school system, and attended Los Angeles City College. He began his long career as a religious leader when he became an assistant pastor in the Baptist church in 1955. He has received many awards, including a Horatio Alger award, an honorary Doctorate of Divinity Degree from Oral Roberts University, and the "Kelly Miller Smith Interfaith Award" presented by the Southern Christian Leadership Conference, which honors clergy who have made the most significant contribution through religious expression affecting the nation and world. And Dr. PRICE was the first black pastor to speak at "Town Hall Los Angeles." In addition, he is the author of some 50 books on faith, healing, prosperity and Christianity, and has sold over 2.1 million books since 1976. His message that economic prosperity can be achieved through a faith-based, God-centered life brings hope and commitment to the community.

19.    Dr. PRICE founded the CHURCH in Inglewood, California, in 1973. In 1981, the CHURCH purchased the 32-acre former campus of Pepperdine University on Vermont Avenue in Los Angeles, where it built the FaithDome, one of the largest church sanctuaries in the United States with over 9,000 seats. It has an established preschool, elementary, middle, and high school and correspondence school, and is known worldwide through the "Ever Increasing Faith" TV, radio and tape ministry, which is broadcast on stations that reach more than 15 million households each week, and airs in 15 of the 20 largest markets throughout the United States. Currently, the CHURCH's membership totals over 22,000. Dr PRICE remains the minister and is the principal preacher at the CHURCH's services. He is held in great esteem and affection by his members and the public at large. The Church finances missions to some of Africa's poorest communities in Namibia, Ghana and Zimbabwe, contributes to other well-established ministries in Haiti, Brazil and Ghana, and supports food and housing programs and other outreach services in its South Los Angeles community.

## FIRST CAUSE OF ACTION

### (Defamation)

20.    The first sign that something was wrong came the morning of March 23, 2007, when

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

1    various CHURCH members called to say that they were shocked and disturbed to see Dr. PRICE on

2    television appearing to describe how enormously wealthy he was. What they had seen was one or more

3    of the Teasers that was broadcast on the ABC network and through its domestic and international

4    affiliates, subsidiaries and licensees to persuade viewers to watch the Program.

5        21.    The Teasers and the Program contain numerous implications and statements (the

6    "Offending Statements") that are false and defamatory, including, without limitation, the following:

7            (a)    A Teaser was broadcast on GMA on or about March 23, 2007 ("Teaser A") that

8    consisted of film showing large houses and luxury automobiles, followed by film of various preachers,

9    including footage from the Clip showing Dr. PRICE preaching (but without broadcasting what he was

10   saying). The words in large block capitals, "JOHN STOSSEL: ENOUGH!" appeared on the screen, and

11   the voice of GMA co-anchor Diane Sawyer exclaimed, "6 million dollar yachts, private jets, Rolls

12   Royces – sound like the good life? What about the godly life? John Stossel takes us inside the lives of

13   some preachers and says 'enough'."

14           (b)    A Teaser was broadcast on GMA on or about March 23, 2007 ("Teaser B") that

15   consisted of film showing large houses and luxury automobiles, followed by film of various preachers,

16   including footage from the Clip showing Dr. PRICE preaching (but without broadcasting what he was

17   saying). The words in large block capitals, "JOHN STOSSEL: ENOUGH!" appeared on the screen, and

18   Ms. Sawyer says, "Look at these mansions; this Rolls Royce. Think they're owned by moguls? No

19   they're owned by preachers. And John Stossel is here to say 'enough'."

20           (c)    A Teaser was broadcast on GMA on or about March 23, 2007 at about 7:30 a.m.

21   ("Teaser C"), which consisted of film showing large houses and luxury automobiles, followed by Miss

22   Sawyer saying, "Does this look like something out of 'Lifestyles of The Rich and Famous'? If you think

23   so, you are wrong." News presenter Chris Cuomo chimed in, "I know. These are preachers who fly

24   around, imagine this, in private jets and lounge on multi-million dollar yachts." Miss Sawyer then

25   stated that STOSSEL had said "Enough!" and was "taking on the case," and would be investigating

26   these preachers in the Program that would air that evening. The GMA presenters are then shown

27   laughing, the clear implication being that they were anticipating with pleasure the exposure of corrupt

28   preachers by STOSSEL in the Program.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
280 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

                 COMPLAINT FOR DEFAMATION AND INFLICTION OF EMOTIONAL DISTRESS

1       (d)    A Teaser was broadcast on GMA on or about March 23, 2007 at about 7:38 a.m.

2 ("Teaser D") which consisted of film showing large houses and luxury automobiles, followed by film of

3 various preachers, including footage from the Clip showing Dr. PRICE preaching (but without

4 broadcasting what he was saying). Miss Sawyer says, "Mansions, yachts, Rolls Royces - the jet set

5 life? Guess again. This is how some major league preachers really live. John Stossel is here to say

6 'enough'."

7       (e)    Another teaser that lasted over 2 minutes was broadcast on or about March 23,

8 2007, from about 7:42-7:44 a.m. ("Teaser E"). The words, "MINISTERS WITH MANSIONS AND

9 ROLLS ROYCES" appeared at the bottom of the screen in block capitals throughout the Teaser, which

10 began with co-anchor Robin Roberts saying, "The bible discusses how difficult it is for the wealthy to

11 reach heaven, but that hasn't stopped some preachers from attaining vast fortunes." She then introduced

12 STOSSEL who explained that the Program would feature a man who investigated church finances

13 because he believed the preachers "are squandering our money." As footage of several preachers

14 making what appear to be unrealistic claims combined with requests for donations was shown,

15 STOSSEL asked if the donors' money is going to good use. Then there is film of the congregation at a

16 CHURCH service. Then one of the CHURCH's members is shown stating that she knows that her

17 money is "going to excellent use." STOSSEL then states, "And yet her pastor, Fred Price, boasts that

18 (the Clip is shown with Dr PRICE saying 'I live in a 25 room mansion, I have my own 6 million dollar

19 yacht, I have my own private jet and I have my own helicopter and I have 7 luxury automobiles,'

20 showing a close up of a Rolls Royce)." STOSSEL is heard to comment, "At least he tells people about

21 it. But many preachers don't advertise how well they live..." STOSSEL then introduces a man named

22 Rusty Leonard who gave up a Wall Street job to investigate the finances of certain ministries, and has

23 concluded that the donors "are being hosed." He describes how well certain other preachers live. The

24 Teaser then cuts back to Robin Roberts who states that the Program focuses on several people who

25 have said that "this has to stop."

26       (f)    The Program itself aired on ABC television in the County of Los Angeles on or

27 about March 23, 2007, beginning at or about 9:00 pm. It began with STOSSEL asking, "They preach

28 the gospel of giving to God. But how much of what you give do they keep for themselves?" He focuses

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

166997.4         7

1  on the extravagance of certain preachers, shows a CHURCH service in progress, and then introduces

2  one of the CHURCH's members who states that she knows that her money is "going to excellent use."

3  STOSSEL then states, "And yet her pastor, Fred Price, boasts that (the Clip is shown with Dr PRICE

4  saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own private jet

5  and I have my own helicopter and I have 7 luxury automobiles,'" showing a close up of a Rolls Royce.

6  STOSSEL is commented, "At least he tells people about it. But many preachers don't advertise how

7  well they live..." STOSSEL then introduced a man named Rusty Leonard who gave up a Wall Street

8  job to investigate churches' finances. Over footage showing various preachers including Dr. PRICE,

9  STOSSEL stated that Mr. Leonard believed that it was "unchristian" that certain preachers ask donors

10  for money but do not reveal how they spend it, and that "donors are being hosed," presumably by the

11  preachers that appeared in the program, which included Dr. PRICE.

12       22.    The Offending Statements are false. Dr. PRICE does not own a 25 room mansion, or a

13  yacht, or an aircraft, or a helicopter, and he and his wife own only three automobiles between them.

14  Dr. PRICE has never diverted funds donated to the CHURCH to his own personal use, and receives a

15  salary commensurate with his duties, both ministerial and administrative, that is set and approved by

16  the CHURCH's board of directors. The Board controls the CHURCH's finances, which are audited

17  annually by a firm of certified public accountants, and are open to review by the CHURCH's

18  congregation under a long standing policy of financial transparency.

19       23.    The Offending Statements are libelous on their face. Additionally, because they accuse

20  Dr. PRICE, a minister, of dishonesty by diverting funds donated to the CHURCH to his own personal

21  use in order to finance an absurdly extravagant lifestyle, they are libelous per se.

22       24.    The Offending Statements are reasonably susceptible of a defamatory meaning.

23            (a)    Teaser A. The footage showing Dr. PRICE preaching as the words in question

24  ("6 million dollar yachts, private jets, Rolls Royces – sound like the good life? What about the godly

25  life? John Stossel takes us inside the lives of some preachers and says "enough"), would cause a

26  reasonable viewer to believe that he was diverting funds donated to the CHURCH to provide himself

27  with an absurdly extravagant lifestyle that included a 6 million dollar yacht, a private jet, and 7 Rolls

28  Royces, that he was corrupt, untrustworthy, dishonest, ungodly, greedy and hypocritical, and that this

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157

1    was a practice that caused great moral indignation and outrage, and should be stopped.

2        (b)    Teaser B. By showing footage of Dr. PRICE preaching as the words in question

3    ("Look at these mansions; this Rolls Royce. Think they're owned by moguls? No they're owned by

4    preachers. And John Stossel is here to say 'enough'") are broadcast, Defendants are insinuating that he

5    was diverting funds donated to the CHURCH to provide himself with an absurdly extravagant lifestyle

6    that included mansions and 7 Rolls Royces, and implying that he was corrupt, untrustworthy, dishonest,

7    greedy and hypocritical, and that this was a practice that caused great moral indignation and outrage,

8    and should be stopped.

9        (c)    Teaser C does not name or show Dr. PRICE, but it creates expectation in the

10   viewers' minds that the Program was about preachers who diverted funds donated to their churches to

11   provide themselves with extravagant lifestyles that included private jets and "lounging" on multi-

12   million dollar yachts, and implying that they were corrupt, untrustworthy, dishonest, greedy and

13   hypocritical, and that this was a practice that caused great moral indignation and outrage, and should be

14   stopped.

15       (d)    Teaser D. By showing footage of Dr. PRICE preaching as the words in question

16   ("Mansions, yachts, Rolls Royces - the jet set life? Guess again. This is how some major league

17   preachers really live. John Stossel is here to say 'enough'") are broadcast, Defendants are insinuating

18   that he was diverting funds donated to the CHURCH to provide himself with an absurdly extravagant

19   lifestyle that included mansions and Rolls Royces, and implying that he was corrupt, untrustworthy,

20   dishonest, greedy and hypocritical, and that this was a practice that caused great moral indignation and

21   outrage, which should be stopped

22       (e)    In Teaser E, STOSSEL introduces Dr. PRICE by name and states that he boasts

23   about his great wealth: "... Fred Price boasts that (the commentary ends, and the Clip plays, showing

24   Dr. PRICE saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own

25   private jet and I have my own helicopter and I have 7 luxury automobiles,' showing a close up of a

26   Rolls Royce). STOSSEL comments, "At least he tells people about it. But many preachers don't

27   advertise how well they live..." The clear and unequivocal meaning is that these items belong to Dr.

28   PRICE, and the context suggests that he acquired this money from the CHURCH. This is confirmed by

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

1          (i) the words, "MINISTERS WITH MANSIONS AND ROLLS ROYCES" which

2  appeared at the bottom of the screen throughout the Teaser,

3          (ii) Ms. Roberts saying, "The bible discusses how difficult it is for the wealthy to reach

4  heaven, but that hasn't stopped some preachers from attaining vast fortunes,"

5          (iii) STOSSEL's statement as an introduction to the Clip that Mr. Leonard investigated

6  church finances because he believed the preachers "are squandering our money," which preceded the

7  Clip,

8          (iv) STOSSEL's statement as an introduction to the Clip that Mr. Leonard believed that

9  donors "are being hosed," and

10         (v) the use of the word "yet" ("And yet her pastor, Fred Price, boasts ..") and showing

11  the Clip immediately after the film of the CHURCH member who states that she knows that her money

12  is "going to excellent use," which means or implies that she has been deceived by Dr. PRICE

13      (f)    In the program, STOSSEL introduces Dr. PRICE by name and states that he

14  boasts about his great wealth: "… Fred Price boasts that (the commentary ends, and the Clip plays,

15  showing Dr. PRICE saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have

16  my own private jet and I have my own helicopter and I have 7 luxury automobiles,' as a close up of a

17  Rolls Royce is shown)." STOSSEL comments, "At least he tells people about it. But many preachers

18  don't advertise how well they live…" The clear and unambiguous meaning of this passage is that Dr.

19  PRICE had abused his position as the leader of the CHURCH by diverting and misappropriating money

20  given to the CHURCH to his own personal use in order to live an absurdly extravagant lifestyle. This is

21  confirmed by

22         (i) STOSSEL's statement that Mr. Leonard investigated church finances because he

23  believed the preachers "are squandering our money," which preceding the Clip,

24         (ii) STOSSEL's statement as an introduction to the Clip that Mr. Leonard believed that it

25  was "unchristian" that certain preachers ask donors for money but don't reveal how they spend it, and

26  that "donors are being hosed," and

27         (iii) the use of the word "yet" ("And yet her pastor, Fred Price, boasts ..")  and showing

28  the Clip immediately after the film of the CHURCH member who states that she knows that her money

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

1    is "going to excellent use," which means or implies that she has been deceived by Dr. PRICE.

2    25.    The Offending Statements were also defamatory because they would cause a reasonable

3    viewer to believe that Dr. PRICE had manipulated and used a religious institution, namely, the

4    CHURCH, as a vehicle to reward himself excessively at the donors' expense, thereby deceiving the

5    donors because the money donated to the CHURCH was not used for the purposes that they intended.

6    26.    The Offending Statements were broadcast and otherwise distributed with negligence and

7    knowledge that they were false or with a reckless disregard for the truth or falsity of what was

8    broadcast and otherwise distributed, based upon, but not limited to, the following facts:

9    (a)    Defendants knew that Dr. PRICE did not own any yachts, airplanes, helicopters

10    or 7 luxury automobiles;

11    (b)    ANTHONY and TRINITY are known to the other Defendants to be vehemently

12    hostile to evangelical leaders in general, and to Dr. PRICE in particular, and are therefore biased and

13    unreliable sources. In particular, but without limitation, ABC's religious editor, Peggy Wehmeyer,

14    warned ABC about ANTHONY's and/or TRINITY's bias. The other Defendants should have subjected

15    any film or other materials provided by ANTHONY or TRINITY to close examination and

16    investigation for bias and misconstruction. At the very least, those other Defendants should have

17    refused to broadcast the Clip without reviewing the whole film from which the Clip was taken, in order

18    to determine the context in which Dr. PRICE made the statements that appear in the Clip, but their

19    desire to create a sensationalist program to enlarge their audience and to boost ratings to gain additional

20    advertising revenues overcame any interest in determining the truth, or in treating with fairness a man

21    who had devoted his life to the service of his fellows;

22    (c)    Defendants deliberately intended to convey the impression that Dr. PRICE had

23    abused his position as the leader of the CHURCH by diverting and misappropriating money given to

24    the CHURCH to his own personal use in order to live an absurdly extravagant lifestyle, which was

25    known to it to be false; apart from the Clip, Defendants had no reason to believe that Dr. PRICE was

26    anything other than an honest and devoted minister;

27    (d)    Defendants never approached Dr. PRICE or the CHURCH to check their facts by

28    asking about the Clip and/or the CHURCH's financial oversight structure, and/or the source of the

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

166997.4

11

1  funds with which Dr. PRICE bought the house he lives in, and/or the automobile he drives; and

2          (e)      The Sermon was broadcast in or about 1997 on the Lifetime Television channel,

3  which at that time was, and currently is, owned by DISNEY. Therefore the broadcaster Defendants

4  could have discovered the context in which the Clip appeared at any time if they had bothered to look

5  in their own archives, but they failed to do so.

6          (f)      Plaintiff is informed and believes, and on that basis alleges, that the Corporate

7  Defendants subscribe to journalistic guidelines designed to promote good journalism and to prevent the

8  dissemination of inaccurate and/or biased information. However Defendants' desire to create a

9  sensationalist program and boost ratings prevailed, and Defendants wilfully violated those guidelines.

10          27.      ANTHONY, TRINITY and DOES 1-5, acting with actual malice, provided the

11  Clip to the other Defendants with the intention and expectation that the Clip would be broadcast on

12  ABC, despite knowing (a) that it was taken out of context, (b) that it conveyed a false and defamatory

13  meaning as to Dr. PRICE, and (c) that it was not an admission by Dr. PRICE that he had a yacht, plane,

14  helicopter or 7 luxury automobiles. As a result, ANTHONY, TRINITY and/or DOES 1-5 are liable for

15  the broadcast and publication of the Offending Statements.

16          28.      As a direct and proximate result of Defendants' conduct under the facts alleged

17  above, Dr. PRICE's reputation as an honest and trustworthy man has been severely damaged. After 50

18  years devoted to carrying the message of God and being of service to his fellows, Dr. PRICE was

19  publicly branded a hypocrite and a thief who had, allegedly by his own admission, taken money from

20  his supporters to support an ostentatious and extravagant lifestyle. As a result, the trust and affection

21  that many of his supporters felt for Dr. PRICE has been damaged or destroyed. He was devastated,

22  embarrassed and greatly humiliated, and has suffered severe emotional distress, and is entitled to be

23  compensated in an amount to be established according to proof.

24          29.      Plaintiff timely demanded that the broadcaster Defendants correct and retract their false

25  and defamatory broadcast. A purported retraction was broadcast on 20/20 on May 11 2007, but it failed

26  to comply with the requirements of Civ. Code §48a(2) which provides that a retraction must be

27  "published or broadcast in substantially as conspicuous a manner in said newspaper or on said

28  broadcasting station as were the statements claimed to be libelous."

166997.4

12

COMPLAINT FOR DEFAMATION AND INFLICTION OF EMOTIONAL DISTRESS

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
280 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

30.     The above-described conduct of Defendants, and each of them, was willful and was intended to cause injury to Plaintiff, who is therefore entitled to an award of exemplary or punitive damages. Defendants, and each of them, intentionally created a sensationalist program to boost ratings to gain additional advertising revenues overcame any interest in determining the truth, or in treating with fairness a man who has devoted his life to the service of his fellows.

## SECOND CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

31.     Plaintiff incorporates into this cause of action all allegations contained in paragraphs 1 through 30 of this Complaint as though set forth fully herein.

32.     Defendants caused the Offending Statements to be broadcast despite knowing that they were false and defamatory, thereby intending to cause Dr. PRICE to suffer severe emotional distress.

33.     As a direct and proximate result of Defendants' conduct under the facts alleged above, Dr. PRICE has suffered severe emotional shock and distress and seeks damages in an amount to be established according to proof.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     For general damages according to proof at trial;

2.     For special damages according to proof at trial;

3.     For exemplary and punitive damages;

4.     For costs of suit incurred herein; and

5.     For such other and further relief as the Court deems just and proper.

DATED: July 23, 2007                    GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

By: _____
ANTHONY MICHAEL GLASSMAN
ALEXANDER RUFUS-ISAACS
Attorneys for Dr. FREDERICK K. C. PRICE

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157

## DEMAND FOR JURY TRIAL

Plaintiff Dr. FREDERICK K. C. PRICE hereby demands trial by jury.

