ANTHONY MICHAEL GLASSMAN, admitted *pro hac vice*
ALEXANDER RUFUS-ISAACS, admitted *pro hac vice*
RICHELLE L. KEMLER, admitted *pro hac vice*
GLASSMAN, BROWNING, SALTSMAN & JACOBS, INC.
360 North Bedford Drive, Suite 204
Beverly Hills, California 90210-5157
Telephone: (310) 278-5100
Facsimile: (310) 271-6041


Attorneys for Plaintiff,
DR. FREDERICK K. C. PRICE

# IN THE UNITED STATES DISTRICT COURT FOR

# THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>JOHN STOSSEL, an individual, GLEN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware corporation, OLE ANTHONY, an individual, and TRINITY FOUNDATION, INC., an entity, form unknown,<br><br>        Defendants. | Case No.   07 CV 11364 (SWK)<br><br>The Honorable Shirley Wohl Kram<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C.S. § 1404(a)**<br><br>**ORAL ARGUMENT REQUESTED** |

Plaintiff, Frederick K.C. Price ("Plaintiff") respectfully submits the following in Opposition to

John Stossel ("Stossel"), Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc. (the

"ABC Defendants")' Motion to Transfer Venue pursuant to 28 U.S.C.S. §1404(a) and Ole Anthony and

Trinity Foundation, Inc. (the "Trinity Defendants") Joinder.

169883.2

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 2

    A.    Summary Of Plaintiff's Position. ........................................................... 2

    B.    The Defamatory Broadcast Accused Plaintiff of Stealing, *Not* of Being Wealthy. .......... 2

    C.    ABC's Request for Mediation ................................................................ 3

II.   DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN ESTABLISHING THE PROPRIETY OF A TRANSFER ......................................................................... 4

    A.    Defendants Have Failed to Present Clear and Convincing Evidence. .............. 4

        1.    Defendants Have Failed to Submit Any Declarations from a California Witness Refusing to Testify in New York. ............................. 5

        2.    Plaintiff's Family Members Are Not Plaintiffs in this Action. ............... 5

    B.    Cases Cited by Defendant Are Inapposite and Not Controlling Authority ............ 6

        1.    Plaintiff's Cause of Action Is More Than "Minimally Connected" to the Forum. ........................................................................................ 6

        2.    The Forum Shopping Cases are Inapplicable Here. ........................... 6

        3.    Defendant Does Not Cite Any New York Case Applying California's SLAPP Law. .................................................................................... 6

III.  DUE TO DEFENDANTS' LACK OF COMPELLING EVIDENCE JUSTIFYING A TRANSFER OF VENUE, THEY SET FORTH RED HERRING ISSUES TO MISLEAD THIS COURT .......................................................................................... 7

    A.    The Issue in this Case Is Not Plaintiff's Personal Wealth. .................... 7

    B.    Defendants Have Misled this Court Regarding the Circumstances of the Central District Dismissal. ............................................................ 9

    C.    Defendants Have Misled this Court Regarding the Circumstances of the Stay of the California Superior Court Case. ........................................... 9

    D.    The Only Possible Judge-Shopping Is By Defendants. ..................... 10

IV.   THIS ACTION SHOULD REMAIN IN NEW YORK. ................................. 11

    A.    Prong One of the Venue Transfer Test Is Satisfied ........................... 11

B.    The Nine Factors of the Second Prong Favor a New York Forum. ...................................11

1.    Convenience of the Witnesses Favors a New York Forum. ...............................11

a.    Plaintiff's Witnesses. .................................................................................11

b.    Defendants' Witnesses. .............................................................................13

c.    Defendants Did Not Begin Their Defense in the Central District. ..................................................................................................14

2.    Location of Evidence Favors a New York Forum. ...............................................14

3.    Convenience of the Parties Favors a New York Forum. .....................................15

4.    The Locus of the Operative Facts Favors a New York Forum. ...........................15

5.    The Ability to Compel Attendance of Witnesses Favors a New York Forum. .................................................................................................................15

6.    The Relative Means of the Parties Favor New York. ..........................................17

7.    The Court's Familiarity with Governing Law Favors a New York Forum. .........17

8.    Plaintiff's Choice of Forum Favors New York. ..................................................18

9.    Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances Favors a New York Forum. .........................................................18

V.    CONCLUSION ...............................................................................................................19

# TABLE OF AUTHORITIES

**Page**

CASES

Astor Holdings, Inc. v. Roski, 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. 2002)...............................15

Averill v. Superior Court, 42 Cal.App.4th 1170 (1996)....................................................6, 16

As You Sow v. Conbraco Industries, 135 Cal. App. 4th 431 (2005)....................................6, 16

Bouley v. Long Beach Memorial Medical Center, 127 Cal.App.4th 601 (2005)..............................6, 16

Burnett v. National Enquirer, 144 Cal. App. 3d 991(1993).................................................15

Condit v. Dunne, 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004)........................................5, 15, 16

