Andrew M. White, *admitted pro hac vice*
David E. Fink, *admitted pro hac vice*
Allison S. Rohrer, *admitted pro hac vice*
Tami Kameda, *admitted pro hac vice*
Attorneys for defendants John Stossel, Glenn Ruppel,
American Broadcasting Companies, Inc., and ABC, Inc.
White O'Connor Fink & Brenner LLP
10100 Santa Monica Boulevard
Twenty-Third Floor
Los Angeles, California 90067
Tel: 310-712-6100
Fax: 310-712-6199

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Dr. FREDERICK K. C. PRICE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>JOHN STOSSEL, an individual, GLENN RUPPEL, an individual, AMERICAN BROADCASTING COMPANIES, INC., a Delaware corporation, ABC INC., a Delaware corporation, OLE ANTHONY, an individual, TRINITY FOUNDATION, INC., an entity, form unknown,<br><br>Defendants. | Civil Action No. 07-CV-11364 (SWK) (THK)<br><br>The Honorable Shirley Wohl Kram<br><br>REPLY BRIEF IN SUPPORT OF THE MOTION OF DEFENDANTS JOHN STOSSEL, GLENN RUPPEL, AMERICAN BROADCASTING COMPANIES, INC. AND ABC, INC. TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)<br><br>**ORAL ARGUMENT REQUESTED** |

224189.4.doc

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...........................................................................................................1

II. ABC'S MOTION TO TRANSFER VENUE SHOULD BE GRANTED .................2

    A.    Price Ignores That Truth Is The Primary Inquiry On His Defamation Claim...........................................................................................................2

    B.    Regardless Of How Price Interprets The Alleged Defamatory Statements, All The Material Witnesses And Evidence Are In California ................................4

    C.    Price's Relatives – As Officers, Directors, And Employees Of His CA Church – Clearly Are Relevant Witnesses As To The Element Of Truth ...............7

    D.    Price Mistakenly Argues That New York Is The Locus Of Operative Facts ..........8

    E.    Price Admits He Is Just Trying To Dodge California Law .......................................9

        1.    The *Erie* Doctrine Precludes Price From Dodging California Law...........11

        2.    Federal Courts Can And Do Apply California's Anti-SLAPP Statute ........................................................................................................12

        3.    Federal Courts Can And Do Apply California's Retraction Statute..........13

    F.    The Central District Has Greater Familiarity With The Applicable Laws .............14

III. CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

<u>**Page**</u>

**<u>CASES</u>**

<u>Angelov v. Wilshire Bancorp</u>,
  No. 06 Civ. 4223 (CM), 2007 WL 2375131, *5 (S.D.N.Y. Aug. 14, 2007) ............... 14

<u>Arrow Elecs., Inc. v. Ducommun Inc.</u>,
  724 F. Supp. 264 (S.D.N.Y. 1989) ................................................................................ 5

<u>As You Sow v. Conbraco Indus.</u>,
  135 Cal. App. 4th 431 (2005) ..................................................................................... 13

<u>Atkins v. New York City</u>,
  143 F.3d 100 (2d Cir. 1998) .......................................................................................... 5

<u>Averill v. Super. Crt.</u>,
  42 Cal. App. 4th 1170 (1996) ..................................................................................... 13

<u>Bouley v. Long Beach Mem'l Med. Ctr.</u>,
  127 Cal. App. 4th 601 (2005) ..................................................................................... 13

<u>Brooks v. Physicians Clinical Lab., Inc.</u>,
  No. Civ. S-99-2155 (WBS), 2000 WL 336546, *2-3 (E.D. Cal. Mar. 20, 2000) ............. 13

<u>Buckley v. DIRECTV, Inc.</u>,
  276 F. Supp. 2d 1271 (N.D. Ga. 2003) ...................................................................... 13

<u>Card v. Pipes</u>,
  398 F. Supp. 2d 1126 (D. Or. 2004) ........................................................................... 13

<u>Chrome Hearts, Inc. v. Montana Street Wear, Inc.</u>,
  No. 95 Civ. 10736 (RPP), 1996 WL 306368, *2 (S.D.N.Y. June 7, 1996) ................... 5

<u>Citibank v. Transcon. Products & Services, Inc.</u>,
  No. 89 Civ. 6889 (RCC), 1999 WL 595658, *1, *2 (S.D.N.Y. Aug. 6, 1999) ............... 5

<u>Cohen v. Beneficial Indus. Loan Corp.</u>,
  337 U.S. 541 (1949) .................................................................................................... 11

<u>Condit v. Dunne</u>,
  317 F. Supp. 2d 344 (S.D.N.Y. 2004) ........................................................................ 14

<u>Contra Excelsior Designs, Inc. v. Sheres</u>,
  291 F. Supp. 2d 181 (E.D.N.Y. 2003) .......................................................................... 6

<u>Gasperini v. Ctr. for Humanities, Inc.</u>,
  518 U.S. 415 (1996) .................................................................................................... 11

<u>Gilbert v. Sykes</u>,
  147 Cal. App. 4th 13 (2007) ......................................................................................... 3

