UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
DR. FREDERICK K.C. PRICE,          x
                                   x        07 Cv. 11364 (SWK)
        Plaintiff                  x
                                   x
        -against-                  x        **OPINION AND ORDER**
                                   x
JOHN STOSSEL, et al.,              x
                                   x
        Defendants.                x
----------------------------------X

**SHIRLEY WOHL KRAM, U.S.D.J.**

    In December 2007, the plaintiff, Dr. Frederick K.C. Price ("Price"), filed a complaint alleging defamation and intentional infliction of emotional distress against defendants John Stossel, Glenn Ruppel, American Broadcasting Companies, Inc., and ABC, Inc. (collectively, "ABC"), as well as defendants Ole Anthony and The Trinity Foundation, Inc. (collectively, "The Trinity Foundation"). ABC subsequently filed a motion pursuant to 28 U.S.C. § 1404(a) to transfer venue to the Central District of California, a request in which The Trinity Foundation has joined. For the reasons that follow, the Court grants the defendants' motion.[1]

---

[1] The parties have requested the opportunity to present oral arguments in connection with the defendants' motion. In light of the information presented in the parties' briefs, and given that the parties discussed the merits of the motion at length in a pre-motion conference held on March 5, 2008, the Court concludes that oral argument is not necessary. See, e.g., Allison v. UNUM Life Ins. Co., 04 Cv. 0025 (JS) (WDW), 2005 WL 1457636, at *1

## I.    BACKGROUND

### A. Price's Claims

Plaintiff Price is the founder and minister of the Crenshaw Christian Center ("the CCC" or "the Church"), a religious organization with two primary houses of worship: Crenshaw Christian Center East ("CCC East"), located in New York City, and Crenshaw Christian Center Church of Los Angeles County, also known as Crenshaw Christian Center/Ever Increasing Faith ("CCC/EIF"), located in south Los Angeles. (Compl. ¶ 1.) Approximately one thousand parishioners attend regular Sunday services at CCC East, while over 3,500 attend services at CCC/EIF. (Compl. ¶ 1.) CCC/EIF Sunday services are nationally and internationally televised. (Compl. ¶ 1.)

On March 23, 2007, ABC broadcast a story on the television program "20/20" (the "'20/20' Report"), which suggested that certain religious leaders make questionable use of their religious organizations' funds. (Compl. ¶ 3.) ABC used video and audio footage of Price in the "20/20" Report. Specifically, ABC featured a clip from one of Price's past sermons ("the Clip"), in which he states, "I live in a 25-room mansion, I have my own six-million-dollar yacht, I have my own private jet, and I have my own helicopter, and I have seven luxury automobiles." (Compl.

(E.D.N.Y. Feb. 11, 2005) (determining on basis of written submissions that oral argument is not necessary).

¶ 24.) Additional statements in the sermon from which the Clip was taken, however, reveal that Price is not referring to himself in the Clip, but to a hypothetical person who enjoys a lavish lifestyle but leads a spiritually empty life. (Compl. ¶ 24.) ABC also featured four short "teaser" previews of the "20/20" Report (the "Teasers") on the program "Good Morning America," which aired earlier that day. (Compl. ¶ 24.) On May 11, 2007, ABC broadcast a retraction of the "20/20" Report, to the extent that it portrayed the Clip as Price's admission of using church funds on the specified items. (Compl. ¶ 32.)

Price alleges that The Trinity Foundation, an entity "known . . . to be vehemently hostile to evangelical leaders" (Compl. ¶ 29), provided the Clip to ABC, with the expectation that its inclusion in the "20/20" Report would convey the impression that Price was misusing church funds (Compl. ¶ 30.) Price further accuses ABC of improperly including the Clip in the "20/20" Report without reviewing the entire sermon from which it was taken. Finally, Price alleges that the airing of the "20/20" Report and the Teasers caused him reputational harm (Compl. ¶ 31) and "severe emotional shock and distress" (Compl. ¶ 36), and that the May 11 retraction was inadequate to erase or mitigate the damage (Compl. ¶ 32.)