DATED: July 23, 2007

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

By: _____

ANTHONY MICHAEL GLASSMAN
ALEXANDER RUFUS-ISAACS
Attorneys for Dr. FREDERICK K. C. PRICE

166997.4

COMPLAINT FOR DEFAMATION AND INFLICTION OF EMOTIONAL DISTRESS

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157

# EXHIBIT 10

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

FILED

WHITE O'CONNOR CURRY LLP
  Andrew M. White (STATE BAR NO. 60181)
  David E. Fink (STATE BAR NO. 169212)
  Allison S. Rohrer (STATE BAR NO. 224029)
10100 Santa Monica Boulevard, Twenty-Third Floor
Los Angeles, California 90067-4008
Telephone: (310) 712-6100
Facsimile: (310) 712-6199
awhite@whiteo.com
dfink@whiteo.com
arohrer@whiteo.com

Attorneys for Defendants John Stossel;
Glenn Ruppel; American Broadcasting
Companies, Inc.; and ABC, Inc.

2007 SEP 21  PM 2: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. C  CALIF.
LOS ANGELES

BY_____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| DR. FREDERICK K.C. PRICE, an individual,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN STOSSEL, an individual, GLEN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware Corporation, THE WALT DISNEY COMPANY, a Delaware Corporation, OLE ANTHONY, an individual, TRINITY FOUNDATION, INC., an entity, form unknown, and DOES 1-100, inclusive,<br><br>          Defendants. | CASE NO. CV 07-06015 AHM (FFM)<br><br>(The Honorable A. Howard Matz)<br><br>**ANSWER OF DEFENDANTS JOHN STOSSEL, GLENN RUPPEL, AMERICAN BROADCASTING COMPANIES, INC., AND ABC, INC. TO COMPLAINT OF PLAINTIFF FREDERICK K.C. PRICE**<br><br>Date Filed:      July 24, 2007<br>Date Removed:  September 17, 2007<br><br>Trial Date:      None Set |

213732.1.doc

ANSWER

F: 9/21/07

1         Defendants John Stossel; Glenn Ruppel (erroneously sued as Glen Ruppel);

2    American Broadcasting Companies, Inc.; and ABC, Inc. (erroneously sued as ABC

3    Inc.) (collectively, "Defendants") hereby answer the Complaint of Plaintiff

4    Frederick K.C. Price ("Plaintiff") as follows:

5    <div align="center">**INTRODUCTION**</div>

6         1.    Defendants are without knowledge or information sufficient to form a

7    belief as to the truth of the allegations contained in paragraph 1 of the Complaint

8    and on that basis deny those allegations in full.

9         2.    Defendants admit that on March 23, 2007, a story about the financial

10   openness of Christian ministries was broadcast on the news program "20/20" on the

11   ABC Television Network (the "News Broadcast"). Defendants further admit that

12   the News Broadcast contained a clip of Plaintiff, in which he stated, "I live in a 25-

13   room mansion. I have my own $6 million yacht. I have my own private jet, and I

14   have my own helicopter, and I have seven luxury automobiles" (the "Clip").

15   Defendants are without knowledge or information sufficient to form a belief as to

16   whether the "Sermon was broadcast in or about 1997 on the Lifetime Television

17   channel," and on that basis Defendants deny those allegations in full. Defendants

18   deny, generally and specifically, each and every remaining allegation contained in

19   paragraph 2 of the Complaint.

20        3.    Defendants deny, generally and specifically, each and every allegation

21   contained in paragraph 3 of the Complaint.

22        4.    Defendants admit that Defendant Glenn Ruppel produced the News

23   Broadcast. Defendants further admit that Defendant John Stossel presented the

24   News Broadcast. Except as expressly admitted herein, Defendants deny, generally

25   and specifically, each and every remaining allegation contained in paragraph 4 of

26   the Complaint.

27        5.    Defendants deny, generally and specifically, each and every allegation

28   contained in paragraph 5 of the Complaint.

6.    Defendants admit that prior to the News Broadcast, Defendants Ole Anthony and Trinity Foundation, Inc. provided the Clip to Defendants. Except as expressly admitted herein, Defendants deny, generally and specifically, each and every remaining allegation contained in paragraph 6 of the Complaint.

7.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 7 of the Complaint.

## PARTIES, JURISDICTION AND VENUE

8.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and on that basis deny those allegations in full.

9.    Defendants admit the allegations contained in paragraph 9 of the Complaint.

10.    Defendants admit that the principal place of business of Defendant ABC, Inc. is in the State of New York. Except as expressly admitted herein, Defendants deny, generally and specifically, the remaining allegations contained in paragraph 10 of the Complaint.

11.    On August 29, 2007, Plaintiff dismissed The Walt Disney Company from the above-captioned action. Accordingly, the allegations contained in paragraph 11 of the Complaint are no longer relevant to this action. Defendants therefore deny the allegations contained in paragraph 11 of the Complaint.

12.    Defendants admit that Defendant John Stossel resides in the State of New York. Except as expressly admitted herein, Defendants deny, generally and specifically, each and every remaining allegation contained in paragraph 12 of the Complaint.

13.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and on that basis deny those allegations in full.

///

213732.1.doc

3

ANSWER

14. Defendants are without knowledge or information sufficient to form a belief as to the allegations concerning "Does 1 through 50" contained in paragraph 14 of the Complaint and on that basis deny those allegations in full. Defendants further deny, generally and specifically, each and every remaining allegation contained in paragraph 14 of the Complaint.

15. Defendants deny, generally and specifically, each and every allegation contained in paragraph 15 of the Complaint.

16. Defendants deny, generally and specifically, each and every allegation contained in paragraph 16 of the Complaint.

17. Defendants admit that Defendant American Broadcasting Companies, Inc. owns the ABC Television Network, and that American Broadcasting Companies, Inc. caused the News Broadcast, and certain portions thereof, to be shown on the ABC Television Network and on its website, both of which are accessible internationally.[1]  Except as expressly admitted herein, Defendants deny, generally and specifically, each and every allegation contained in paragraph 17 of the Complaint.

18. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Complaint and on that basis deny those allegations in full.

19. Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Complaint and on that basis deny those allegations in full.

/ / /

/ / /

_____

[1] Plaintiff dismissed The Walt Disney Company from this action; accordingly, Plaintiff's definition of the term "Corporate Defendants" is no longer accurate.



213732.1.doc

4

ANSWER

# FIRST CAUSE OF ACTION

## (Defamation)

20.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20 of the Complaint and on that basis deny those allegations in full.

21.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 21 of the Complaint, including the allegations contained in subparagraphs 21(a)-(f).

22.    Defendants deny the allegation that the "Offending Statements are false." Except as expressly denied herein, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Complaint and on that basis deny those allegations in full.

23.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 23 of the Complaint.

24.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 24 of the Complaint, including the allegations contained in subparagraphs 24(a)-(f).

25.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 25 of the Complaint.

26.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 26 of the Complaint, including the allegations contained in subparagraphs 26(a)-(f).

27.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 27 of the Complaint and on that basis deny those allegations in full.

28.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 28 of the Complaint.



213732.1.doc

29.    Defendants admit that Plaintiff made a retraction request, and that Defendants issued a detailed retraction.  Except as expressly admitted herein, Defendants deny, generally and specifically, each and every allegation contained in paragraph 29 of the Complaint.

30.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 30 of the Complaint.

## SECOND CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

31.    Defendants reallege and incorporate by reference their responses to paragraphs 1 through 30, inclusive.

32.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 32 of the Complaint.

33.    Defendants deny, generally and specifically, each and every allegation contained in paragraph 33 of the Complaint.

## AFFIRMATIVE DEFENSES

By way of affirmative defenses to the claims for relief alleged herein, Defendants, and each of them, allege:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

1.    The claims for defamation and intentional infliction of emotional distress fail to allege sufficient facts upon which relief against Defendants can be granted.

## SECOND AFFIRMATIVE DEFENSE

### (California Code of Civil Procedure § 425.16)

2.    The Complaint, and each cause of action therein, is barred, in whole or in part, by Section 425.16 of the California Code of Civil Procedure because Plaintiff's purported claims arise from Defendants' acts in furtherance of their rights of free speech under the United States and California Constitutions.



213732.1.doc

6

ANSWER

## THIRD AFFIRMATIVE DEFENSE

### (True or Substantially True)

3.    The Complaint, and each cause of action therein, is barred, in whole or in part, because any and all of the statements complained of are true or substantially true.

## FOURTH AFFIRMATIVE DEFENSE

### (Not Defamatory)

4.    The Complaint, and each cause of action therein, is barred, in whole or in part, because any and all of the statements complained of are not defamatory.

## FIFTH AFFIRMATIVE DEFENSE

### (No Provably False Assertions of Fact)

5.    The Complaint, and each cause of action therein, is barred, in whole or in part, because any and all of the statements complained of are not provably false assertions of fact.

## SIXTH AFFIRMATIVE DEFENSE

### (Full Disclosure of Facts Upon Which Opinion is Based)

6.    The Complaint, and each cause of action therein, is barred, in whole or in part, because any and all of the statements complained of express an opinion and fully disclose the facts upon which the opinion is based.

## SEVENTH AFFIRMATIVE DEFENSE

### (Neither of Nor Concerning Plaintiff)

7.    The Complaint, and each cause of action therein, is barred, to the extent that any and all of the statements and conduct complained of are neither of nor concerning Plaintiff.

## EIGHTH AFFIRMATIVE DEFENSE

### (Privilege)

8.    The Complaint, and each cause of action therein, is barred, to the extent that any and all of the statements and conduct complained of are privileged.

1

## NINTH AFFIRMATIVE DEFENSE

2

### (Constitutional Rights of Free Speech)

3       9.      Plaintiff is a public figure with respect to the subject matter of the

4   statements and conduct at issue in this lawsuit and/or any and all of the statements

5   complained of relate to matters of general public interest and concern, and the

6   dissemination of newsworthy information. In addition, the conduct at issue was in

7   furtherance of newsgathering. Therefore, any and all of the statements and conduct

8   complained of are privileged under the First and Fourteenth Amendments to the

9   Constitution of the United States, and Article I, Section 2 of the Constitution of the

10  State of California.

11

## TENTH AFFIRMATIVE DEFENSE

12

### (Lack of Actual Malice)

13      10.      The Complaint, and each cause of action therein, is barred, in whole or

14  in part, because any and all of the statements complained of were not made with

15  actual malice.

16

## ELEVENTH AFFIRMATIVE DEFENSE

17

### (Presumed, Exemplary and Punitive Damages Disallowed)

18      11.      Plaintiff's claims of presumed, exemplary and punitive damages are

19  constitutionally barred because any and all of the statements complained of were not

20  made with actual malice. Moreover, at no time whatsoever did Defendants act with

21  fraud, oppression, or common law malice and therefore punitive damages are

22  unavailable as a matter of law.

23

## TWELFTH AFFIRMATIVE DEFENSE

24

### (Fair Comment)

25      12.      The Complaint, and each cause of action therein, is barred, in whole or

26  in part, because any and all of the statements complained of constitute fair comment

27  on matters of general public interest and concern and are privileged on this basis.

28  / / /

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Neutral Reportage)**

13.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of neutral reportage.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(California Civil Code § 48.5)**

14.    Defendants own, license, and/or operate a visual or sound radio broadcasting station or network of stations and exercised due care to prevent the publication or utterance of any and all of the statements that Plaintiff alleges (and Defendants expressly deny) are defamatory.  The Complaint, and each cause of action therein, therefore is barred pursuant to Section 48.5 of the California Civil Code because any and all damages (the existence of which Defendants expressly deny) that Plaintiff allegedly sustained were from statements or matters uttered or published by someone other than Defendants or Defendants' agents or employees.

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(California Civil Code § 48a)**

15.    Pursuant to Sections 48.5(4) and 48a of the California Civil Code, Plaintiff is barred from recovering anything other than special damages in connection with any statement with respect to which Plaintiff failed to make a timely and sufficiently specific demand for correction.

**SIXTEENTH AFFIRMATIVE DEFENSE**

**(California Civil Code § 48a)**

16.    Pursuant to Sections 48.5(4) and 48a of the California Civil Code, Plaintiff is barred from recovering anything other than special damages in connection with any statement with respect to which Defendants issued a retraction.

/ / /

/ / /

/ / /

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Statutory Bar to Exemplary Damages)

17.    Pursuant to Sections 48.5(4) and 48a of the California Civil Code, Plaintiff is barred from recovering exemplary damages because Defendants issued a retraction and/or any and all of the statements complained of were not made with "actual malice."

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Laches)

18.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of laches.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

19.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the applicable statute(s) of limitations.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Failure To Plead Special Damages With Sufficient Particularity)

20.    Plaintiff has failed to plead special damages with sufficient particularity.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Lack of Damage)

21.    Plaintiff neither sustained any cognizable damages whatsoever nor sustained any cognizable damages as a consequence of any act or omission allegedly attributable to Defendants.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Lack of Injury)

22.    The alleged publications did not harm Plaintiff's reputation whatsoever.

/ / /

/ / /

213732.1.doc

1

## TWENTY-THIRD AFFIRMATIVE DEFENSE

2

### (Lack of Knowledge and/or Intent)

3       23.    Insofar as Plaintiff alleges that Defendants intended to do any act or

4    make any statement, Defendants, at all material times thereto, lacked the requisite

5    knowledge and/or intent, and, thus, Plaintiff's purported causes of action predicated

6    on such knowledge or intent are barred as a matter of law.

7

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

8

### (Lack of Recklessness)

9       24.    The Complaint, and each cause of action therein, is barred because any

10    and all of the statements complained of were not made with recklessness or gross

11    recklessness.

12

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

13

### (Lack of Proximate Cause)

14       25.    The Complaint, and each cause of action therein, is barred because any

15    and all damages (the existence of which Defendants expressly deny) that Plaintiff

16    allegedly sustained were caused by persons or entities other than Defendants, over

17    whom Defendants have no control, and for whose actions Defendants are not

18    responsible.

19

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

20

### (Consent)

21       26.    The Complaint, and each cause of action therein, is barred, in whole or

22    in part, by the doctrine of consent.

23

## TWENTY-SEVENTH AFFIRMATIVE DEFENSE

24

### (Acquiescence)

25       27.    The Complaint, and each cause of action therein, is barred, in whole or

26    in part, by Plaintiff's voluntary acquiescence to or participation in the production of

27    the alleged broadcast(s).

28    / / /

## TWENTY-EIGHTH AFFIRMATIVE DEFENSE

### (Voluntary Assumption of Risk)

28.    If Plaintiff sustained any of the damages alleged, Plaintiff had full knowledge of and assumed and accepted the hazards and risks which caused, contributed to or resulted in such alleged damages.

## TWENTY-NINTH AFFIRMATIVE DEFENSE

### (Estoppel)

29.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of estoppel.

## THIRTIETH AFFIRMATIVE DEFENSE

### (Waiver)

30.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of waiver.

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Unclean Hands)

31.    The Complaint, and each cause of action therein, is barred, in whole or in part, by the doctrine of unclean hands.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Justification)

32.    The Complaint, and each cause of action therein, is barred to the extent that the statements or conduct complained of were justified.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Offset)

33.    In the event that any damages are awarded to Plaintiff, such damages are to be offset by the amount which Plaintiff has recovered from other persons or entities, by settlement or otherwise, arising out of his purported claims for relief.

/ / /

/ / /



213732.1.doc

12

ANSWER

1

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

2

### (Contributory Conduct of Third Parties)

3       34.     If Plaintiff sustained any of the damages alleged, such damages were

4   caused, in whole or in part, by the carelessness, negligence, want of care or other

5   conduct or misconduct on the part of persons or entities other than Defendants, over

6   whom Defendants have no control and for whom Defendants are not responsible or

7   liable; and in the event that Defendants are found liable for any damages asserted,

8   Defendants are entitled to have their liability diminished in proportion to the

9   damages attributable to the culpable conduct of such persons or entities other than

10   Defendants.

11

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

12

### (No Duty)

13       35.     The Complaint, and each cause of action therein, is barred, in whole or

14   in part, because Defendants do not owe Plaintiff any duty.

15

## THIRTY-SIXTH AFFIRMATIVE DEFENSE

16

### (Uniform Single Publication Act)

17       36.     To the extent Plaintiff is asserting more than one cause of action for

18   damages for libel or slander founded upon any single publication, such as any one

19   broadcast over television, such causes of action in excess of one are barred by

20   Section 3425.3 of the California Civil Code, also known as the Uniform Single

21   Publication Act.

22

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

23

### (Lack of Personal Jurisdiction)

24       37.     This Court lacks personal jurisdiction over some of the Defendants.

25   ///

26   ///

27   ///

28   ///



213732.1.doc

ANSWER

1

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

2

### (Statute of Limitations)

3    38.    The Complaint, and each and every cause of action therein, is barred, in

4 whole or in part, by the applicable statute(s) of limitations, including but not limited

5 to Sections 335.1 and 340 of the California Code of Civil Procedure.

6

## THIRTY-NINTH AFFIRMATIVE DEFENSE

7

### (Additional Defenses)

8    39.    Due to the lack of information as to matters set forth in the Complaint,

9 Defendants have insufficient knowledge or information on which to form a belief as

10 to whether they have additional, as yet unstated, defenses available, and Defendants

11 therefore reserve the right to assert additional defenses in the event that discovery

12 indicates they are proper.

13

14 DATED: September 21, 2007          WHITE O'CONNOR CURRY LLP

15                                   Andrew M. White
                                     David E. Fink

16                                   Allison S. Rohrer

17

18

19                                   By _____

20                                       David E. Fink

                                     Attorneys for Defendants John Stossel; Glenn

21                                   Ruppel; American Broadcasting Companies,
                                     Inc.; and ABC, Inc.

22

23

24

25

26

27

28



213732.1.doc

14

ANSWER

1

## PROOF OF SERVICE

2

3    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

4          At the time of service, I was over 18 years of age and **not a party to this action**. I am
employed in the County of Los Angeles, State of California. My business address is 10100 Santa
5    Monica Boulevard, Twenty-Third Floor, Los Angeles, California 90067-4008.

6          On September 21, 2007, I served true copies of the following document(s) described as
**ANSWER OF DEFENDANTS JOHN STOSSEL, GLENN RUPPEL, AMERICAN
7    BROADCASTING COMPANIES, INC., AND ABC, INC. TO COMPLAINT OF
PLAINTIFF FREDERICK K.C. PRICE** on the interested parties in this action as follows:

8
Anthony Michael Glassman                     Karl R. Loureiro
9    Glassman, Browning, Saltsman & Jacobs, Inc.  Lewis Brisbois Bisgaard & Smith LLP
360 N. Bedford Drive, Suite 204              221 N. Figueroa Street, Suite 1200
10   Beverly Hills, California 90210-5157         Los Angeles, California 90012-2601

11   **BY HAND:** I placed a true and correct copy thereof in a sealed envelope and instructed U.S.
Legal Management Services, Inc. to hand deliver said envelope(s) to the address(es) noted above.
12
          I declare under penalty of perjury under the laws of the United States of America that the
13   foregoing is true and correct and that I am employed in the office of a member of the bar of this
Court at whose direction the service was made.
14
          Executed on September 21, 2007, at Los Angeles, California.
15

16

17

18   Barbara J. Hope

19

20

21

22

23

24

25

26

27

28

213731.1.doc

# EXHIBIT 11

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

# WHITE O'CONNOR CURRY LLP

ATTORNEYS AT LAW

10100 SANTA MONICA BOULEVARD
TWENTY-THIRD FLOOR
LOS ANGELES, CALIFORNIA 90067-4008
TELEPHONE (310) 712-6100
FACSIMILE (310) 712-6199

October 3, 2007

DAVID E. FINK
310.712.6170
dfink@whiteo.com

*Via Facsimile and U.S. Mail*

Anthony Michael Glassman
Richelle Kemler
Glassman, Browning, Saltsman & Jacobs, Inc.
360 North Bedford Drive, Suite 204
Beverly Hills, California 90210-5157

Re:    *Price v. Stossel et al.*
       *Case No. CV07-06015 RGK (FFMx)*

Dear Counsel:

As you and I have discussed several times, Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc., and ABC, Inc. (collectively, "Defendants") intend to file a motion to strike the Complaint of Plaintiff Frederick K.C. Price ("Plaintiff") pursuant to Section 425.16 of the California Code of Civil Procedure. We realize that all parties have requested a stay in the proceedings so that our collective "full-attention" can be devoted to mediation, and we certainly intend to participate in the mediation in good faith. Judge Klausner's standing order, however, specifically indicates that "[p]roposed stipulations extending deadlines do not become effective unless and until [the] Court so orders." *See Standing Order*, Rule 9. Accordingly, in an abundance of caution, and in accordance with our meet and confer obligations under Local Rule 7-3, we summarize below the grounds upon which our anticipated anti-SLAPP motion will be based (as we have previously discussed).