Constitution Reinsurance Corp. v. Stonewall Ins. Co., 872 F.Supp. 1247 (S.D.N.Y. 1995)..............13

Davis v. Costa-Gavras, 580 F.Supp. 1082 (S.D.N.Y. 1984)...............................................6, 16

Erie R.R. v. Tompkins, 304 U.S. 64 (1938).................................................................6

Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003)............4, 10, 14, 15, 16

Gasperini v. Ctr. for Humanities, 518 U.S. 415, 427 (1996)...............................................6

Hanna v. Plumer 380 U.S. 460, 470 (1965).............................................................6, 16

Intria Corp. v. Intira Corp., 2000 U.S. Dist. LEXIS 17039, * 8 at *8-9 (S.D.N.Y. 2000).................4

Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 737 (2003).......................................6, 16

KPMG Consulting, Inc. v. LSQ II, LLC, 2002 U.S. Dist. LEXIS 12783 at *13

    (E.D.N.Y. July 12, 2002).............................................................................15

Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1 (D.C. 2006)............................................5

Rayco Mfg. Co. v. Chicopee Mfg. Corp., 148 F. Supp. 588, 593 (S.D.N.Y. 1957)..........................5

Royal & Sunalliance, 167 F.Supp.2d 573 (S.D.N.Y. 2001)...........................................10, 15

Soukup v. Law Offices of Herbert Hafif, 39 Cal.4th 260 (2006).......................................6, 16

Tilton v. ABC, 905 F. Supp. 1514 (N.D. Okla. 1995).....................................................2

TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F.Supp.2d 402 (S.D.N.Y. 2001)...................14

Toney v. Family Dollar Stores, Inc., 273 F.Supp.2d 757(S.D.W.V. 2003)................................13

Twin Coast Newspapers v. Superior Court, 208 Cal. App. 3d 656 (1989)................................15

<u>Weller v. ABC</u>, 232 Cal. App. 3d 991 (1991)…………………………………………………...12, 15

STATUTES

28 U.S.C. § 1404(a)…………………………………………………………………………....4, 13, 17

Cal. Code of Civ. Proc. § 425.16……………………………………………………………………16

Fed.R.Civ.P. 45(a)(2)………………………………………………………………………………...13

## I.  INTRODUCTION

### A.  Summary Of Plaintiff's Position.

Plaintiff has filed suit in New York against New York residents for defamation arising out of a nationally broadcast television show. However the ABC Defendants are clearly nervous about litigating in New York, and have filed this extraordinary motion seeking to transfer the case away from their home state to California. Whatever their real reasons for filing it, the ABC Defendants cannot present any sound legal justification for their position because all of the relevant factors point to New York as the obvious place to litigate this dispute.  Their approach is to mischaracterize the case as being a dispute over whether Plaintiff is as wealthy as he was portrayed on the show, and to argue that California is the most convenient forum because most of the evidence about Plaintiff's wealth is in his home state. This is a travesty - the fundamental controversy is not whether the show portrays Plaintiff as a rich man, but whether it portrays him as someone who was stealing from his church, and whether Defendants acted with malice. In other words, it focuses on Defendants' malicious and sensationalist conduct, and New York, which is where the ABC Defendants made the show, is the obvious place to try it.

For example, one issue to be determined at trial is whether the ABC Defendants knew that the video clip they edited into the show (in which Plaintiff described "his" great wealth) was taken from a sermon about a hypothetical rich man. Another issue concerns the ABC Defendants' duties of investigation when they received the clip from the Trinity Defendants, whom they already knew from a previous lawsuit to be biased, hostile and unreliable. Tilton v. ABC, 905 F. Supp. 1514, 1529 (N.D. Okla. 1995).  Such issues will require extensive discovery as to the ABC Defendants' state of knowledge, which is best explored by depositions to be conducted in New York where they reside, and production of the ABC Defendants' files, which are located in New York.

### B.  The Defamatory Broadcast Accused Plaintiff of Stealing, *Not* of Being Wealthy.

On March 23, 2007, the ABC Defendants broadcast a story on "20/20" ("Story") depicting religious leaders who financially exploit their congregations by misappropriating money to fund extravagant lifestyles.  Plaintiff was one of four religious leaders who were prominently featured at the outset of the Story that began with Stossel stating:

"They preach the gospel of giving to God. But how much of what you give do they keep for themselves? Is it time for someone to say 'enough'?"

Further on in the Story, the ABC Defendants aired a clip from a member of Plaintiff's church insisting that she knows when she gives to the church, her money is put to excellent use. Stossel then states:

" And yet her pastor, Fred Price, boasts: '*I live in a 25-room mansion, I have my own six-million-dollar yacht, I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles'.*" (emphasis added)

Stossel did not tell viewers that the italicized portion above was in a clip taken from a videotaped sermon that Plaintiff preached some years ago, during which he was not describing himself, but was hypothetically discussing a rich man who was spiritually unfulfilled. By broadcasting the clip in this context, the ABC Defendants were intent on pushing their preconceived story idea about pilfering preachers by misleading viewers into believing that Plaintiff was boasting about his own wealth, in contradiction of the comments made by his parishioner who believed her money was put "to excellent use." Stossel did not reveal that the true nature of the clip because that would have not have been a story.