Hanna v. Plumer,
     380 U.S. 460 (1965) .................................................................................................. 11

Harrison v. Samuel,
     No. 05 CIV. 8914, 2006 WL 1716867, *5 (S.D.N.Y. June 20, 2006) ............................ 14

Herbert Ltd. Partnership v. Elec. Arts Inc.,
     325 F. Supp. 2d 282 (S.D.N.Y. 2004) ........................................................................... 5

In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.,
     381 F. Supp. 2d 192 (S.D.N.Y. 2004) ........................................................................... 6

In re Cable News Network and Time Magazine "Operation Tailwind" Litig.,
     No. C 99-21191 (JF), 2006 WL 1390553, *3-4 (N.D. Cal. May 19, 2006) ................... 13

Intria Corp. v. Intira Corp.,
     No. 00 Civ. 7198 (AGS), 2000 WL 1745043, *1, *3 (S.D.N.Y. Nov. 27, 2000) ............. 6

Jackson v. Hayakawa,
     682 F.2d 1344 (9th Cir. 1982) ..................................................................................... 10

Jarrow Formulas, Inc. v. LaMarche,
     31 Cal. 4th 728 (2003) ................................................................................................ 13

Kerwick v. Ottaway Newspapers, Inc.,
     53 N.Y.2d 625 (Ct. App. 1981) .................................................................................. 15

King v. ABC, Inc.,
     No. 97 Civ. 4963 (TPG), 1998 WL 665141, *2-4 (S.D.N.Y. Sept. 28, 1998) ............... 14

Live Oak Publ'g Co. v. Cohagan,
     234 Cal. App. 3d 1277 (1991) ...................................................................................... 3

MBCP Peerlogic LLC v. Critical Path, Inc.,
     No. 02-CV-3310 (SWK), 2002 WL 31729626, *3-4 (S.D.N.Y. Dec. 5, 2002) ............... 5

Milkovich v. Lorain Journal Co.,
     497 U.S. 1 (1990) ......................................................................................................... 3

Morris v. Chemical Bank,
     No. 85 Civ. 9838 (SWK), 1987 WL 16973, *5 (S.D.N.Y. Sept. 10, 1987) ................ 4, 6

Moyer v. Amador Valley Junior Union High Sch. Dist.,
     225 Cal. App. 3d 720 (1990) ........................................................................................ 3

Royal & Sunalliance v. British Airways,
     167 F. Supp. 2d 573 (S.D.N.Y. 2001) ........................................................................... 5

Sargent v. NBC, 136 F. Supp.
     560 (D.C. Cal. 1955) .................................................................................................. 15

Smith v. Maldonado,
     72 Cal. App. 4th 637 (1999) ......................................................................................... 3

Soukup v. Law Offices of Herbert Hafif,
   39 Cal. 4th 260 (2006) .................................................................................................. 13

Thomas v. Los Angeles Times Commc'ns, LLC,
   189 F. Supp. 2d 1005 (C.D.Cal. 2002) ........................................................................... 3

TM Claims Serv. v. KLM Royal Dutch Airlines,
   143 F. Supp. 2d 402 (2001) ........................................................................................ 3, 6

Twin Coast Newspapers, Inc. v. Sup. Crt.,
   208 Cal. App. 3d 656 (1989) ........................................................................................ 14

U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co., Inc,
   190 F.3d 963 (9th Cir. 1999) ........................................................................................ 12

USANA Health Sciences, Inc. v. Minkow,
   No. 2:07-cv-159 (TC), 2008 WL 619287, *2-3 (D. Utah Mar. 4, 2008) ...................... 12

Vegod Corp. v. Am. Broad. Cos.,
   25 Cal. 3d 763 (1979) .................................................................................................... 3

Vogel v. Felice,
   127 Cal. App. 4th 1021 .................................................................................................. 3

## STATUTES

Cal. Civ. Code § 48a .............................................................................................................. 15

Cal. Civ. Proc. Code § 425.16 ........................................................................................ 12, 15

N.Y. Civ. Rights §§ 70a, 76-a ............................................................................................... 15

## OTHER AUTHORITIES

8A Charles Alan Wright et al.,
   Federal Practice & Procedure § 2115 (2008) ................................................................ 6

# I.
# INTRODUCTION

Dr. Price's opposition brief is comprised of a series of erroneous arguments which are designed to distract attention from the only relevant inquiry on a motion to transfer venue: whether the interests of convenience and justice warrant transfer of this action back to the Central District.

As detailed in ABC's opening brief, the multi-factor test that determines whether these interests are met is completely satisfied here because (1) the majority of witnesses resides in the Central District; (2) more material witnesses can be compelled to testify in that district; (3) the Central District provides easier access to sources of proof; (4) the locus of operative facts is in the Central District; (5) the parties' means make that venue more economical; (6) the Central District is more familiar with the specific governing law, including California's Anti-SLAPP and retraction statutes; (7) Price's forum shopping destroys any weight normally accorded a plaintiff's choice of forum; and (8) on balance, it is more efficient and just to litigate in the Central District. ABC's Opening Brief ("Defs. Br.") at 13-34.