**B. Procedural History**

On July 24, 2007, Price filed a complaint against the defendants in Los Angeles Superior Court (the "CA Complaint"), based largely on the same facts described above and alleging the same offenses. (See Declaration of David E. Fink ("Fink Decl."), Ex. 9.) ABC then sought, and Price did not oppose, removal to the Central District of California on the ground of diversity jurisdiction. (Fink Decl. ¶ 14.) Following removal, ABC answered the CA Complaint (see Fink Decl., Ex. 10) and informed Price of its intention to file a motion to strike the CA Complaint, pursuant to Section 425.16 of the California Code of Civil Procedure (the "Anti-SLAPP Statute"), on the ground that the "20/20" Report and the Teasers constitute an exercise of ABC's free speech rights.[2]

Around this time, the parties also began discussing the possibility of mediating the dispute.[3] Because ABC's deadline for

---

[2] Anti-SLAPP statutes provide for the early evaluation and dismissal of any action that attacks the exercise of free speech. In order to survive a motion to strike made under California's Anti-SLAPP Statute, a plaintiff must demonstrate a reasonable probability of prevailing on the merits. See Cal. Civ. Proc. Code § 425.16 (2008).

[3] ABC and Price offer contrasting versions of these events. Price's attorney reports that counsel for ABC approached him about the possibility of settlement in August 2007, and that he responded in September 2007 by suggesting formal mediation. (See Declaration of Anthony Michael Glassman ("Glassman Decl.") ¶¶ 3-4.) Counsel for ABC, however, asserts that the mediation suggestion arose during a conference pertaining to the anti-SLAPP motion, a meeting prescribed by the Local Rules of the

filing an anti-SLAPP motion was approaching, the parties stipulated to stay the proceedings in the Central District of California pending the outcome of mediation. (See Fink Decl. ¶ 19, Ex. 12; Glassman Decl. ¶ 5.) After Judge Klausner denied this stipulation, the parties filed a second stipulation, allowing Price to dismiss his action without prejudice so that the parties could pursue mediation. (See Fink Decl. ¶ 19-20, Ex. 13; Glassman Decl. ¶¶ 5-6.) The mediation ultimately failed, and Price filed the complaint at issue in the instant case in the Southern District of New York. See 07 Cv. 11364 (SWK), Dkt. No. 1. ABC subsequently filed its motion to transfer, 07 Cv. 11364 (SWK), Dkt. No. 37, in which The Trinity Foundation has joined, 07 Cv. 11364 (SWK), Dkt. No. 43.

## II.   DISCUSSION

### A. Legal Standard

A district court may transfer a civil action to any other district where the action might have been brought, "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining the propriety of a motion to transfer venue, a district court must conduct a two-part inquiry. First, the district court must decide whether the

---

Central District of California. (See Fink Decl. ¶¶ 17-19.) To the extent that these recitations of the facts conflict, the Court finds it unnecessary at this time to resolve the discrepancy.

action "might have been brought" in the transferee district. Id.; Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) (citation and internal quotation marks omitted). Second, the district court must analyze the extent to which the interest of justice and the convenience of the litigation warrant a transfer of venue. Fuji Photo Film, 415 F. Supp. 2d at 373; In re Nematron Corp. Secs. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (citation omitted).

This second, case-specific analysis generally involves the consideration of several factors, including: (1) the convenience of the witnesses, (2) the convenience of the parties, (3) the location of relevant documents and the relative ease of access to sources of proof, (4) the locus of operative facts, (5) the availability of process to compel the attendance of unwilling witnesses, (6) the relative means of the parties, (7) the forum's familiarity with the governing law, (8) the weight accorded the plaintiff's choice of forum, and (9) trial efficiency and the interest of justice, based on the totality of the circumstances. Fuji Photo Film, 415 F. Supp. 2d at 373 (citation omitted); In re Nematron, 30 F. Supp. 2d at 400 (citations omitted). A district court may grant a motion for a transfer of venue only if the moving party has made a "clear and convincing" showing that transfer is appropriate in light of these and any other relevant factors. In re Nematron, 30 F.