Defendants will move to strike the Complaint on the grounds that Plaintiff's claims arise from an act by Defendants in furtherance of their right of free speech under the United States and California Constitutions in connection with a public issue or a matter of widespread public interest. As a result, Plaintiff must carry his burden under the anti-SLAPP statute to establish a reasonable probability that he will prevail on his claims against Defendants.

Plaintiff, a public figure, cannot carry his burden in establishing, as he must, that the alleged statements were false and defamatory and that Defendants acted with actual malice. Indeed, not one of the allegedly defamatory statements is actionable because the statements (if they were made) are true, were not "of and concerning" Plaintiff,

213517.2.doc

WHITE O'CONNOR CURRY LLP

Anthony Michael Glassman
Richelle Kemler
October 3, 2007
Page 2

do not constitute specific factual assertions, and/or constitute non-actionable opinion or questions. Moreover, Defendants issued a retraction consistent with the requirements under Section 48a of the California Civil Code and, consequently, Plaintiff is entitled to – at most – special damages, which he did not (because he cannot) plead sufficiently. Finally, Plaintiff's claim for intentional infliction of emotional distress arises from the same acts which fail to support his defamation claim. Therefore, the emotional distress claim falls with the defamation claim.

   Should you wish to discuss this matter further, we are available to meet and confer with you at your convenience.