Later in the program, Stossel interviewed Rusty Leonard who runs a group called Ministry Watch. When introducing him, Stossel states that Mr. Leonard felt it was

"…un-Christian that he and she…[pictures of various preachers] he [picture of Plaintiff] ask donors for money but don't reveal exactly how they spend it. He says donors are being hosed." (Emphasis added).

The clear implication is that Plaintiff was "hosing," i.e., stealing from, his parishioners.

### C.    ABC's Request for Mediation

The first time that settlement was raised by any party was in August 2007, when Henry Hoberman, Chief Litigation Counsel of ABC, contacted Plaintiff's lead counsel, Anthony Michael Glassman, and suggested that ABC would be willing to enter into settlement discussions in the hope that Dr. Price's claim could be settled without the need for costly and time consuming litigation. (Declaration of Anthony Michael Glassman ¶ 3 ["Glassman Dec."]). Mr. Glassman responded that Plaintiff was willing to mediate. Id. ¶ 4. The parties entered into a Stipulation on September 28, 2007, to continue the pending scheduling conference. However, Judge Klausner of the Central District of California denied the Stipulation. The ABC Defendants' local counsel, David Fink, called Mr.

Glassman and suggested that he dismiss Plaintiff's complaint without prejudice to permit the parties to pursue mediation without any further expense. Id. ¶ 5. Mr. Glassman agreed and the parties entered into a new Stipulation, dismissing Plaintiff's cause of action without prejudice. (Glassman Dec. ¶ 6). There was no agreement that Plaintiff would re-file in California if, as occurred, the mediation failed because the issue of where the case would be re-filed was never discussed by counsel. (Glassman Dec. ¶ 7).

## II.    **DEFENDANTS HAVE FAILED TO MEET THEIR BURDEN ESTABLISHING THE PROPRIETY OF A TRANSFER.**

### A.    **Defendants Have Failed to Present Clear and Convincing Evidence.**

"Pursuant to 28 U.S.C. § 1404(a), a district court may transfer venue, in the interest of justice, "for the convenience of parties and witnesses." The movant bears the burden of establishing the propriety of transfer by a clear and convincing showing. Furthermore, the movant must support its motion with a detailed factual affidavit. (Internal citations omitted)." Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003).

> 1.    Defendants Have Failed to Submit Any Declarations from a California Witness Refusing to Testify in New York.

Defendants have not identified any California witnesses who will be "inconvenienced" if the case stays in New York, as required by Intria Corp. v. Intira Corp., 2000 U.S. Dist. LEXIS 17039, * 8 at *8-9 (S.D.N.Y. 2000) ["A party seeking to transfer based on the convenience of witnesses must provide the Court with a specific list of probable witnesses who will be inconvenienced by the current forum and a general statement of what the witnesses' testimony will cover." (emphasis added)]. Nor have they produced a declaration from any California resident witness stating that he/she will refuse to testify if the matter remains in New York. See Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 187 (E.D.N.Y. 2003) (moving party "fail[ed] to provide any affidavits of potential witnesses stating that such witnesses would not appear if the action remained in New York.")

> 2.    Plaintiff's Family Members Are Not Plaintiffs in this Action.

The residence of Plaintiff's family members is irrelevant to the pending action. Plaintiff's family have not forfeited their privacy rights simply because Plaintiff has filed a defamation action against

Defendants. The broadcast was about Plaintiff, not his family.[1]

Defendants' submission of an extensive list of Plaintiff's family members is a transparent attempt to inflate the number of California resident witnesses in this action, and to intimidate Plaintiff by threatening to drag his family into the case and subject them to intrusive discovery into their personal financial affairs.[2]

### B.    Cases Cited by Defendant Are Inapposite and Not Controlling Authority.

1.    Plaintiff's Cause of Action Is More Than "Minimally Connected" to the Forum.

Plaintiff's chosen forum is New York. The cases cited by Defendants for the proposition that the pending action is "minimally connected" to Plaintiff's chosen forum are inapposite. The defamatory broadcast at issue originated in New York. As admitted in Defendants' discovery responses, all of the individuals who created, produced and broadcast the defamatory broadcasts at issue live in New York. The case can, and should be, tried where the tortious conduct originated if that is Plaintiff's choice. The party who committed the wrong should not determine the choice of forum when the Plaintiff is willing to come to Defendants' home state, especially when, as stated in Condit v. Dunne, "New York…has an interest in regulating the conduct of its media." 317 F. Supp. 2d 344, 353 (S.D.N.Y. 2004).