Tacitly conceding that he cannot satisfy this multi-factor test, Price attempts to shift the Court's attention away from this established test by raising six (6) flawed arguments:

> Flawed Argument No. 1: Price pretends that to prevail on his claim for defamation, he need only establish that ABC acted with malice. To the contrary, Price ignores that he must establish falsity, and that truth is an absolute defense. By shifting the spotlight off of falsity and onto malice, Price seeks to create the false impression that the material witnesses are only in New York.
>
> Flawed Argument No. 2: Price erroneously focuses at length on the meaning of the News Report, and whether it portrays him as a "rich man," or as "stealing from his church." That issue has no bearing on this motion. However Price may characterize his portrayal, all of the witnesses as to the primary element of truth are in California.
>
> Flawed Argument No. 3: Price mistakenly argues that his relatives are "irrelevant." He concedes, however, that his relatives hold top-level positions in

his church, and thus have access to the financial affairs of his church. Given that Price frames the central issue in this case as whether the News Report accused him of "stealing" from his congregants, Price can hardly question the materiality of the witnesses with the most information to establish the truth of that accusation.

Flawed Argument No. 4: Price contends that New York is the locus of operative facts because it is the home of certain witnesses he intends to call with respect to the element of malice, and the home of ABC's studios. This myopic view ignores that (a) California is where he spent decades building the reputation for which he claims harm; (b) California is the location of his church, from which he claims the News Report wrongly accused him of stealing; and (c) California is the location of most material witnesses and evidence.

Flawed Argument No. 5: Price denies he is forum shopping, despite his admission that he chose this venue to dodge California's Anti-SLAPP Statute – after first bringing, and subsequently maintaining, this claim in California. Price cannot evade California law, however, by mischaracterizing California's Anti-SLAPP Statute as "procedural." Numerous courts have already squarely addressed this issue and ruled that California's Anti-SLAPP Statute is substantive, and thus applicable in federal diversity actions. The same holds true for California's retraction statute.

Flawed Argument No. 6: Price contends that the Southern District's familiarity with basic California defamation law makes this venue appropriate. The specific provisions that govern this dispute – California's Anti-SLAPP and retraction statutes – are, however, unique to California. Thus, the Central District likely has greater familiarity with these special California laws.

These diversionary arguments do not change the reality that, under the applicable test, this matter should be transferred back to the Central District.

## II.
## ABC'S MOTION TO TRANSFER VENUE SHOULD BE GRANTED

A. **Price Ignores That Truth Is The Primary Inquiry On His Defamation Claim**

In his opposition brief, Price argues that this venue is proper and convenient because several ABC employees, whom he intends to call with respect to the issue of actual malice, reside mostly in New York. Price's Opposition Brief ("Pl.'s Br.") at 10-12. As *party* witnesses, however, ABC's employees *can* be compelled to testify at trial in the Central District. Defs.' Br. at 20; see, e.g., TM Claims Serv. v. KLM Royal Dutch Airlines, 143 F. Supp. 2d 402, 406-07

/ / /

(2001). Price therefore will have every opportunity to present live testimony from ABC witnesses if this case is transferred back to the Central District.

In an effort to create the false impression that there are crucial New York witnesses that can only be called in New York, Price erroneously focuses solely on his burden to establish malice, and downplays the primary element of any defamation case – truth. See Pl.'s Br. at 2, 10-12. Price's reformulation of the defamation test puts the proverbial cart before the horse. At the outset, every claim for defamation requires proof that there was a publication of a *false* statement of fact. Gilbert v. Sykes, 147 Cal. App. 4th 13, 26, 27 (2007). Since Price is a public figure[1] and the News Report focuses on a matter of public concern, "the burden is on the *plaintiff* to prove falsity." See Moyer v. Amador Valley Junior Union High Sch. Dist., 225 Cal. App. 3d 720, 725 n.2 (1990) (emphasis in original); see also Vogel v. Felice, 127 Cal. App. 4th at 1021; Milkovich v. Lorain Journal Co., 497 U.S. 1, 16 (1990).

A statement is not false if it is "*substantially* true." Vogel, 127 Cal. App. 4th 1006, 1021 (2005) (emphasis in original). Thus, truth is an absolute defense to defamation, regardless of bad faith or malice. See Smith v. Maldonado, 72 Cal. App. 4th 637, 646 (1999). Only if Price overcomes ABC's defense of truth (he cannot), would he be required to satisfy the next element of his claim – that ABC made the alleged defamatory statement with actual malice. See, e.g., Thomas v. Los Angeles Times Commc'ns, LLC, 189 F. Supp. 2d 1005, 1017 (C.D.Cal. 2002) ("because the allegedly defamatory implications are not actionable, there is no need for the Court to consider whether Plaintiff has made a showing of actual malice").

/ / /

---

[1] Individuals like Price who "voluntarily thrust themselves to the fore, inviting attention and comment," are public figures. See, e.g., Vegod Corp. v. Am. Broad. Cos., 25 Cal. 3d 763, 767 (1979); Live Oak Publ'g Co. v. Cohagan, 234 Cal. App. 3d 1277, 1289 (1991).