Supp. 2d at 400 (citations and internal quotation marks omitted).

Here, the parties do not dispute that the plaintiff's case "might have been brought" in the Central District of California. Indeed, litigation was ongoing in that district prior to the stipulation of voluntary dismissal. Therefore, the defendants' motion to transfer venue turns on the nine factors described above. As the following analysis demonstrates, ABC has demonstrated that these factors weigh decisively in favor of transfer.

**B. Application of the Nine Venue Factors to the Instant Case**

Before proceeding to the requisite nine-part analysis, the Court addresses the sufficiency of the factual statements submitted by each side. This case has been complicated by the parties' initial failure to provide competent evidence concerning the facts relevant to the instant motion. Both parties neglected to support many of the arguments contained in the motion papers with the requisite factual affidavits. The Court therefore ordered ABC to submit a supplemental affidavit and provided Price the opportunity to submit a counter-affidavit with additional or competing factual statements. See 07 Cv. 11364 (SWK), Dkt. No. 71 (the "May 12 Order"). In light of the parties' ample opportunity to properly substantiate the arguments in the motion papers, the Court will only consider

those factual statements contained in the numerous affidavits on the record.[4] <u>See, e.g.</u>, <u>Cohn v. Metro. Life Ins., Co.</u>, 07 Cv. 928 (HB), 2007 WL 1573874, at *4 (S.D.N.Y. May 31, 2007); <u>Dahl v. HEM Pharms. Corp.</u>, 867 F. Supp. 194, 198 (S.D.N.Y. 1994) (holding that "[defendant's] contentions in its motion papers are insufficient" basis for court's resolution of motion to transfer); <u>GPA Inc. v. Liggett Grp., Inc.</u>, 94 Cv. 5735 (AGS), 1994 WL 537017, at *2 (S.D.N.Y. Oct. 4, 1994) (finding contentions unsupported by affidavit insufficient, even when undisputed).

**1. The Convenience of Witnesses**

The "[c]onvenience of both the party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." <u>Berman v.</u>

---

[4] Price has objected to ABC's supplemental affidavit (<u>see</u> ABC's Mot., Supplemental Declaration of David E. Fink ("Fink Supp. Decl."), arguing, <u>inter alia</u>, that the affiant lacks personal knowledge of the facts recited. The venue statute, unlike, for instance, the rule governing motions for summary judgment, does not expressly require that affidavits filed in connection with motions to transfer venue be based on personal knowledge. <u>Compare</u> 28 U.S.C. § 1404(a) <u>with</u> Fed. R. Civ. P. 56. Thus, several courts have indicated that there is no such requirement, <u>see, e.g.</u>, <u>McNair v. Monsanto Co.</u>, 279 F. Supp. 2d 1290, 1299 (M.D. Ga. 2003); <u>Tingley Sys. v. Bay State HMO Mgmt., Inc.</u>, 833 F. Supp. 882, 884 (M.D. Fl. 1993), or have credited factual statements based only on information and belief, <u>see, e.g.</u>, <u>Bomanite Corp. v. Newlook Int'l, Inc.</u>, 07 Cv. 1640 (OWW) (SMS), 2008 WL 1767037, at *3 (E.D. Cal. Apr. 16, 2008). In the absence of direct guidance from the Second Circuit, the Court joins the majority of other courts to consider the issue and concludes that it may consider factual assertions, contained in an affidavit, that are based on information and belief.

<u>Informix Corp.</u>, 30 F. Supp. 2d 653, 657 (S.D.N.Y. 1998) (citation and internal quotation marks omitted). In evaluating this factor, the Court must consider "the materiality, nature, and quality of each witness, not merely the number of witnesses in each district." <u>Royal & Sunalliance v. British Airways</u>, 167 F. Supp. 2d 573, 577 (S.D.N.Y. 2001) (citation omitted).