     Very truly yours,

     David E. Fink
   of WHITE O'CONNOR CURRY LLP

cc: William E. Pallares

213517.2.doc

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO              0485
CONNECTION TEL        114#0100#152#13102716041
CONNECTION ID
ST. TIME             10/03 17:37
USAGE T              00'58
PGS. SENT               3
RESULT               OK
```



**WHITE O'CONNOR CURRY** LLP
ATTORNEYS AT LAW

**10100 Santa Monica Boulevard
Los Angeles, California 90067-4008
Telephone (310) 712-6100
Facsimile (310) 712-6199**

# FACSIMILE COVER PAGE

**Date:**    October 3, 2007

**Pages:**    3

**File No.:**    0100-152

| NAME/COMPANY | TELEPHONE | FACSIMILE |
|---|---|---|
| Anthony Glassman<br>Richelle Kemler<br>Glassman, Browning et al. | 310.278.5100 | 310.271.6041 |

**From:**    David E. Fink    **Direct Dial:**    310.712.6170

**email:**    dfink@whiteo.com

**Message:**    **PLEASE SEE ATTACHED.**

# EXHIBIT 12

to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

ANTHONY MICHAEL GLASSMAN (SBN 037934)
ALEXANDER RUFUS-ISAACS (SBN 135747)
RICHELLE L. KEMLER (SBN 232712)
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, California 90210-5157
Telephone: (310) 278-5100
Facsimile: (310) 271-6041

Attorneys for Plaintiff
DR. FREDERICK K. C. PRICE

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>    Plaintiff,<br><br>    v.<br><br>JOHN STOSSEL, an individual, GLEN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC, INC., a Delaware corporation, OLE ANTHONY, an individual, TRINITY FOUNDATION, INC., an entity, form unknown, and DOES 1-100, inclusive,<br><br>    Defendants. | Case No. CV07-06015 [RGK] [FFMx]<br><br>Honorable R. Gary Klausner<br><br>JOINT STIPULATION AND PROPOSED ORDER TO STAY PROCEEDINGS TO ALLOW PARTIES TO PURSUE MEDIATION<br><br>(Declaration of Anthony M. Glassman filed concurrently herewith)<br><br>Date Filed:      July 24, 2007<br>Date Removed:  September 17, 2007<br><br>Trial Date:      None Set |

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

214191.1.doc167815.1

S. 10/1/07

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

**RECITALS**

1.    WHEREAS Plaintiff Frederick K.C. Price  ("Plaintiff") filed his Complaint for defamation and intentional infliction of emotional distress in the Los Angeles Superior Court against Defendants John Stossel, Glenn Ruppel (erroneously sued as Glen Ruppel), American Broadcasting Companies, Inc., ABC, Inc. (erroneously sued as ABC Inc.), Ole Anthony, and Trinity Foundation, Inc. (collectively, "Defendants"), on July 24, 2007 (the "Action").

2.    WHEREAS Defendants removed the Action to the United States District Court for the Central District on September 17, 2007.

3.    WHEREAS Defendants filed their Answers to the Complaint on September 21, 2007.

4.    WHEREAS on September 26, 2007, the Court entered an order setting a Scheduling Conference for November 26, 2007.

5.    WHEREAS no prior requests for extensions or stays have been requested. (Declaration of Anthony M. Glassman ("Glassman Decl.") ¶ 4.)

6.    WHEREAS Plaintiff and Defendants (collectively, the "Parties") desire to resolve this matter in its entirety by mediation, if possible.  To this end, the Parties have labored for several weeks to select a mutually agreeable mediator and a mutually agreeable date of mediation.  On September 27, 2007, the Parties agreed to participate in a mediation before the Honorable Lourdes G. Baird (Ret.) on November 14, 2007, which was the first date that Judge Baird was available. (Glassman Decl. ¶ 5.)

7.    WHEREAS absent resolution of this matter, Defendants anticipate that they will file "anti-SLAPP" motions pursuant to Section 425.16 of the California Code of Civil Procedure.  The deadline to file the motion is on or before October 16, 2007, for Defendants Trinity Foundation, Inc. and Ole Anthony.  The deadline to file the motion is October 28, 2007, for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc.  (See Glassman Decl. ¶ 6.)

/ / /

8.    WHEREAS in an effort to resolve this Action, expeditiously if possible, without incurring unnecessary costs or wasting judicial resources, the Parties seek a temporary stay of proceedings in this Action while the Parties mediate in good faith. (Glassman Decl. ¶ 3.)  Specifically, the Parties seek to stay the proceedings such that (a) the Scheduling Conference is continued until January 3, 2008, and (b) the deadline for Defendants to file their anti-SLAPP motions is extended until on or before December 15, 2007.

## STIPULATION

By and through their attorneys, the Parties hereby stipulate as follows, subject to the approval of the Court:

1.    The Action is stayed such that (a) the Scheduling Conference is continued until January 3, 2008, or until such date thereafter that the Court deems acceptable; and (b) the deadline for Defendants to file their anti-SLAPP motions is extended until on or before December 15, 2007.

Date: September 28, 2007    Glassman, Browning, Saltsman & Jacobs, Inc.
By:_____
Anthony M. Glassman
Attorneys for Plaintiff Dr. Frederick K. C. Price

Date: September 28, 2007    White O'Connor Curry, LLP
By:_____
David E. Fink
Attorneys for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc.

Date: September 28, 2007    Lewis, Brisbois, Bisgaard & Smith, LLP
By:_____
William E. Pallares
Attorneys for Ole Anthony and Trinity Foundation, Inc.

**IT IS SO ORDERED.**

Date:_____

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

214191.1.docError! Unknown document property name..Error! Unknown document property name.                    3

8.    WHEREAS in an effort to resolve this Action, expeditiously if possible, without incurring unnecessary costs or wasting judicial resources, the Parties seek a temporary stay of proceedings in this Action while the Parties mediate in good faith. (Glassman Decl. ¶ 3.)  Specifically, the Parties seek to stay the proceedings such that (a) the Scheduling Conference is continued until January 3, 2008, and (b) the deadline for Defendants to file their anti-SLAPP motions is extended until on or before December 15, 2007.

## STIPULATION

By and through their attorneys, the Parties hereby stipulate as follows, subject to the approval of the Court:

1.    The Action is stayed such that (a) the Scheduling Conference is continued until January 3, 2008, or until such date thereafter that the Court deems acceptable; and (b) the deadline for Defendants to file their anti-SLAPP motions is extended until on or before December 15, 2007.

Date: September 28, 2007          Glassman, Browning, Saltsman & Jacobs, Inc.
                                   By:_____
                                        Anthony M. Glassman
                                   Attorneys for Plaintiff Dr. Frederick K. C. Price

Date: September 28, 2007          White O'Connor Curry, LLP
                                   By:_____
                                        David E. Fink
                                   Attorneys for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc.

Date: September 28, 2007          Lewis, Brisbois, Bisgaard & Smith, LLP
                                   By:_____
                                        William E. Pallares
                                   Attorneys for Ole Anthony and Trinity Foundation, Inc.

**IT IS SO ORDERED.**

Date:_____

                                   _____
                                   Judge R. Gary Klausner

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157

214191.1.doc167815.1                          3
JOINT STIPULATION AND PROPOSED ORDER TO STAY PROCEEDINGS

**PROOF OF SERVICE BY MAIL**
(CCP §1013a(3))

I certify and declare as follows:

I am over the age of 18 and not a party to this action. My business address is 360 North Bedford Drive, Suite 204, Beverly Hills, California 90210-5157, which is located in the County of Los Angeles, State of California, where the service described below took place.

I am "readily familiar" with the business practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. Correspondence so collected and processed is deposited with the United States Postal Service that same day in the ordinary course of business.

On October 1, 2007, at the above business address, I placed true copies of the foregoing document described as **JOINT STIPULATION AND PROPOSED ORDER TO STAY PROCEEDINGS TO ALLOW PARTIES TO PURSUE SETTLEMENT** for deposit in the United States Postal Service in sealed envelope(s), with postage fully prepaid, addressed as follows:

SEE ATTACHED SERVICE LIST

and such envelope(s) were placed for collection and mailing on that date following ordinary business practices.

Executed on October 1, 2007, at Beverly Hills, California.

☐ (State)          I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☒ (Federal)        I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

_Stephanie Webb_
Stephanie Works

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

## SERVICE LIST

Andrew M. White (SBN 60181)
David E. Fink (SBN 169212)
Allison S. Rohrer (SBN 224029)
White O'Connor Curry LLP
10100 Santa Monica Blvd., 23rd Floor
Los Angeles, CA 90067-4008
Telephone: (310) 712-6100
Facsimile:  (310) 712-6199

Attorneys for Defendants John Stossel; Glenn
Ruppel; American Broadcasting Companies,
Inc.; and ABC, Inc.

Karl R. Loureiro (SBN 162318)
William E. Pallares (SBN 187740)
Lewis Brisbois Bisgaard & Smith LLP
222 N. Figueroa St., Suite 1200
Los Angeles, CA 90012-2601
Telephone:  (213) 250-1800
Facsimile:  (213) 250-7900

Attorneys for Defendants Ole Anthony and
Trinity Foundation, Inc.

# EXHIBIT 13

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

1  ANTHONY MICHAEL GLASSMAN (SBN 037934)
   ALEXANDER RUFUS-ISAACS (SBN 135747)
2  RICHELLE L. KEMLER (SBN 232712)
   GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
3  360 North Bedford Drive, Suite 204
   Beverly Hills, California 90210-5157
4  Telephone: (310) 278-5100
   Facsimile: (310) 271-6041
5

6  Attorneys for Plaintiff
   DR. FREDERICK K. C. PRICE
7

FILED
CLERK, U S DISTRICT COURT

OCT 15 2007

CENTRAL DISTRICT OF CALIFORNIA
BY                                  DEPUTY

Priority ___
Send    ___
Enter   ___
Closed  ___
JS-5/JS-6 ___
JS-2/JS-3 ___
Scan Only ___

8              UNITED STATES DISTRICT COURT

9      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

10

11  Dr. FREDERICK K. C. PRICE, an          Case No. CV07-06015 [RGK] [FFMx]
    individual,
12                                         STIPULATION OF DISMISSAL
                                           PURSUANT TO RULE 41(a)(1)(ii)
13              Plaintiff,                 OF THE FEDERAL RULES OF
                                           CIVIL PROCEDURE
14          v.

15  JOHN STOSSEL, an individual, GLEN      Honorable R. Gary Klausner
    RUPPEL, an individual, AMERICAN
16  BROADCASTING COMPANIES,
    INC., a Delaware corporation, ABC,     Date Filed:     July 24, 2007
17  INC., a Delaware corporation, OLE      Date Removed:  September 17, 2007
    ANTHONY, an individual, TRINITY
18  FOUNDATION, INC., an entity, form      Trial Date:     None Set
    unknown, and DOES 1-100, inclusive,
19
                Defendants.
20

21      WHEREAS, the parties wish to concentrate their efforts and utilize their resources

22  in pursuit of settlement of this matter;

23      WHEREAS, the parties agree that the only basis for the voluntary dismissal of the

24  case is to allow the parties to concentrate on the mediation and potential settlement of

25  Plaintiff's claim;

26      WHEREAS, the DEFENDANTS, John Stossel, Glenn Ruppel, American

27  Broadcasting Companies, Inc., ABC, Inc., Ole Anthony, and Trinity Foundation, Inc.

28  ("DEFENDANTS"), by and through their attorneys, agree that the voluntary dismissal

DOCKETED ON CM

OCT 16 2007

BY MG

168053 1

1  by PLAINTIFF, Frederick K.C. Price ("PLAINTIFF"), is without prejudice and shall not

2  be used in any way to prejudice PLAINTIFF should the mediation fail and the action be

3  refiled;

4      WHEREAS, the DEFENDANTS by and through their attorneys agree to waive a

5  potential award of costs for the dismissal of this action under Federal Rules of Civil

6  Procedure, Rule 41(d) and Rule 54(d) should the mediation fail and the case be refiled

7  by PLAINTIFF;

8      IT IS HEREBY STIPULATED by and between the parties to this action through

9  their designated counsel that in order to allow the parties to pursue mediation without

10  simultaneously filing and opposing an Anti-SLAPP motion, the above-captioned action

11  be and hereby is dismissed without prejudice, pursuant to Federal Rules of Civil

12  Procedure, Rule 41(a)(1)(ii).

13  Date: October 10, 2007        Glassman, Browning, Saltsman & Jacobs, Inc.
14                                By: _____.
15                                    Anthony M. Glassman
                                  Attorneys for Plaintiff Dr. Frederick K. C. Price

16  Date: October __, 2007        White O'Connor Curry LLP
17                                By: (signature by facsimile)
18                                    David E. Fink
19                                Attorneys for Defendants John Stossel, Glenn Ruppel,
                                  American Broadcasting Companies, Inc. and ABC, Inc.
20

21  Date: October __, 2007        Lewis, Brisbois, Bisgaard & Smith, LLP

22                                By: (signature by facsimile)
                                      William E. Pallares
23                                Attorneys for Ole Anthony and Trinity Foundation, Inc.

24  IT IS SO ORDERED
    OCT 15 2007
25  Dated _____
26  United States District Judge

27

28

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

1   by PLAINTIFF, Frederick K.C. Price ("PLAINTIFF"), is without prejudice and shall not

2   be used in any way to prejudice PLAINTIFF should the mediation fail and the action be

3   refiled;

4       WHEREAS, the DEFENDANTS by and through their attorneys agree to waive a

5   potential award of costs for the dismissal of this action under Federal Rules of Civil

6   Procedure, Rule 41(d) and Rule 54(d) should the mediation fail and the case be refiled

7   by PLAINTIFF;

8       IT IS HEREBY STIPULATED by and between the parties to this action through

9   their designated counsel that in order to allow the parties to pursue mediation without

10  simultaneously filing and opposing an Anti-SLAPP motion, the above-captioned action

11  be and hereby is dismissed without prejudice, pursuant to Federal Rules of Civil

12  Procedure, Rule 41(a)(1)(ii).

13  Date: October __, 2007      Glassman, Browning, Saltsman & Jacobs, Inc.

14                         By:_____

15                            Anthony M. Glassman
                       Attorneys for Plaintiff Dr. Frederick K. C. Price

16  Date: October 10, 2007      White O'Connor Curry LLP

17                         By:_____

18                             David E. Fink

19                         Attorneys for Defendants John Stossel, Glenn Ruppel,
                       American Broadcasting Companies, Inc. and ABC, Inc.

20

21  Date: October __, 2007      Lewis, Brisbois, Bisgaard & Smith, LLP

22                         By:_____

23                            William E. Pallares
                       Attorneys for Ole Anthony and Trinity Foundation, Inc.

24

25

26

27

28

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

168053.1

OCT-10-2007 13:09 FROM:

1  by PLAINTIFF, Frederick K.C. Price ("PLAINTIFF"), is without prejudice and shall not

2  be used in any way to prejudice PLAINTIFF should the mediation fail and the action be

3  refiled;

4      WHEREAS, the DEFENDANTS by and through their attorneys agree to waive a

5  potential award of costs for the dismissal of this action under Federal Rules of Civil

6  Procedure, Rule 41(d) and Rule 54(d) should the mediation fail and the case be refiled

7  by PLAINTIFF;

8      IT IS HEREBY STIPULATED by and between the parties to this action through

9  their designated counsel that in order to allow the parties to pursue mediation without

10  simultaneously filing and opposing an Anti-SLAPP motion, the above-captioned action

11  be and hereby is dismissed without prejudice, pursuant to Federal Rules of Civil

12  Procedure, Rule 41(a)(1)(ii).

13  Date. October __, 2007          Glassman, Browning, Saltsman & Jacobs, Inc.
                                    By:_____
14
                                        Anthony M. Glassman
15                                  Attorneys for Plaintiff Dr. Frederick K. C. Price

16
    Date: October __, 2007          White O'Connor Curry LLP
17
                                    By:_____
18                                      David E. Fink
19                                  Attorneys for Defendants John Stossel, Glenn Ruppel,
                                    American Broadcasting Companies, Inc. and ABC, Inc.
20

21  Date: October 10 2007           Lewis, Brisbois, Bisgaard & Smith, LLP
22                                  By:_____
                                        William E. Pallares
23                                  Attorneys for Ole Anthony and Trinity Foundation, Inc.

24

25

26

27

28

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC
360 NORTH BEDFORD DRIVE, SUITE 204
BEVERLY HILLS, CA 90210-5157

# EXHIBIT 14

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK-

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>       Plaintiff,<br><br>       v.<br><br>JOHN STOSSEL, an individual, GLENN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware corporation, OLE ANTHONY, an individual, and TRINITY FOUNDATION, INC., an entity, form unknown,<br><br>       Defendants. | **COMPLAINT FOR DEFAMATION; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; DEMAND FOR JURY TRIAL**<br><br><br>**Civil Action No.** |

Plaintiff DR. FREDERICK K. C. PRICE ("Plaintiff" or "DR. PRICE") files this Complaint

against the above-named defendants, and complains against defendants as follows:

## INTRODUCTION

1.      Dr. PRICE established Crenshaw Christian Center East ("CCC East") in New York City

in May, 2001. Its regular Sunday morning services are held in a church off Central Park West in New

York, which it owns, and are attended by around 1,000 people. It currently has about 1,500 members,

and 12 employees. Dr. PRICE remains the minister and preaches at many of the services. CCC East is

affiliated with the Crenshaw Christian Center Church Of Los Angeles County, also known as

"Crenshaw Christian Center/Ever Increasing Faith," (jointly with CCC East, the "CHURCH") which

Dr. Price founded in South Los Angeles in 1973. Over the last 34 years, it has grown to the point where

over 3,500 people attend the main Sunday services, which are televised in 15 of the 20 largest markets

throughout the United States, and across the world on stations that reach more than 15 million

households.

2.      On March 23, 2007, defendant AMERICAN BROADCASTING COMPANIES, INC.

("ABCI"), broadcast a story on Good Morning America ("GMA") promoting a program that was set to

air on its evening program, "20/20." In an interview format, defendant JOHN STOSSEL sits with

GMA personality Robin Roberts. During the interview, a portion of the 20/20 program described below

*F 12/18/08*

is shown. Specifically, a video clip of a woman is broadcast wherein she states that she knows the donations she gives to her church are put to "excellent use." Immediately following this clip, JOHN STOSSEL states: "And yet her pastor, Fred Price, boasts that..." At this point a clip of a Sermon by DR. PRICE begins, which states:" ...I live in a 25-room mansion, I have my own six-million-dollar yacht, I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles." This clip, however, was actually from a videotaped sermon ("Sermon") that Dr. PRICE preached 10 years previously in which he was discussing hypothetically, in the first person singular, how people can have great wealth (the "Clip"). In the Sermon, he then went on to give examples of how such people can feel spiritually unfulfilled despite their great wealth, but this passage, which would have placed the footage in the Clip in its proper context, was omitted.

3.     On March 23, 2007, defendant AMERICAN BROADCASTING COMPANIES, INC. ("ABCI"), broadcast the entirety of the story, promoted earlier on GMA, on its evening program, "20/20" (the "Program"), which depicted religious leaders who correspondent John Stossel characterized in the story as "the bad guys" implying that they financially exploit their supporters. One of the religious leaders who was featured in the Program was Dr. PRICE. The Program included less than a minute of film from a videotaped Sermon. As described above, the Clip, however, was actually from an out of context videotaped Sermon. The 20/20 Program continued with an interview with Rusty Leonard, wherein additional pictures of ministers are shown, including Dr. PRICE, and the Program shows a computer screen with the name of the churches, including Dr. PRICE'S CHURCH, and defendant JOHN STOSSEL refers to them as "the bad guys."

4.     In one of the most outrageous instances of "out of context" editing in the history of television, the Clip was edited into the Program in such a way as to cause reasonable viewers to believe (a) that Dr. PRICE was admitting that the great wealth to which he was referring in his hypothetical example, was his, and (b) that he was able to enjoy this extravagant lifestyle because he was looting the CHURCH's coffers.

5.     The Program was produced by defendant GLENN RUPPEL and presented by defendant JOHN STOSSEL, who introduced the Clip by stating that Dr. PRICE was "boasting" about having his own 25 room mansion, yacht, jet, helicopter, and 7 luxury automobiles.

2

6.      The Clip also appeared in whole or in part in a number of "teasers" (the "Teasers") for the Program that were broadcast on GMA. The Teasers were intended to cause reasonable viewers to believe that the Program was an expose of a group of corrupt religious leaders, including Dr. PRICE.

7.      Plaintiff is informed and believes and on that basis alleges that the Clip was provided to the other defendants by defendants OLE ANTHONY and/or the TRINITY FOUNDATION. ANTHONY and TRINITY are vehemently hostile to evangelical leaders, and are therefore a biased and unreliable source. The other Defendants were aware of this and therefore should have closely examined and investigated any film or other materials that ANTHONY and/or TRINITY provided to them, such as the Clip, and should have refused to broadcast the Clip without reviewing the whole film from which the Clip was taken, in order to determine the context in which Dr. PRICE made the statements that appear in the Clip. But their desire to create a sensationalist program to boost ratings overcame any interest in determining the truth. In broadcasting the Clip as alleged, Defendants breached fundamental journalistic guidelines and acted in reckless disregard for the truth or falsity of that which was broadcast.

8.      After 50 years devoted to carrying the message of God and being of service to his fellows, Dr. PRICE's reputation was severely harmed. He was portrayed on national and international television and the Internet as a hypocrite and thief who had by his own admission surreptitiously taken money from his supporters to support an ostentatious and extravagant lifestyle. This portrayal damaged or destroyed the trust and affection that many of his supporters felt for Dr. PRICE, who was devastated, embarrassed and greatly humiliated, causing him to suffer from severe emotional distress.

## PARTIES, JURISDICTION AND VENUE

9.      Dr. PRICE is, and at all times herein mentioned was, an individual residing in the County of Los Angeles, State of California.

10.     Plaintiff is informed and believes, and on that basis alleges, that defendant AMERICAN BROADCASTING COMPANIES, INC. ("ABCI"), is, and at all times herein mentioned was, a corporation organized under the laws of the State of Delaware, with its principal place of business in the State of New York.

11.     Plaintiff is informed and believes, and on that basis alleges, that defendant ABC Inc., is,

3

and at all times herein mentioned was, a corporation organized under the laws of the State of Delaware with its principal place of business in the State of New York. ABC Inc., owns and/or controls ABCI. ABC, Inc. is owned by Disney, a corporation organized under the laws of the State of Delaware which acquired the Lifetime television channel in or about 1996, and owned and controlled it when the Program was broadcast in March 2007.

12.    Plaintiff is informed and believes, and on that basis alleges, that defendants JOHN STOSSEL and GLENN RUPPEL are, and at all times herein mentioned were, individuals residing in the State of New York.

13.    Plaintiff is informed and believes, and on that basis alleges, that defendant the TRINITY FOUNDATION, INC., ("TRINITY") is an entity of unknown form, with its principal place of business in the City of Dallas, State of Texas, and that defendant OLE ANTHONY is, and at all times herein mentioned was, an individual residing in the State of Texas, who was an officer, agent, director or employee of TRINITY.

14.    Whenever in this Complaint reference is made to "Defendants", such allegation shall be deemed to mean the acts of all of the defendants mentioned in this paragraph and those above, acting individually, jointly and/or severally.

15.    ABCI and ABC Inc., (collectively, the "Corporate Defendants") control the ABC television network, and other related media. They caused the Teasers and the Program to be broadcast on television across the nation, including in the city of New York, State of New York, and internationally, and in other media, such as the internet, that could be viewed by residents of said city.

16.    This Court has original subject matter jurisdiction with respect to this action pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000.

17.    ABC, ABCI, STOSSEL, RUPPEL, ANTHONY and TRINITY are subject to jurisdiction of this Court pursuant to 28 U.S.C. § 1332.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## BACKGROUND

19.    Dr. PRICE, who was born in 1932, was educated in the Los Angeles public school

system, and attended Los Angeles City College. He began his long career as a religious leader when he became an assistant pastor in the Baptist church in 1955. He has received many awards, including a Horatio Alger award, an honorary Doctorate of Divinity Degree from Oral Roberts University, and the "Kelly Miller Smith Interfaith Award" presented by the Southern Christian Leadership Conference, which honors clergy who have made the most significant contribution through religious expression affecting the nation and world. And Dr. PRICE was the first black pastor to speak at "Town Hall Los Angeles." In addition, he is the author of some 50 books on faith, healing, prosperity and Christianity, and has sold over 2.1 million books since 1976. His message that economic prosperity can be achieved through a faith-based, God-centered life brings hope and commitment to the community.

20.     Dr. PRICE founded the CHURCH in Inglewood, California, in 1973. In 1981, the CHURCH purchased the 32-acre former campus of Pepperdine University on Vermont Avenue in Los Angeles, where it built the FaithDome, one of the largest church sanctuaries in the United States with over 9,000 seats. It has an established preschool, elementary, middle, and high school and correspondence school, and is known worldwide through the "Ever Increasing Faith" TV, radio and tape ministry, which is broadcast on stations that reach more than 15 million households each week, and airs in 15 of the 20 largest markets throughout the United States. Currently, the CHURCH's membership totals over 22,000. Dr PRICE remains the minister and is the principal preacher at the CHURCH's services. He is held in great esteem and affection by his members and the public at large. The Church finances missions to some of Africa's poorest communities in Namibia, Ghana and Zimbabwe, contributes to other well-established ministries in Haiti, Brazil and Ghana, and supports food and housing programs and other outreach services in its South Los Angeles community.

21.     Dr. PRICE established CCC East in New York City in May, 2001. Its regular Sunday morning services are attended by around 1,000 people in a church located at 1 West 96th Street at Central Park West, New York, NY 10025, which it owns. In addition, it holds services on Tuesday mornings and bible studies on Tuesday nights. CCC East has about 1,500 members, and 12 employees. Dr. PRICE remains CCC East's minister and preaches at many of its services.

## FIRST CAUSE OF ACTION

### (Defamation)

22.     Plaintiff incorporates into this cause of action all allegations contained in paragraphs 1 through 21 of this Complaint as though set forth fully herein.

23.     The first sign that something was wrong came the morning of March 23, 2007, when various CHURCH members called to say that they were shocked and disturbed to see Dr. PRICE on television describing enormous wealth, which, the story implied, he had obtained by looting the CHURCH's coffers. What they had seen was the GMA interview and/or one or more of the Teasers that was broadcast on the ABC network and through its domestic and international affiliates, subsidiaries and licensees to persuade viewers to watch the Program.

24.     The GMA interview, the Teasers and the Program contain numerous implications and statements (the "Offending Statements") that are false and defamatory, including, without limitation, the following:

(a)     A Teaser was broadcast on GMA on or about March 23, 2007 ("Teaser A") that consisted of film showing large houses and luxury automobiles, followed by film of various preachers, including footage from the Clip showing Dr. PRICE preaching (but without broadcasting what he was saying). The words in large block capitals, "JOHN STOSSEL: ENOUGH!" appeared on the screen, and the voice of GMA co-anchor Diane Sawyer exclaimed, "6 million dollar yachts, private jets, Rolls Royces – sound like the good life? What about the godly life? John Stossel takes us inside the lives of some preachers and says 'enough'."

(b)     A Teaser was broadcast on GMA on or about March 23, 2007 ("Teaser B") that consisted of film showing large houses and luxury automobiles, followed by film of various preachers, including footage from the Clip showing Dr. PRICE preaching (but without broadcasting what he was saying). The words in large block capitals, "JOHN STOSSEL: ENOUGH!" appeared on the screen, and Ms. Sawyer says, "Look at these mansions; this Rolls Royce. Think they're owned by moguls? No they're owned by preachers. And John Stossel is here to say 'enough'."

(c)     A Teaser was broadcast on GMA on or about March 23, 2007 at about 7:30 a.m.

("Teaser C"), which consisted of film showing large houses and luxury automobiles, followed by Miss Sawyer saying, "Does this look like something out of 'Lifestyles of The Rich and Famous'? If you think so, you are wrong." News presenter Chris Cuomo chimed in, "I know. These are preachers who fly around, imagine this, in private jets and lounge on multi-million dollar yachts." Miss Sawyer then stated that STOSSEL had said "Enough!" and was "taking on the case," and would be investigating these preachers in the Program that would air that evening. The GMA presenters are then shown laughing, the clear implication being that they were anticipating with pleasure the exposure of corrupt preachers by STOSSEL in the Program.

(d)    A Teaser was broadcast on GMA on or about March 23, 2007 at about 7:38 a.m. ("Teaser D") which consisted of film showing large houses and luxury automobiles, followed by film of various preachers, including footage from the Clip showing Dr. PRICE preaching (but without broadcasting what he was saying). Miss Sawyer says, "Mansions, yachts, Rolls Royces - the jet set life? Guess again. This is how some major league preachers really live. John Stossel is here to say 'enough'."

(e)    The GMA program aired on ABC television in New York and Los Angeles on or about March 23, 2007, between 7:00 a.m. and 8:00 a.m. In an interview format, defendant JOHN STOSSEL sits with GMA personality Robin Roberts. During the interview, a portion of the 20/20 Program is shown. Specifically, a video clip of a woman is broadcast wherein she states that she knows the donations she gives to her church are put to "excellent use." Immediately following this clip, JOHN STOSSEL states: "And yet her pastor, Fred Price, boasts that..." At this point a clip of a Sermon by DR. PRICE begins, which states:" ...I live in a 25-room mansion, I have my own six-million-dollar yacht, I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles." This clip, however, was actually only a portion of a videotaped Sermon that Dr. PRICE preached 10 years previously in which he was discussing hypothetically, in the first person singular, how people can have great wealth. In the Sermon, he then went on to give examples of how such people can feel spiritually unfulfilled despite their great wealth ("bad success"), but this passage, which would have placed the footage in the Clip in its proper context, was omitted.

(f)     The Program itself aired on ABC television in New York and Los Angeles on or about March 23, 2007, beginning at or about 10:00 p.m. local time. The Program was entitled "Enough!" and included a variety of issues that people were protesting—conduct of which they were proclaiming that they had had "Enough!" To quote Robin Roberts from the GMA program, the Program featured people who were "fed up." In addition to declaring "Enough" to preachers who steal from their congregation, the program also included individuals who said "Enough" to expensive sneakers, "Enough" to police officers shooting dogs on the side of the road, and "Enough" to politicians naming buildings after themselves. The entire program focused on people being "fed up," who consequently were saying "Enough!"

(g)     The Program began with STOSSEL asking, "They preach the gospel of giving to God. But how much of what you give do they keep for themselves?" He focuses on the extravagance of certain preachers, shows a CHURCH service in progress, and then introduces one of the CHURCH's members who states that she knows that her money is "going to excellent use." STOSSEL then states, "And yet her pastor, Fred Price, boasts that (the Clip is shown with Dr PRICE saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own private jet and I have my own helicopter and I have 7 luxury automobiles,'" showing a close up of a Rolls Royce. STOSSEL commented, "At least he tells people about it. But many preachers don't advertise how well they live...." STOSSEL then introduced a man named Rusty Leonard who gave up a Wall Street job to investigate churches' finances. Over footage showing various preachers including Dr. PRICE, STOSSEL stated that Mr. Leonard believed that it was "unchristian" that certain preachers ask donors for money but do not reveal how they spend it, and that "donors are being hosed," presumably by the preachers that appeared in the program, which included Dr. PRICE. During the interview with Rusty Leonard, a computer screen showing the name of the churches, including Dr. PRICE'S CHURCH is shown, and defendant STOSSEL refers to them as "the bad guys."

8

25. The Offending Statements are false. Dr. PRICE does not own a 25 room mansion, or a yacht, or an aircraft, or a helicopter, and he and his wife own only three automobiles between them. Dr. PRICE has never diverted funds donated to the CHURCH to his own personal use, and receives a salary commensurate with his duties, both ministerial and administrative, that is set and approved by the CHURCH's board of directors. The Board controls the CHURCH's finances, which are audited annually by a firm of certified public accountants, and are open to review by the CHURCH's congregation under a long standing policy of financial transparency.

26. The Offending Statements are slanderous on their face. Additionally, because they accuse Dr. PRICE, a minister, of dishonesty by diverting funds donated to the CHURCH to his own personal use in order to finance an absurdly extravagant lifestyle, they are slander per se, as the statement accused Dr. PRICE of a serious crime, embezzlement, and accused him of dishonesty in direct relation to his profession.

27. The Offending Statements are reasonably susceptible of a defamatory meaning.

(a) Teaser A. The footage showing Dr. PRICE preaching as the words in question ("6 million dollar yachts, private jets, Rolls Royces – sound like the good life? What about the godly life? John Stossel takes us inside the lives of some preachers and says "enough"), would cause a reasonable viewer to believe that he was diverting funds donated to the CHURCH to provide himself with an absurdly extravagant lifestyle that included a 6 million dollar yacht, a private jet, and 7 Rolls Royces, that he was corrupt, untrustworthy, dishonest, ungodly, greedy and hypocritical, and that this was a practice that caused great moral indignation and outrage, and should be stopped.

(b) Teaser B. By showing footage of Dr. PRICE preaching as the words in question ("Look at these mansions; this Rolls Royce. Think they're owned by moguls? No they're owned by preachers. And John Stossel is here to say 'enough'") are broadcast, Defendants are insinuating that he was diverting funds donated to the CHURCH to provide himself with an absurdly extravagant lifestyle that included mansions and 7 Rolls Royces, and implying that he was corrupt, untrustworthy, dishonest, greedy and hypocritical, and that this was a practice that caused great moral indignation and outrage, and should be stopped.

9

(c)     Teaser C does not name or show Dr. PRICE, but it creates expectation in the viewers' minds that the Program was about preachers who diverted funds donated to their churches to provide themselves with extravagant lifestyles that included private jets and "lounging" on multi-million dollar yachts, and implying that they were corrupt, untrustworthy, dishonest, greedy and hypocritical, and that this was a practice that caused great moral indignation and outrage, and should be stopped.

(d)     Teaser D. By showing footage of Dr. PRICE preaching as the words in question ("Mansions, yachts, Rolls Royces - the jet set life? Guess again. This is how some major league preachers really live. John Stossel is here to say 'enough'") are broadcast, Defendants are insinuating that he was diverting funds donated to the CHURCH to provide himself with an absurdly extravagant lifestyle that included mansions and Rolls Royces, and implying that he was corrupt, untrustworthy, dishonest, greedy and hypocritical, and that this was a practice that caused great moral indignation and outrage, which should be stopped

(e)     In the GMA program, STOSSEL introduces Dr. PRICE by name and states that he boasts about his great wealth: "... Fred Price boasts that (the commentary ends, and the Clip plays, showing Dr. PRICE saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own private jet and I have my own helicopter and I have 7 luxury automobiles,' showing a close up of a Rolls Royce). STOSSEL comments, "At least he tells people about it. But many preachers don't advertise how well they live..." The clear and unequivocal meaning is that these items belong to Dr. PRICE, and the context suggests that he acquired this money from the CHURCH. This is confirmed by

(i) the words, "MINISTERS WITH MANSIONS AND ROLLS ROYCES" which appeared at the bottom of the screen throughout the Teaser,

(ii) Ms. Roberts saying, "The bible discusses how difficult it is for the wealthy to reach heaven, but that hasn't stopped some preachers from attaining vast fortunes,"

(iii) STOSSEL's statement as an introduction to the Clip that Mr. Leonard investigated church finances because he believed the preachers "are squandering our money," which preceded the Clip,

(iv) STOSSEL's statement as an introduction to the Clip that Mr. Leonard believed that

donors "are being hosed,"

   (v) the use of the word "yet" ("And yet her pastor, Fred Price, boasts ...") and showing the Clip immediately after the film of the CHURCH member who states that she knows that her money is "going to excellent use," which means or implies that she has been deceived by Dr. PRICE, and

   (vi) STOSSEL's reference to Dr. PRICE as one of the "bad guys."

   (f) In the Program, STOSSEL introduces Dr. PRICE by name and states that he boasts about his great wealth: "... Fred Price boasts that (the commentary ends, and the Clip plays, showing Dr. PRICE saying) 'I live in a 25 room mansion, I have my own 6 million dollar yacht, I have my own private jet and I have my own helicopter and I have 7 luxury automobiles,' as a close up of a Rolls Royce is shown)." STOSSEL comments, "At least he tells people about it. But many preachers don't advertise how well they live...." The clear and unambiguous meaning of this passage is that Dr. PRICE had abused his position as the leader of the CHURCH by diverting and misappropriating money given to the CHURCH to his own personal use in order to live an absurdly extravagant lifestyle. This is confirmed by

   (i) STOSSEL's statement that Mr. Leonard investigated church finances because he believed the preachers "are squandering our money," which preceded the Clip,

   (ii) STOSSEL's statement as an introduction to the Clip that Mr. Leonard believed that it was "unchristian" that certain preachers ask donors for money but don't reveal how they spend it, and that "donors are being hosed," and

   (iii) the use of the word "yet" ("And yet her pastor, Fred Price, boasts ...") and showing the Clip immediately after the film of the CHURCH member who states that she knows that her money is "going to excellent use," which means or implies that she has been deceived by Dr. PRICE.

  28. The Offending Statements were also defamatory because they would cause a reasonable viewer to believe that Dr. PRICE had manipulated and used a religious institution, namely, the CHURCH, as a vehicle to reward himself excessively at the donors' expense, thereby deceiving the donors because the money donated to the CHURCH had been diverted and misappropriated by Dr. PRICE and was not used for the purposes that they intended.

  29. The Offending Statements were broadcast and otherwise distributed with knowledge that

they were false or with a reckless disregard for the truth or falsity of what was broadcast and otherwise distributed, based upon, but not limited to, the following facts:

(a)    Defendants knew that Dr. PRICE did not own any yachts, airplanes, helicopters or 7 luxury automobiles;

(b)    ANTHONY and TRINITY are known to the other Defendants to be vehemently hostile to evangelical leaders, and are therefore biased and unreliable sources. In particular, but without limitation, several years ago ABC's one-time religious editor, Peggy Wehmeyer, warned ABC that ANTHONY "could not be trusted and was obsessed with his crusade against" another televangelist—a warning that was cited by a United States District Court Judge in Oklahoma in a published opinion. *Tilton v. Capital Cities/ABC Inc.*, (1995) 905 F. Supp. 1514, 1529. The other Defendants should have subjected any film or other materials provided by ANTHONY or TRINITY to close examination and investigation for bias and misconstruction. At the very least, those other Defendants should have refused to broadcast the Clip without reviewing the whole film from which the Clip was taken, in order to determine the context in which Dr. PRICE made the statements that appear in the Clip, but their desire to create a sensationalist program to enlarge their audience and to boost ratings to gain additional advertising revenues overcame any interest in determining the truth, or in treating with fairness a man who had devoted his life to the service of his fellows;

(c)    Defendants deliberately intended to convey the impression that Dr. PRICE had abused his position as the leader of the CHURCH by diverting and misappropriating money given to the CHURCH to his own personal use in order to live an absurdly extravagant lifestyle, which was known to it to be false; apart from the Clip, Defendants had no reason to believe that Dr. PRICE was anything other than an honest and devoted minister; and

(d)    Defendants also deliberately accused Dr. PRICE of being "unchristian" in a story that was no doubt viewed by members of his Christian congregation and members of the communities in which his churches are located, specifically intending to damage his reputation with his parishioners and prospective parishioners in the communities.

(e)    The Sermon was broadcast in or about 1997 on the Lifetime Television channel, which at that time was, and currently is, owned by DISNEY. Therefore the broadcaster Defendants

12

could have discovered the context in which the Clip appeared at any time if they had bothered to look in their own archives, but they failed to do so.

(f)    Plaintiff is informed and believes, and on that basis alleges, that the Corporate Defendants subscribe to journalistic guidelines designed to promote good journalism and to prevent the dissemination of inaccurate and/or biased information. However Defendants' desire to create a sensationalist program and boost ratings prevailed, and Defendants wilfully violated those guidelines. Specifically, the Corporate Defendants violated the following generally accepted journalistic guidelines and standards among others:

(i)    Test the accuracy of information from all sources and exercise care to avoid inadvertent error. Deliberate distortion is never permissible.

(ii)    Diligently seek out subjects of news stories to give them the opportunity to respond to allegations of wrongdoing.

(iii)    Make certain that headlines, news teases and promotional material, photos, video, audio, graphics, sound bites and quotations do not misrepresent. They should not oversimplify or highlight incidents out of context.

(iv)    Never distort the content of news photos or video...(Society of Professional Journalists' Code of Ethics).

(g)    Plaintiff has requested that Defendants provide him with a sworn statement indicating exactly what footage was provided by Trinity and Anthony to the Corporate Defendants. They have refused to do so. This information is significant to determine the extent to which JOHN STOSSEL, GLENN RUPPEL and the Corporate Defendants were willing to edit the footage, so as to intentionally mislead their audience. A few seconds on either end of the Clip reveal enough content to recognize that the statements were part of a hypothetical.

(h)    Plaintiff is informed and believes, and on that basis alleges, that the audience for Good Morning America on March 23, 2007 was approximately 940,000 and the audience for 20/20 on March 23, 2007 was 7.48 million, so approximately 8.42 million people heard the defamatory broadcasts.

13

30.    ANTHONY and/or TRINITY, acting with actual malice, provided the Clip to the other Defendants with the intention and expectation that the Clip would be broadcast on ABC, despite knowing (a) that it was taken out of context, (b) that it conveyed a false and defamatory meaning as to Dr. PRICE, and (c) that it was not an admission by Dr. PRICE that he had a yacht, plane, helicopter or 7 luxury automobiles. As a result, ANTHONY and/or TRINITY are liable for the broadcast and publication of the Offending Statements.

31.    As a direct and proximate result of Defendants' conduct under the facts alleged above, Dr. PRICE's reputation as an honest and trustworthy man has been severely damaged. After 50 years devoted to carrying the message of God and being of service to his fellows, Dr. PRICE was publicly branded a hypocrite and a thief who had, allegedly by his own admission, taken money from his supporters to support an ostentatious and extravagant lifestyle. As a result, the trust and affection that many of his supporters felt for Dr. PRICE has been damaged or destroyed. He was devastated, embarrassed and greatly humiliated, and has suffered severe emotional distress, and is entitled to be compensated in an amount to be established according to proof.

32.    Shortly after the defamatory broadcasts, Plaintiff demanded a correction and apology. Defendants purported retraction, which was broadcast on May 11, 2007, was inadequate and failed in any way to mitigate the damage done to Plaintiff because the retraction was not as conspicuous as the Offending Statements, was qualified, equivocal and was not teased or promoted as was the original defamatory broadcast.

33.    The above-described conduct of Defendants, and each of them, was willful and was intended to cause injury to Plaintiff, who is therefore entitled to an award of exemplary or punitive damages. Defendants, and each of them, intentionally created a sensationalist program to boost ratings to gain additional advertising revenues overcame any interest in determining the truth, or in treating with fairness a man who has devoted his life to the service of his fellows.

## SECOND CAUSE OF ACTION

(Intentional Infliction of Emotional Distress)

34.    Plaintiff incorporates into this cause of action all allegations contained in paragraphs 1

through 33 of this Complaint as though set forth fully herein.

35.    Defendants caused the Offending Statements to be broadcast despite knowing that they were false and defamatory.

36.    As a direct and proximate result of Defendants' conduct under the facts alleged above, Dr. PRICE has suffered severe emotional shock and distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dr. PRICE demands:

1.    That judgment be entered against Defendant JOHN STOSSEL, Defendant GLENN RUPPEL, Defendant AMERICAN BROADCASTING COMPANIES, INC., Defendant ABC INC., Defendant OLE ANTHONY and Defendant TRINITY FOUNDATION, INC., jointly and severally on Count One and Count Two of this Complaint for compensatory damages according to proof presented at trial.

2.    That judgment be entered against Defendant JOHN STOSSEL, Defendant GLENN RUPPEL, Defendant AMERICAN BROADCASTING COMPANIES, INC., Defendant ABC INC., Defendant OLE ANTHONY and Defendant TRINITY FOUNDATION, INC., jointly and severally on Count One and Count Two of this Complaint for general damages according to proof presented at trial.

3.    That judgment be entered against Defendant JOHN STOSSEL, Defendant GLENN RUPPEL, Defendant AMERICAN BROADCASTING COMPANIES, INC., Defendant ABC INC., Defendant OLE ANTHONY and Defendant TRINITY FOUNDATION, INC., jointly and severally on Count One and Court Two of this Complaint for exemplary and punitive damages in an amount according to proof presented at trial.

4.    That all costs of this action be assessed against Defendant JOHN STOSSEL, Defendant GLENN RUPPEL, Defendant AMERICAN BROADCASTING COMPANIES, INC., Defendant ABC INC., Defendant OLE ANTHONY and Defendant TRINITY FOUNDATION, INC., and

5.    For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, DR. PRICE, hereby demands trial by jury on all issues.


Date: December 18, 2007                                Respectfully submitted,

                                          By:    _____
                                                 Matthew L. Levine (ML 6294)
                                                 Citigroup Center – 52nd Floor
                                                 153 East 53rd Street
                                                 New York, NY  10022
                                                 Telephone: (212) 765-5070
                                                 Facsimile: (212) 258-2291

                                                 Anthony Michael Glassman
                                                 California Bar No. 37934
                                                 Alexander Rufus-Isaacs
                                                 California Bar No. 135747
                                                 Richelle L. Kemler
                                                 California Bar No. 232712

                                                 GLASSMAN, BROWNING, SALTSMAN
                                                 & JACOBS, INC.
                                                 360 N. Bedford Drive, Suite 204
                                                 Beverly Hills, CA 90210

                                                 Applications to Appear *Pro Hac Vice*
                                                 to be Submitted

                                                 *Attorneys for Plaintiff*
                                                 Frederick K.C. Price

# EXHIBIT 15

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

ROGER A. BROWNING
ANTHONY MICHAEL GLASSMAN
SUZANNE J. GOULET
AMY OSRAN JACOBS
RICHELLE L. KEMLER
ALEXANDER RUFUS-ISAACS
JANE D. SALTSMAN

LENA MUÑIZ *PARALEGAL*

ANTHONY MICHAEL GLASSMAN
*amg@gbsjlaw.com*

In Reply Refer To:
*C458-1*
February 29, 2008

The Honorable Shirley Wohl Kram
United States District Court Judge
Southern District of New York
40 Centre Street, Room 2101
New York, New York 10007

<div align="center">

**Re:    Price v. Stossel, et al., Case No. 07 CV 11364 (SWK)**
</div>

Dear Judge Kram:

At the Court's request, counsel for Plaintiff, Frederick K.C. Price, submits this letter in response to the Court's Order of February 20, 2008, directing Plaintiff to respond to the following: (a) the grounds upon which Price opposes the anticipated motion to transfer venue, (b) the reasons why Price is entitled to discovery in order to oppose that motion, (c) the specific scope of the discovery sought, and (d) the substance of any other issue Price intends to raise at the conference.

**Factual Background**

On March 23, 2007, the ABC Defendants broadcast a story on its evening program, "20/20" (the "Program"), filed concurrently with the Court as a DVD marked Exhibit "A", concerning religious leaders who financially exploit their supporters by misappropriating donations to support an extravagant lifestyle. One of the religious leaders featured in the Program was Plaintiff, Dr. Frederick K.C. Price ("Dr. Price"). The Program included less than a minute of film from a videotaped sermon ("Sermon") that Dr. Price preached 10 years ago in which he was discussing, hypothetically, in the first person singular, how people can have great wealth (the "Clip"), but still feel spiritually unfulfilled. But this passage, which would have placed the footage in the Clip in its proper context, was omitted.

The Clip was edited into the Program in such a way as to cause reasonable viewers to believe (a) that Dr. Price was boasting that the great wealth to which he

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 2

was referring in his hypothetical example, was his, and (b) that he was able to enjoy this extravagant lifestyle because he was looting or otherwise misappropriating the Church's coffers.

The Program was produced by defendant Glen Ruppel and presented by defendant John Stossel, who introduced the Clip by stating that Dr. Price was "boasting" about having his own 25 room mansion, yacht, jet, helicopter and 7 luxury automobiles.

The Clip also appeared in whole, or in part, in several "teasers" (the "Teasers") for the Program that were broadcast on ABC's popular morning show, "Good Morning America" ("GMA"), and other programs, also filed concurrently with the Court as a DVD marked Exhibit "A". The Teasers were intended to cause reasonable viewers to believe that the Program was an expose of a group of corrupt religious leaders, including Dr. Price.

As a result of ABC's broadcast, after 50 years devoted to carrying the message of God and being of service to his fellows, Dr. Price was portrayed on national and international television, and the internet, as a hypocrite and thief who had by his own admission, misappropriated money from his parishioners to support an ostentatious and inappropriate lifestyle. This portrayal damaged or destroyed the trust and affection that many of his supporters felt for Dr. Price, who was devastated, embarrassed and greatly humiliated.

### Plaintiff's Reasons for Re-Filing in New York

Dr. Price opposes the Defendants' Motion to Change Venue pursuant to 28 U.S.C.S. §1404. Dr. Price chose to re-file this action in New York for two reasons: (1) because he wants to avoid any delay in bringing the case to trial, and (2) because, based on information and belief, subject to confirmation through discovery, virtually all of the non-party ABC witnesses related to the issue of liability are located in New York.

Dr. Price is currently 75 years of age. Under California Code of Civil Procedure §425.16(i), even if Dr. Price defeats the California anti-SLAPP motion, the case will be automatically stayed while Defendants take an appeal to the Court of Appeal:

> "(i) An order granting or denying a special motion to strike shall be appealable under Section 904.1"

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 3

Furthermore, the most critical witnesses are the ABC Defendant's employees, who are presumably located in New York, i.e., John Stossel (reporter), Glenn Ruppel (producer), Ruth Iwano (editor), Robin Roberts (on-air personality), Diane Sawyer (on-air personality), and other ABC employees who wrote the scripts for the "20/20" program and the "Good Morning America" promotional teasers at issue in this case, the production assistants who ordered and/or reviewed the material received from the Trinity Foundation Defendants, and any other employees involved in the creation and broadcast of the defamatory material. The aforementioned witnesses' live testimony at trial is critical to Plaintiff's case.

## Why Would the ABC Defendant's Want to Litigate in Los Angeles?

Contrary to ABC's defense counsel's representations, there was no such agreement or understanding between counsel that Plaintiff would re-file in the Central District of California. Indeed, the issue was never discussed. Additionally, Plaintiff's counsel did not "persuade" the California State Court to stay the proceedings. During a chamber's conference, the state court judge gave both counsel the options of dismissing or staying the state court action. Plaintiff's counsel requested a stay, based on her understanding that defense counsel would be making a motion to transfer the case back to the Central District of California, and the state court judge could not confirm the consequences of its dismissal of the action if this Court transferred the matter back to California. The ABC Defendant's counsel did not object to the stay.

Given the fact that all of the ABC party and non-party witnesses who conceived of, and participated in, the broadcast, presumably reside and work in New York, one has to wonder why it is that the ABC Defendants seek to litigate this case in Los Angeles, which has no connection whatsoever to the origination and broadcast of the Program.

## The Action Should Proceed In New York—Court's Inquiry (a)

"Pursuant to 28 U.S.C. § 1404(a), a district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. Furthermore, the movant must support its motion with a detailed factual affidavit. (Internal citations omitted)." Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 4

"In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." Excelsior, 291 F. Supp. 2d at 185. Here, Plaintiff agrees that the action "might have been brought" in California, so the Court's focus will be on the second prong. The second prong involves the consideration of the following factors:

(1) the convenience of the witnesses;

(2) the location of relevant documents and the relative ease of access to sources of proof;

(3) the convenience of the parties;

(4) the locus of the operative facts;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the relative means of the parties;

(7) a forum's familiarity with the governing law;

(8) weight accorded the plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice based on the totality of the circumstances. Excelsior, 291 F. Supp. 2d at 185.

Each of the nine factors favor a trial of this matter in New York. Plaintiff analyzes each of these factors in detail below.

(1) Convenience of the Witnesses

"The convenience of the witnesses is probably the single most important factor in the transfer analysis. Because of the importance of this factor, the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (internal quotations and citation omitted). Excelsior, 291 F. Supp. 2d at 185.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 5

Based on Plaintiff's information and belief, subject to confirmation through discovery on the issue, the key witnesses in this matter are located in New York. "Good Morning America" and "20/20" are news programs based in New York, whose key employees, i.e., producers, writers, editors, on-air personalities, video librarians, production assistants, etc., are New York residents, who are vital witnesses in this matter.

The California witnesses set forth by the ABC Defendants are not as crucial as the aforementioned New York witnesses. As stated in Royal & Sunalliance, "[w]hen weighing the convenience of the witnesses, courts must consider the materiality, nature and quality of each witness, not merely the number of witnesses in each district." 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001). The witnesses cited above by the Plaintiff go directly to the liability of the ABC Defendants.

With regard to the witnesses cited by the Defendants, i.e., members of Dr. Price's family, they will be attending the trial, and therefore available for live testimony in New York. The accountants' testimony is irrelevant, as the issue in this case is not whether Dr. Price is a successful individual, but rather whether he misappropriated church funds to support his lifestyle. Even assuming arguendo that the accountant's testimony was permitted, an accountant's testimony can certainly be presented to a jury via videotaped testimony. And the convenience of an expert witness "is given little or no weight." Tommy Hilfiger Licensing, Inc. v. Nature Labs, LLC, 2001 U.S. Dist. LEXIS 2913 *4 (S.D.N.Y. 2001).

(2) Location of Evidence

"Courts look at the location of evidence in a 1404(a) motion when 'documents are particularly bulky or difficult to transport, or proof that is it somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the moving party's proposed forum.' Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247, 1251 (S.D.N.Y. 1995), cited in Excelsior, 291 F.Supp.2d at 186.

The ABC defendants make the pointless representation that "ABC already collected its documents regarding the News Report in Los Angeles." Presumably, ABC simply made copies of all original documents that it deemed necessary to its defense and sent them to the California attorneys, who are now representing ABC in New York. Surely the original records remain where they were created, in New York, at ABC's News Headquarters.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 6

There are no bulky or difficult documents of Plaintiff's to transport from California to New York. Even if ABC sought Dr. Price's documents from California, it would be Dr. Price's inconvenience and expense in relation to this factor, not ABC's or Trinity's.

### (3) Convenience of the Parties

Convenience of the parties also weighs in favor of New York, as the ABC defendants all reside here.

### (4) The Locus of the Operative Facts

Based on information and belief, both the ABC programs at issue in this case, "20/20" and "Good Morning America," are prepared and broadcast out of the ABC studios in New York. Again, subject to confirmation via the discovery requested below, the writers, producers, editors, reporters, production assistants and other employees who prepared the Program and the Teasers work in the ABC studios in New York.

### (5) The Ability to Compel Attendance of Witnesses

A court will consider the ability to compel the witnesses' attendance. TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F.Supp.2d 402, 406-407 (S.D.N.Y. 2001). However, most California witnesses are likely to be Plaintiff's witnesses, with regard to the damage to his reputation. So again, this would be a potential problem for Plaintiff rather than the Defendants.

In fact, if the case is transferred back to the Central District of California, it is Plaintiff who will be prejudiced. The Central District of California will be unable to compel the attendance of key witnesses located in New York. Critical to Dr. Price's case are the ABC employees who produced, edited, wrote, and reported the Program and the Teasers, including Glenn Ruppel, Ruth Iwano, John Stossel, Diane Sawyer and Robin Roberts. This testimony is crucial, and will be far more compelling live, to meet the elements necessary to establish Plaintiff's burden of proof; unlike the ABC defendant's request for a California accountant's testimony, which can easily be provided through the use of a videotaped deposition issued from the Central District of California. (See Toney v. Family Dollar Stores, Inc., 273 F.Supp.2d 757, 764 (S.D.W.V. 2003) stating [Fed.R.Civ.P. 45(a)(2), "allow[s] subpoenas for depositions to issue 'from the court for the district designated by the notice of deposition as the district in which the deposition is to be taken.'"]).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 7

Furthermore, ABC merely speculates and concludes that the California witnesses are unwilling to travel to New York. They have no definitive statements from witnesses saying they will refuse to testify in New York. See Excelsior, 291 F.Supp.2d at 187 ("[Defendant] fails to provide any affidavits of potential witnesses stating that such witnesses would not appear if the action remained in New York…Therefore, this factor does not weigh in favor of transfer.") In fact, most of the California witnesses outlined by the ABC Defendants are members of Dr. Price's family, who will be attending the trial in New York.

(6) The Relative Means of the Parties

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." KPMG Consulting, Inc. v. LSQ II, LLC, No. 01 Civ. 11422, 2002 U.S. Dist. LEXIS 12783, at *13 (E.D.N.Y. July 12, 2002) (internal quotations and citation omitted), cited in Excelsior, 291 F.Supp.2d at 186. Here, it goes without saying that the ABC Defendants are the parties with greater means. Indeed, there can be no doubt that ABC will save money if the case is tried in New York. Regardless, this factor favors Plaintiff's choice of forum, as Plaintiff is the party who would possibly be subject to a greater cost for trying the case in New York, not Defendants.

(7) The Forum's Familiarity with Governing Law

Defendants have made an extensive argument with regard to this Court's unfamiliarity with California law being a significant factor favoring the transfer of venue. Yet, one aspect of the California substantive defamation law argued by the ABC Defendants, i.e., the California retraction statute, requires only a factual analysis by the jury. Twin Coast Newspapers v. Superior Court, 208 Cal. App. 3d 656, 660 (1989). And New York federal courts have routinely applied California substantive defamation law in cases pending in the Southern District. See Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y. 2003). Thus, a California court is no better prepared than this Court to let a jury make a factual determination, or to apply California substantive defamation law.

In addition, "[t]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905, 2002 U.S. Dist. LEXIS 758, at *13 (S.D.N.Y. Jan. 15, 2002), cited in Excelsior, 291 F.Supp.2d at 187.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 8

(8) Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." Excelsior, 291 F.Supp.2d at 187.

As argued above, virtually every factor favors this Court. One is hard pressed to imagine a circumstance in which a defendant sued in its hometown would seek a venue transfer 3,000 miles from its home. Assuming that discovery discloses that the currently unknown writers, editors and others at ABC have relevant testimony that bears on the creation of the Program and ABC's intentional creation of a sensationalized broadcast designed to imply criminal conduct by Plaintiff, it is difficult to imagine that ABC would volunteer their live testimony in Los Angeles. The only way to insure the live testimony of these critical liability witnesses is to conduct the trial in New York.

(9) Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances.

The Central District of California and the Southern District of New York are both among the busiest districts in the federal system. Therefore, trial efficiency, in terms of a less busy forum, would not be a factor weighing in favor of a transfer to California.

An efficiency factor weighing in favor of New York, however, as mentioned above, is that the California procedural law applicable in the Central District of California Court, will result in an automatic lengthy appeal when Dr. Price overcomes the ABC Defendants' anti-SLAPP motion pursuant to Cal. Code of Civ. Pro. § 425.16. But since this California procedural law will not be applicable in the Southern District of New York,[1] a trial on the merits will be more expeditious in this Court.

---

[1] "Ordinarily a federal court sitting in diversity applies the law of the state in which it sits to any issues of procedure not covered by federal law." Davis v. Costa-Gavras, 580 F.Supp. 1082 (S.D.N.Y. 1984) citing Hanna v. Plumer 380 U.S. 460, 470 (1965). California's anti-SLAPP statute has repeatedly been found by California courts to be a procedural law. See Jarrow Formulas, Inc. v. LaMarche 31 Cal. 4th 728, 737 (2003) [section 425.16 "is a procedural device for screening out meritless claims])"; Soukup v. Law Offices of Herbert Hafif, 39 Cal.4th 260 (2006); Bouley v.

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 9

With regard to the "interests of justice" New York has stated in relation to "choice of law" issues that it has an interest in regulating the New York based media. Condit v. Dunne, 317 F.Supp.2d 344, 353 (S.D.N.Y. 2003). Therefore, when a plaintiff is willing to litigate a matter against a media defendant in the media's own backyard, it would follow that a New York court, given its interest in regulating its media citizens, would find that the interests of justice favor trying the case in the New York court that the Plaintiff chose.

### Plaintiff Is Entitled to Discovery In a Request for Change of Venue; Court's Inquiry (b)

The Supreme Court has stated that a party is entitled to discovery in relation to a request for change of venue. "[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues." Oppenheimer Fund v. Sanders, 437 U.S. 340, 351 (1978).

Wood v. Zapata Corp. 482 F.2d 350, 357 (3d. Cir. 1973), cited by the ABC Defendants for authority to deny discovery, was decided prior to the Supreme Court's decision cited above. The other cases cited by the ABC Defendants, where a court denied discovery in relation to a motion to transfer venue, are all fact-specific cases, with facts completely inapposite to the case before this Court.[2]

### Discovery Requested by Plaintiff; Court's Inquiry (c)

With respect to the nine factors mentioned above, Plaintiff will ask the Court's permission to seek the production from ABC of any motions previously filed on ABC's behalf pursuant to 28 USC § 1404, in which ABC sought to have any actions

---

Long Beach Memorial Medical Center, 127 Cal.App.4th 601 (2005); Averill v. Superior Court, 42 Cal.App.4th 1170 (1996); As You Sow v. Conbraco Industries, 135 Cal. App. 4th 431 (2005).

[2] i.e., Saleh v. Titan Corp., 361 F.Supp.2d 1152 (S.D. Cal. 2005) (plaintiffs were Iraqi citizens in a case regarding torture of Iraqi prisoners), Lighting World, Inc. v. Birchwood Lighting, Inc. 2001 WL 1242277 *2-5 (S.D.N.Y. 2001) (patent infringement case, which as a matter of law shall be tried where infringing product produced), Topolyncky v. Ukranian Sav. & Loan Ass'n, 1991 WL 117397, at *1, 3 (W.D.N.Y. 1991) (related action brought by plaintiffs and adjudicated in the transferee forum), Foster v. Litton Industries, Inc., 431 F.Supp. 86, (D.C.N.Y. 1977), (plaintiff, one defendant, and all but one witness were California residents, and the other defendant had its principal place of business in California), and Goodman v. Fleischmann, 364 F.Supp. 1172 (D.C. Pa. 1973), (parties had stipulated to facts enabling court to determine motion to transfer).

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

February 29, 2008
Page 10

filed against them in foreign jurisdictions, i.e., in states other than New York, transferred back to New York in the "interest of justice." Plaintiff will also seek the production of all ABC records reflecting the names and state of residency for all ABC producers, editors, writers, on-air personalities, video librarians, and production assistants, who worked on the subject broadcast.

Specifically, in relation to Defendant's Motion to Transfer Venue, Plaintiff seeks to depose: Glenn Ruppel and the other Person Most Knowledgeable at ABC with regard to (a) the people at ABC who wrote and edited the script for the "20/20" program and all the promotional teasers, (b) the names of the ABC employees who solicited Plaintiff's sermon from Ole Anthony and Trinity Foundation, (c) the names of the witness who received the clip, (d) the location where the "20/20" program and the teasers promoting it were written, produced and broadcast, as well as, (e) the state of residence for John Stossel, Glenn Ruppel, Ruth Iwano, Robin Roberts and Diane Sawyer, and (f) documents or witnesses regarding whether any ABC documents are located anywhere other than New York, and whether any ABC witnesses are located anywhere other than New York.

Plaintiff seeks to establish, through the above discovery, the number and location of the material witnesses, whose testimony will be critical to Plaintiff at trial.

Court's Inquiry (d)

Plaintiff does not object to ABC's request for an extension to file their anti-SLAPP motion pursuant to Cal. Code of Civ. Pro. § 425.16. However, as discussed above, Plaintiff will object to the applicability of a California procedural law in a New York federal court.

Sincerely,

GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.

By: ANTHONY MICHAEL GLASSMAN

cc:    Andrew M. White, Esq. (via facsimile (310) 712-6110)
       William E. Pallares, Esq. (via facsimile (213) 250-7900)

# EXHIBIT 16
to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