2.    The Forum Shopping Cases are Inapplicable Here.

The cases cited by Defendant regarding forum shopping, e.g. Rayco Mfg. Co. v. Chicopee Mfg. Corp., 148 F. Supp. 588, 593 (S.D.N.Y. 1957), involve fact scenarios in which the plaintiff had chosen a forum that had only a "slight connection to the factual circumstances surrounding his suit," or that "has no meaningful ties to the controversy and no particular interest in the parties or the subject matter…" as in Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 5 (D.C. 2006) also cited by Defendant.[3] Here, Plaintiff has chosen a forum in which all of the ABC Defendants, and all of the

---

[1] Regardless, Plaintiff's family members have all signed declarations agreeing to attend trial in New York should the Court find their testimony relevant.

[2] Simply stated, Plaintiff's suit against ABC does not operate as a waiver of the privacy rights of his children and their spouses. The families of libel plaintiffs do not become fair game to be stripped of their privacy rights.

[3] Pierce, 806 F. Supp. at 429, cited by Defendant in support of his forum shopping argument is not found at that cite, so Plaintiff is unable to address that case.

individuals responsible for the defamatory broadcast, reside. Plaintiff has not chosen an inconvenient

forum with no ties or relationship to the controversy such as Nevada or Arizona, as in the cases cited by

Defendants.

              3.     <u>Defendant Does Not Cite Any New York Case Applying California's SLAPP</u>
                     <u>Law.</u>

Defendant is unable to cite any New York federal case where the California anti-SLAPP statute

has been applied because there are no such cases. All of the cases cited by Defendant for the

proposition that federal district courts sitting in diversity apply the California anti-SLAPP statute are

Ninth Circuit cases from district courts located *in California.* As such, those courts are required to

follow the rule set forth in <u>Hanna v. Plumer</u> which states:

> "Ordinarily a federal court sitting in diversity applies the law of the state in which it sits
> to any issues of procedure not covered by federal law." <u>Davis v. Costa-Gavras</u>, 580
> F.Supp. 1082 (S.D.N.Y. 1984) citing <u>Hanna v. Plumer</u> 380 U.S. 460, 470 (1965).

This Court would apply the procedural laws of New York as "to any issues of procedure not covered by

federal law." <u>Id</u>.

California's anti-SLAPP statute has repeatedly been found by California courts to be a

procedural law. See <u>Jarrow Formulas, Inc. v. LaMarche</u>, 31 Cal. 4th 728, 737 (2003) [section 425.16 "is

a procedural device for screening out meritless claims])"; <u>Soukup v. Law Offices of Herbert Hafif</u>, 39

Cal.4th 260 (2006); <u>Bouley v. Long Beach Memorial Medical Center</u>, 127 Cal.App.4th 601 (2005);

<u>Averill v. Superior Court</u>, 42 Cal.App.4th 1170 (1996); <u>As You Sow v. Conbraco Industries</u>, 135 Cal.

App. 4th 431 (2005). Defendants note in their Motion that none of the foregoing cases involved an

analysis under the <u>Erie</u> doctrine. However, this is a specious argument given that "[u]nder the *Erie*

doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law";[4]

thus, there would be no need to conduct an <u>Erie</u> analysis as the courts have found the California anti-

SLAPP statute to be procedural.

---

[4] <u>Gasperini v. Ctr. for Humanities</u>, 518 U.S. 415, 427 (1996).

III.    **DUE TO DEFENDANTS' LACK OF COMPELLING EVIDENCE JUSTIFYING A TRANSFER OF VENUE, THEY SET FORTH RED HERRING ISSUES TO MISLEAD THIS COURT.**

A.    **The Issue in this Case Is Not Plaintiff's Personal Wealth.**

The March 23, 2007 "20/20" broadcast and the promotional teasers broadcast on Good Morning America were <u>not</u> simply stories about successful and wealthy religious leaders. The broadcast was entitled "Enough!" It repeatedly stated or implied, in the most skillful and forceful way possible, that Plaintiff, and the other individuals featured, were using donations to their respective churches to support their own extravagant lifestyles, and that "donors were being hosed." As Plaintiff's linguistic expert, Professor Edward Finegan, has explained,

> "The very premise of "Enough!" is that the lavish lifestyle of the featured preachers are funded illegitimately from donations intended for other purposes." (Declaration of Edward Finegan ¶ 14, [hereafter "Finegan Dec."], filed concurrently herewith).

The ABC Defendants have mischaracterized Plaintiff's complaint as one alleging that they wrongly accused Plaintiff of having great wealth. But both "Enough" and the teasers shown on "Good Morning America" did not simply accuse Plaintiff of being wealthy – they accused him of misappropriating money "given to God" and "keeping it for [him]self."

As stated by Professor Finegan:

> "It is my professional opinion...that ordinary viewers would understand "Enough!" and its GMA teasers to be claiming that Rev. Fred Price operates a Christian ministry whose parishioners have been deceived into funding an exorbitantly lavish lifestyle for their pastor and that his lifestyle and its ill-gotten financial underpinnings constitute shocking and scandalous behavior." (Finegan Dec. ¶ 6).