By ignoring his burden to establish falsity at the outset, Price distorts the test for defamation in an effort to prevent ABC from presenting live testimony at trial supporting its primary defense in this case – that the statements about Price are true.[2]

### B. Regardless Of How Price Interprets The Alleged Defamatory Statements, All The Material Witnesses And Evidence Are In California

Price devotes much of his brief to arguing the question of whether the defamatory statement in this case is that he is a "rich man" or that the News Report goes further by stating that he became rich by "stealing from his church." Pl.'s Br. at 2-3; see also id. at 7-8. To support this argument, Price proffers the declaration of an "expert" on linguistics who professes to opine on how the "ordinary viewer" would interpret the News Report as to Price. Id. at 7-8.

In order to resolve ABC's motion to transfer venue, however, it does not matter how the alleged defamatory statements are framed. Regardless of whether the News Report portrayed Price as a "rich man," or as a preacher who became rich by "stealing from his church," the non-party witnesses relevant to the alleged defamation are still *undeniably located in California*. Price studiously ignores the location of *all such non-party witnesses*. As this Court has previously observed, however, "it is perfectly proper to consider the needs and ease of access to *non-party witnesses as more compelling than that of party witnesses*." Morris v. Chemical Bank, No. 85 Civ. 9838 (SWK), 1987 WL 16973, at *5 (S.D.N.Y. Sept. 10, 1987) (emphasis added).

Moreover, courts have consistently held that transfer is appropriate where, as in this case, the defendant has identified witnesses who reside in the forum of the transferee court, identified the scope of their testimony, and identified the materiality of their testimony. Herbert Ltd.

---

[2] Price is well aware that ABC has vigorously asserted "truth" as its primary defense. ABC's communications under the Central District's rules in connection with its Anti-SLAPP motion, as well as ABC's mediation position, were based entirely upon the truth of the News Report. Malice (or lack thereof) would only become relevant if the statements in question were first found to be false.

Partnership v. Elec. Arts Inc., 325 F. Supp. 2d 282, 286-87 (S.D.N.Y. 2004); Royal & Sunalliance v. British Airways, 167 F. Supp. 2d 573, 577-78 (S.D.N.Y. 2001); Arrow Elecs., Inc. v. Ducommun Inc., 724 F. Supp. 264, 266-67 (S.D.N.Y. 1989).[3]

Here, ABC identified numerous non-party witnesses who reside within Los Angeles County, the anticipated scope of their testimony, and the materiality of their testimony to ABC's defense of *truth* and to Price's alleged reputational harm. ABC listed members of Price's CA Church, his personal accountant, members of the board of directors of his church, officers and employees of his church, financial advisors for his church, and the pilot of the private Gulfstream jet that is used by Price and his family.[4] See Defs.' Br. at 15-19, nn.16-22; Fink Decl. Exs. 17-27. These are the witnesses that will establish ABC's primary defense of truth; and all of them are non-party witnesses, located in California.

By failing to establish the contrary in his opposition brief, Price effectively concedes the foregoing facts.[5] Indeed, Price does not refute that *all* of these witnesses are located within Los

---

[3] Courts consider the convenience factor on a § 1404 motion satisfied, even if the defendant does not provide a list of witnesses, where other circumstances confirm that material witnesses are located in the forum of the transferee court. See MBCP Peerlogic LLC v. Critical Path, Inc., No. 02-CV-3310 (SWK), 2002 WL 31729626, at *3-4 (S.D.N.Y. Dec. 5, 2002) (convenience favors transfer because "the events giving rise to this action demonstrate that the vast majority of material witnesses are in Northern California and would therefore find it more convenient to testify in California than in New York"); Citibank v. Transcon. Products & Services, Inc., No. 89 Civ. 6889 (RCC), 1999 WL 595658, at *1, *2 (S.D.N.Y. Aug. 6, 1999) (convenience favors transfer where substantial number of witnesses were located in the transferee forum); accord Chrome Hearts, Inc. v. Montana Street Wear, Inc., No. 95 Civ. 10736 (RPP), 1996 WL 306368, at *2 (S.D.N.Y. June 7, 1996).

[4] ABC has obtained further documentation that establishes the identity of material witnesses and that they reside in California. Rohrer Decl. ¶ 2 Ex. 1 (California Secretary Of State: Statement of Information (identifying individuals as officers and/or agents of the CA Church, and their listed addresses within Los Angeles County)).