ABC asserts that its witness list will include eight of Price's family members, who also hold various staff and officer positions in the CCC. (<u>See</u> Supplemental Declaration of David E. Fink ("Fink Supp. Decl.") ¶ 6.) Their expected testimony will pertain both to the harm (or lack thereof) caused by the "20/20" Report and the Teasers, and to ABC's defense of truth. (<u>See</u> Fink Supp. Decl. ¶ 6.) ABC also avers that it intends to call approximately thirty other witnesses, including CCC board members, officers, accountants, and parishioners, to testify about the financial operations of the Church, Price's wealth, and the impact of the "20/20" Report.[5] (<u>See</u> Fink Supp. Decl. ¶¶

---

[5] ABC also states that it intends to call three other non-party witnesses--two members of the organization Ministry Watch, and one professor--all of whom reside in neither venue. ABC's affidavits, however--even when read in conjunction with the motion papers--fail to explain why these particular witnesses can provide competent, relevant testimony on the CCC's financial integrity. Even if ABC had provided sufficient information regarding these witnesses, they will be forced to travel regardless of whether the Court grants or denies the instant motion. The Court therefore disregards these three witnesses when assessing the first factor in its analysis. <u>Cf. Liberty Mut. Fire Ins. v. Costco Wholesale Corp.</u>, 06 Cv. 5226 (PKL),

6-8.) According to ABC, none of the aforementioned intended witnesses resides within the Southern District of New York, and the vast majority resides within the Central District of California. ABC may also call up to eight employees who reside outside the Central District of California. (Fink Supp. Decl. ¶¶ 5, 10.)

Price has not provided an affidavit listing his intended witnesses and their anticipated testimony.[6] The submission filed pursuant to the Court's May 12 Order instead details Price's objections to ABC's supplemental affidavit. See 07 Cv. 11364 (SWK), Dkt. No. 74 ("Price's Objection"). The plaintiff's failure to provide competent evidence regarding his witnesses is surprising, given his strenuous invocation of the rules as they apply to ABC. (See Price's Objection 2.) In any event, the Court cannot credit the chart of witnesses that appears in Price's opposition. Cf. GPA Inc., 1994 WL 537017, at *2. Price's lack of

---

2007 WL 2435159, at *4 (S.D.N.Y. Aug. 28, 2007) (stating that convenience of witnesses who reside in neither venue "does not influence the Court's determination"); Elec. Workers Pension Fund, Local 103 v. Nuvelo, Inc., 07 Cv. 975 (HB), 2007 WL 2068107, at *4 (S.D.N.Y. July 20, 2007) (collecting cases).

[6] Price has submitted numerous affidavits from individuals residing outside the Southern District of New York, all stating their willingness to testify in this District, if necessary. These affidavits, however, do not state that Price actually intends to call any of the affiants as witnesses, describe the content or importance of any expected testimony, or declare that the Southern District of New York is a convenient forum. Thus, while these affidavits may be pertinent to the Court's analysis of other factors, see infra Part II.B.5, they do not aid the Court's review of the witness convenience factor.

competent evidence, however, is not automatically fatal to his case, as the burden of persuasion rests with ABC. In re Nematron, 30 F. Supp. 2d at 400 (citations and internal quotation marks omitted).

The majority of witnesses identified by ABC reside in the Central District of California. Yet it is far from clear that testimony from all listed witnesses will prove necessary, as much of their collective knowledge appears to overlap. Additionally, although courts generally consider the convenience of party witnesses to be less weighty than that of non-party witnesses, see, e.g., Colida v. Panasonic Corp., 05 Cv. 5791 (JSR) (JCF), 2005 WL 3046298, at *3 (S.D.N.Y. Nov. 10, 2005); Morris v. Chemical Bank, 85 Cv. 9838 (SWK), 1987 WL 16973, at *5 (S.D.N.Y. Sept. 10, 1987), the ABC employees who reside in New York will likely provide key testimony about the production of the "20/20" Report and Teasers (see Fink Supp. Decl. ¶¶ 5 (identifying potential employee witnesses residing in New York), 18 (stating that "footage was received and compiled in New York")). The first factor therefore weighs only slightly in favor of transfer.