```
                                 1
        8358PRIC
  1     UNITED STATES DISTRICT COURT
  1     SOUTHERN DISTRICT OF NEW YORK
  2     ------------------------------x
  2
  3     DR. FREDERICK K.C. PRICE,
  3
  4                     Plaintiff,
  4
  5               v.                         07 Cv. 11364 (SWK)
  5
  6     JOHN STOSSEL, et al.,
  6
  7                     Defendants.
  7
  8     ------------------------------x
  8                                        March 5, 2008
  9                                        11:15 a.m.
  9
 10     Before:
 10
 11                     HON. SHIRLEY WOHL KRAM
 11
 12                                        District Judge
 12
 13                         APPEARANCES
 13
 14     GLASSMAN, BROWNING & SALTSMAN, INC.
 14          Attorneys for Plaintiff
 15     BY:  ANTHONY MICHAEL GLASSMAN
 15
 16     FISH & RICHARDSON P.C.
 16          Attorneys for Plaintiff
 17     BY:  MATTHEW LEVINE
 17
 18     WHITE O'CONNOR CURRY LLP
 18          Attorneys for Defendants John Stossel, Glenn Ruppel,
 19             American Broadcasting and ABC, Inc.
 19     BY:  ANDREW M. WHITE
 20
 20     INDIRA SATYENDRA
 21          ABC, Inc.
 21          Litigation & Employment Practices
 22
 22     LEWIS BRISBOIS BISGAARD & SMITH LLP
 23          Attorneys for Defendants Anthony Ole
 23             and Trinity Foundation
 24     BY:  JOANNE J. ROMERO
 24
 25
 25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