> ...

> "Th[e] framework [of Enough!] embodies the clear suggestion that the "preachers" persuade donors to support charitable works ("giving to God") but misappropriate the donations ("keep for themselves") to fund their own lavish lifestyles. (Finegan Dec. ¶ 8).

Defendants have mischaracterized Plaintiff's theory of recovery so as to create straw witnesses who reside in California, i.e. Plaintiff's entire family. However, as the complaint sets forth, and as Professor Finegan's declaration confirms, Plaintiff's claim is premised on the false and defamatory statements and implications throughout the broadcast that Plaintiff diverted and misappropriated

donations to fund his lifestyle. In short, the theory of Plaintiff's recovery is <u>not</u> that he was falsely accused of being wealthy – it is that he was falsely accused of misappropriating money given to his church to support his lifestyle.

**B.      Defendants Have Misled this Court Regarding the Circumstances of the Central District Dismissal.**

As stated above, it was *Defendants* who suggested a mediation and it was *Defendants* who suggested that Plaintiff dismiss his complaint without prejudice. (Glassman Dec. ¶ 3 and ¶ 5). Defendants' argument that it was only after learning of Defendants' plan to file an anti-SLAPP motion that Plaintiff's counsel concocted some scheme to entice Defendants into agreeing to dismiss Plaintiff's complaint is unfounded. While the Defendants may have disclosed the obvious, i.e., their intention to file an anti-SLAPP motion, Plaintiff responded via his mediation brief with factual and comprehensive legal arguments, detailing the facts and law for each critical issue in support of his claim.

Specifically, in his mediation brief Plaintiff disclosed: (a) the entirety of his expert's report, (b) his factual and legal argument regarding the inadequacy of ABC's purported retraction, (c) his proof of constitutional malice, including how he intended to prove the Defendants' reckless disregard of truth or falsity, (d) Plaintiff's legal argument regarding the "gist and sting" of the broadcast, (e) Plaintiff's legal argument supporting defamation by implication under California law, (f) his argument regarding ABC's breach of journalistic standards, and (g) the results of attorney work product research regarding similar allegations against Stossel. In sum, Plaintiff disclosed far more crucial information in his attempt to mediate in good faith than Defendant's disclosure of their intent to file an anti-SLAPP motion—a fact which Plaintiff had anticipated long before Defendants' disclosure. (Glassman Dec. ¶ 8).

**C.      Defendants Have Misled this Court Regarding the Circumstances of the Stay of the California Superior Court Case.**

David Fink, Defendants' counsel who has filed a declaration with this Court regarding the stay of the California Superior Court case, was not present for the appearance in the Los Angeles Superior

Court referenced in his declaration. (Declaration of Richelle L. Kemler ¶ 3). Therefore, he has no personal knowledge of what took place during that court appearance.

Plaintiff's counsel did not "persuade" the California State Court to stay the proceedings. During a chamber's conference, the court gave both counsel the option of dismissing or staying the state court action. Plaintiff's counsel requested a stay, based on her understanding that defense counsel would be making a motion to transfer the case back to the Central District of California, and the state court judge could not confirm the consequences of its dismissal of the action if this Court were to transfer the matter back to California. The ABC Defendant's counsel did not object to the stay. Id.

### D.    The Only Possible Judge-Shopping Is By Defendants.

When Plaintiff chose to re-file this action in New York, he had no idea which judge would be assigned to his case. Defendants, on the other hand, know which California judge will preside over the case if this motion is granted, and which judge will preside over the matter in New York. Defendants have decided that they prefer the California judge.

A media defendant, headquartered in New York, who engages in tortious conduct in New York, and then broadcasts nationally a false and defamatory accusation of diversion and misappropriation of donated funds on a massive scale should not be permitted to engage in forum and judge shopping on the basis that an out-of-state plaintiff's witnesses are located in the state of plaintiff's residence. Any defamation plaintiff's witnesses will likely reside in that plaintiff's home state, while the witnesses and documents relevant to the creation and broadcast of the defamatory material will be in the state where the media defendant is headquartered. To allow the ABC Defendants to avoid trial in New York, where they are headquartered, where all relevant fault witnesses reside, where the original documents are kept and maintained, and where the actual defamatory broadcast was created and disseminated, would allow ABC to avoid a designated New York court on grounds common to any defamation claim against a broadcast network by an out of state Plaintiff, i.e., that the Plaintiff, and many of his damage witnesses, live elsewhere.

## IV.    THIS ACTION SHOULD REMAIN IN NEW YORK.

### A.    Prong One of the Venue Transfer Test Is Satisfied.

"In considering whether to grant a venue transfer, courts engage in a two-part test: (1) whether

the action 'might have been brought' in the proposed transferee forum; and (2) whether the transfer promotes convenience and justice." <u>Excelsior</u>, 291 F. Supp. 2d at 185.  Plaintiff agrees that the action "might have been brought" in California, so the Court's focus will be on the second prong.