[5] As detailed herein, *Price made numerous concessions in his brief by failing to refute the arguments set forth in ABC's Brief.* See, e.g., Atkins v. New York City, 143 F.3d 100, 102-03 (2d Cir. 1998); In re AOL Time Warner, Inc. Sec. and "ERISA" Litig., 381 F. Supp. 2d 192, 239 (footnote continued)

Angeles County; that they would suffer inconvenience from testifying in New York; *and that all of these California residents are beyond the subpoena power of this Court.* See Defs.' Br. at 15-22, nn.16-22; Fink Decl. Exs. 17-27; see generally Pl.'s Br.[6]

Price nevertheless argues that ABC could present the testimony of these non-party witnesses by videotape at trial. Pl.'s Br. at 13. Price apparently forgot that he previously agreed with ABC on the necessity of live witnesses at trial because, to quote Price's counsel, their testimony "will be far more compelling live, to establish the elements necessary[.]" Fink Decl. ¶ 24 Ex. 15. Courts likewise routinely recognize the significance of live testimony. TM Claims Serv., 143 F. Supp. 2d at 407 n.6 ("Depositions . . . even when videotaped, are generally no substitute for live testimony.") Morris, 1987 WL 16973, at *5 (defamation case; "[a]s other courts have found, it is important to ensure the live presence of material non-party witnesses").[7]

No matter what Price argues, the reality is that he will have the benefit of live testimony from all material witnesses on the issue of malice, whether this case proceeds in New York or California. On the other hand, ABC would be deprived entirely of the opportunity to elicit live

---

n.50 (S.D.N.Y. 2004).

[6] Given Price's concessions, his claim that ABC has not presented adequate support for its motion falls flat. Pl.'s Br. at 4. Often defendants who bring a § 1404 motion will submit affidavits regarding witnesses under their control. E.g., Contra Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 185 (E.D.N.Y. 2003); Intria Corp. v. Intira Corp., No. 00 Civ. 7198 (AGS), 2000 WL 1745043, at *1, *3 (S.D.N.Y. Nov. 27, 2000). Here, however, ABC's witnesses are under *Price's control*. Accordingly, at this early juncture, ABC cannot know many details about these witnesses. Moreover, to the extent possible at this pre-discovery stage, ABC set forth the identity of material witnesses, their anticipated scope of testimony, and their presumed residence within Los Angeles County. Defs.' Br. at 16-19; Fink Decl. Exs. 17-27. None of which was refuted by Price. See generally Pl.'s Br.

[7] See also 8A Charles Alan Wright et al., Federal Practice & Procedure § 2115 (2008). ("[T]he federal courts still adhere to the view that live testimony is best, in large measure on the assumption that it can improve credibility determinations."); id. § 2152.1 ("Even where electronically recorded depositions are used, the federal courts still prefer live testimony of witnesses[.]").

testimony from any material witnesses on the fundamental issue of truth (other than Price), unless this action is transferred back to California. Where all of the material witnesses either are located in California or can be compelled to testify in California, convenience of the witnesses and the ability to compel testimony strongly support transfer to the Central District.

C.  **Price's Relatives – As Officers, Directors, And Employees Of His CA Church – Clearly Are Relevant Witnesses As To The Element Of Truth**

In an effort to divert attention away from the fact that the key personnel of his church are all his own family members, Price labels these key witnesses as "straw witnesses." Pl.'s Br. at 4-5, 7-8, 12. Price then invokes (presumably on their behalves) their rights of privacy, suggesting ABC intends to seek their testimony simply because they are Price's relatives. Id. Price misses the point.

Price does not dispute that his family members are on the payroll of his CA Church and hold top-level positions in the church – such as President, Officers and members of the Board of Directors (the "Relatives on the Payroll"). See Defs.' Br. at 15-19, nn.17-19; Rohrer Decl. ¶ 2 Ex. 1; see generally Pl.'s Br; NY Compl. ¶ 25. Consequently, Price's Relatives on the Payroll must be knowledgeable about the church's financial affairs – including the amount of donations to the church, how the donations are allocated and distributed, the amount of donations allocated for Price's salary and the extent of the church's fiscal transparency, or lack thereof. See Defs.' Br. at 15-19, nn.17-19; NY Compl. ¶ 25.

Accordingly, in light of the alleged defamatory statement (even as re-framed by Price, that he "stole" from his CA Church), ABC must have the opportunity to elicit testimony from individuals who are familiar with the CA Church's financial affairs. Those individuals undeniably include his Relatives on the Payroll. ABC's designation of the Relatives on the Payroll as witnesses has nothing to do with their familial status and everything to do with their roles as the key people operating the church. Price's Relatives on the Payroll are California

residents, are not parties, and are beyond the subpoena power of this Court – facts which Price does not contest.[8] See Defs.' Br. at 15-22, nn.17-19; see generally Pl.'s Br. While Price claims these witnesses are presently "willing" to travel to New York for trial (Pl.'s Br. at 12), their expressed willingness today does not alter the reality that they cannot be compelled to testify at trial in this Court if they "change their minds" later.

### D.  Price Mistakenly Argues That New York Is The Locus Of Operative Facts

Price argues that New York is an appropriate forum because he "has chosen a forum in which all of the ABC Defendants, and all of the individuals responsible for the defamatory broadcast reside," the News Report "originated" in New York, and all the "original documents" are in New York. Pl.'s Br. at 5-6, 9, 13-14 (emphasis added). Price's claim is false.