**2. The Convenience of the Parties**

In analyzing the convenience of the parties, "[t]he logical starting point is a consideration of [their] residence . . . ." U.S. Fidelity & Guar. Co. v. Republic Drug Co., 800 F. Supp.

1076, 1080 (E.D.N.Y. 1992). Here, three of the four ABC defendants reside in New York. Therefore, these three defendants' residences, standing alone, weigh in favor of the chosen forum.[7] The Trinity Foundation defendants, however, reside in Texas and will thus be inconvenienced regardless of the choice of forum.

Price is a California resident and thus cannot claim that this District is the more convenient forum for him, despite his assertion that he "visits New York often" (Price's Opp'n 14). In re Hanger Orthopedic Grp., Inc. Sec Litig., 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006). Additionally, Price cannot reasonably argue that the Central District of California is an inconvenient forum, as he resides there, filed his original suit in Los Angeles, and did not object to removal to the Central District of California.

Ultimately, the inconvenience to the parties resulting from either choice comes to a sort of equilibrium. Therefore, in its balancing of factors, the Court concludes that this factor is neutral.

---

[7] In the sections of its moving and reply briefs that address this factor, ABC argues that New York is an inconvenient forum because ABC "already began litigating this action in California." (ABC's Mot. 14-15.) The Court addresses this argument in Part II.B.3, infra.

### 3. The Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Although the location of relevant documents may be of less significance in light of modern copying and reproduction technologies, see In re Hanger, 418 F. Supp. 2d at 170, it nonetheless retains some relevance to the venue inquiry, In re Collins & Aikman Corp. Sec. Litig., 438 F. Supp. 2d 392, 396-97 (S.D.N.Y. 2006); Ravenswood Inv. Co. v. Bishop Capital Corp., 04 Cv. 9266 (KMK), 2005 WL 236440, at *6 (S.D.N.Y. Feb 1, 2005); In re Stillwater Mining Co. Sec. Litig., 02 Cv. 2806 (DC), 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003).

ABC avers that it sent the original video tapes of the "20/20" Report to Los Angeles during its preparation for Price's original lawsuit. (Fink Supp. Decl. ¶ 14.) Nevertheless, ABC concedes that the originals of all relevant documents are in New York. (Fink Supp. Decl. ¶ 14.) Additionally, ABC has stated that an investigation of both the CCC's and Price's personal financial records, as well as an audit of the assets of the Price family, are necessary to its defense of truth, and that this evidence is located in the Central District of California. (See Fink Supp. Decl. ¶ 15; Fink Decl. ¶¶ 30-37, Exs. 20, 22-27.) Finally, Price has retained an expert witness who is located in California. (See Price's Opp'n, Declaration of Edward J. Finnegan.)

Ultimately, ABC has failed to demonstrate that the location of relevant evidence weighs decisively in favor of transfer. The original video tapes are not too "bulky or difficult to transfer" back to New York. Excelsior Designs, Inc. v. Sheres, 291 F. Supp. 2d 181, 186 (E.D.N.Y. 2003) (internal quotation marks and citation omitted). If ABC's pretrial discovery includes audits of the assets of the CCC,[8] Price, and his family, the pertinent financial records can be produced in New York nearly as easily as in California, given today's technology. Although Price has retained a California expert, the evidence that he may provide is more than offset by the location of all relevant original documents in New York. At most, ABC has demonstrated that "significant evidence is located [on] both the East Coast and West Coast," rendering neutral this factor of the venue analysis. Cf. Excelsior, 291 F. Supp. 2d at 186.