24    support of their argument that the matter should be transferred
25    to the Central District of Los Angeles would, in essence, be
          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300


                              4
      8358PRIC
1     members of our client's family.  Dr. Frederick Price has a
2     large family and many of his children and his wife are employed
3     by the Crenshaw Christian Center.  All of those witnesses, and
4     I can represent to the Court any family member, if the Court,
5     after motions are heard and determined, would want any of those
6     witnesses to testify before this jury, they will be here.  In
7     any event, in our judgment, those would be damage witnesses,
8     none of them would be liability witnesses.
9             So for each of those reasons we find it unusual, to
10    say the least, that ABC would not want to try this case in
11    their hometown.  It's most unusual.
12            With respect to the discovery that we seek, basically,
13    we have set that forth on the last page of our letter brief to
14    your Honor.
15            THE COURT:  Would you repeat that, please?
16            MR. GLASSMAN:  I will be happy to, your Honor.
17            The witnesses whom we wish to depose and very briefly,
18    and it can be done we are sure in a day, and it's for
19    identification purposes so that your Honor and your staff can
20    know where these witnesses are, would be Glenn Ruppel, who is
21    the producer of the piece, and any other person most
22    knowledgeable so that we would be in a position to know who
23    wrote and edited the script for the 20/20 program and all of
24    the promotional teasers, the names of ABC employees who
25    solicited our client's ten-year-old sermon, the brief on-air
          SOUTHERN DISTRICT REPORTERS, P.C.
                  (212) 805-0300


                              5
      8358PRIC
1     portion from Mr. Anthony and Trinity Foundation in Dallas, the
2     names of the people who received the clip, the location as to
3     where the 20/20 program and the teasers promoting it were
4     written, produced and broadcast, and where all of these various
5     people reside, and, lastly, whether or not any documents that
6     ABC has in their files here in New York, that is, the
7     originals, are in reality anywhere other than here in New York.
8             So that's the brief discovery.
9             With respect to the law portion of the letter briefs,
10    we have cited authority, most prominently, Condit v. Dunn, a
11    recently decided case from this court in which the New York
12    District Court took notice of and applied California
13    substantive defamation law.  New York courts, in our judgment,
14    do this routinely, from our review of the authorities, and are
15    in just as good a position as the Central District Court in Los
16    Angeles.
17            The anti-SLAPP statute that the defendants want to
18    bring before the Court, in our judgment, based on numerous

19  California pronouncements, is a procedural statute, and in our
20  judgment, your Honor, upon review of the authorities, will
21  conclude that it is New York's procedural law that will apply
22  to this diversity proceeding, but, however, it will be
23  California substantive defamation law that will apply.
24         With respect to the reference to the California
25  retraction statute, that is, you have to give the broadcast

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

8358PRIC
1   media an opportunity within which to go on air and retract,
2   California law in that respect is clear.  That is simply a
3   factual determination as to whether or not the broadcaster, in
4   this case ABC News, ran their retraction in a full and complete
5   manner, whether it was as conspicuous as the original offending
6   broadcast.  And we think the answer to that is fact based only
7   and that your Honor as a matter of law and a jury will
8   ultimately determine that it was not as conspicuous and it was
9   not a full and complete retraction.
10         So for all of those reasons, we think that the case
11  should be brought here in New York.  We think we are doing ABC
12  News a favor by agreeing to come here, and I want to underscore
13  the fact that we are here not because of any effort to forum
14  shop, which ABC's original letter indicated to the Court, but
15  in reality we are here for two principal reasons, or three.
16  All of the documents and all of the witnesses are here, and we
17  want live testimony before the jury of the defendants with
18  respect to the issue of liability.
19         Secondly, as we have indicated in our letter brief,
20  Dr. Price is not a young man, he is 75 years of age, and under
21  the California anti-SLAPP statute, there is an automatic
22  provision that even if we were to prevail on it, in California
23  or in New York, there is an automatic stay that allows the
24  broadcast media to take an immediate appeal to the Ninth
25  Circuit if it were in California or the Second Circuit.  We

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

7

8358PRIC
1   seek to have the Court adjudicate that the anti-SLAPP statute
2   does not apply because it's procedural only.  We want to move
3   this matter as expeditiously as possible.
4          So that's the reason that we are here, along with the
5   fact that we want the live testimony of all of the New York
6   based witnesses.
7          THE COURT:  All right.  You have made your point.
8   Thank you.
9          MR. WHITE:  Thank you, your Honor.
10         Andrew White on behalf of the ABC witnesses, which
11  include American Broadcasting Companies, Inc., ABC, Inc., John
12  Stossel and Glenn Ruppel.
13         We are here on a very, very unusual format, in that

14    plaintiff already made a different choice of forum by choosing
15    to file his case initially in California state court.  That
16    case then was removed to federal court, assigned to Judge Gary
17    Klausner in the Central District of California, and proceedings
18    actually went forward in the Central District.  An answer was
19    filed, the anti-SLAPP motion was presented to plaintiff's
20    counsel, and parallel to this proceeding, we started the
21    process of beginning that anti-SLAPP motion in California.
22         It was then that plaintiff chose in the course of a
23    mediation to dismiss his California case without prejudice, the
24    mediation unfortunately failed, and then after that, plaintiff
25    changed horses, changed forum, and filed here in the Southern
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300


                              8

      8358PRIC
1     District of New York.
2          So we are here after plaintiff got a taste of
3     litigation in California, got a preview of the motion, the
4     anti-SLAPP motion that ABC will bring to dismiss his case
5     entirely, and then decided, I am in the wrong forum, I want to
6     change horses.  So that's why we are here in this court.
7          Now, the claim here involves a broadcast by ABC News
8     that involved a number of people across the country.  It was a
9     national broadcast.  One of the very short subjects, a
10    nine-second subject, was the plaintiff, Dr. Price.
11         Dr. Price is a lifetime California resident.  Clearly,
12    California law applies to the substance of this claim, as Mr.
13    Glassman has now acknowledged, because the defamation, if it
14    occurred, had impact on Dr. Price in California, which is where
15    his church of decades is located.
16         Under our motion to transfer venue, there are, under
17    the Southern District standards and Second Circuit standards,
18    nine different factors that the Court will consider.  One of
19    the factors that has very little weight in this analysis is
20    plaintiff's choice of forum because plaintiff already chose a
21    different forum.  He chose California.  Also, when the
22    plaintiff is suing outside his own forum, not in California but
23    in New York across the country, the plaintiff's choice of forum
24    is given very little weight.
25         One of the key factors, as Mr. Glassman alluded to, is
               SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300


                              9

      8358PRIC
1     who are the witnesses and where are they going to be, and can
2     the trial court compel nonparties to appear at trial?
3          In this particular case, all the witnesses that Mr.
4     Glassman referred to, Glenn Ruppel is a defendant, John Stossel
5     is a defendant, they are both individually named as defendants,
6     and all of the ABC employees are also employees of the
7     defendant, and they all can be compelled.  And we have also
8     acknowledged to the Court, this was in our initial submission

# EXHIBIT 17

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

# Ever Increasing Faith

| Dr. Price | EIF | Media | CCC | Education | Donations | FAQ | Contact Us | Youth | FICWFM |

**MAIN MENU**

Home

Easter 2008

Fellowship Forum

Dr. Price Schedule

Live Broadcast

Cyber Store

Israel 2008

**CyberStore**

Dr. Frederick K.C. Price (876)

Dr. Betty R. Price (76)

Frederick K. Price, Jr. (129)

New Release (4)

EIFM-24hr.NETWORK (14)

EIFM-TV Program (20)

List All Products

**Product Search**

[            ] Search

**Advanced Search**

Download Area

Show Cart

**Your Cart is currently empty.**

**Login Form**

User Name

[User Name]

Password

[            ]

Log in

Register now!

Lost password

**EIFM Podcast**





## Crenshaw Christian Center - Dr. Betty Price



Dr. Betty R. Price was born Betty Ruth Scott on February 9, 1934 in Gloster, Mississippi. In 1943, at the age of nine years old she, along with her siblings and parents, moved to Los Angeles, California where she became a student of the Los Angeles public school system and attended Ritter Elementary School and Jordan Junior High School. In 1952 she graduated from Dorsey High School where she met Frederick K. C. Price, whom she later married on March 29, 1953 at the age of 19.

Drs. Fred and Betty Price have four children -- Angela Marie Evans, Cheryl Ann Price, Stephanie Pauline Buchanan, and Frederick Kenneth Price, Jr. All of the Price children and their sons and daughter-in-law (A. Michael Evans Jr., Danon Buchanan and Angel Chavon Price) work for the Ministry at Crenshaw Christian Center in Los Angeles. Drs. Fred and Betty Price also have five grandchildren: Alan Michael and Adrian Marie Evans; Nicole Denise and Allen L. Crabbe, III; and Tyler Stephen Buchanan.

The marriage of Fred and Betty Price has spanned 50 years. The fact that all but one of those years was spent in the ministry is a story within itself. In 1962, Drs. Fred and Betty Price's eight-year-old son, Frederick III, was struck and killed by a car while he was coming home from school. This was the most disastrous of many crises in the Price family. In her book, "Standing By God's Man," Dr. Betty Price remembers, "Fred and I tried to console each other as best we could, and leaned a lot on one another during this time of hurt. My husband particularly found it hard to get over this tragedy, but he knew and continued to say, that it was not God who had taken our son from us. Looking back now, we can see how the devil was trying to destroy us as a family."