**B.**       **The Nine Factors of the Second Prong Favor a New York Forum.**

The second prong involves the consideration of nine factors.

(1) the convenience of the witnesses;

(2) the location of relevant documents and the relative ease of access to sources of proof;

(3) the convenience of the parties;

(4) the locus of the operative facts;

(5) the availability of process to compel attendance of unwilling witnesses;

(6) the relative means of the parties;

(7) a forum's familiarity with the governing law;

(8) weight accorded the plaintiff's choice of forum; and

(9) trial efficiency and the interests of justice based on the totality of the circumstances. <u>Excelsior</u>, 291 F. Supp. 2d at 185.

Each of the nine factors favor a trial of this matter in its current forum, New York.

1.       Convenience of the Witnesses Favors a New York Forum.

"The convenience of the witnesses is probably the single most important factor in the transfer analysis. Because of the importance of this factor, the party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (internal quotations and citation omitted). <u>Excelsior</u>,  291 F. Supp. 2d at 185.

a.       Plaintiff's Witnesses.

"When weighing the convenience of the witnesses, courts must consider the materiality, nature and quality of each witness, not merely the number of witnesses in each district." <u>Royal & Sunalliance</u>, 167 F.Supp.2d 573, 577 (S.D.N.Y. 2001).  The following witnesses go directly to the liability of the ABC Defendants and as admitted by the ABC Defendants in response to discovery requests, they are all residents of New York, with the exception of Glenn Ruppel, who is a party and resides just outside of New York:

| Witness Name | Proposed Testimony | Residence |
|---|---|---|
| Glenn Ruppel, Producer | Testimony regarding the creation, development and preparation of the defamatory "20/20" broadcast and what footage was obtained from Defendants Ole Anthony and Trinity Foundation, Inc. | New Jersey |
| John Stossel, Correspondent | Testimony regarding the creation, development and preparation of the defamatory "20/20" broadcast and what footage was obtained from Defendants Ole Anthony and Trinity Foundation, Inc. | New York |
| Pat Dauer, Writer | Testimony regarding what she was told and what she was directed to write to "tease" the "20/20" program. | New York |
| Nicole Gallagher, Director of News Practices | Testimony regarding the editing of the defamatory broadcast. | New York. |
| Rene Hall Gonen, Senior Producer for Advertising and Promotions | Testimony regarding what she was told and what she was directed to write to promote the "20/20" program. | New York |
| Imam Hobbs, Associate Producer | Testimony regarding the creation, development and preparation of the defamatory "20/20" broadcast. | New York |
| Ruth Iwano, Editor | Testimony regarding the creation and preparation of the defamatory "20/20" broadcast and what footage was obtained from Defendants Ole Anthony and Trinity Foundation, Inc. | New York |
| Theresa Karle, Legal | Testimony regarding conversations with Plaintiff's counsel. | New York |
| Martin Phillips, Senior Producer | Testimony regarding the creation, development and preparation of the defamatory "20/20" broadcast and what footage was obtained from Defendants Ole Anthony and Trinity Foundation, Inc | New York |

| David Sloan, Executive Producer | Testimony regarding the creation, development and preparation of the defamatory "20/20" broadcast and what footage was obtained from Defendants Ole Anthony and Trinity Foundation, Inc | New York |
|---|---|---|

It is obviously more convenient for these New York residents to testify in a New York forum.

Plaintiff also intends to call Diane Sawyer and Robin Roberts to learn how producers or directors of "Good Morning America" directed or encouraged them to read their scripted lines with a sense of shock and outrage concerning Plaintiff's alleged misappropriation of funds.  As stated by Professor Finegan:

> "Diane Sawyer's comments and the tone in which she voices them create a sense of incredulity, shock and scandal. As in much else related to "Enough!" the sense of incredulity, shock and scandal that characterizes the teasers contributed to a frame through which viewers were led to anticipate a portrait of indecent, deceitful, hypocritical, and outrageous behavior by some of those who preach the word of God and the gospel of giving." (Finegan Dec. ¶ 19).

As ABC knows, and as recognized by the California Court of Appeal in <u>Weller v. ABC:</u>

> "the choice of words, and the tone and inflection of the speakers, were likely to affect the viewer's understanding of what was being said expressly and implicitly." 232 Cal. App. 3d 991, 1008 (1991).

Thus, Ms. Sawyer's and Ms. Robert's testimony is crucial, and a New York forum is more convenient for them as they host "Good Morning America," which is broadcast daily from New York.

         b.     <u>Defendants' Witnesses</u>.