First, Price directly contradicts a fact known to him – *i.e.*, that Defendant Glenn Ruppel (who was the principal Producer of the News Report and prepared the News Report) resides in New Jersey, *not* in New York. See Pl.'s Br. at 11. Second, Price ignores another fact known to him – that Defendant Ole Anthony is a citizen of Texas, *not* New York. Defs.' Br. at 15. Third, Price ignores (but does not deny) that the News Report included footage *taken by ABC's local Los Angeles affiliate*. See id. at 24. Ignoring yet another key fact, Price fails to acknowledge that the original videotapes that are central to this dispute – the tapes of the News Report and the tape of his Video Rebuttal (concerning his alleged damages) – are in Los Angeles. Id. at 23-24; see generally Pl.'s Br.

/ / /

---

[8] Indeed, in opposition to this motion, Price submits declarations from some of his Relatives on the Payroll (and a few other members of his CA Church), all of which declarations *were signed within Los Angeles County*. See Declarations of B. Buchanan, D. Buchanan, S. Buchanan, Dulay, Cooper, Whitaker, A. Price, F. Price, Jr., C. Price, B. Price, A. M. Evans, and A. Evans. (Even Price's "expert" appears to reside in California. See Declaration of Finegan.)

Price also ignores (but does not contest) that the actual content in the News Report about Price, and the harm that he claims to have suffered, establish a significantly stronger nexus to California. Price does not dispute that the key portions of the News Report that form the basis of this lawsuit feature (1) Price, *a lifetime resident of California*; (2) an image of Price's *California* mansion ; and (3) an image of Price preaching before his *California* congregation. Defs.' Br. at 3-5, 24-25, n.2; see generally Pl.'s Br. Price claims that the News Report falsely accused him of stealing money from his church. Pl.'s Br. at 2. Even assuming this accusation were remotely true, the truth or falsity of that accusation cannot be established without extensive investigation of Price and his church's financial and disclosure records, all of which are located in California, as Price concedes. See Defs.' Br. at 6-8, 23-24; see generally Pl.'s Br.

With respect to harm, an essential element in any claim for defamation, Price claims the News Report harmed his reputation among his congregation and community, the vast majority of whom are located within Los Angeles County. Defs.' Br. at 6-7, 15-19, 24-25. The foregoing facts lead to only one conclusion: the locus of operative facts is in *California*, and thus supports transfer of this action back to the Central District.

### E.  Price Admits He Is Just Trying To Dodge California Law

Price engages in an exhaustive recitation of "who said what to whom" in connection with mediation and other matters while this case was proceeding in California. Pl.'s Br. at 7-9. Price's version of these facts is wrong and, in any event, irrelevant. Price's own *conduct* demonstrates conclusively that he is forum shopping, despite all his protests to the contrary.

As an initial matter, Price ignores (but does not dispute) that the parties signed a stipulation dismissing his action in the Central District *for the express purpose of conducting a mediation without incurring costs in connection with ABC's long-anticipated Anti-SLAPP motion.* That stipulation became a Court Order. Fink Decl. ¶ 20 Ex. 13. Although there is no

express provision in that stipulation and Order that Price may only re-file in the Central District if mediation failed, that was clearly understood; indeed, the language of the stipulation and Order itself is clear. Id.

Price also cannot dispute that the parties had already begun to litigate his claims in California. After Price filed in state court, ABC removed the action to the Central District. Price could have dismissed his claim without prejudice and re-filed it in New York at the time of removal, but he chose not to do so. Following removal, ABC filed an answer, which constitutes an appearance, see Jackson v. Hayakawa, 682 F.2d 1344, 1347 (9th Cir. 1982) (filing an answer constitutes appearance). District Court Judge Klausner then entered a scheduling order for the proceedings to follow, and ABC began the meet and confer process in preparation for filing its Anti-SLAPP motion, pursuant to the Local Rules of the Central District. Defs.' Br. at 5-11. Given the conduct of the parties and the record of the proceedings that took place in California, there was no reason to suspect that Price would not re-file in the Central District, if mediation failed.

Even after re-filing in New York, however, Price expressly asked the California state court judge to stay and maintain his case in California. Rohrer Decl. ¶¶ 3-5. Price's *actions* in California (rather than his arguments in this Court) are an admission that he is forum shopping. Indeed, he has admitted that he filed in this Court because he believes that he can evade California's Anti-SLAPP Statute here.[9] Fink Decl. ¶ 25 Ex. 16 at 6:19-25. In his attempt to

---

[9] Given Price's admitted forum-shopping purpose for filing in this Court, he can hardly accuse ABC of forum shopping. Still, he argues that ABC inexplicably desires to transfer this case in order to avoid trial in New York, which is the home of its corporate headquarters and many of its employees. Pl.'s Br. at 9. If ever there were a strawman argument, this would be it. Indeed, as detailed above, in ABC's opening brief and as reflected by Price's concessions, the factors relevant to the § 1404 inquiry overwhelmingly favor transfer back to the Central District. This motion is designed not to avoid trial in New York, but rather to try this case where all of the
(footnote continued)

explain his forum shopping decision, Price contends that *this* federal court has no power to apply California's Anti-SLAPP and retraction statutes because he claims these statutes are "procedural" laws. Pl.'s Br. at 6, 15. Price's legal argument is dead wrong, directly contradicted by the well-settled law under the doctrine of Erie R.R. v. Tompkins, 304 U.S. 64 (1938).