### 4. The Locus of Operative Facts

The "20/20" Report incorporates footage filmed in California (see Fink Supp. Decl. ¶ 18) and New York (see Price's Objection, Declaration of Fatimah Lateef, ¶ 3), as well as footage allegedly acquired from ABC's co-defendant in Texas (see Compl. ¶¶ 7, 13). The Report and the Teasers were broadcast

---

[8] Price argues that ABC cannot conduct an audit "absent specific evidence of misappropriation." (Price's Opp'n 13.) The Court need not resolve the issue at this stage, however, for it finds this factor to be neutral regardless of whether discovery is granted.

nationwide (Fink Supp. Decl. ¶ 18), and thus Price's allegations of harm (see Compl. ¶¶ 26, 31, 36) are applicable to either or both jurisdictions. Under these circumstances, "the operative facts in this case are too spread out to clearly favor either venue. Accordingly, this factor is also neutral." Excelsior, 291 F. Supp. 2d at 186.

### 5. The Availability of Process to Compel Attendance of Unwilling Witnesses

Under Federal Rule of Civil Procedure 45(b)(2), a district court may compel the appearance only of those witnesses who reside in the district in which the court sits, or within 100 miles of the place of trial. Here, ABC has identified many potential, nonparty witnesses who reside in the Central District of California, outside the reach of this Court's subpoena powers. See supra Part II.B.1. Although these individuals may indeed escape this Court's compulsory process, ABC has failed to demonstrate, or even allege, that any of them would be unwilling to testify should this matter proceed to trial. To the contrary, many of these witnesses have submitted sworn affidavits expressing their willingness to attend trial in the Southern District of New York. See 07 Cv. 11364 (SWK), Dkt. Nos. 50-61, 80-87. As such, ABC has made only a weak preliminary showing of potential subpoena difficulties. See In re Connetics Sec. Litig., 06 Cv. 11496 (SWK), 2007 WL 1522614, at *7 (S.D.N.Y. May

23, 2007) (citing In re Collins & Aikman, 438 F. Supp. 2d at 397-98).

On the other hand, Price has not identified any particular non-party witnesses who would be subject to process in this District but are not subject to process in the Central District of California.[9] See supra Part II.B.1. Given ABC's weak preliminary showing of potential subpoena difficulties, in conjunction with the absence of any contrary showing by Price, this factor weighs slightly in favor of transfer. See In re Collins & Aikman, 438 F. Supp. 2d at 397-98.

**6. The Relative Means of the Parties**

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman, 30 F. Supp. 2d at 659 (citations omitted). The corporate defendants in this case likely possess greater financial assets than Price.[10] On the other hand, there is no indication that litigating this action in the Central District of California would impose financial

---

[9] The potential New York witnesses identified by ABC are ABC employees, whose testimony may be compelled by ABC without the need for a subpoena. Fuji Photo Film, 415 F. Supp. 2d at 375 (citing Aerotel, Ltd. v. Sprint Corp., 100 F. Supp. 2d 189, 197 (S.D.N.Y. 2000)).

[10] The parties have submitted no evidence with regard to The Trinity Foundation, Inc., and the three individual defendants.

hardship on Price.[11] This factor is therefore neutral in the Court's analysis. Cf. id. (citing Hernandez v. Graebel Van Lines, 761 F. Supp. 983, 989 (E.D.N.Y. 1991)).

**7. The Forum's Familiarity with the Governing Law**

The parties do not dispute that California substantive law governs this case. (See ABC's Mot. 27; Tr. 5, Mar. 5, 2008; Price's Opp'n 15). They do disagree, however, about the applicability of California's anti-SLAPP statute: ABC contends that the pertinent sections of the statute are substantive, and thus applicable under Erie R.R. v. Tompkins, 304 U.S. 64 (1938), and the ensuing case law, while Price maintains that they are procedural, and therefore inapplicable. The Court follows the Ninth Circuit Court of Appeals, which has concluded that the motion-to-strike provision of the California Anti-SLAPP Statute is substantive, and thus applicable to a federal court sitting in diversity. See United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 973 (9th Cir. 1999), cert. denied 530 U.S. 1203 (2000); see also USANA Health Scis., Inc. v. Minkow, 07 Cv. 159 (TC), 2008 WL 619287, at *2-*3 (D. Utah Mar. 4, 2008). The applicability of this unique aspect of

---

[11] The Court does not credit ABC's overly speculative assertion that litigation in the the Central District of California would be "far more economical" for Price, given his California residency (Fink Supp. Decl. ¶ 20). Instead, the Court rests its conclusion on the absence of any assertion by the plaintiff that litigating in California would cause him to suffer financial hardship.