A devout Christian since early childhood, Dr. Betty continues to play a vital role in her husband's ministry, as well as in the operation of the church. She and Dr. Fred Price travel extensively all over the world, ministering the uncompromising Word of God. Dr. Betty also shares her personal testimony, along with the Word, with women's groups and organizations. Her love and concern for others have led to the establishment of numerous programs and groups at Crenshaw Christian Center. They include:

Women Who Care, a support group for women dealing with a variety of issues facing women today.

Women's Fellowship, which has served as a prototype for many women's fellowships throughout the country.

Big Sisters/Little Sisters Program, which is spearheaded by young ladies who are positive role models for our youth, and not what the world shows us as role models, but believers from the Body of Christ.

Alcohol/Drug Abuse and Co-Dependency Programs, which provide a means of helping those afflicted with the scourge of drug abuse.

24-hour Intercessory Prayer Network for members, visitors, and friends of the Ministry.

Cancer Support Group, which meets weekly, uses the Word of God to assure participants that they can overcome cancer.

Other support groups – which include Domestic Violence, Young Mothers, and Relief from Grief – meet once a month in an effort to help bring healing and restoration to God's people.

Vermont Village Community Development Corporation (VVCDC), which is a massive effort to restore beauty and viability to the Vermont Corridor.

Community Outreach Program (COP), which distributes food and clothing to hundreds of recipients weekly, as well as God's Word.

Dr. Betty was bestowed an honorary Doctor of Divinity Degree in January 1992. In June 1993, she was presented an honorary Doctorate Degree. She was ordained to the ministry of the Gospel in January 1994.

Over the years Dr. Betty received numerous awards and commendations from local, state, and federal government agencies for her community service work, and most recently, received the honor as "Woman of the Year" from the Los Angeles County Commission for Women in the Second District.

She is the author of three books, *Standing by God's Man*, which details her many experiences as a pastor's wife; *Through the Fire & Through the Water:My Triumph Over Cancer*, the story of her battle with and victory over a dreaded enemy – cancer; and *Lifestyles of the Rich & Faithful, A Handbook for Successful Christian Living*.

© 2005 Crenshaw Christian Center. All Rights Reserved.

# EXHIBIT 18

to
DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



# Ever Increasing Faith



| Dr. Price | EIF | Media | CCC | Education | Donations | FAQ | Contact Us | Youth | FICWFM |
|-----------|-----|-------|-----|-----------|-----------|-----|------------|-------|--------|

**MAIN MENU**

Home

Easter 2008

Fellowship Forum

Dr. Price Schedule

Live Broadcast

Cyber Store

Israel 2008

**CyberStore**

Dr. Frederick K.C. Price (876)

Dr. Betty R. Price (76)

Frederick K. Price, Jr. (129)

New Release (4)

EIFM-24hr.NETWORK (14)

EIFM-TV Program (20)

List All Products

Product Search

 Search

Advanced Search

Download Area

Show Cart

Your Cart is currently empty.

**Login Form**

User Name

User Name

Password

Log in

Register now!

Lost password

**EIFM Podcast**



## Crenshaw Christian Center - Angela Evans



As President of Crenshaw Christian Center, Inc., Angela Marie Evans is responsible for the operation of a 22,000-member church, four schools, and chairs a variety of community development organizations. To say that she wears many hats would be an understatement. Born to Fred and Betty Price on September 25, 1956, Angela grew up in a loving, yet financially challenged Christian home. Her father worked as a preacher, while her mother was a homemaker.  Life wasn't easy during the early years of the Price family, but there was plenty of love and eventually every member of the family prevailed.

Angela attended schools within the Los Angeles Unified School district, eventually graduating from Hamilton High School in 1974.  She briefly attended West Los Angeles Community College, where she met her husband, A. Michael Evans, Jr.  They were married in 1976 and are the proud parents of a son, Alan, 24 and a daughter, Adrian, 21.

Angela began her career by working at Crenshaw Christian Center as a secretary at the request of her father. She eventually left West LA College after being promoted and further enhanced her administrative skills.  Many years later, her shrewd judge of character and regular demonstration of compassion and sensitivity led her to ultimately becoming the President of CCC and overseer of the 10,000-seat FaithDome, a church sanctuary that has become a Los Angeles city landmark. As president of a $40 million corporation, she heads a staff of over 200 employees working in 14 divisions of operation. In 1986, Mrs. Evans, along with her parents, co-founded the Frederick K.C. Price III preschool, elementary, secondary and senior high schools. Frederick K.C. Price III School is named in memory of her deceased older brother. Mrs. Evans also chairs the Education Board for the school.

With all of her efforts at Crenshaw Christian Center, Mrs. Evans has been thrust into the public eye, and thus, has become active in many community organizations.  She is the Corporate Secretary for the Fellowship of Inner-City Word of Faith Ministries (FICWFM), an organization founded by her father, Dr. Fred Price, to minister to the needs of churches in the inner-cities and to provide fellowship for the member churches. Mrs. Evans is also the President of the Vermont Village Community Development Corporation, which was founded as a result of the vision of her mother, Dr. Betty Price, to restore and revitalize the community surrounding Crenshaw Christian Center.

Mrs. Evans is an active member of several professional organizations as *Town Hall Los Angeles*, *The American Management Association*, *Recycling Black Dollars* and *The Fellowship of Christian Athletes*.  She has received many awards and honors for her outstanding work in the community as well as recognition from local, state and national governments.

© 2005 Crenshaw Christian Center. All Rights Reserved.

# EXHIBIT 19

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER



| Dr. Price | EIF | Media | CCC | Education | Donations | FAQ | Contact Us | Youth | FICWFM |

## Crenshaw Christian Center - Our History

**MAIN MENU**

Home
Easter 2008
Fellowship Forum
Dr. Price Schedule
Live Broadcast
Cyber Store
Israel 2008

**CyberStore**

Dr. Frederick K.C. Price (876)
Dr. Betty R. Price (76)
Frederick K. Price, Jr. (129)
New Release (4)
EIFM-24hr.NETWORK (14)
EIFM-TV Program (20)

List All Products

Product Search
Search

Advanced Search

Download Area
Show Cart
Your Cart is currently empty.

**Login Form**

User Name
User Name
Password

Log in
Register now!
Lost password

**EIFM Podcast**







Crenshaw Christian Center was founded by Dr. Frederick K. C. Price in 1973 with some 300 members. Membership currently numbers over 18,000.

Eight years before establishing CCC, Dr. Price had pastored a small church in Los Angeles called West Washington Community Church under the auspices of the Christian and Missionary Alliance. He had grown dissatisfied with his personal spiritual development because of a lack of positive results in his life and ministry, so he searched for a more fruitful Christian experience. This led to his being baptized with the Holy Spirit according to Acts 2:4 on February 28, 1970. Shortly after this experience, Dr. Price came into contact with the Bible-teaching ministry of Kenneth E. Hagin. He grew into the reality of God's Word, then began teaching the Bible-deliverance message.

As Dr. Price and his congregation grew in the operation of faith and continually acted upon the Word, signs followed. One of those signs was a steady growth in church membership. Eventually, the building on Washington Boulevard (which only seated 158 persons comfortably) became too small for the growing congregation, and Dr. Price followed through with a plan the Lord had shared with him about establishing a new church, independent of denominational ties. There, the Holy Spirit could operate as He chose, according to 1 Corinthians 12 and 14, and the Word of God could be taught to His people uncompromisingly.

The ideal facilities were found at 9550 Crenshaw Boulevard in the city of Inglewood, a suburb of Los Angeles. On that site, Crenshaw Christian Center was founded, and on November 26, 1973, the 300-member assembly held its first service there.

Pastor Price continued his ministry of the Word and applied fully the principles of faith. In 1977, the 1,400-seat church was forced to go to two services, and later three, to accommodate the people desiring to receive the Word and experience the move of the Holy Spirit. Overflow rooms with closed-circuit television were used, and still, the lines kept growing.

The multitudes at the door were not the only sign of increase. After being on radio several times a week for a number of years, in April 1978, *Ever Increasing Faith*, the missionary outreach arm of Crenshaw Christian Center, began televising the faith message locally. Later, its telecasts expanded to five major U.S. cities in an effort to reach Black America. Just as Paul, an apostle to the Gentiles, never lost sight of his Jewish brethren, Dr. Price has desired to reach his Black brethren with the Word of Faith and prosperity that is in Christ Jesus, and has endeavored to do so through the media of television and radio.



Eventually, with an average of 5,500 persons participating in three services each Sunday, and with its expanding television, radio, book and tape ministries, the church again needed larger facilities. In 1981, it purchased the 32-acre former campus of Pepperdine University, primarily for the construction of a 10,000-seat sanctuary. In 1984, Crenshaw Christian Center moved to this location. Groundbreaking for the new sanctuary took place in 1986 and the building was completed in the fall of 1989.

The sanctuary, the FaithDome, is a geodesic dome (one of the largest in the world) used for Sunday services, special meetings, conventions, and crusades. The church holds other activities, including midweek Bible studies, in other facilities on the grounds. The Crenshaw Christian Center Ministry Training Institute, established in 1985, which includes a Correspondence School program that was founded in 1994, is also located on the grounds.

In 1990, Dr. Price founded the Fellowship of Inner-City Word of Faith Ministries (FICWFM) to foster and spread the faith message among independent ministries located in the urban, metropolitan areas of the United States. It fulfills another part of Dr. Price's vision – namely, to help inner-city ministries overcome the challenges they encounter in their congregations and in their day-to-day walk.

The ministry employs more than 350 people within 14 distinct divisions, including a preschool and elementary,

middle and high schools. Sixteen helps ministry auxiliaries and organizations, with approximately 2,500 volunteer workers, assist Dr. Price and his staff of nine ministers in serving the congregation, visitors and an outreach jail ministry.

© 2005 Crenshaw Christian Center. All Rights Reserved.

# EXHIBIT 20

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

**FLIGHT DEPT PROFILE**

# Matching mission and machine

## CCC/Ever Increasing Faith Ministries expands operations using a Gulfstream IISP.



(L–R) Crenshaw Christian Center Pastor Frederick Price and his wife, Betty Price, with Chief Pilot Ricky Franklin, Capt Cynthia Angel and Flight Attendant Jennifer Aukes in front of their Gulfstream IISP at Ontario Airport (ONT).

CRENSHAW
CHRISTIAN
CENTER
*Home of the Faith Dome*

In days gone by, preachers used silver crosses and elaborate rituals to ward off demons. Today, the task is often accomplished with state-of-the-art technology, including the latest in broadcast facilities, churches seating 10,000-plus, electronic terminals to accept debit card donations and legions of corporate jets. From coast-to-coast, preachers have snapped up all sorts of turbine-flying absolution in recent years. While these airborne sanctuaries typically take the form of older, large-cabin jets—frequently Bombardier Challenger 600s and Gulfstream IIs—some ministries now have their eyes on Global 5000s and Gulfstream Vs and are even considering supersonic business jets (SSBJs).

Los Angeles CA-based Crenshaw Christian Center (CCC)—together with its Ever Increasing Faith Ministries (EIFM)—has successfully expanded market share over recent years, with major facilities in Los

Photos by Grant McLaren



3 photos courtesy Crenshaw Christian Center

(L) Crenshaw Christian Center's newest acquisition is this historic property on Central Park West in New York NY. (R) Inside view of the church's 10,000-seat FaithDome in south central Los Angeles CA.

Angeles and New York seating 10,100 and 2500, respectively. To tie the operations together, and maximize the mobility and reach of Pastor Frederick Price, the ministry operates an Aviation Partners Blended Winglets-equipped Gulfstream IISP based at LGB (Long Beach CA) and crewed by 2 full-time pilots and a flight attendant.

Welcome to the world of mega-churches and celebrity preachers. "Make no mistake about it—this is a business," says Price. "We have the same needs for corporate jets and productivity tools as any other business."

Price is considered one of the most respected preachers in North America. "Through the ages, churches have been slower than other industries in taking advantage of productivity-multiplying tools like corporate aviation. Because we're a business, and because we're here in the Earth realm, we must do things in a businesslike way with the same tools everyone else uses."

For Chief Pilot Rick Handlin, Capt Connie Engel and Flight Attendant Jennifer Aukes, CCC's Gulfstream II Air Faith 1 is an ideal tool for its missions. In the process of setting up the New York branch in 2001, the Gulfstream and its crew accomplished 48 weekly round-trip flights. Many of these bicoastal commutes carried not only Frederick Price and his wife and fellow preacher Betty Price to lead sermons, but the

church organ player, singers, book-sellers, financial staff and donation collectors as well. Typical missions, however, carry only the Prices and a single bodyguard. "For our needs, the GII is close to ideal," says Handlin. "It gives us the range under most conditions to go coast-to-coast nonstop. The cabin is very comfortable and we have the capacity to transport larger groups as needed."

## Building market share

Price set up his first ministry, complete with a 158-seat church in Los Angeles, in 1973. In 1977 he expanded to a larger 1400-seat facility. As his flock grew, Price initiated multiple daily services, but it was soon time to expand operations once again. In 1981 he acquired the 32-acre former Los Angeles campus of Pepperdine University, just east of LAX (Intl, Los Angeles CA) for $14 million and



Crenshaw Christian Center Pastor Frederick Price and his wife Betty with staff members inside the church's GIISP before a flight out of LGB.

built the $10-million FaithDome, one of the largest geodesic domes in the world. Today, the FaithDome, sited at the end of royal palm-lined Price Drive, accommodates the church's local flock of more than 10,000.

Price got into the TV broadcast business in 1978 and can now be seen on numerous TV stations worldwide. CCC VP of Marketing Michael Evans Jr—who is also director of flight ops—says, "Dr Price broke with tradition in the early days by wearing a suit on stage, not using a pulpit, and talk-ing uninterrupted for the entire hour. All the other TV preachers at the time wore robes and ran a vari-ety show concept with choir and singer interludes. Today, 90% of the television preachers you see are in suits and many mimic Dr Price's style."

Expanding operations to the US east coast, and orchestrating week-ly sermons on both sides of the country, would not have been practical without a corporate jet. Today, the 19th-century New York property on Central Park West in Manhattan is well established and runs with its own local pastor. Price and his flight team have been able to cut back the former 2128-nm weekly commute to a once-a-month routine

CCC has 250 full-time employees and 2500 volun-teers. Ministry operations in the field include everything from jail outreach programs

and music ministries to ann. "Ministry at Sea" events that take place on cruise ships and help bring in new clientele.

Church members are encouraged to tithe 10% of their annual income and may use the remaining 90% to make donations as they see fit. Price is an in-demand speaker at churches throughout the country and his travel schedule "is a handful to keep up with," according to Evans.

### Investing in a jet

In 1998, having traveled constantly on airlines for more than 20 years, Price—then 65—was ready to give up on travel. But daughter and CCC Pres Angela Evans, said, "No dad, you can't retire—you have too much to offer people." Evans then began looking at jet charter options.

After a year of chartering everything from Bombardier Learjet 35s and 55s to Raytheon Hawker 800s and Gulfstream IIIs, CCC's board of directors approved acquisition of a church jet. Price liked the size, comfort and performance of Gulfstreams and, after a year of evaluating options, bought a GII (s/n 153) once flown by Volkswagen. CCC had winglets installed, completely re-did the interior and accomplished a midlife on the Rolls-Royce Spey engines. "Other aircraft types might have done the job for us," Price says, "but we got stuck in the Cadillac showroom and we didn't get any further."

CCC's GII had less than 9000 hours on the airframe with no history of corrosion and had been upgraded previously with a GIII-style Honeywell EFIS panel. More recently, CCC has upgraded Air Faith 1 to RVSM compliance with 2 new air data computers (ADCs), installed a Sandel ST3400 TAWS and Rockwell Collins Airshow 400, and is now on the verge of replacing its 2 Universal Avionics UNS1K FMSs with upgraded UNS1K+ models.

Price considers his turbine transport as not only a productivity tool and lifestyle enhancement but a life extender as well. The success of his ministry depends on the preservation of his health and vitality, as well as his ability to travel nation-



CCC VP Marketing Michael Evans says that business aviation is a "productivity multiplier" in growing church operations and maintaining revenues.

wide and as far afield as central and southern Africa.

"In the kind of business we're in, we don't make widgets," says Price. "I'm the product of this ministry—and a business aircraft both preserves the product and extends the reach of our ministry."

Price understands the high cost of operating a business jet and advises other preachers to make certain that they have a need for such a tool before making the investment. "The idea that 'Pastor So-and-so down the street has a jet or a turbine helicopter, so we're going to get one too' is the wrong approach," he advises. "You've got to be sure you have all your ducks in a row or owning a jet will take you to the cleaners. In our case, the payback far exceeds the cost, but to gain that payback you have to be able to pay the costs."



Executive Assistant Delphine Nelson is based at FaithDome's world headquarters.

CCC's GII DOCs run $2525 per flight hour (at an average fuel cost of $3.25 a gallon), says Handlin. Now that the weekly TEB (Teterboro NJ) runs are down to a once-a-month requirement, the jet is deployed primarily to take the Prices to church speaking engagements around the country and abroad.

Longest trips to date have been to STN (Stansted, London, England), NAS (Nassau, Bahamas) and HNL (Honolulu, Oahu HI). For his yearly African sorties, Price takes an airline sleeper seat to Europe and charters GVs from there. CCC uses Universal Weather for international trip planning and uses Avfuel, Multi Service and UVair cards for fuel purchases. Favorite FBOs, says Handlin, include Jet Aviation TEB, the Million Air and Avitat chains, and home base AirFlite LGB.

### Flightcrew lifestyles

When CCC acquired its GII in 2000 it was operated by Clay Lacy Aviation VNY (Van Nuys, CA) under a management contract, with Rick Handlin as its dedicated captain and contract first officers. At the beginning of 2002 Handlin, a 13,000-hour TT pilot, signed on full-time with CCC.

Engel, a retired Air Force Northrop T38 pilot who was among the first class of women trained to be pilots in the military, loves her new civilian job. "It was a challenge moving up from the T38 to the GII," she admits. "From flying fix-to-fix with TACAN in the military, I had to adapt to a whole new world of avionics and FMS. But I enjoy the work, the schedules are great and I like the chance to be able to support our ministry."

Aukes joined the department in mid-2001 as a full-time flight attendant and makes a point of visiting local markets at destinations and preparing all meals from scratch. Most requested entrees at FL410, says Aukes, are sandwiches and salads. Nina Tunzi, who has the dual role of scheduler and Pastor Price's executive assistant, assists in CCC's aircraft dispatch function.

Perhaps the most unusual aspect of this flight operation is that schedules are typically set a year in advance, with short-notice pop-up



Mechanic Jose Naranjo prepares the GIISP for yet another flight. Pastor Price, who is sold on the benefits of business aviation, is considering a move up to a GV.

trips—considered as anything with less than 2 months' notice—very rare. This allows Handlin to live 2 hours from LGB and Engel to live with her family in Maryland. CCC trains to Part 135 flight standards, goes twice yearly to FlightSafety LGB on a full service contract and is very careful with duty day limits. The GIISP's current 260 flight hour/year schedule is straightforward to manage with 2 pilots and it's rare for CCC to bring in contract crews.