With regard to Defendants' proposed witnesses, as discussed above, Plaintiff's family members are not likely to be witnesses as they are irrelevant for the purposes proposed by Defendants.  However, each of Plaintiff's children, and their spouses, will testify on behalf of Plaintiff in his case in chief as to their observations of the impact of the defamatory broadcasts on Plaintiff.  Regardless, they have all signed declarations, filed concurrently herewith, agreeing to appear for trial should the Court determine their testimony is relevant. Regarding the specific members of Plaintiff's congregation identified by Defendants, should the Court determine their testimony is relevant, they have also filed declarations confirming that they will appear in New York for trial.

Plaintiff's and the church's accountants' testimony is also irrelevant, as the issue in this case is not whether Plaintiff is a wealthy individual. Even assuming arguendo that the accountant's testimony were permitted, it could be presented to a jury via videotaped testimony. (See <u>Toney v. Family Dollar Stores, Inc.</u>, 273 F.Supp.2d 757, 764 (S.D.W.V. 2003) stating [Fed.R.Civ.P. 45(a)(2), "allow[s] subpoenas for depositions to issue 'from the court for the district designated by the notice of deposition as the district in which the deposition is to be taken.'"]).

c.    <u>Defendants Did Not Begin Their Defense in the Central<br>District</u>.

Defendants' argument regarding "having begun their defense in the Central District" is unfounded. *The parties have never appeared in the Central District of California*. A status conference was scheduled and the parties entered into a stipulation dismissing the case, so they could focus on mediation. In addition, no discovery has taken place in California.  The only thing that has occurred in California is an unsuccessful mediation.

2.    <u>Location of Evidence Favors a New York Forum.</u>

"Courts look at the location of evidence in a 1404(a) motion when 'documents are particularly bulky or difficult to transport, or proof that is it somehow a greater imposition for defendant to bring its evidence to New York than for plaintiff to bring its evidence to the moving party's proposed forum.' <u>Constitution Reinsurance Corp. v. Stonewall Ins. Co.</u>, 872 F.Supp. 1247, 1251 (S.D.N.Y. 1995), cited in <u>Excelsior</u>, 291 F.Supp.2d at 186.

As stated in the ABC Defendant's discovery responses, the original documents remain in New York. In addition, although the ABC Defendant's state that the original videotapes are currently in Los Angeles, this factor cannot weigh in favor of a Los Angeles forum, as a few videotapes or DVDs do not qualify as "bulky or difficult to transport" as required by <u>Excelsior</u>,  291 F.Supp.2d at 186.

ABC should not be entitled to audit Plaintiff, as they suggest, absent specific evidence of misappropriation, and the moving papers and declarations provide no support for such a claim. Therefore, the fact that Plaintiff's financial records are located in California is irrelevant.

In addition, Defendants' representation that the California location of "key evidence—including a Gulfstream jet, a fleet of automobiles, and real estate, that either cannot be moved at all or could only

be moved cross country at great expense..." is patently absurd on its face.[5]

      3.     Convenience of the Parties Favors a New York Forum.

Convenience of the parties also weighs in favor of New York, as the ABC Defendants all reside in New York and Plaintiff is not inconvenienced by a New York forum as he visits New York often to see family and conduct services at his New York church.

      4.     The Locus of the Operative Facts Favors a New York Forum.

Based on information and belief, both the ABC programs at issue in this case, "20/20" and "Good Morning America," are prepared and broadcast out of the ABC studios in New York. Furthermore, as now confirmed by the ABC Defendant's discovery responses, the producers, writer, editors, reporters, production assistants, legal counsel and other employees who prepared the Program and the teasers to promote the broadcast reside in New York. Therefore, the locus of the operative facts, i.e., the creation, production and broadcast of the defamatory story, took place in New York.

      5.     The Ability to Compel Attendance of Witnesses Favors a New York Forum.

A court will consider the ability to compel the witnesses' attendance. TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F.Supp.2d 402, 406-407 (S.D.N.Y. 2001). However, virtually all California witnesses are likely to be Plaintiff's witnesses, who have agreed to testify at trial of this matter in New York.

The ABC Defendants merely speculate that California witnesses are unwilling to travel to New York, but they have not produced any statements from witnesses stating they will refuse to testify in New York. See Excelsior, 291 F.Supp.2d at 187 ("[Defendant] fails to provide any affidavits of potential witnesses stating that such witnesses would not appear if the action remained in New York...Therefore, this factor does not weigh in favor of transfer.")

Furthermore, Defendants' tenuous argument regarding multiple witnesses in California, a number they inflate by including the eight members of Plaintiff's family, should not be given any

---

[5] Certainly Defendants are not suggesting that they intend to bring any of these items mentioned above to the Central District of California, or intend to take the jury to Plaintiff's home or an airfield to view a jet. Should the Court determine Plaintiff's material possessions are relevant, it is likely that a picture

weight. As stated previously, it is not a matter of counting how many witnesses are in one forum and how many witnesses are in another forum. It is the "materiality, nature and quality of each witness" that the Court considers. Royal & Sunalliance, 167 F.Supp.2d at 577.