### 1. The *Erie* Doctrine Precludes Price From Dodging California Law

The Supreme Court has made clear that the terms "substantive" and "procedural" carry different meanings depending on the legal analysis at issue.[10] Hanna, 380 U.S. at 471. As the Court cautioned, "Erie-type problems [are] not to be solved by reference to any traditional or common-sense substance-procedure distinction." Id. at 465-66. Rather, the proper question to determine whether a law is substantive for the purposes of the Erie doctrine, is: "[D]oes it significantly affect the result of a litigation for a federal court to disregard a law of a State that would be controlling in an action upon the same claim by the same parties in a State court?" Id. at 466 (citation omitted). This inquiry is reflected in the "twin aims" of Erie: "discouragement of forum-shopping and avoidance of inequitable administration of the laws." Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 416 (1996) (quoting Hanna, 380 U.S. at 468).

In Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 555 (1949), the Court conducted an Erie analysis to determine whether a New Jersey statute that required shareholder derivative action plaintiffs to post a bond and exposed them to liability for fees for unsuccessful suits should be applied in a federal diversity action. The Court stated "[e]ven if we were to agree that the New Jersey statute is procedural, it would not determine that it is not applicable [in federal

---

evidence and witnesses can be assembled – an aim which serves the paramount interests of convenience and justice.

[10] "The line between 'substance' and 'procedure' shifts as the legal context changes. 'Each implies different variables depending upon the particular problem for which it is used.'" Hanna v. Plumer, 380 U.S. 460, 471 (1965)) (citation omitted).

courts]." The Cohen court reasoned that even if the statute was procedural in some aspects, it was also substantive because it "creat[ed] a new liability where none existed before [by] mak[ing] a stockholder who institutes a derivative action liable for [attorney's fees]." Id. The Court held that the statute was substantive and applicable in federal courts. Id. at 557.

### 2.   Federal Courts Can And Do Apply California's Anti-SLAPP Statute

Consistent with these Supreme Court pronouncements, the Ninth Circuit, and other federal courts conducting an Erie analysis, have consistently held that the relevant provisions of the Anti-SLAPP Statute (or similar statutes) constitute substantive law and apply in federal court. For instance, in U.S. ex. rel. Newsham v. Lockheed Missiles & Space Co., ("Newsham") the Ninth Circuit conducted an Erie analysis, just as in Cohen, and found that although the Anti-SLAPP Statute is procedural in some aspects, it provides a substantive right. 190 F.3d 963, 973 (9th Cir. 1999); see also Defs.' Br. at 28-30. As in Cohen, the Ninth Circuit determined that failure to apply the Anti-SLAPP statute would promote forum shopping, an outcome inconsistent with the Erie rule:

> Plainly, if the anti-SLAPP provisions are held not to apply in federal court, a litigant interested in bringing meritless SLAPP claims would have a significant incentive to shop for a federal forum. Conversely, a litigant otherwise entitled to the protections of the Anti-SLAPP statute would find considerable disadvantage in a federal proceeding. This outcome appears to run squarely against the "twin aims" of the *Erie* doctrine.[11]

Newsham, 190 F.3d at 973. Consistent with the above analysis, a Utah district court recently conducted an Erie analysis and held that California's Anti-SLAPP Statute applies in federal courts. USANA Health Sciences, Inc. v. Minkow, No. 2:07-cv-159 (TC), 2008 WL 619287, at *2-3 (D. Utah Mar. 4, 2008) (slip copy).

---

[11] Moreover, the court held that just like the statute at issue in Cohen, the Anti-SLAPP Statute creates a liability by making plaintiffs who file unmeritorious SLAPP suits liable for attorney's fees. Newsham, 190 F.3d at 971; see also Cal. Civ. Proc. Code § 425.16.

Other federal courts have applied the same reasoning to similar anti-SLAPP statutes of other states and have uniformly determined that these statutes, like California's, are substantive and apply in federal court under the Erie doctrine. See Card v. Pipes, 398 F. Supp. 2d 1126, 1136 n.22 (D. Or. 2004) (Oregon anti-SLAPP statute which is "similar [to the] California statute" is available in federal court under the Erie doctrine); Buckley v. DIRECTV, Inc., 276 F. Supp. 2d 1271, 1274 (N.D. Ga. 2003) (Georgia anti-SLAPP statute which is "similar to" California's Anti-SLAPP Statute applies in federal court under the Erie doctrine).

Notwithstanding the foregoing, Price argues that this Court cannot apply the Anti-SLAPP Statute, based upon a handful of California *state* court decisions, not one of which involves the Erie analysis required here – *i.e.*, whether a federal court sitting in diversity can apply a particular state law.[12] The law, however, is clear: under Erie and all its progeny, federal courts *can and must apply* California's Anti-SLAPP Statute.