California state law weighs in favor of transfer to the Central District of California. The apparent applicability of California's retraction statute[12] bolsters this conclusion. <u>Cf. Angelov v. Wilshire Bancorp</u>, 06 Cv. 4223 (CM), 2007 WL 2375131, at *5 (S.D.N.Y. Aug. 14, 2007); <u>Peter v. Platinum Publ'ns</u>, 93 Cv. 6709 (AGS), 1994 WL 440740, at *6 (S.D.N.Y. Aug. 15, 1994).

### 8. The Weight Accorded the Plaintiff's Choice of Forum

"A plaintiff's choice of forum is generally entitled to considerable weight . . . ." <u>Berman</u>, 30 F. Supp. 2d at 659 (citations omitted). That choice, however, is accorded significantly less weight if it is the product of forum shopping. <u>See</u> <u>Pierce v. Coughlin</u>, 806 F. Supp. 426, 427 (S.D.N.Y. 1992) (adopting magistrate judge's conclusion that plaintiff's forum shopping undermines weight accorded to plaintiff's choice of forum).

Here, Price apparently decided to refile his action, which was initially brought in California, in order to avoid the immediate-appeal provision of California's anti-SLAPP statute.

---

[12] Price argues that the California retraction statute, Cal. Civ. Code § 48(a) (2008), is inapplicable because it is procedural, not substantive (<u>see</u> Price's Opp'n 15). At least one court in this District, however, has found the statute applicable in diversity actions, <u>see, e.g.</u>, <u>King v. ABC, Inc.</u>, 97 Cv. 4963 (TPG), 1998 WL 665141, at *2-*4 (S.D.N.Y. Sept. 28, 1998), and another has implied that the statute is substantive, <u>see</u> <u>Rudin v. Dow Jones & Co.</u>, 510 F. Supp. 210, 216 (S.D.N.Y. 1981) (noting potential applicability of Cal. Civ. Code § 48(a) but finding factual record insufficient to conduct choice-of-law analysis).

(See Price's Letter 2, Feb. 29, 2008; Tr. 6-7, Mar. 6, 2008; Price's Opp'n 16.) In light of Price's residence outside the Southern District of New York, and his apparent strategic refiling in this District, the Court accords no weight to Price's most recent choice of forum.

### 9. Trial Efficiency and the Interest of Justice

ABC has not persuaded the Court that a transfer to the Central District of California would be any more efficient than litigation in this District. The Court has already concluded that significant evidence and documents exist in both districts, and the parties' hiring of California counsel, standing alone, does not tip the efficiency factor toward the Central District of California. Nevertheless, Price's apparent--albeit unsuccessful[13]--forum shopping leads the Court to conclude that it is in the interest of justice to transfer this case to the state in which it originally commenced. Cf. Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 5 (D.D.C. 2006).

In summary, the majority of the venue factors points in the direction of transfer, while the rest are neutral. Under these circumstances, the Court concludes that ABC has shown by clear and convincing evidence that the balance of factors favor transfer to the Central District of California. In re Nematron,

---

[13] See supra Part II.B.7.

30 F. Supp. 2d at 400 (citations and internal quotation marks omitted).

**III. CONCLUSION**

The defendants' motion is hereby granted, and the Clerk of Court is directed to transfer this case to the Central District of California.


SO ORDERED.


_____
      SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE


Dated:    New York, New York
          June 4, 2008

30 F. Supp. 2d at 400 (citations and internal quotation marks omitted).

## III. CONCLUSION

The defendants' motion is hereby granted, and the Clerk of Court is directed to transfer this case to the Central District of California.

SO ORDERED.

SHIRLEY WOHL KRAM
UNITED STATES DISTRICT JUDGE

Dated:   New York, New York
         June 4, 2008



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 06/04/08

20