Pay scales are better than industry average, says Handlin, and benefits include full medical/dental, a 401K plan, 5-year disability insurance and a 40% discount at the church bookstore. Profit sharing, at least for now, is not an included benefit.

## Maintenance

CCC moved its GIISP from Clay Lacy Aviation VNY to AirFlite LGB in 2003 due to Stage II restrictions at its former base.

Maintenance tracking and coordination are tasked to José Naranjo of locally-based Aerospace Intl. With a Gulfstream service center at LGB, maintaining the aircraft has never been a problem, and product support has been excellent, says Naranjo. In the near future, the church will likely hire its own full-time staff mechanic.

## Megachurch economics

The uninitiated may wonder what churches are doing with multimillion-dollar business jets in the first place. However, business jets, if carefully deployed, are highly effective in increasing market share, productivity and the value-enhancing mobility of any business or organization.

Market dynamics are constantly shifting in this industry and successful television ministries must track Nielsen ratings closely while keeping up on attendance-to-income performance ratios and finding innovative means to increase their flocks.

Michael Evans notes that the 80/20 marketing rule—20% of customers generate 80% of income—applies to the ministry business too, meaning that it's important to hold on to core clientele.

New area ministries pull some market share from time to time, but their impact has not been revenue-significant. Price says competition in the industry is not something he worries about. "Each ministry is unique," he says, "and the world has enough people for everyone to have a slice of the pie."

## State of the world

Fortunately—if the term is appropriate—the Devil is not going away any time soon, and Pastor Price will have work to do for as long as he wants to do it. Modern tools, including business aircraft, make it easier for Price to battle demons, but his efforts are counterweighted by modern technology in the hands of darker forces.

"The world is better off today for certain people in certain situations but, overall, the world is as screwed as it was when I started 30 years ago," he says. "The difference today is that we have more modern conveniences and now we can get ourselves messed up in style. It's the same old ball of wax—dishonesty, corruption, killings and needless

...rs—but now we can do all of this in a more sophisticated manner."

Looking forward, megachurches will continue to acquire business aircraft and may soon begin to make the leap to later-technology, large-cabin intercontinental models. Price likes the GV, but Handlin suggests that a GIV might be the next logical step: "A GIV would give us guaranteed transcontinental range back from the east coast, as well as one-stop capability to most of Europe, and we'd have better operating flexibility with a Stage III-compliant aircraft." DOCs would drop, according to Handlin, from $2525 an hour to $1450 an hour by changing out the existing GII for a GIV.

While Michael Evans envisions potential church interest in an SSBJ, Pastor Price remains hesitant. "The clock is running on a business aircraft whether it's flying or sitting on the ground," he notes. "It's like pumping gas at the gas station, except that the meter never stops turning. I can't even imagine what kind of meter we'd have running on an SSBJ!"

Moving into the corporate jet world, says Price, has been the best thing that's ever happened from a productivity point of view. At 72 he has a goal of learning to fly and piloting the GII, but he's an unqualified supporter of his professional flight team. "It's an absolute blessing having our flightcrew," he says. "We operate like a team and we're working toward the same goal. There's a great deal of dedication and expertise in this flight department."

Next time you're on approach to Runway 24R or 24L at LAX, look down. It's hard to miss CCC's geodesic FaithDome. "You'll see us when flying in from the east over the outer marker," says the pastor. "If you land at LAX, come over and visit us at the FaithDome. Services are every Sunday and you'll be most welcome."



*Editor-at-Large Grant McLaren has written for Pro Pilot for over 20 years and specializes in corporate flight department coverage.*

# EXHIBIT 21

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

# California Business Portal

## Secretary of State DEBRA BOWEN

**DISCLAIMER:** The information displayed here is current as of MAR 21, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation |
|---|

| CRENSHAW CHRISTIAN CENTER CHURCH OF LOS ANGELES COUNTY |
|---|

| **Number:** C0686764 | **Date Filed:** 8/6/1973 | **Status:** active |
|---|---|---|

| **Jurisdiction:** California |
|---|

| Address |
|---|
| 7901 SOUTH VERMONT AVE |
| LOS ANGELES, CA 90044 |

| Agent for Service of Process |
|---|
| ANGELA M EVANS |
| 7901 SOUTH VERMONT AVE |
| LOS ANGELES, CA 90044 |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# EXHIBIT 22

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

# California Business Portal

**Secretary of State DEBRA BOWEN**

**DISCLAIMER:** The information displayed here is current as of MAR 21, 2008 and is updated weekly. It is not a complete or certified record of the Corporation.

| Corporation | | |
|---|---|---|
| FELLOWSHIP OF INNER CITY WORD OF FAITH MINISTRIES | | |
| **Number:** C1574678 | **Date Filed:** 5/16/1991 | **Status:** active |
| **Jurisdiction:** California | | |
| **Address** | | |
| 7901 S VERMONT AVE | | |
| LOS ANGELES, CA 90044 | | |
| **Agent for Service of Process** | | |
| ANGELA M EVANS | | |
| 7901 S VERMONT AVE | | |
| LOS ANGELES, CA 90044 | | |

Blank fields indicate the information is not contained in the computer file.

If the status of the corporation is "Surrender", the agent for service of process is automatically revoked. Please refer to California Corporations Code Section 2114 for information relating to service upon corporations that have surrendered.

# EXHIBIT 23

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

Westlaw.

**EXECUTIVE AFFILIATION RECORD**

Information Current Through:    10-19-2007
Database Last Updated:          10-23-2007
Update Frequency:               WEEKLY
Current Date:                   10/25/2007
Source:                         AS REPORTED BY THE SECRETARY OF STATE OR OTHER OFFICIAL
                                SOURCE

**EXECUTIVE INFORMATION**

Principal Name:                 FREDERICK K C PRICE
                                Principal Address:

7901 S VERMONT AVE
LOS ANGELES, CA  90044          Registered Agent:
ANGELA M EVANS                  Registered Agent Address:
7901 S VERMONT AVE
LOS ANGELES, CA 90044           Business Name:
FELLOWSHIP OF INNER CITY WORD   Business Address:
OF FAITH MINISTRIES
7901 S VERMONT AVE
LOS ANGELES, CA 90044           Filing Date:
05/16/1991                      Status:
ACTIVE                          Business/Filing Type:
CORPORATION                     Identification No.:
C1574678

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

Westlaw.

**EXECUTIVE AFFILIATION RECORD**

Database Last Updated:

| | |
|---|---|
| 10-18-2007 | Current Date: |
| 10/25/2007 | Source: |
| COPYRIGHT © 2007 DUN & | Executive Name: |
| BRADSTREET, INC. | |
| MR FREDERICK PRICE | Executive Title: |
| CHIEF EXECUTIVE OFFICER | Business Name: |
| FELLOWSHIP OF INNER CITY WORD | Business Address: |
| OF FAITH MINISTRIES | |
| 7901 S VERMONT AVE | |
| LOS ANGELES, CA  90044-3531 | County: |
| LOS ANGELES | Phone: |
| 323-758-3777 | DUNS: |
| 14-588-8660 (Click for List | |
| of Available D&B Reports) | |

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 24

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

**REAL PROPERTY TAX ASSESSOR RECORD**

Tax Roll Certification Date:     06-20-2007

Owner Information Current     02-22-2008
Through:

County Last Updated:     02-29-2008

Current Date:     03/17/2008

Source:     TAX ASSESSOR LOS ANGELES, CALIFORNIA

## OWNER INFORMATION

Owner(s):     **PRICE FREDERICK** K & BETTY

     **PRICE** FAMILY

Ownership Rights:     TRUST

Property Address:     1436 VIA ARCO

     PALOS VERDES ESTATES, CA 90274-2055

Mailing Address:     1436 VIA ARCO

     PLS VRDS ESTATE, CA 90274-2055

## PROPERTY INFORMATION

County:     LOS ANGELES

Assessor's Parcel Number:     7544-023-020

Property Type:     SINGLE FAMILY RESIDENCE - TOWNHOUSE

Land Use:     SINGLE FAMILY RESIDENCE

Zoning:     PVR1*

Homestead Exempt:     HOMEOWNER EXEMPTION

Lot Size:     28630

Lot Acreage:     0.6572

Width Footage:     159

Depth Footage:     180

Property View:     LAKE

Location Attributes:     IOC

Legal Description:   TRACT NO 29082 LOT 10

Tract/Subdivision Number:   29082

Lot Number:   10

## TAX ASSESSMENT INFORMATION

Tax Year:   2006

Calculated Land Value:   $2,609,116.00

Calculated Improvement Value:   $986,248.00

Assessed Total Value:   $3,595,364.00

Valuation Method:   ASSESSED

Tax Amount:   $39,957.51

Tax Code Area:   7112

## LAST FULL MARKET SALE INFORMATION

Sale Date:   07/1989

Seller Name:   MORI KEIZO

Sale Price:   $2,450,000.00

Consideration:   FULL

Deed Type:   GRANT DEED

Type of Sale:   RESALE

Mortgage Amount:   $1,715,000.00

Mortgage Loan Type:   CONVENTIONAL

Lender Name:   SECURITY PACIFIC NAT'L BK

Recording Date:   07/20/1989

Document Number:   1161300

Title Company:   INVESTORS TITLE CO.

## PREVIOUS TRANSACTION INFORMATION

Previous Document Number:  1910080

Sale Date:   10/1982

Sale Price:   $1,114,000.00

Consideration:                 FULL

Recording Date:                12/03/1987

ADDITIONAL PROPERTIES POSSIBLY CONNECTED TO OWNER have been located. The owner's mailing
address is associated with other properties as indicated by tax assessor records. Additional charges may
apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available
transactions associated with this property. The report may include information about sales, ownership
transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional
charges may apply.

                    Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
                        to order copies of documents related to this or other matters.
                                    Additional charges apply.

END OF DOCUMENT

Adobe Reader is required to view PDF images.

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# REAL PROPERTY TRANSACTION RECORD

| | |
|---|---|
| Filings Collected Through: | 03-07-2008 |
| County Last Updated: | 03-12-2008 |
| Frequency of Update: | WEEKLY |
| Current Date: | 03/17/2008 |
| Source: | COUNTY RECORDER , LOS ANGELES, CALIFORNIA |

## OWNER INFORMATION

| | |
|---|---|
| Owner(s): | **PRICE FREDERICK** K C |
| Owner Relationship: | HUSBAND/WIFE |
| Ownership Rights: | COMMUNITY PROPERTY |
| Additional Owner #1: | PRICE FREDERICK K C & BETTY R |
| Owner Relationship: | HUSBAND/WIFE |
| Owner Rights: | COMMUNITY PROPERTY |
| Property Address: | 1436 VIA ARCO |
| | PALOS VERDES ESTATES CA 90274-2055 |
| Mailing Address: | 1436 VIA ARCO |
| | PALOS VERDES ESTATES CA 90274-2055 |

## PROPERTY INFORMATION

| | |
|---|---|
| County: | LOS ANGELES |
| Assessor's Parcel Number: | 7544-023-020 |
| Property Type: | SINGLE FAMILY RESIDENCE - TOWNHOUSE |
| Land Use: | SINGLE FAMILY RESIDENCE |
| Building Square Feet: | 7893 |

## TRANSACTION INFORMATION

| | |
|---|---|
| Transaction Date: | 07/16/2002 |
| Seller Name: | **PRICE FREDERICK** K C & BETTY R |
| Consideration: | UNCERTIFIED |

Type of Transaction:        NOMINAL

Recording Date:             10/28/2002

Document Number:            2560218

Title Company:              ATTORNEY ONLY

Construction Type:          RESALE

InterFamily Transaction:    YES

Purchase Payment:           CASH

TAX ASSESSOR RECORD is available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
to order copies of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

Adobe Reader is required to view PDF images.

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

**REAL PROPERTY TRANSACTION RECORD**

Filings Collected Through:   03-07-2008

County Last Updated:   03-12-2008

Frequency of Update:   WEEKLY

Current Date:   03/17/2008

Source:   COUNTY RECORDER , LOS ANGELES, CALIFORNIA

### OWNER INFORMATION

Owner(s):   **PRICE FREDERICK** K C

Property Address:   1436 VIA ARCO

PALOS VERDES ESTATES CA 90274-2055

Mailing Address:   PALOS VERDES ESTATES CA

### PROPERTY INFORMATION

County:   LOS ANGELES

Assessor's Parcel Number:   7544023020

Property Type:   SINGLE FAMILY RESIDENCE - TOWNHOUSE

Building Square Feet:   7124

### TRANSACTION INFORMATION

Transaction Date:   07/1989

Seller Name:   MORI KEIZO

Sale Price:   $2,450,000.00

Deed Type:   GRANT DEED

Type of Transaction:   RESALE

Mortgage Amount:   $1,715,000.00

Mortgage Type:   PRIVATE PARTY LENDER

Recording Date:   07/20/1989

Document Number:   1161300

Private Party Lender:   YES

Purchase Payment:                MORTGAGE

TAX ASSESSOR RECORD is available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

<div align="center">
Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)<br>
to order copies of documents related to this or other matters.<br>
Additional charges apply.
</div>

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 25

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

**REAL PROPERTY TRANSACTION RECORD**

| | |
|---|---|
| Filings Collected Through: | 03-07-2008 |
| County Last Updated: | 03-12-2008 |
| Frequency of Update: | WEEKLY |
| Current Date: | 03/17/2008 |
| Source: | COUNTY RECORDER , LOS ANGELES, CALIFORNIA |

## OWNER INFORMATION

| | |
|---|---|
| Owner(s): | **PRICE FREDERICK** K C & BETTY R |
| Owner Relationship: | HUSBAND/WIFE |
| Ownership Rights: | JOINT TENANTS |
| Additional Owner #1: | PRICE FREDERICK K C |
| Owner Relationship: | HUSBAND/WIFE |
| Owner Rights: | JOINT TENANTS |
| Additional Owner #2: | PRICE BETTY R |
| Property Address: | 8313 HANNUM AVE |
| | CULVER CITY CA 90230-6172 |
| Mailing Address: | 1436 VIA ARCO |
| | PALOS VERDES ESTATES CA 90274-2055 |

## PROPERTY INFORMATION

| | |
|---|---|
| County: | LOS ANGELES |
| Assessor's Parcel Number: | 4203-026-154 |
| Property Type: | RESIDENTIAL CONDOMINIUM |
| Land Use: | CONDOMINIUM |
| Building Square Feet: | 2018 |

## TRANSACTION INFORMATION

| | |
|---|---|
| Transaction Date: | 06/17/2004 |
| Seller Name: | GARAY LETICIA |

Sale Price    $630,000.00

| | |
|---|---|
| Consideration: | SALE PRICE (FULL) |
| Deed Type: | GRANT DEED |
| Type of Transaction: | RESALE |
| Mortgage Amount: | $400,000.00 |
| Mortgage Type: | CONVENTIONAL |
| Mortgage Term: | 30 YEARS |
| Mortgage Deed Type: | DEED OF TRUST |
| Mortgage Date: | 07/21/2004 |
| Mortgage Due Date: | 08/01/2034 |
| Interest Rate: | ADJUSTABLE |
| Lender Name: | WELLS FARGO BK |
| Lender Address: | DES MOINES, IA 50306-0304 |
| Recording Date: | 07/29/2004 |
| Document Number: | 1945561 |
| Title Company: | FIDELITY TITLE |
| Construction Type: | RESALE |
| Purchase Payment: | MORTGAGE |

TAX ASSESSOR RECORD is available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
to order copies of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 26

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

# REAL PROPERTY TRANSACTION RECORD

Filings Collected Through:    03-07-2008

County Last Updated:    03-12-2008

Frequency of Update:    WEEKLY

Current Date:    03/17/2008

Source:    COUNTY RECORDER , LOS ANGELES, CALIFORNIA

## OWNER INFORMATION

Owner(s):    CRABBE ALLEN

Property Address:    5304 SENFORD AVE

LOS ANGELES CA 90056-1027

Mailing Address:    LOS ANGELES CA 90056

## PROPERTY INFORMATION

County:    LOS ANGELES

Assessor's Parcel Number:    4201027028

Property Type:    SINGLE FAMILY RESIDENCE - TOWNHOUSE

Building Square Feet:    2318

## TRANSACTION INFORMATION

Transaction Date:    02/1987

Seller Name:    **PRICE FREDERICK** K C

Deed Type:    QUIT CLAIM

Type of Transaction:    NOMINAL

Recording Date:    03/02/1987

Document Number:    311308

Construction Type:    RESALE

Purchase Payment:    CASH

TAX ASSESSOR RECORD is available for this property. The record contains information from the office of the local real property tax assessor office. In addition to identifying the current owner, the record may include tax assessment information, the legal description, and property characteristics. Additional charges may apply.

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
to order copies of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

Adobe Reader is required to view PDF images.



(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT 27

to

DECLARATION OF DAVID E. FINK IN SUPPORT OF
ABC'S MOTION TO TRANSFER

**REAL PROPERTY TAX ASSESSOR RECORD**

Tax Roll Certification Date:    06-20-2007

Owner Information Current      02-22-2008
Through:

County Last Updated:           02-29-2008

Current Date:                  03/17/2008

Source:                        TAX ASSESSOR LOS ANGELES, CALIFORNIA


## OWNER INFORMATION

Owner(s):                      EVANS ANGELA M

                               EVANS A MICHAEL JR

Owner Relationship:            HUSBAND/WIFE

Property Address:              5240 SENFORD AVE

                               LOS ANGELES, CA 90056-1025

Mailing Address:               5240 SENFORD AVE

                               LOS ANGELES, CA 90056-1025

Phone:                         310-910-2833


## PROPERTY INFORMATION

County:                        LOS ANGELES

Assessor's Parcel Number:      4201-027-029

Property Type:                 SINGLE FAMILY RESIDENCE - TOWNHOUSE

Land Use:                      SINGLE FAMILY RESIDENCE

Zoning:                        LCR1YY

Lot Size:                      8756

Lot Acreage:                   0.2010

Width Footage:                 71

Depth Footage:                 124

Legal Description:             TRACT # 18066 LOT 124

Tract/Subdivision Number:      18066

## TAX ASSESSMENT INFORMATION

| | |
|---|---|
| Tax Year: | 2006 |
| Calculated Land Value: | $55,335.00 |
| Calculated Improvement Value: | $445,407.00 |
| Assessed Total Value: | $500,742.00 |
| Valuation Method: | ASSESSED |
| Tax Amount: | $6,079.51 |
| Tax Code Area: | 4623 |

## LAST FULL MARKET SALE INFORMATION

| | |
|---|---|
| Sale Date: | 08/1989 |
| Seller Name: | **PRICE FREDERICK** K C |
| Sale Price: | $780,000.00 |
| Consideration: | FULL |
| Deed Type: | GRANT DEED |
| Type of Sale: | RESALE |
| Mortgage Amount: | $585,000.00 |
| Mortgage Loan Type: | CONVENTIONAL |
| Lender Name: | SECURITY PACIFIC NAT'L BK |
| Recording Date: | 09/22/1989 |
| Document Number: | 1536022 |
| Title Company: | LINCOLN TITLE CO. |

TRANSACTION HISTORY REPORT is available for this property. The report contains details about all available transactions associated with this property. The report may include information about sales, ownership transfers, refinances, construction loans, 2nd mortgages, or equity loans based on recorded deeds. Additional charges may apply.

Call Westlaw CourtExpress at 1-877-DOC-RETR (1-877-362-7387)
to order copies of documents related to this or other matters.
Additional charges apply.

END OF DOCUMENT

(C) 2008 Thomson/West. No Claim to Orig. US Gov. Works.