6.    The Relative Means of the Parties Favor New York.

A court may consider the relative means of the parties "where [an economic] disparity between the parties exists." KPMG Consulting, Inc. v. LSQ II, LLC, No. 01 Civ. 11422, 2002 U.S. Dist. LEXIS 12783, at *13 (E.D.N.Y. July 12, 2002) (internal quotations and citation omitted), cited in Excelsior, 291 F.Supp.2d at 186. Here, it goes without saying that the ABC Defendants are the parties with greater means, and in fact ABC will *save* money if the case is tried in New York.

7.    The Court's Familiarity with Governing Law Favors a New York Forum.

Defendants have made an extensive, and unfounded, argument with regard to this Court's alleged unfamiliarity with California law being a significant factor favoring the transfer of venue. Yet, one aspect of the California defamation law argued by the ABC Defendants, i.e., the California retraction statute, is procedural and not substantive, as it is not "conduct regulating;" rather, it is a "post event mechanism" designed as a "loss allocating rule." See Condit v. Dunne, 317 F. Supp. 2d at 353. In any event, whether a retraction satisfies the statute requires only a factual analysis by the jury, i.e. was the retraction as conspicuous as the defamatory broadcast and was it full and complete and unequivocal? Twin Coast Newspapers v. Superior Court, 208 Cal. App. 3d 656, 660 (1989); Weller v. ABC, 232 Cal. App. 3d 991 (1991), Burnett v. National Enquirer, 144 Cal. App. 3d 991(1993).

New York federal courts have routinely applied California substantive defamation law in cases pending in the Southern District. For example, in Condit v. Dunne, Judge Leisure of this Court went through an extensive analysis of California defamation law after he determined that California, rather than New York defamation law, applied. Regardless, as stated in Astor Holdings, Inc. v. Roski, No. 01 Civ. 1905, 2002 U.S. Dist. LEXIS 758, at *13 (S.D.N.Y. Jan. 15, 2002), cited in Excelsior, 291 F.Supp.2d at 187, "[t]he 'governing law' factor is to be accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states."

_____

will suffice, which can obviously be shown just as easily in a New York courtroom.

  
      8.    <u>Plaintiff's Choice of Forum Favors New York.</u>

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless other factors weigh strongly in favor of transfer." <u>Excelsior</u>, 291 F.Supp.2d at 187. As discussed previously, Defendants' citation to inapposite case law and unfounded arguments are without merit and should not weaken or diminish the weight to be given to Plaintiff's choice of forum.

      9.    <u>Trial Efficiency and the Interests of Justice Based on the Totality of the Circumstances Favors a New York Forum.</u>

An efficiency factor weighing in favor of New York is that the California procedural law applicable in the Central District of California Court, will result in an automatic lengthy appeal when Dr. Price overcomes the ABC Defendants' anti-SLAPP motion pursuant to Cal. Code of Civ. Proc. § 425.16. But since this California procedural law will not be applicable in the Southern District of New York,[6] a trial on the merits will be more expeditious in this Court.

With regard to the "interests of justice", as noted above, New York has stated in relation to "choice of law" issues that it has an interest in regulating the New York based media. <u>Condit v. Dunne</u>, supra. Therefore, when a plaintiff is willing to litigate a matter against a media defendant where it is headquartered and where all witnesses and documents relating to fault are also located, it would follow that a New York court, given its interest in regulating its media citizens, would find that the interests of justice favor trying the case in the New York court that the Plaintiff chose.

---

[6] As stated previously, "[o]rdinarily a federal court sitting in diversity applies the law of the state in which it sits to any issues of procedure not covered by federal law." <u>Davis v. Costa-Gavras</u>, 580 F.Supp. 1082 (S.D.N.Y. 1984) citing <u>Hanna v. Plumer</u> 380 U.S. 460, 470 (1965). California's anti-SLAPP statute has repeatedly been found by California courts to be a procedural law. See <u>Jarrow Formulas, Inc. v. LaMarche</u> 31 Cal. 4th 728, 737 (2003) [section 425.16 "is a procedural device for screening out meritless claims])"; <u>Soukup v. Law Offices of Herbert Hafif</u>, 39 Cal.4th 260 (2006); <u>Bouley v. Long Beach Memorial Medical Center</u>, 127 Cal.App.4th 601 (2005); <u>Averill v. Superior Court</u>, 42 Cal.App.4th 1170 (1996); <u>As You Sow v. Conbraco Industries</u>, 135 Cal. App. 4th 431 (2005).

## V.    **CONCLUSION**

Because Defendants have failed to meet their burden justifying a transfer of venue pursuant to 28 U.S.C.S. § 1404(a) and the relevant factors favor a New York forum, Plaintiff respectfully requests that this Court deny Defendants' Motion to Transfer Venue.

Respectfully submitted April 11, 2008

Glassman, Browning, Saltsman & Jacobs, Inc.

By: _____

Anthony Michael Glassman
Attorneys for Plaintiff, Frederick K.C. Price