### 3. Federal Courts Can And Do Apply California's Retraction Statute

California's retraction statute – like the Anti-SLAPP Statute – is also a substantive law and applicable in federal court. See In re Cable News Network and Time Magazine "Operation Tailwind" Litig., No. C 99-21191 (JF), 2006 WL 1390553, at *3-4 (N.D. Cal. May 19, 2006) (dismissing defamation claim because plaintiff failed to comply with California's retraction statute); Brooks v. Physicians Clinical Lab., Inc., No. Civ. S-99-2155 (WBS), 2000 WL 336546, at *2-3 (E.D. Cal. Mar. 20, 2000) (holding plaintiff was limited to recovering special damages

---

[12] See Pl.'s Br. at 6 (citing Jarrow Formulas, Inc. v. LaMarche, 31 Cal. 4th 728, 736-37 (2003) (whether malicious prosecution claims should be exempt from Anti-SLAPP statute); Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 278 (2006) (whether SLAPP plaintiff whose action was dismissed may invoke statute in further proceedings); Bouley v. Long Beach Mem'l Med. Ctr., 127 Cal. App. 4th 601, 613 (2005) (retroactivity of right to sue for wrongful death); Averill v. Super. Crt., 42 Cal. App. 4th 1170, 1173-4 (1996)(whether private conversations are except from Anti-SLAPP statute); As You Sow v. Conbraco Indus., 135 Cal. App. 4th 431, 462 (2005) (retroactivity of Cal. Civ. Proc. § 425.17)).

under California's retraction statute). Even the Southern District has applied California's retraction statute. King v. ABC, Inc., No. 97 Civ. 4963 (TPG), 1998 WL 665141, at *2-4 (S.D.N.Y. Sept. 28, 1998).

In light of these authorities, Price's assertion that California's retraction statute is a "procedural" law rather than a "substantive" law for Erie purposes is clearly erroneous. Pl.'s Br. at 15. To support this specious argument, Price relies upon Condit v. Dunne, in which the court conducted a choice of law analysis, not an Erie analysis, and otherwise never addressed the retraction statute. See Condit v. Dunne, 317 F. Supp. 2d 344, 352-53 (S.D.N.Y. 2004); see also Hanna, 380 U.S. at 471 (determination of "substantive" law for Erie purposes is a distinct analysis). Here, the choice of law issue is undisputed; Price concedes that California substantive law applies to this action. See Defs. Br. at 26; Pl.'s Br. at 15. Therefore, Price cannot escape the applicability of California's retraction statute.[13]

### F.   The Central District Has Greater Familiarity With The Applicable Laws

Price claims that this Court need not accord weight to the governing law prong of the venue transfer test because New York courts routinely apply California defamation law. Pl.'s Br. at 15. To the contrary, the Southern District has held that the governing law factor tips in favor of transfer where – as in this case – the claims will be decided under the state law of the *transferee court*. E.g., Defs.' Br. at 25-26; see also Angelov v. Wilshire Bancorp, No. 06 Civ. 4223 (CM), 2007 WL 2375131, at *5 (S.D.N.Y. Aug. 14, 2007) (slip copy); Harrison v. Samuel, No. 05 CIV. 8914, 2006 WL 1716867, at *5 (S.D.N.Y. June 20, 2006).

---

[13] Price is also mistaken when he argues that the sufficiency of a retraction is a question for a jury. Pl.'s Br. at 15. To the contrary, a retraction is sufficient to meet the statutory standard, *as a matter of law*, where the location of the retraction is the same as the original broadcast, the retraction fully corrects every aspect of the defamatory publication, acknowledges that the earlier report was erroneous, and expresses the publisher's regret over the error. Twin Coast Newspapers, Inc. v. Sup. Crt., 208 Cal. App. 3d 656, 663-64 (1989).

Moreover, a review of published decisions reveals very few New York decisions applying the specific (and unique) California laws applicable here – the California Anti-SLAPP and retraction statutes. Nor do counterparts to these statutes exist in New York because there are no New York statutes equal in scope and purpose to these California statutes. <u>Compare</u> Cal. Civ. Proc. Code § 425.16 (California Anti-SLAPP Statute), <u>with</u> N.Y. Civ. Rights §§ 70a, 76-a (New York Anti-SLAPP statute); <u>Compare</u> Cal. Civ. Code § 48a (California retraction statute), <u>with</u> <u>Kerwick v. Ottaway Newspapers, Inc.</u>, 53 N.Y.2d 625, 627 (Ct. App. 1981) ("retraction . . . might be considered evidence of lack of malice in certain instances"); <u>see also</u> <u>Sargent v. NBC</u>, 136 F. Supp. 560, 565 (D.C. Cal. 1955) (noting that "[u]nder New York law no prior demand for retraction is necessary" in contrast to California law where a demand for retraction is a necessary prerequisite to seek general and punitive damages). It is thus fair to assume that the Central District is more familiar with the specific governing laws. The Central District's greater familiarity with specific provisions of California law favors transfer of this action.

## III.
## CONCLUSION

For all the foregoing reasons, ABC respectfully requests that this Court transfer this action back to the Central District of California, pursuant to 28 U.S.C. § 1404(a).

DATED: April 24, 2008

WHITE O'CONNOR FINK & BRENNER LLP
Andrew M. White
David E. Fink
Allison S. Rohrer
Tami Kameda

By _____
Andrew M. White, *admitted pro hac vice*
Attorneys for Defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc. and ABC, Inc.